**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

Techtronic Industries Company
Limited, and Techtronic Industries
Factory Outlets, Inc.

                    Plaintiffs,                    Case No. 8:23-cv-01734-CEH-AEP

          – against –

Victor Bonilla,

                    Defendant.


**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  THE COMPLAINT PLAUSIBLY ALLEGES THAT BONILLA MADE FALSE, ACTIONABLE STATEMENTS. ........................................................5

   A.  The Complaint plausibly alleges falsity. ................................5

   B.  Bonilla cannot hide behind the "opinion" label. ..................7

   C.  Bonilla's statements are not rhetorical hyperbole. .............11

II.  BONILLA'S CLAIM OF PLEADING DEFICIENCY CONCERNING ACTUAL MALICE FAILS ..............................................................12

   A.  Because TTI is not a public figure, actual malice is not an element. ....................................................................................12

   B.  The Complaint plausibly alleges actual malice. ..................15

III.  THE FAIR COMMENT RULE DOES NOT BAR TTI'S CLAIMS. ...............18

IV.  THE COMPLAINT SUFFICIENTLY ALLEGES DAMAGES........................19

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Amira Nature Foods, Ltd. v. Prescience Point, LLC*,
No. 15-cv-9655 (VEC) (S.D.N.Y. Oct. 17, 2016) .................................................... 9

*Bass v. United Dev. Funding, L.P.*,
2019 WL 3940976 (Tex. App. Aug. 21, 2019) .................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................... 5, 7

*Bennett v. Hendrix*,
325 F. App'x 727 (11th Cir. 2009) .............................................................. 8, 11, 12

*Berisha v. Lawson*,
973 F.3d 1304 (11th Cir. 2020) ............................................................................ 18

*Borislow v. Canaccord Genuity Group*,
2014 WL 12580259 (S.D. Fla. Jun. 27, 2014) .................................................... 14

*Colodny v. Iverson, Yoakum, Papiano & Hatch*,
936 F. Supp. 917 (M.D. Fla. 1996) ............................................................... 18, 19

*Computer Aid, Inc. v. Hewlett-Packard Co.*,
56 F. Supp. 2d 526 (E.D. Pa. 1999) .............................................................. 2, 13

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
6 F.4th 1247 (11th Cir. 2021) ............................................................................. 16

*Deeb v. Saati*,
778 F. App'x 683 (11th Cir. 2019) .................................................................... 5, 7

*Deligdish v. Bender*,
2023 WL 5016547 (M.D. Fla. Aug. 7, 2023) ................................................... 8, 10

*Dershowitz v. Cable News Network, Inc.*,
541 F. Supp. 3d 1354 (S.D. Fla. 2021) ................................................................ 11

*Dibble v. Avrich*,
2014 WL 5305468 (S.D. Fla. Oct. 15, 2014) ....................................................... 11

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016) ................................................................ 13

*Farmland Partners v. Rota Fortunae*,
2020 WL 12574993 (D. Colo. May 15, 2023) ..................................... 9, 15, 16, 17

*Fla. Med. Ctr., Inc. v. New York Post Co.*,
568 So. 2d 454 (Fla. 4th DCA 1990) ........................................6, 8, 10

*Geller v. Von Hagens*,
2010 WL 4867540 (M.D. Fla. Nov. 23, 2010) .................................... 7

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ............................................................ 13, 14

*Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*,
2023 WL 2610156 (M.D. Fla. Mar. 23, 2023) ................................. 20

*Grayson v. No Labels, Inc.*,
599 F. Supp. 3d 1184 (M.D. Fla. 2022) ............................................ 15

*Great Am. Indem. Co. v. Brown*,
307 F.2d 306 (5th Cir. 1962) ............................................................ 20

*Gubarev v. BuzzFeed, Inc.*,
354 F. Supp. 3d 1317 (S.D. Fla. 2018) .................................... 13

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989) ................................................................ 15, 16

*Hunt v. Liberty Lobby*,
720 F.2d 631 (11th Cir. 1983) ...................................................... 12

*Hutchinson v. Proxmire*,
443 U.S. 111 (1979) ................................................................ 13

*King v. S. Poverty L. Ctr., Inc.*,
2023 WL 3061825 (M.D. Ala. Apr. 24, 2023) ................................. 15

*Klayman v. Jud. Watch, Inc.*,
22 F. Supp. 3d 1240 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015)............... 19

*La Marca v. Capella University*,
2009 WL 10698387 (C.D. Cal. Jan. 6, 2009) .................................... 14

*LifeMD, Inc. v. Lamarco*,
607 F. Supp. 3d 576 (W.D. Pa. 2022) .......................................... 9, 13

*Linder v. Portocarrero,*
    963 F.2d 332 (11th Cir. 1992) ........................................................................... 5

*Little v. Breland,*
    93 F.3d 755 (11th Cir. 1996) .............................................................................. 15

