UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED and
TECHTRONIC INDUSTRIES
FACTORY OUTLETS, INC.,

    Plaintiffs,

v.                                          Case No: 8:23-cv-1734-CEH-AEP

VICTOR BONILLA,

    Defendant.
_____/

## ORDER

In this defamation action, Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. (collectively "TTI" or "Plaintiffs"), sue Defendant Victor Bonilla ("Bonilla" or "Defendant)" for state law claims of libel and libel *per se* arising out of Bonilla's publication of false reports asserting TTI's corporate malfeasance. This matter is before the Court on Bonilla's Motion to Dismiss Complaint (Doc. 19). Bonilla moves under Fed. R. Civ. P. 12(b)(6) for dismissal of TTI's Complaint with prejudice because it fails to state a cause of action and is a threat to Defendant's First Amendment rights. The Court, having considered the motion and being fully advised in the premises, will deny Defendant Victor Bonilla's Motion to Dismiss Complaint.

I.  BACKGROUND[1]

Plaintiff Techtronic Industries Company Limited is a Hong Kong company whose stock is publicly traded on the Hong Kong stock exchange. Doc. 1 ¶ 5. Plaintiff Techtronic Industries Factory Outlets is a Delaware corporation with its principal place of business in Anderson, South Carolina. *Id.* ¶ 6. It is a wholly owned subsidiary of Techtronic Industries Company Limited. *Id.* Plaintiffs are collectively referred to in the Complaint as "TTI." *Id.* at 1.

Founded in 1985 in Hong Kong, TTI is a manufacturer of power tools, outdoor power equipment, hand tools, and vacuum cleaners and was the original equipment manufacturer for globally recognized brands including Craftsman. *Id.* ¶¶ 14, 15. TTI made an initial public offering in 1990 and grew from $63.1 million to more than $13 billion since its IPO. *Id.* ¶ 16. TTI acquired Milwaukee Power Tools in 2005 and began investing heavily in lithium-ion battery technology. *Id.* ¶ 17. Since then, TTI has become a global leader in battery research and development. *Id.* Today, TTI's lines of products include numerous famous and respected brands including Ryobi, Milwaukee, Hoover, Oreck, and Dirt Devil. *Id.* ¶ 19.

As a publicly traded company, TTI publishes its financial results twice per year. *Id.* ¶ 22. In 2021, TTI reported earning $13.2 billion in revenue and $1.9 billion in gross profit. *Id.* ¶ 20. In 2022, TTI earned $13.3 billion in revenue and $1.2 billion in

---

[1] The following statement of facts is derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

operating profit. *Id.* ¶ 21. Of its revenue, TTI earned $12.3 billion in sales of power tools and $925 million in sales of vacuum cleaners. *Id.* Of the $12.3 billion in power tools, $8.1 billion was derived from sales of the Milwaukee line of power tools. *Id.* The remaining $5.1 billion in sales included all of TTI's other power tool product lines globally, including Ryobi. *Id.*

In the United States, TTI sells Ryobi products through a contract with Home Depot, in which Home Depot has exclusive rights. *Id.* ¶ 23. Under the contract, TTI retains the right to sell certain limited categories of Ryobi products, including factory reconditioned products that TTI refurbishes after consumers return them due to a defect, factory blemished products that TTI cannot deliver to Home Depot due to imperfections in or damage to the packaging of the products, and excess and obsolete products that Home Depot forecasted it would require but did not, in fact, need. *Id.* ¶ 26. TTI sells these products through a system of Direct Tool Factory Outlet ("DTFO") stores. *Id.* ¶ 27. DTFO operates more than three dozen physical stores, an e-commerce website, and occasional pop-up stores. *Id.* ¶ 28. After the cost of the products sold through DTFO and operating expenses, TTI incurred an operating loss of $9.3 million from its DTFO program in 2022. *Id.* ¶ 31.

Defendant Victor Bonilla is a Tampa, Florida resident who, along with others, publish reports about publicly traded companies under the name Jehoshaphat Research on an internet website and on the social media platform Twitter. *Id.* ¶ 9. According to Plaintiffs, these reports are intended to lower the stock prices of those companies so that Bonilla, Jehoshaphat Research, and others can profit from short-

3

selling those companies' stocks. *Id.* ¶¶ 9, 32. The research reports published by Jehoshaphat research on the website www.jehoshaphatresearch.com, and on Twitter, using the handle @JehoshaphatRsch purport to expose fraud by the target companies. *Id.* ¶ 33. Although Jehoshaphat Research operates anonymously, TTI has discovered that Bonilla and Justin Roberts are two of the principles. *Id.* ¶ 34.

