UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED and
TECHTRONIC INDUSTRIES
FACTORY OUTLETS, INC.,

    Plaintiffs,

v.

VICTOR BONILLA,

    Defendant.

Case No. 8:23-cv-01734-CEH-AEP

## DEFENDANT VICTOR BONILLA'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND INFORMATION

### I. INTRODUCTION

The issues in this motion have been substantially narrowed since the time Plaintiffs brought their motion. Victor Bonilla has served a privilege log on January 12, and an amended privilege log on January 16, setting forth a total of five privileged documents. Other than those five privileged documents, Mr. Bonilla has agreed to make a production of documents responsive to Plaintiffs' document demands by January 24.

1

However, with respect to those five documents, Mr. Bonilla's privilege claim is well founded.  Mr. Bonilla is an investigative journalist.  He publishes reports about publicly traded companies that allege fraud, malfeasance, and misfeasance.  Techtronic, main plaintiff in this case, was the subject of two of Mr. Bonilla's investigative reports.

There would be no doubt at all about Mr. Bonilla's status as a journalist, except for two things:  (1) he publishes his news on the Internet, rather than in a print newspaper, and (2) that rather than simply selling his journalism to the public, Mr. Bonilla funds his journalism in a non-traditional manner, by announcing that he is "shorting" the stocks of the companies he reports on, so that when the market reacts to his truthful reporting, he can make a profit.

In this era where investigative reporting has suffered the brunt of cutbacks to newspapers, television and radio news operations, and other publishers of news, the notion that a journalist is not a journalist because he does his reporting on the Internet and funds his reporting through a non-traditional manner (but where the funding is still tied to the truth and usefulness of his reporting) would be the death of the reporter's shield protection, and would leave journalists in the modern world without the protection that the Florida Legislature specifically intended to provide for them.

Plaintiffs give the game away on this point with their nasty comments about short selling. Obviously the managers of large corporations hate short sellers who truthfully report on their misdeeds, because they are often compensated with stock options and stand to lose if the general public realizes that they have been putting out false information and their company's stock is not as valuable as they have been claiming. But this Court should not insert Plaintiffs' hatred of short sellers into the journalist's shield statute, where it does not belong.

Finally, the grounds for overriding the privilege are exceedingly narrow: "(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (b) The information cannot be obtained from alternative sources; and (c) A compelling interest exists for requiring disclosure of the information." Techtronic has not identified any "unresolved issue" that the identity of a few confidential sources is relevant and material to, has not even tried to show that there are no alternative sources to get the information it seeks from, and has shown no compelling interest requiring disclosure.

The motion to compel should be denied. If the Court has any doubt about this, it should review the five documents *in camera* and make its own determination about the privilege.

## II.  STATEMENT OF FACTS

Victor Bonilla is a financial journalist.  Through his company, Jehoshaphat Research, he prepares reports on publicly traded companies that are engaged in misfeasance or malfeasance or whose financial statements are inaccurately reported.  He self-publishes these reports on his website, https://jehoshaphatresearch.com/research/ , where any member of the public can access them.  Right now, 15 reports are up on the website discussing various publicly traded companies, dating back to March 31, 2021.  *Id.*  For example, Mr. Bonilla's earliest report posted on the website, from March 2021, discusses a company called Amdocs.  Mr. Bonilla's report contains extensive information backing up what he opines to be "wildly overstated profit margins, a balance sheet that is far from the cash-rich fortress it appears to be, and a revolving door of company auditors resigning from their posts in multiple countries".  *See* https://jehoshaphatresearch.com/wp-content/uploads/2023/03/FINAL_DOX-Report-by-Jehoshaphat-Research-March-2021-1.pdf .

Each of Mr. Bonilla's reports is around 50 pages long (unless it is merely an update or follow-up report) and contains extensive original reporting, citations to publicly available documents, financial analysis, and reporting from confidential and on-the-record sources.

Mr. Bonilla's reports and extensive research are financed in an innovative fashion—he establishes a short position in the stock of the company he is reporting on, so that he stands to make a profit if the stock decreases in price. This innovative financing structure both allows Mr. Bonilla to finance his detailed reporting and creates an incentive for him to report accurately—if his reporting did not check out, the market would drive the stock price right back up, and future reports would be seen as untrustworthy.