*Illinois ex rel. Madigan v. Telemarketing Associates, Inc.,*
    538 U.S. 600 (2003) ........................................................................................... 8

*Miami Herald Pub. Co. v. Ane,*
    423 So. 2d 376 (Fla. 3d DCA 1982),
    *approved,* 458 So. 2d 239 (Fla. 1984) ............................................................... 19

*Michel v. NYP Holdings, Inc.,*
    816 F.3d 686 (11th Cir. 2016) ................................................................ 16, 17, 18

*Mid-Fla. Television Corp. v. Boyles,*
    467 So. 2d 282 (Fla. 1985) ............................................................................... 20

*Milkovich v. Lorain J. Co.,*
    497 U.S. 1 (1990) ................................................................................. 5, 7, 9, 12

*MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP,*
    2018 WL 847014 (S.D.N.Y. Jan. 12, 2018),
    *report and recommendation adopted,*
    2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) .............................................. 14, 17

*NOVAGOLD Res., Inc. v. J. Cap. Rsch. USA LLC,*
    2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) ..................................................... 15

*Reliance Insurance Co. v. Barron's,*
    442 F. Supp. 1341 (S.D.N.Y. 1977) .................................................................. 14

*Richard v. Gray,*
    62 So. 2d 597 (Fla. 1953) ............................................................................. 19-20

*Shaw v. R.J. Reynolds Tobacco Co.,*
    818 F. Supp. 1539 (M.D. Fla. 1993) ................................................................. 19

*Silvester v. Am. Broad. Cos., Inc.,*
    839 F.2d 1491 (11th Cir. 1988) ........................................................................ 18

*Stern v. O'Quinn,*
    2008 WL 11401794 (S.D. Fla. Aug. 8, 2008) .................................................... 11

*Zimmerman v. Buttigieg*,
    521 F. Supp. 3d 1197 (M.D. Fla. 2021) ..............................................................10

## **Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 8(a).........................................................................5

Federal Rule of Civil Procedure 9(g)...................................................................... 20

## PRELIMINARY STATEMENT

This case arises from Defendant Victor Bonilla's scheme to publish false and defamatory reports about Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. (together "TTI") for profit. Bonilla, who claims to be an investigator of "financially material fraud," is in actuality an opportunistic short seller who publishes materially false and misleading "research reports" to short and distort stocks. Dkt. 1-2 at 6. These "research reports" have a singular purpose: to damage a company and its stock price so that Bonilla can make money off of his short positions. His motivation is not truth; it is profit.

Bonilla twice targeted TTI. In February and June 2023, he published "research reports" claiming that TTI engaged in "manipulative accounting" and was "systematically defrauding" Home Depot, its largest customer. Bonilla accompanied each report with a flurry of tweets falsely asserting that TTI was running a "scam," "earning hundreds of millions in profit by defrauding" Home Depot, and perpetrating a largescale fraud. The effect was as intended: each time, readers of Bonilla's reports sold their shares causing TTI's stock price to plummet, leaving Bonilla, with his admitted short position, in the money. In the wake of Bonilla's "short-and-distort" scheme, TTI has suffered reputational harm and has had to incur substantial accounting, legal, and business expenses.

TTI brought this suit to recover damages caused by Bonilla's actions and enjoin further defamatory statements. Rather than defend the veracity of his "reports," Bonilla has moved to dismiss the Complaint for failure to state a claim,

relying on First Amendment defenses and advancing factual arguments in defense of his statements. But the First Amendment does not provide refuge for a short seller publishing materially false information about a company for pecuniary gain, and the Court, on a motion to dismiss, cannot entertain Bonilla's factual disputes.

Bonilla does not dispute that he published the defamatory statements. Instead, he seeks refuge behind the protection provided to "opinion" and "hyperbole," while ignoring the fact that he published numerous false factual assertions that enjoy no such protection and eliding his entire scheme's reliance on shareholders accepting his reports as factual. He then contends that TTI is a public figure and therefore must establish "actual malice" to succeed, but supports this claim with no facts other than TTI's commercial operations, which do not transform a Hong Kong-based company into a public figure in the U.S. *See Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999) (Hewlett-Packard not a public figure). As a last resort to salvage his futile motion, Bonilla challenges TTI's damages as insufficiently specific, though the Complaint specifically alleges legal, accounting and business harm. None of Bonilla's arguments have merit, and his motion should be denied.

## FACTUAL BACKGROUND

TTI is a Hong Kong-based power tool manufacturer. Dkt. 1 ¶¶ 14–15 ("Compl."). It is publicly traded on the Hong Kong stock exchange. *Id.* ¶ 16. Bonilla is a short seller who publishes self-styled "research reports" under the pseudonym "Jehoshaphat Research." *Id.* ¶¶ 8–9, 32. Through these reports, Bonilla seeks to

decrease the share price of public companies so that he and others—including the hedge funds he manages—can profit off the harm he inflicts. *Id.* ¶¶ 35–36.