Bonilla is an investment analyst and manager. *Id.* ¶ 35. In addition to operating Jehoshaphat Research, he is the principal of Carrollwood Capital Management, L.P., an investment advisory firm that manages at least five hedge funds. *Id.* ¶ 35. It is believed that Bonilla uses these funds to make stock trades to profit from Jehoshaphat Research publications. *Id.* ¶ 36.

Bonilla, through Jehoshaphat Research, published two reports about TTI. *Id.* ¶ 38. The First Report, published February 22, 2023, falsely asserted that TTI had "been inflating its profits dramatically for over a decade with manipulative accounting." *Id.* ¶ 39. TTI alleges that the First Report contains false assertions of fact that are detrimental and defamatory to TTI. *Id.* ¶ 40. First, Bonilla claimed in the Report that TTI's financial reports were a "web of deceit" and that its operating income is overstated by 40 to 70% due to accounting trickery. *Id.* ¶ 41. Second, the First Report also falsely claimed that TTI was under depreciating capital assets and TTI is pushing costs into the future which they will eventually be forced to write off capital assets for excessive losses. *Id.* ¶ 42. Third, Bonilla claimed TTI was improperly refusing to write down certain overdue debts. *Id.* ¶ 43. Fourth, Bonilla falsely asserted that TTI is

"literally struggling to pay its bills on time" and "failing to pay [its suppliers and vendors] within existing terms." *Id.* ¶ 44. Fifth, Bonilla disparaged TTI's CEO by comparing his traits to those of "notorious fraudster CEOs." *Id.* ¶ 45. TTI alleges the statements published by Bonilla and Jehoshaphat Research are false, and Bonilla knew that they were false or acted with reckless disregard for the truth in publishing the First Report. *Id.* ¶¶ 46, 53. The First Report also repeatedly asserts that TTI's financial statements violate U.S. Generally Accepted Accounting Principles ("GAAP"), even though TTI is a Hong Kong company that uses Hong Kong Financial Reporting Standards, and not GAAP. *Id.* ¶ 52. Bonilla knew that TTI did not use GAAP but chose to make false allegations based on GAAP in order to impugn TTI. *Id.*

      Bonilla published the First Report with the intent to harm TTI and cause its stock price to drop so that Bonilla could profit from his short selling strategy. *Id.* ¶ 57. The First Report stated TTI's stock value was 70% less than its actual price on the date of the First Report. *Id.* ¶ 58. In addition to publishing the First Report on the Jehoshaphat website, Bonilla posted a series of Tweets making the same false assertions about TTI. *Id.* ¶ 61. On the day the First Report was published, TTI's stock dropped from HKD 92.50 per share to HKD 74.95 per share, which was nearly a 20% decline in stock value. *Id.* ¶ 62. The losses were so severe that the Hong Kong Stock Exchange stopped trading in TTI's stock mid-way through the trading day on February 23, 2023. *Id.* TTI lost $3.5 billion in market capitalization on that day. *Id.*

The First Report caused reputational harm to TTI among its investors, partner companies, and consumers. *Id.* ¶ 63. TTI incurred legal fees and accounting fees to refute Bonilla's assertions. *Id.* A TTI investor reduced its line of credit, causing TTI to deplete cash reserves, reduce working capital, and seek credit from sources on less favorable terms. *Id.* ¶ 64.

On June 5, 2023, Bonilla and Jehoshaphat Research published a Second Report, asserting that TTI was engaged in "manipulative accounting" and that it was "systematically defrauding Home Depot," TTI's biggest customer. *Id.* ¶ 65. The Second Report falsely stated that TTI fraudulently labels products as factory blemished so that it can resell them through its DTFO stores. *Id.* ¶ 67. Bonilla falsely reported that TTI reaped huge profits from DTFO sales, which accounted for 37% of TTI's operating profit. *Id.* The Second Report included defamatory statements, that Bonilla knew were false, purportedly made by Home Depot employees and former TTI executives regarding TTI deceiving Home Depot. *Id.* ¶¶ 74, 75. Bonilla ignored publicly available information showing the falsity of the assertions. *Id.* ¶ 81. Bonilla never sought to contact TTI regarding the defamatory information it was posting about TTI. *Id.* ¶ 90. At the same time as publishing the Second Report, Bonilla posted numerous Tweets regarding the same subject matter, including referring to TTI as running a "scam" against Home Depot. *Id.* ¶ 91. Like the statements in the Second Report, the Tweets are false. *Id.* ¶ 92.