Thus, while the financing of Mr. Bonilla's reporting is **different** than the financing of a traditional newspaper or newsmagazine (ad sales, subscriptions, and direct sales of the publication), the incentives are the same—to produce factually accurate, newsworthy material of interest to readers.

This case arises out of two reports Mr. Bonilla issued about Plaintiffs. These reports detailed extensive misfeasance and malfeasance, and when the market learned of this information through Mr. Bonilla's reporting, it caused Plaintiff Techtronic's stock to decline. Plaintiffs filed this action in response to that decline and served discovery asking for Mr. Bonilla's sources.

Mr. Bonilla objected to the discovery, and Plaintiffs filed this motion. While this motion was pending, Mr. Bonilla determined that a number of his sources were not subject to any agreement of confidentiality, so he agreed to narrow his objections and serve a privilege log. The privilege log (as amended) encompasses

just 5 documents which are communications with sources who were promised confidentiality. Mr. Bonilla has agreed to produce the remaining responsive documents by January 24, 2024.

## III. THE FIVE LOGGED DOCUMENTS ARE PROTECTED BY THE JOURNALIST'S PRIVILEGE

### A. The Documents Are Protected by the State Law Privilege

The reporter's privilege is codified in Fla. Stat. § 90.5015. It provides that a professional journalist has a qualified privilege "not to disclose the information, including the identity of any source, that the professional journalist has obtained while actively gathering news". *Id.* subsec. (2).

There is no dispute that Plaintiffs are seeking the identity of Mr. Bonilla's confidential sources and his communication with them. Plaintiffs, however, contend that he is not a journalist. Under the statute, "'Professional journalist' means a person regularly engaged in collecting, photographing, recording, writing, editing, reporting, or publishing news, for gain or livelihood, who obtained the information sought while working as a salaried employee of, or independent contractor for, a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine." *Id.* subsec (1)(b).

Mr. Bonilla clearly regularly engages in collecting, recording, writing, editing, reporting, and publishing news for gain or livelihood. He has published 15

6

detailed reports, typically 50 pages or so each, on his website, concerning newsworthy information about publicly traded companies.  Plaintiffs argue that this is not enough because they construe "regular" to mean "periodic".  However they cite no case in support of that obviously wrong interpretation—if the Legislature had meant "periodic", it would have said it.  In any event, many people who are undoubtedly "journalists" do not publish their stories on a regular schedule—indeed, investigative journalists, the type of reporters who would most be in need of a reporter's shield, are exactly the sorts of people who, even if they work at traditional news organizations, would not publish on some fixed schedule.

      Mr. Bonilla regularly publishes reports-- 15 in a period of just under three years.  The nature of his reporting is long-form investigative reporting; it would completely thwart the privilege if long-form investigative reporters who work for months on a story would be unprotected.

      Plaintiffs analogize Mr. Bonilla to the ratings agency Fitch, which was held not to be a journalist in *In re Fitch, Inc.*, 330 F.3d 104, 108–11 (2d Cir. 2003).  However, Fitch is completely different than Mr. Bonilla.  Fitch prepares ratings; Mr. Bonilla prepares detailed 50 page investigative reports.  Fitch is hired by the companies that it rates, and its ratings are prepared for the purpose of greenlighting a bond issuance.  *Id.* at 106.  Mr. Bonilla, in contrast, is not hired by the companies

he reports on, and is not preparing reports so that a company may consummate a bond sale or other financial transaction.

Mr. Bonilla is, rather, producing information for the general public. He has no more "financial interest" than any journalist has—he stands to make money if his reports convey truthful and newsworthy information useful to the public, because that is the only way his shorts will make money. Notably, another court has held *Fitch* is limited to its precise facts: a company that had extensive involvement in the transactions it was rating. *Compuware Corp. v. Moody's Investors Services, Inc.*, 324 F. Supp. 2d 860, 862 (E.D. Mich. 2004) ("The *Fitch* court found that Fitch had taken a significant role in structuring the transaction it rated, and noted that 'this is not typical of the relationship between a journalist and the activities upon which the journalist reports.'"). The *Compuware* court noted that another case had held that Standard & Poors, which reports on companies without holding a financial interest in the companies' transactions as Fitch does, **is** entitled to assert the journalist's privilege. *In re Pan Am Corp.*, 161 Bankr. 577, 581 (S.D.N.Y. 1993) ("S & P is in the profession of gathering and analyzing information about debt and communicating that information to the public through its various publications"). Thus, the *Compuware* court held that Moody's, which issued ratings just like Fitch did but did not have a role in structuring the underlying transactions that it rated, could assert the journalist's privilege under

8

the New York law that Plaintiffs concede is similar to Florida's privilege. *Id.* at 862.