On February 22, 2023, Bonilla published a "research report" about TTI (the "First Report") that falsely asserted, among other things, that TTI (1) "overstated [its operating income] by ~40-70% by accounting games," *id.* ¶ 41; Dkt. 1-1 at 1, 17 ("Ex. 1"); (2) "deceptively managed [costs] downward," Compl. ¶ 42; Ex. 1 at 2; (3) was "defying" its accountants in reporting accounts receivable, Compl. ¶ 43; Ex. 1 at 3; and (4) is "literally struggling to pay its bills on time" and "failing to pay [its suppliers and vendors] within existing [payment] terms," Compl. ¶ 44. At the same time as the First Report, Bonilla posted multiple Tweets asserting that TTI was engaged in "massively, persistently manipulated accounting." *Id.* ¶ 61. Bonilla's statements were and remain completely and demonstrably false. *Id.* ¶¶ 46–52.

On June 5, 2023, Bonilla published another "research report" about TTI (the "Second Report"), this time falsely asserting that TTI was "systematically defrauding Home Depot" and asserting that this supposed "fraud" constituted a multi-billion dollar "scam" against TTI's largest customer. *Id.* ¶¶ 65, 74(b), 91; Dkt. 1-2 at 1, 4, 20, 25, 51, 54 ("Ex. 2"). The Second Report falsely states that TTI fraudulently labels hundreds of thousands of products as "factory blemished" to sell them directly through outlet stores rather than through Home Depot, maintains an inventory of more than $500 million of such products, sells up to $2 billion of such products each year, and earned 37% of its operating profit from such sales. Compl. ¶ 67; Ex. 2 at 1–2, 6–7, 9, 23, 29, 38, 42, 51, 54, 55. In parallel, Bonilla

3

sent Tweets—viewed by tens of thousands of people—falsely asserting that "TTI is earning hundreds of millions in profit by defrauding Home Depot." *Id.* ¶ 91. Each of these statements is categorically false. *Id.* ¶¶ 68–73.

Bonilla knew that his assertions in both Reports were false or, at the absolute least, were highly likely to be false. He deliberately misrepresented the accounting standards TTI uses to mischaracterize the supposed "manipulative accounting." *Id.* ¶ 52. He recognized that his assertions that TTI maintained $500 million in factory blemished product inventory "should not pass the smell test" and that TTI had an inventory of hundreds of thousands of such products was "absurd," but published them anyway. *Id.* ¶¶ 79, 84. Bonilla's false assertion that TTI sold $2 billion in factory blemished products disregarded information available in TTI's audited financial statements—statements cited extensively in the First Report— that rendered that assertion utterly implausible. *Id.* ¶ 81. Even though Bonilla's ***own "source"*** told Bonilla that his claim was "100%" false, Bonilla nonetheless published the false assertion. *Id.* ¶ 77. Confronted with such facially implausible and obviously false information, Bonilla made no effort to seek the truth (through, for example, his own "sources" or publicly available financial reports from TTI) and instead recklessly published his self-serving assertions. *Id.* ¶ 90.

Both Reports caused TTI's stock price to fall significantly, thereby enriching Bonilla. *Id.* ¶¶ 62, 95. Beyond reputational harm, TTI was damaged by having to incur additional accounting and legal fees to respond to the Reports and losing access to a $300 million line of credit due to the false Reports. *Id.* ¶¶ 63–64, 97.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires only that TTI's Complaint contain "a short and plain statement" of its claim and sufficient factual allegations to demonstrate that its claim to relief is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a claim for libel or libel *per se* under Florida law, a plaintiff must plausibly allege: (1) publication; (2) of a false statement of fact about the plaintiffs; (3) that is defamatory; (4) with knowledge or reckless disregard as to a public figure or negligence as to a private person; (5) resulting in damages. *Deeb v. Saati*, 778 F. App'x 683, 687 (11th Cir. 2019).[1] The Court must accept all factual allegations as true and draw all inferences in TTI's favor. *Linder v. Portocarrero*, 963 F.2d 332, 336 (11th Cir. 1992).

## ARGUMENT

### I.   THE COMPLAINT PLAUSIBLY ALLEGES THAT BONILLA MADE FALSE, ACTIONABLE STATEMENTS.

#### A.    The Complaint plausibly alleges falsity.

Despite Bonilla's arguments to the contrary, the Complaint is replete with specific allegations of false statements in the Reports and specific allegations of their falsity. First, the Complaint alleges that Bonilla made concrete statements that are "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990); *see also Deeb*, 778 F. App'x at

---

[1]  To avoid a complicated choice of law analysis at this early stage of the case and because Defendant brings his motion under Florida law, TTI responds in kind for purposes of this motion only. TTI reserves its right to address the appropriate governing law going forward.