Bonilla released the Second Report on June 6, 2023, before the opening of the Hong Kong Stock Exchange to maximize its negative effect on TTI's stock price and impact his own profits. *Id.* ¶ 94. On that day, TTI's share price decreased 4.7%, eliminating another nearly $600 million of the company's market capitalization. *Id.* ¶ 95. The trading volume of TTI's stock on June 6, 2023 was nearly three times larger than on the prior day. *Id.* The Second Report caused significant damage to TTI's reputation and stock price, causing it financial harm.

On August 3, 2023, TTI filed a two-count Complaint against Bonilla and Justin Roberts. Doc. 1. Roberts was subsequently dismissed from the case by Plaintiffs. Docs. 11, 15. On August 29, 2023, Bonilla moved, under Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint against him. Doc. 19. In his motion, Bonilla first asserts that TTI fails to state a claim because TTI is a public figure and must allege "actual malice." Second, Bonilla argues his statements were opinions and rhetorical hyperbole which is not actionable. Third, Bonilla contends that TTI fails to plead the falsity of his statements. Fourth, Bonilla submits that TTI cannot overcome the fair comment rule. As for damages, Bonilla argues that TTI fails to allege the company itself suffered specific damages, as opposed to its shareholders, and that the claims of expenditures to correct the supposed false statements are vague. Lastly, Bonilla argues that his comments are protected by the First Amendment and this lawsuit is an attack on the "colorful journalism of a small financial newsletter by a rich and famous company." Doc. 19 at 3. Bonilla urges dismissal with prejudice claiming amendment would be futile.

TTI responded in opposition (Doc. 24) arguing it is not a public figure, and therefore actual malice is not an element of its claims, but regardless, TTI submits the Complaint plausibly alleges actual malice. Next, TTI argues that the Complaint alleges the falsity of Defendant's statements, that the assertions were not merely opinion or rhetorical hyperbole, and that the fair comment rule does not bar TTI's claims. Finally, TTI submits that damages are presumed in a libel *per se* case, and in any event, TTI has alleged damages with specificity to satisfy Rule 9(g), including decreased stock price, loss of $300 million line of credit, legal fees, and accounting fees.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

## III.   DISCUSSION

The substantive law of Florida applies to Plaintiff's defamation claims. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).[2] Under Florida law, defamation is defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973) (citation omitted). Florida law separates defamation into two causes of action: libel and slander. Libel is defamation expressed in print. *Cooper v. Miami Herald Pub. Co.*, 31 So.2d 382, 384 (Fla. 1947). Slander, on the other hand, "is a spoken or oral defamation of another which is published to others and which tends to damage that person's reputation, ability to conduct that person's business or profession, and which holds that person up to disgrace and humiliation." *Scott v. Busch*, 907 So.2d 662, 666 (Fla. 5th DCA 2005).

Either form of defamation requires the same elements: (1) publication; (2) falsity; (3) that the actor acted with knowledge or reckless disregard as to the falsity of the publication on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) that the statement was defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008); *Turner*, 879 F.3d at 1262 (citations omitted). A statement is defamatory if it "tends to harm

---

[2] *Turner* outlined the proper analysis in evaluating defamation claims under Florida Law. "Where the . . . [Florida Supreme Court] . . . has not spoken . . . [the Eleventh Circuit] must predict how the highest court would decide the case." 879 F.3d 1254, 1262 (11th Cir. 2018). "Decisions of the . . . Florida District Courts of Appeal" provide guidance and generally must be followed. *Id.*

the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, [is] one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp*, 997 So. 2d at 1108–1109. True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment. *Turner*, 879 F.3d at 1262 (citing *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15, 717 (11th Cir. 1985) (applying Florida law).

"A publication is libelous *per se*, or actionable *per se*, if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (citations omitted).