Plaintiffs also cite *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020), for the proposition that short sellers "have an obvious motive to exaggerate the infirmities of the securities in which they speculate". This citation is dishonest and frankly unethical—they literally quote only half the passage. The entire passage reads "Although short sellers 'can perform a useful function by bringing information that securities are overvalued to the market[,] ... they have an obvious motive to exaggerate the infirmities of the securities in which they speculate.'" *Id.* Mr. Bonilla disagrees with the claim of a motive to exaggerate—short sellers can only move the market if their statements are trustworthy. However, the *Long Miao* court explicitly acknowledged the informational role of short sellers and called it a "useful function"; for Plaintiffs to excise this half of the quote is a serious breach of their obligations to this Court.

Plaintiffs' other argument fares no better. Plaintiffs argue that the privilege is limited to salaried employees and independent contractors of certain news organizations. However, this is a cramped reading of the statute. Mr. Bonilla publishes his own material—thus he is self-employed or contracts with himself. The notion that the Florida Legislature intended that Mr. Bonilla's reports would be privileged if he contracted with someone else to write them, but not if he writes

9

them himself, is absurd. *CBS, Inc. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001) (court should not adopt "clearly absurd" interpretation of statute).

In any event, while Florida courts have not spoken to this issue, other courts (including interpreting the New York journalist's privilege that Plaintiffs concede is similar to Florida's), have held that bloggers, websites, and the like have the same journalist shield protection as traditional journalists, because modern journalism occurs on the Internet. *Morgan Keegan & Co. v. Eavis*, 955 N.Y.S.2d 715 (N.Y. Supr. Ct. 2012) (*thestreet.com*, a financial news website, may claim journalist privilege under New York law); *In re January 11, 2013 Subpoena*, 75 A.3d 1260 (N.J. Super. Ct. 2013) (bloggers are journalists under New Jersey shield law); *Toll v. Wilson*, 453 P.3d 1215 (Nev. 2019) (holding a blog was a form of "newspaper" and protected under Nevada shield law).

Mr. Bonilla is doing journalism- investigating companies and disseminating information for the benefit of the general public, based on reporting that includes confidential sources. He is entitled to the benefit of the journalist's privilege.

### B. Mr. Bonilla Is Also Entitled To a First Amendment Privilege

"Our Circuit recognizes a qualified privilege for journalists, allowing them to resist compelled disclosure of their professional news gathering efforts." *United States v. Capers*, 708 F.3d 1286, 1303 (11th Cir. 2013). As Plaintiffs concede, the

Eleventh Circuit has not defined what a professional reporter is. As a matter of plain language, Mr. Bonilla qualifies—his profession is to report information regarding publicly traded companies, and this activity is remunerative. Moreover, the cases cited *supra*, *Eavis*, *In re January 11, 2013 Subpoena*, and *Toll*, all hold that bloggers and Internet reporters are professional reporters.

Plaintiffs' only serious argument to the contrary is that as a short seller, Mr. Bonilla cannot be a professional reporter. Notably, this adds an additional requirement to the Eleventh Circuit framework—one must, apparently, now not only be a professional reporter, but one who does not engage in short selling, because apparently selling stock short disqualifies a person from the ranks of professional journalist.

Plaintiffs cite one unpublished out-of-circuit District Court case, *Beaver County Employers Retirement Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218 (N.D. Cal. Jun. 7), in support of its argument. With respect, *Beaver County Employers Retirement Fund* is wrongly decided. The court found the dispositive fact to be that the short seller "only publishes reports about companies in which it has taken a financial position prior to publication". However, this is completely orthogonal to the purpose of the journalist's privilege and indeed would cause all sorts of mischief it were adopted as a standard.