687. For example, the Complaint alleges that Bonilla asserted, among other things, that: (1) TTI overstated its operating income, Compl. ¶ 41; (2) TTI lacks sufficient resources to pay its bills on time, *id.* ¶ 44; (3) TTI defrauded Home Depot, *id.* ¶ 65; (4) TTI fraudulently labels products as "factory blemished," *id.* ¶¶ 67, 91; and (5) TTI is running a "scam" by deceiving and defrauding Home Depot, *id.* ¶ 91.

Next, the Complaint sets forth the falsity of each assertion: (1) TTI's financial reports accurately reflect the company's finances, in accordance with accepted accounting practices, *id.* ¶¶ 46, 49, 52; (2) TTI has more than sufficient resources to timely pay its creditors, *id.* ¶ 50; (3) TTI is not defrauding and has never defrauded Home Depot, *id.* ¶¶ 23–31, 69–87; (4) TTI does not fraudulently label products, *id.* ¶¶ 70–87; and (5) TTI is not running a "scam" by deceiving and defrauding Home Depot, *id.* ¶¶ 23–31, 69–87. This Court need not evaluate the truth of these allegations; the only question now presented is whether the Complaint sufficiently alleges facts demonstrating that Bonilla's statements are false, which it plainly does. *See Fla. Med. Ctr., Inc. v. New York Post Co.*, 568 So. 2d 454, 459 (Fla. 4th DCA 1990) (the court "must proceed on the premise that any statements which [it] find[s] have factual connotations are false").

Bonilla argues that the Court should not view these denials in the light most favorable to TTI, but instead engage in fact-finding by affirmatively assessing the strength of the denials and rejecting them as "empty corporate speak." But motions to dismiss do not work this way. TTI has specifically refuted and pleaded the falsity of numerous statements in the Reports—this is all that is required to state claims

for relief. Bonilla's arguments fail even basic scrutiny: For example, he argues that one paragraph of the Complaint "says nothing about whether [TTI] is selling unblemished goods in violation of its Home Depot contract" while ignoring that the very next paragraph explicitly states that "TTI does not fraudulently label products as 'factory blemished.'" *Compare* Compl. ¶ 69, *with id.* ¶ 70.

Notably, Bonilla also cites no case law that supports his argument. Rather, in the only cited case, *Geller v. Von Hagens*, 2010 WL 4867540 (M.D. Fla. Nov. 23, 2010), the plaintiff's own supporting exhibits contradicted its claims of falsity. The lack of case law is unsurprising: the Complaint pleads Bonilla's specific statements and pleads that they were false, a paradigmatic "short and plain statement" of a defamation complaint. *See Twombly*, 550 U.S. at 570.

**B.      Bonilla cannot hide behind the "opinion" label.**

Bonilla's argument that he cannot be held liable for his demonstrably false and defamatory statements because they were "opinions" fails for several reasons.

Bonilla cannot shield himself from liability by prefacing a factual assertion with "in my opinion" or "we believe." *Milkovich*, 497 U.S. at 18–20. Where, as here, a statement presents a false assertion of fact, "couching such statements in terms of opinion does not dispel" the factual implication. *Id.* at 19. "If a statement can reasonably be interpreted as stating or implying actual facts about the plaintiff, however, the statement may be actionable even if it is phrased as an opinion." *Deeb*, 778 F. App'x at 687. The Court must evaluate whether the statement "could reasonably be interpreted" as factual. *Id.* at 688. The determination is a "context-

7

driven inquiry," requiring the Court to examine all circumstances surrounding the statement. *Bennett v. Hendrix*, 325 F. App'x 727, 742 (11th Cir. 2009).

When considered in the context of the "research" Reports and Tweets, complete with graphs, charts, and photographs, a reasonable person would construe Bonilla's statements to assert that TTI has, in fact, engaged in accounting deception and defrauded Home Depot. The statements are provably true or false: TTI does or does not pay its bills on time; TTI has or has not defrauded Home Depot; TTI does or does not mislabel its products." These statements are not subjective evaluations, they are concrete assertions of fact. *See Fla. Med. Ctr., Inc.*, 568 So. 2d at 459 (statements about a hospital's profits, patient care, cleanliness, and amenities were actionable because they were "provable as being true or false" and "are false according to [the] complaint"). The proof is in the pudding: Bonilla's statements ***were*** in fact interpreted as factual assertions that TTI actually engaged in deception and fraud, as demonstrated by the immediate and drastic decline in TTI's stock price after the release of each report.[2] Compl. ¶¶ 62, 64, 95.