### A. Public Figure

Bonilla moves to dismiss TTI's claims arguing that TTI is a public figure and that it fails to plausibly allege "actual malice." Claims for libel and libel *per se* require a plaintiff to plead and prove actual malice if the defendant is a public figure. *See Levan v. Cap. Cities/ABC, Inc.,* 190 F.3d 1230, 1239 (11th Cir. 1999) (citing *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964)). "An individual may qualify as a public figure either generally—that is one with such fame and notoriety that he will be a public figure in any case—or for only 'limited' purposes, where the individual has thrust himself into a particular public controversy and thus must prove actual malice in

regard to certain issues." *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020) (citing *Turner*, 879 F.3d at 1272). Two "fundamental" criteria help draw the line between public and private figures: (1) "public figures usually have greater access to the media which gives them a more realistic opportunity to counteract false statements than private individuals normally enjoy"; and, more importantly, (2) public figures typically "voluntarily expose themselves to increased risk of injury from defamatory falsehoods." *Berisha*, 973 F.3d at 1310 (quoting *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1494 (11th Cir. 1988) (internal quotation marks omitted)).

TTI alleges it is not a public figure (Doc. 1 ¶ 101). In support of this contention, TTI argues that it has not "assumed [a] role[] of especial prominence in the affairs of society," and does not occupy a "position[] of such persuasive power and influence." Doc. 24 at 19 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). Public figure status "is a question of law to be determined by the court." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So.2d 841, 845 (Fla. 4th DCA 2002). Although TTI alleges it is a large multi-billion-dollar company, the Court cannot say, based on the facts as alleged, that TTI occupies a position of such persuasive power, nor that it appears to have "such fame and notoriety" that it would be considered a public figure in any case. *See Berisha*, 973 F.3d at 1310. Thus, on the motion before the Court, TTI is not a general or all-purpose public figure.[3]

---

[3] The Court's finding that TTI is not a public figure is based on the record before it on the instant motion. The parties are not precluded from raising the issue again at summary judgment on a more fully developed record.

11

Consequently, the Court turns to whether TTI is a limited public figure. TTI argues it cannot be characterized as a limited public figure as it has not "thrust [itself] to the forefront of particular public controversies in order to influence the resolution of the issues involved." Doc. 24 at 19–20 (quoting *Gertz*, 418 U.S. at 345). The preliminary issue is whether a public controversy is established. "If it is evident that resolution of the controversy will affect people who do not directly participate in it, the controversy is more than merely newsworthy and is of legitimate public concern." *Silvester*, 839 F.2d at 1496 (citing *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980)). As the court stated in *Waldbaum*, "[i]f the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Id.* at 1297. Allegations of corporate malfeasance by a major corporation whose stock is publicly traded is likely a matter of public concern.

Once a public controversy is established, Florida courts apply a two-part test to determine whether someone is a limited public figure: "First, [the court] must determine whether the individual played a central role in the controversy. Second, [the court] must determine whether the alleged defamation was germane to the individual's role in the controversy." *Turner*, 879 F.3d at 1273. "In analyzing the extent of a corporate defamation claimant's participation in a public controversy relating to its products, courts should examine the nature and extent of the advertising and publicity campaigns previously undertaken by the claimant, paying particular attention to the pursuit of a marketing strategy that emphasizes the controversy." *Mile Marker,* 811 So. 2d at 846. Here, there are no allegations of an aggressive marketing strategy by TTI

related to its financials or DTFO sales. Additionally, "the level of media access enjoyed by a particular claimant should be considered as part of the public figure calculus." *Id.* (citing *Gertz*, 418 U.S. at 344). The Complaint is similarly silent as to the level of TTI's access and use of the media. On the instant motion, Plaintiffs have adequately alleged that TTI has not thrust itself to the forefront of a particular public controversy and that there was no public controversy until Bonilla created one through his statements. On the pleadings before the Court, it is not apparent that TTI is a public figure or limited public figure, and thus Plaintiffs need only allege negligence, and not actual malice, for purposes of stating a claim for libel and libel *per se*, which TTI has done and more.[4]

### B.   Statements are Factual, Not Merely Opinion or Rhetorical Hyperbole

Whether a statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court. *Keller*, 778 F.2d at 715 (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 56–57 (Fla. 1st DCA 1981)); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006). In answering these two questions, a court must construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Keller*, 778 F.2d at 717. "[A] defamatory publication must 'convey to a reasonable reader the impression that . . . [it] describe[s] actual facts about the plaintiff

---

[4] Even if it were apparent from the Complaint that TTI was a public figure, TTI has sufficiently alleged facts regarding actual malice. *See, e.g.,* Doc. 1 ¶¶ 53–55, 57, 60, 66, 75, 76, 80, 81, 89, 111, 126.