11

**All** journalists selectively publish their reporting. Sometimes they don't publish because they don't have the story, but sometimes they don't publish for other reasons, and sometimes those reasons are less than noble. A local newspaper may not publish an investigation of wrongdoing by the car dealership that is its biggest advertiser. A cable news network may not broadcast a story that digs up dirt on a politician who it is promoting or its viewers favor. A publisher may "spike" a fully reported investigative story because of outside pressure.

None of this is pretty, and none of this is what they teach in journalism school. But all of these things happen, and nobody strips newspapers and cable news networks of the protections of the journalist's shield simply because they select stories to publish out of self interest. The issue is not whether Mr. Bonilla publishes out of self interest—as Samuel Johnson said, "no man but a blockhead wrote, except for money". *Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 584 (1994). The issue is whether he gathers facts of interest to the public and reports them—he does, and *Beaver County Employers Retirement Fund* is not persuasive.

### C. Plaintiffs Have Not Met Their Burden of Showing the Privilege Is Overcome.

Plaintiff must prove three elements to overcome the privilege. "(a) The information is relevant and material to unresolved issues that have been raised in the proceeding for which the information is sought; (b) The information cannot be

12

obtained from alternative sources; and (c) A compelling interest exists for requiring disclosure of the information." Fla. Stat. § 90.5015; *Parekh v. CBS Corp.*, 2018 WL 8347807 at *3 (M.D. Fla. Sep. 5). Plaintiffs have not met this burden.

First, Plaintiffs have not even shown any "unresolved issues". We are at the very start of discovery. No issues have yet been resolved. Nor have Plaintiffs explored other ways of obtaining the information it claims it needs, such as taking Mr. Bonilla's deposition and asking him the information he relied on in preparing the reports. Finally, Plaintiffs have not shown a compelling need for the information.

Plaintiffs respond to this by basically arguing that the privilege is always overcome in defamation litigation. However, the argument Plaintiffs make is actually inconsistent with the argument they recently successfully made before this Court. This Court, in reliance on Plaintiffs' claims, held that Plaintiffs were not public figures and do not have to prove actual malice. *Techtronic Industries v. Bonilla*, 2023 WL 8543762 at **4-5 (M.D. Fla. Dec. 11, 2023). However, now, Plaintiffs cite cases that say that defamation plaintiffs need to pierce the privilege to prove actual malice. *See Moving Papers* at 16-17 (citing *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726-27 (5th Cir. 1980) for proposition that defamation plaintiffs must pierce the privilege because they must prove actual

13

malice, i.e., that the defendant knew the statements are false or acted with reckless disregard for the truth).

Plaintiffs thus induced this Court to issue a ruling (no actual malice need be proved) and are now taking a position completely inconsistent with that position (actual malice requires they pierce the journalist's privilege). They are judicially estopped from doing this. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase". *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (judicial estoppel available when positions are completely inconsistent, party obtained relief by taking earlier position, and would derive an unfair advantage by taking opposite position).

## IV. SHOULD THE COURT HAVE ANY DOUBT ABOUT UPHOLDING THE PRIVILEGE, IT SHOULD REVIEW THE DOCUMENTS *IN CAMERA*

*In camera* inspection is available to resolve a claim of journalist's privilege. *Capers*, 708 F.3d at 1302-03. If this Court has any doubt about the issues raised herein, it should conduct such an inspection of the documents.

## V. CONCLUSION

For the foregoing reasons the motion should be denied.

Dated:  January 16, 2024	Respectfully submitted,

By: */s/ Dilan A. Esper*  
Dilan A. Esper (*pro hac vice*)  
desper@harderllp.com  
Charles J. Harder (*pro hac vice*)  
charder@harderllp.com  
Harder Stonerock LLP  
8383 Wilshire Blvd. #526  
Beverly Hills, CA 90211  
Telephone (424) 203-1600  

Dawn Siler-Nixon  
Dsiler-nixon@fordharrison.com  
Viktoryia Johnson  
vjohnson@fordharrison.com  
FordHarrison, LLP  
401 E. Jackson St., Ste. 2500  
Tampa, FL 33602-5133  
Telephone (813) 261-7800  
Facsimile: 813-261-7899  

*Attorneys for Defendant Victor Bonilla*