Nor do Bonilla's boilerplate "disclaimers" shield him from liability. *Deligdish v. Bender*, 2023 WL 5016547, at *7 (M.D. Fla. Aug. 7, 2023) (disclaimer did not establish, as a matter of law, that the statements were protected opinion). Courts routinely reject similar efforts to hide behind blanket disclaimers and generic opinion qualifiers in cases involving "short-and-distort" schemes. For

---

[2]   Far from being protected speech, Bonilla's use of false statements about TTI for his own financial benefit satisfies the elements of fraud, which enjoys no First Amendment protection. *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 612 (2003).

example, in *Amira Nature Foods, Ltd. v. Prescience Point, LLC*, the court rejected a short seller's attempt to "avoid liability simply by including a legal disclaimer or sprinkling their reports with words that they believe connote opinion." No. 15-cv-9655 (VEC), ECF No. 66 at 7, 59 (S.D.N.Y. Oct. 17, 2016). Similarly, in *Farmland Partners v. Rota Fortunae*, the court rejected a short seller's efforts to hide behind "express disclaimers that [its] [a]rticle represents opinions" and the article's "conditional phrasing and speculative language." 2020 WL 12574993, at *12–13 (D. Colo. May 15, 2023). As the court in yet another short-and-distort case recently observed, "courts have consistently held that prefatory disclaimers and exculpatory words cannot save" otherwise actionable defamatory statements. *LifeMD, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 593–94 (W.D. Pa. 2022). Bonilla simply ignores these authorities.

Here, Bonilla cannot escape liability for his defamatory scheme through the calculated use of qualifying phrases and legalese. Bonilla strategically sprinkled the "research" Reports with phrases like "we believe," added a short sentence in tiny font on the first page, and included a page of legalese buried at the back of the lengthy reports in conspicuously smaller font than the rest of the report. Ex. 1 at 1, 52; Ex. 2 at 1, 67. These "disclaimers" do not change the factual import of Bonilla's statements: "We believe TTI is defrauding Home Depot" is equally as damaging as "TTI is defrauding Home Depot." *Milkovich*, 497 U.S. at 19 ("I think" or "in my opinion" does not negate the factual nature of a statement).

9

In any event, the "research" Reports contain countless statements without any qualifying clauses. Bonilla unequivocally states, for example, that TTI is "behind on its payments," TTI is "literally struggling to pay its bills," "TTI's past earnings have been, again, inflated," Bonilla's investigation led him "to discover this widespread fraud," "TTI is applying the 'Factory Blemished' label to virtually <u>all</u> of these 'exclusive products,'" "TTI has successfully deceived Home Depot," and "TTI has used the 'Factory Blemished' nomenclature specifically to deceive Home Depot." Ex. 1 at 1, 4, 17, 40; Ex. 2 at 1, 20, 25, 38, 42; *see Fla. Med. Ctr., Inc.*, 568 So. 2d at 459 ("cautionary terms" at the beginning of a publication do not cloak all statements therein with First Amendment protection). Further, Bonilla's Tweets did not include any disclaimers or qualifying clauses before baldly asserting that TTI engaged in deception and fraud. Compl. ¶¶ 61, 91.

Finally, the inclusion of charts and analysis in the "research" Reports does not protect Bonilla's defamatory statements from liability. "A speaker cannot invoke a 'pure opinion' defense if the facts underlying the opinion are false or inaccurately presented." *Deligdish*, 2023 WL 5016547, at *6 (cleaned up) (quoting *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1213 (M.D. Fla. 2021)).

Bonilla's "research" Reports and Tweets falsely presented TTI's financials and contractual relationship with Home Depot. He readily admits that he has "not had access to the actual contract(s) governing the Home Depot-TTI exclusivity arrangements." Ex. 2 at 6. Notwithstanding this glaring omission of necessary factual context, Bonilla repeatedly and emphatically states that TTI fraudulently

mislabels product as "Factory Blemished." Ex. 2 at 1. The "research" Reports similarly ignored and omitted facts inconvenient to Bonilla's profit motive, such as TTI's adherence to Hong Kong Financial Reporting Standards, TTI's payment term and history with its customers, and TTI's publicly reported sales of power tools globally, among others. Compl. ¶¶ 46–52, 73, 81–88.[3] Because Bonilla relied on undisclosed facts, half-truths, and outright falsehoods, his statements are "at least mixed expressions of opinion, if not pure facts" and are not protected opinion. *Stern v. O'Quinn*, 2008 WL 11401794, at *7 (S.D. Fla. Aug. 8, 2008); *see Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1367 (S.D. Fla. 2021) ("A mixed expression of opinion is not constitutionally protected.").