13

or activities which [plaintiff] participated in to be actionable.'" *Ford v. Rowland*, 562 So. 2d 731, 735 (Fla. 5th DCA 1990) (citation omitted). Bonilla argues that any statement alleged to be false was merely rhetorical hyperbole or opinion. The Court disagrees. While some statements, *e.g.*, "become a vast, toxic graveyard where the accounting bodies are buried," may be characterized as colorful rhetoric, TTI alleges other factual statements that convey to the reader that the Plaintiffs actually engaged in certain wrongful or fraudulent conduct. *See, e.g.,* (Doc. 1 ¶ 39) TTI has "been inflating its profits dramatically for over a decade with manipulative accounting;" (*id.* ¶ 41) TTI's operating income is "overstated by ~40– 70% by accounting games;" (*id.* ¶ 42) "costs being deceptively managed downward;" (*id.* ¶ 44) TTI is "struggling to pay its bills on time." Considering the statements in their totality, the statements are more than opinion or hyperbole.

  C. Libel

  In Count I of the Complaint (Doc. 1), TTI alleges that TTI is not a public figure (¶ 101); Bonilla is not a member of the media, nor does he publish disinterested and neutral commentary as to a matter of public concern (¶¶ 102, 103); Bonilla published malicious and defamatory statements accusing TTI of fraudulent business practices (¶ 105); Bonilla's statements were false (¶ 106); Bonilla's false statements injured TTI's reputation (¶¶ 107, 112); Bonilla knew the statements were false or acted with reckless disregard as to their truth (¶ 109); the statements were published willfully and with malice for the desire of causing injury to TTI (¶ 111); and as a result of Bonilla's actions, TTI suffered reputational injury and financial harm (¶ 113). Plaintiffs'

Complaint alleges the elements of a cause of action for libel under Florida law. *See Rapp*, 997 So. 2d 1105–06. The motion to dismiss as to Count I is due to be denied.

### D.   Libel *Per Se*

Bonilla does not specifically address the libel *per se* claim in his motion. Rather, he argues the Complaint must be dismissed in its entirety because TTI is a public figure who does not allege actual malice; Bonilla's statements are opinions and rhetorical hyperbole; TTI fails to allege the statements made are false; and TTI fails to sufficiently allege damages. TTI responds that because Bonilla's statements constitute libel per se, damages are presumed. Moreover, Plaintiff has pleaded special damages. As discussed above, the Court cannot conclude on the allegations of the Complaint that TTI is a public figure, but even if it is, TTI has sufficiently alleged malice. The statements made by Bonilla were not merely opinions or hyperbole. And Plaintiff has specifically alleged the falsity of Defendant's statements. *See, e.g.,* Doc. 1 ¶¶ 40, 46, 53, 68, 75.

Under Florida law, statements are defamatory *per se*, if "when, 'considered alone without innuendo,' they contain (i) charges that a person has committed an infamous crime, or (ii) has contracted an infectious disease, or (iii) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (iv) to injure a person in his trade or profession." *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955) (citations omitted). "[W]ritten defamation must be construed as *per se* . . . without reference to anything except the words used." *Wolfson,* 273 So. 2d at 778.

15

TTI alleges statements made by Bonilla that would fall within one or more of the above categories. For example, TTI alleges the following statements made by Bonilla are false: TTI's operating income is "overstated by 40-70% by accounting games;" TTI is "literally struggling to pay its bills on time;" TTI is "failing to pay [suppliers and vendors] within existing [payment] terms;" and TTI is engaged in "massively, persistently manipulated accounting." Doc. 1 ¶¶ 41, 44, 46. Such statements would tend to injure TTI in its trade or profession, and thus would be defamatory *per se*. The Complaint sufficiently alleges a claim for libel *per se*.

Accordingly, it is hereby

**ORDERED**:

1. Defendant Victor Bonilla's Motion to Dismiss Complaint (Doc. 19) is **DENIED**.

2. Within fourteen (14) days, Defendant Victor Bonilla shall file an Answer to Plaintiffs' Complaint.

**DONE AND ORDERED** in Tampa, Florida on December 11, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any