### C.   Bonilla's statements are not rhetorical hyperbole.

Nor can Bonilla's statements be reasonably construed as "rhetorical hyperbole." Mot. at 18–19. Although the First Amendment protects "non-literal assertions of fact" that no reasonable person could interpret as fact, *Bennett*, 325 F. App'x at 738–39, Bonilla's statements here do not "negate[] the impression that [he] seriously maintained [his] words as statements of fact." *Dibble v. Avrich*, 2014 WL 5305468, at *3 (S.D. Fla. Oct. 15, 2014) (statements about the plaintiff's class, intelligence, class, ancestry, and business were actionable and not "name-calling" hyperbole). Quite the contrary, Bonilla adorned his false and defamatory statements with charts, graphs, photographs, sources, and endnotes—all of which

---

[3]  Numerous of Defendant's charts are themselves his own false assertions, as they vaguely reference "Jehoshaphat Research analysis" as a source. *See, e.g.*, Ex. 2 at 32, 46, 54.

are plainly designed to convey the factual nature of the Reports' assertions, namely TTI's supposed fraud. Bonilla himself admits that "the reports accused [TTI] of serious misconduct." Mot. at 23. Indeed, Bonilla's purpose in publishing belies his claim of hyperbole: He needed reasonable people to believe his falsities and trade TTI stock. Only then would Bonilla's short-and-distort scheme be a success. The use of colorful language does not give a wrongdoer license to defame: A reasonable person could conclude, and many did conclude when they sold their TTI stock, "that the challenged statements imply an assertion that 'is sufficiently factual to be susceptible to being proved true or false.'" *Bennett*, 325 F. App'x at 739 (quoting *Milkovich*, 497 U.S. at 21). Bonilla's cherry-picked selection of phrases such as "vast, toxic graveyard" does not alter this analysis. Although these particular phrases may not be actionable, they contribute to the context of the publications and only underscore the defamatory nature of the actionable statements.

## II.   BONILLA'S CLAIM OF PLEADING DEFICIENCY CONCERNING ACTUAL MALICE FAILS

The Court should reject Bonilla's contention that the Complaint fails to adequately allege actual malice for two independent reasons: (1) actual malice is not required, and (2) it is in any event amply alleged here.

### A.   Because TTI is not a public figure, actual malice is not an element.

First, TTI need not allege or prove actual malice to support its defamation claims. Only "public officials" and "public figures" are required to establish actual malice. *See Hunt v. Liberty Lobby*, 720 F.2d 631, 642 (11th Cir. 1983). TTI, though

a large publicly traded company, is not a "public figure." No facts in the Complaint show that TTI has "assumed [a] role[] of especial prominence in the affairs of society" and does not occupy a "position[] of such persuasive power and influence." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).

Bonilla superficially argues that TTI is "obviously a public figure" because of its market capitalization and revenue and because it allegedly "has a sophisticated press operation" (which is a disputed and unsupported factual allegation).[4] Mot. at 13–14. Bonilla essentially argues for a categorical rule that public companies are necessarily public figures, but no court has ever endorsed such a rule, and "the mere fact that a business enterprise is successful is an insufficient reason to deem it a public figure." *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 289 (S.D.N.Y. 2016). Hewlett-Packard, "one of the largest and most influential corporations in the world with one of the most actively traded stocks on the New York Stock Exchange," was not a general purpose public figure as it lacked the requisite "pervasive fame or notoriety." *Computer Aid, Inc.*, 56 F. Supp. 2d at 535. If Hewlett-Packard, which is both substantially larger and more well-known than TTI, is not a general purpose public figure, TTI is not one either.[5]

---

[4] Even Bonilla's improper facts from outside the Complaint show that TTI issued a ***total*** of 39 press releases in ***20 years***. Mot. at 5. This is hardly the "regular and continuing access to the media" that is "one of the trappings of a public figure." *Gubarev v. BuzzFeed, Inc.*, 354 F. Supp. 3d 1317, 1326 (S.D. Fla. 2018) (quoting *Hutchinson v. Proxmire*, 443 U.S. 111, 136 (1979)).

[5] At a minimum, the fact-laden questions of whether TTI is a public figure and the accompanying question of actual malice are not susceptible to resolution on the pleadings. *See LifeMD, Inc.*, 607 F. Supp. 3d at 591 (public figure question was "difficult and fact-specific"; actual malice issue deferred for "later stage of the litigation") (cleaned up).

Nor do Bonilla's cited cases support his argument. In *La Marca v. Capella University*, the court relied on the plaintiff's "numerous press releases ... publicly advancing its business and educational agendas" while specifically noting "that a corporation may not necessarily be considered an all-purpose public figure solely because it is publicly traded" and "that the mere fact of doing business with the public does not render a company a public figure for all purposes." 2009 WL 10698387, at *7 (C.D. Cal. Jan. 6, 2009). Similarly, in *Reliance Insurance Co. v. Barron's*, the court ruled that the plaintiff was a public figure because its business was "subject to close state regulation" and it filed repeated reports with multiple regulators. 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977). Bonilla's other cases are even farther afield. *See Borislow v. Canaccord Genuity Group*, 2014 WL 12580259, at *2 (S.D. Fla. Jun. 27, 2014) (individual with "prominent role in business community" who was subject of "extensive media coverage" was public figure); *MiMedx Grp., Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 847014, at *6 (S.D.N.Y. Jan. 12, 2018), *report and recommendation adopted*, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) ("Actual malice is the standard because MiMedx is a public company ***and the subject matter of the discussion was a matter of public interest.***") (emphasis added).

Nor is TTI a limited purpose public figure that has "thrust [itself] to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345. Bonilla's summary advance of this argument in a footnote identifies no controversy or specific acts TTI took to thrust

itself into that controversy, thus failing to even argue any of the prerequisites for showing that TTI meets this standard. Mot. at 15 n.10; *see Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996) (limited purpose public figure analysis requires court to "(1) isolate the public controversy, (2) examine the plaintiff's involvement in the controversy, and (3) determine whether the alleged defamation [was] germane to the plaintiff's participation in the controversy."). Indeed, Bonilla cannot meet any of these prerequisites because there was no public controversy except the one Bonilla manufactured through his defamatory statements.[6]

### B. The Complaint plausibly alleges actual malice.

Even were actual malice required, the Complaint plausibly pleads it. To allege actual malice, the Complaint must state facts that Bonilla "either knew the alleged defamatory statements were false or published them with reckless disregard despite awareness of their probable falsity." *Grayson v. No Labels, Inc.*, 599 F. Supp. 3d 1184, 1188 (M.D. Fla. 2022). Facts that courts have found plausibly allege actual malice include: (1) turning a blind eye to facts that could have been discovered, *see King v. S. Poverty L. Ctr., Inc.*, 2023 WL 3061825, at *18 (M.D. Ala. Apr. 24, 2023); (2) "evidence concerning motive," including profit, *see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Farmland*

---

[6] Bonilla's argument that TTI was a limited purpose public figure with respect to its "public actions as a publicly traded company" is circular and would render any company a public figure with respect to everything it does, destroying the entire purpose of the analysis. *Cf. NOVAGOLD Res., Inc. v. J. Cap. Rsch. USA LLC*, 2022 WL 900604, at *7–8 (E.D.N.Y. Mar. 28, 2022) (absent allegations that it "thrust itself into public controversy," public company was not a public figure).

*Partners*, 2020 WL 12574993, at *22; and (3) "extreme statements" indicative of bad faith, *see Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).

First, contrary to Bonilla's use of cherry-picked excerpts from the Complaint to argue that it includes only "conclusory allegations" and relies only on a failure by Bonilla to "correctly analyze the information in [TTI's] public reports," Mot. at 16, and unlike the pleadings in Bonilla's cited cases, *see, e.g.*, *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252–53 (11th Cir. 2021) (plaintiff pled "no facts" supporting actual malice), the Complaint includes numerous specific, concrete allegations establishing that Bonilla had reason to know that his assertions were false but turned a blind eye to those reasons. He willfully ignored contradictory information from his source documents about TTI's accounting standards and total revenue. Compl. ¶¶ 52, 81. He wrote that his claims "should not pass the smell test" and were "absurd," but published them anyway. *Id.* ¶¶ 79, 84. He disregarded his own "source's" (purportedly a former TTI executive) statement rejecting his central assertions. *Id.* ¶ 77. Despite these numerous reasons to doubt the veracity of his statements, Bonilla turned an intentional blind eye and sought no additional sources of information. *See Harte-Hanks*, 491 U.S. at 692–93 (where defendant had reason to question veracity, failure to seek additional sources was evidence of an intent to avoid the truth). These detailed allegations of deliberate indifference to truth support a strong inference of actual malice. *See Farmland Partners,* 2020 WL 12574993, at *22 (deliberate indifference to potential truthful facts, as demonstrated by failure to

give company time to respond, was evidence of actual malice); *cf. MiMedx,* 2018 WL 847014, at *8 ("[T]hat [the short seller] talked to MiMedx management before making his comments shows precisely the opposite of malice—that he considered its position before stating his views . . . .").

Second, Bonilla's profit motive—which is served not by truthful reporting about TTI but by harmful false assertions that drive down its stock price— "provide[s] some support for a finding that he may not have acted in good faith and acted in reckless disregard for the truth or falsity of the statements." *Farmland Partners*, 2020 WL 12574993, at *22.

Third, Bonilla's assertions are severe: he charges that TTI has engaged in pervasive accounting fraud and has defrauded Home Depot out of billions of dollars. Given TTI's annual independent financial audits, the scrutiny it undergoes as a publicly traded company, and the sophistication of Home Depot, such accusations "are so inherently improbable that only a reckless man would have put them in circulation." *Michel*, 816 F.3d at 703; *Bass v. United Dev. Funding, L.P.*, 2019 WL 3940976, at *23 (Tex. App. Aug. 21, 2019) (actual malice sufficiently alleged where defendant "employed sensationalized, attention-grabbing headlines raising the specter of a billion dollar Ponzi scheme that was about to implode").

Bonilla's protestation that he "shows his work, so the actual malice requirement cannot be met" fails. Mot. at 17. Simply including detail alongside the defamatory statement cannot avoid actual malice. Instead, a defendant must provide sufficient information to weigh the statement's veracity, which Bonilla

does not. *Michel*, 816 F.3d at 703; *see also Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491, 1498 (11th Cir. 1988) (no actual malice where a news organization included footage in broadcast presenting source as "a man with an axe to grind"). The mere inclusion of contradictory information is not enough: the publisher must make it clear to the reader that the contradictory information undermines the statement. *Berisha v. Lawson*, 973 F.3d 1304, 1313 (11th Cir. 2020). The effect on the reader, not the claimed detail of the information, is the lynchpin. *Id.*

Here, Bonilla did nothing to create any doubt in the reader's mind. Even where Bonilla included contradictory information, he did so selectively, creating the false impression that he was disclosing all contradictory information. He also immediately and dismissively discredited it: "[w]e aren't so sure about that last sentence." Compl. ¶ 77. Such comments immediately negate the effect of the statement's inclusion, especially where Bonilla holds himself out as a quasi-expert.

Bonilla's language, actions, and motive all compel the conclusion of a reckless disregard of the truth, so the Complaint plausibly pleads actual malice.

## III.   THE FAIR COMMENT RULE DOES NOT BAR TTI'S CLAIMS.

The fair comment doctrine requires a showing of common law malice to succeed on a defamation claim when a defendant made a "'fair comment' on a public matter relating to an individual who has voluntarily made himself newsworthy." *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 927 (M.D. Fla. 1996). A fair comment mirrors a pure opinion and is a "broad, unfocused, wholly subjective comment' that [does] not suggest that the plaintiff

18

committed a crime." *Id.* at 925. Comments based on misstatements of facts, **cannot** be fair. *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 385 (Fla. 3d DCA 1982), *approved*, 458 So. 2d 239 (Fla. 1984). As described in sections I and II.A above, Bonilla's fair comment argument fails at each step: Bonilla made false factual assertions—not comments or opinions—including that TTI committed widespread fraud and TTI has not voluntarily made itself newsworthy.

Even assuming that Bonilla had made fair comments, which he has not, TTI has alleged facts sufficient to show common law malice, which exists where "the speaker is motivated more by a desire to harm the [Plaintiff] than by a purpose to protect the person or social interest giving rise to [qualified] privilege." *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1542 (M.D. Fla. 1993) (false statements alleging plaintiff committed a dishonest act are presumed malicious). Here, Bonilla's assertions were motivated not by a desire to speak the truth but by a desire to make money by harming TTI by driving down its stock price. Compl. ¶¶ 1–3, 32, 57, 96. This intent to injure is quintessential common law malice.

## IV.   THE COMPLAINT SUFFICIENTLY ALLEGES DAMAGES

Under Florida law, "[a] published statement is libelous *per se* if: '(1) it charges that a person has committed an infamous crime; … or (4) it tends to injure one in his trade or profession.'"[7] *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015) (quoting *Richard v. Gray*, 62 So. 2d 597,

---

[7] The "incompatible with one's profession" standard that Bonilla cites in his motion, Mot. at 23, applies only to slander *per se* and is inapplicable here. *See Klayman*, 22 F. Supp. 3d at 1247 n.2.

598 (Fla. 1953) (en banc)). Bonilla's false assertions fall squarely in these categories. As just two non-exhaustive examples, the false assertion that TTI is "literally struggling to pay its bills" "tends to injure [TTI] in [its] trade or profession" and the false statement that TTI "has been defrauding Home Depot on a massive scale for at least four years" "charges that [TTI] has committed an infamous crime." Because Bonilla's statements constitute libel *per se*, damages "need not be pleaded or proved, as they are conclusively presumed as a matter of law." *Mid-Fla. Television Corp. v. Boyles*, 467 So. 2d 282, 283 (Fla. 1985).

Lastly, even if special damages are required, the Complaint sufficiently alleges them. As this Court recently ruled, Rule 9(g) is designed "to ensure that a defendant is not unfairly surprised by claims for certain types of damages not explicitly pled." *Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 2023 WL 2610156, at *9 (M.D. Fla. Mar. 23, 2023) (quoting *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962)). The Complaint easily clears this threshold by alleging at least four specific categories of damages: decreased stock price, legal fees, accounting fees, and the loss of a $300 million line of credit. Compl. ¶¶ 62–64, 95, 97. Bonilla's unsupported argument that TTI was required to plead specific damages amounts runs counter to decades of practice and precedent and should be rejected. *See Great Am. Indem. Co.*, 307 F.2d at 308.

## CONCLUSION

For the foregoing reasons, the Court should deny Bonilla's Motion.[8]

---

[8]   If the Court grants the Motion, Plaintiffs respectfully request leave to amend the Complaint.

Dated: September 19, 2023

By: /s/ *Jason D. Sternberg*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
2601 South Bayshore Drive, 15 Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com

Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*