## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## Tampa Division

Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.,

               Plaintiffs,

    – against –

Victor Bonilla,

               Defendant.

Case No. 8:23-cv-01734-CEH-AEP

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND INFORMATION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 1

I.  Bonilla Is Not a Professional Journalist......................................................... 2

II. Bonilla Writes for Self-Interest and is Therefore Not Protected by the
First Amendment Privilege. ........................................................................... 5

III. The Qualified Privilege Is Easily Overcome. ................................................ 7

CONCLUSION .................................................................................................... 7

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Beaver County Employers Retirement Fund v. Tile Shop Holdings, Inc.*,
  2016 WL 3162218 (N.D. Cal. June 7, 2016) ....................................................... 5

*Chevron Corp. v. Berlinger*,
  629 F.3d 297 (2d Cir. 2011) ................................................................................. 6

*Compuware Corp. v. Moody's Investor Servs.*,
  324 F. Supp. 2d 860 (E.D. Mich. 2004) ............................................................. 4

*In re Fitch*,
  330 F.3d 104 (2d Cir. 2003) ................................................................................ 4

*In re January 11, 2013 Subpoena*,
  75 A.3d 1260 (N.J. Super. Ct. 2013) .................................................................. 4

*In re Pan Am Corp.*,
  161 Bankr. 577, 581 (S.D.N.Y. 1993) ................................................................. 6

*Morgan Keegan & Co., Inc. v. Eavis*,
  955 N.Y.S.2d 715 (N.Y. Supr. Ct. 2012) ............................................................ 4

*Toll v. Wilson*,
  135 Nev. 430 (Nev. 2019) ................................................................................... 4

*United States v. Vasquez-Ortiz*,
  2008 WL 11449045 (N.D. Ga. Jan. 23, 2008) .................................................... 7

*Universal City Dev. Partners. Ltd. v. Ride & Show Eng'g, Inc.*,
  230 F.R.D. 688 (M.D. Fla. 2005) ........................................................................ 3

### <u>Statutes</u>

Fla. Stat. § 90.5015 ..........................................................................................1, 2, 3

Pursuant to the Court's January 12, 2024 Order (ECF No. 46), Plaintiffs ("TTI") submit this reply in further support of their Motion to Compel the Production of Documents and Information (ECF No. 42, "Motion").[1]

## **INTRODUCTION**

Bonilla's attempt to invoke the journalist privilege fails for a threshold reason: He is not a professional journalist engaged in newsgathering. The Florida statute requires that he be a "salaried employee of, or independent contractor for, a newspaper, news journal ... or news magazine." Fla. Stat. § 90.5015(1)(b). Bonilla's opposition lacks any factual showing whatsoever that he is a salaried employee or independent contractor of any such publication. Bonilla likewise fails to satisfy the statutory requirement that he is "regularly engage[d]" in professional journalism. And Bonilla's failure of proof similarly dooms his invocation of a constitutional journalist privilege, which does not extend to those publishing solely out of financial self-interest.

Having failed to cite any case law applying a journalist privilege to a short seller, Bonilla asks the Court to make new law: that the qualified privilege applicable to journalists should be extended to short-selling hedge fund managers who issue short-and-distort reports. But Bonilla's for-profit activity does not resemble journalism. While journalists make money through advertisements and subscriptions, they do not acquire a *direct* personal financial stake in the subjects

---

[1] After TTI filed its Motion and before Bonilla filed his opposition (ECF No. 47), the parties met and conferred and narrowed the issues for the Court's resolution. However, TTI maintains its Motion to compel the production of the five withheld documents.

1

they cover; doing so would squarely contradict journalistic norms and ethics.

Recognizing how far removed his scheme is from professional journalism, Bonilla euphemistically asserts that his purported form of journalism is "innovative" and "non-traditional." This is akin to arguing that extortion and blackmail are "non-traditional" means of negotiating. Whatever else can be said of Bonilla's self-interested "research," it is not journalism. The asserted privilege therefore does not apply, and TTI's Motion should be granted.

## I.   Bonilla Is Not a Professional Journalist.

As set forth in TTI's Motion, the Florida shield statute extends the journalist privilege only to a limited and specifically-defined class of persons: professional journalists. A "professional journalist" must be "regularly engaged" in collecting, writing, or publishing news for gain or livelihood, Fla. Stat. § 90.5015(1)(b), **and** must have collected the information sought "while working as a salaried employee of, or independent contractor for" a specified type of media outlet. *Id*.[2]

**Both** parts of that statutory definition must be satisfied for the privilege to apply, but Bonilla satisfies **neither**. He makes virtually no attempt to show that he "regularly engages" in journalism. He says nothing about how many hours per week he spends writing his short seller reports, how frequently he conducts interviews or research, how he identifies his business targets, or, importantly, how he decides what to publish. Instead, Bonilla largely relies on a self-serving and

---

[2] The specified outlets are "a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine." Fla. Stat. § 90.5015(1)(b).

wholly conclusory sentence: "I am a financial journalist." ECF No. 47-1 ¶ 2. Such bald assertions are insufficient to meet the statute's carefully defined standard.

Bonilla also all but ignores the second half of the statutory definition, which applies the Florida privilege **only** to information collected "*while working as a salaried employee of, or independent contractor for*" a media outlet of the kind expressly enumerated in the statute. Fla. Stat. § 90.5015(1)(b). Bonilla doesn't even argue that he qualifies as such. He instead argues that TTI's focus on the enumerated list of media outlets produces an "absurd" and "cramped" reading of the statute. ECF No. 47 at 9–10. But TTI simply asks the Court to apply the statute that the Florida Legislature adopted. If Bonilla disagrees with the list of outlets that it covers, his complaint should be directed to the Legislature—not this Court.

For similar reasons, Bonilla's defense of the validity of internet journalism is a red herring. Neither the Florida statute nor TTI makes any distinction between print and online publications; a salaried beat reporter for an online "newspaper," for example, is covered by the statutory privilege. Fla. Stat. § 90.5015(1)(b). But the statute plainly distinguishes between a professional journalist and an individual who, like Bonilla, "is self-employed or contracts with himself." ECF 47 at 9*; see* Fla. Stat. § 90.5015(1)(b) ("Book authors and others who are not professional journalists, as defined in this paragraph, are not included in the provisions of this section.").

There is simply an absence of authority holding that a short seller qualifies for the journalist privilege, which Bonilla's opposition reveals, failing to cite any

such case law. Nor is TTI aware of any such authority. Bonilla's cited authorities relating to "modern journalism" offer nothing to advance his argument. *See Morgan Keegan & Co., Inc. v. Eavis*, 955 N.Y.S.2d 715 (N.Y. Supr. Ct. 2012) (the status of TheStreet.com as a "financial news and analysis website" was not in dispute); *In re January 11, 2013 Subpoena*, 75 A.3d 1260 (N.J. Super. Ct. 2013) (applying the New Jersey shield law to a nonprofit blog with the primary purpose of gathering news, not making a profit); *Toll v. Wilson*, 135 Nev. 430 (Nev. 2019) (expressly declining to resolve whether a blog qualified as a "newspaper" under Nevada's statute). Bonilla's attempt to distinguish the application of New York's similar shield law in *In re Fitch*, 330 F.3d 104 (2d Cir. 2003), likewise misses the mark. While Fitch and Bonilla may publish different documents, their purpose is the same: profit, which Bonilla readily concedes. ECF No. 47 at 2. Like Fitch, Bonilla's "information-disseminating activity" is based on his financial position, not "a judgment about newsworthiness." *Fitch*, 330 F.3d at 110.

Bonilla also finds no solace in *Compuware Corp. v. Moody's Investor Servs.*, 324 F. Supp. 2d 860 (E.D. Mich. 2004). Applying New York's statute, *Compuware* held that another financial ratings agency—unlike Fitch—qualified for the journalist privilege because it did not have an interest in the transactions it rated. *Id.* at 862. A comparison of these cases illustrates the critical fact Bonilla asks this Court to ignore: Bonilla is not a neutral observer, publishing information for the general public on any company deemed "newsworthy." He is a short seller with a

*direct* financial interest, publishing information specifically intended to reduce the stock price of his targets for his personal financial benefit.

## II.   Bonilla Writes for Self-Interest and is Therefore Not Protected by the First Amendment Privilege.

Bonilla fares no better under the First Amendment. As the court explained in *Beaver County Employers Retirement Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218, at *4 (N.D. Cal. June 7, 2016), the First Amendment privilege does not extend to a trader who sells stock and makes publication decisions based on his own financial interest. Bonilla makes no meaningful attempt to distinguish *Beaver County* other than to claim that the case was "wrongly decided," ECF No. 47 at 11, which is unsurprising, since the decision is fatal to his argument. Indeed, he does not deny that his financial position dictates what he publishes and when.

Instead, Bonilla expresses the cynical view that all journalism is tainted by some level of self-interest. But whatever debates might exist about how well the profession lives up to its ideals, it is not subject to dispute that journalistic norms preclude reporters from having personal stakes in the outcome of their stories; such conflicts of interest are prohibited because they undermine the independence that journalists are expected to have when serving the public interest. *See, e.g.*, New York Times, *Ethical Journalism*, https://www.nytimes.com/editorial-standards/ethical-journalism.html ("No staff member may own stock or have any other financial interest in a company, enterprise or industry that figures or is likely to figure in coverage that he or she provides, edits, packages or supervises

regularly."). Here, Bonilla's admitted financial interest in the subject of his reporting is antithetical to all recognized journalistic ethics.

The talisman of the journalist privilege is the intent to disseminate information to the public when the gathering of such information commences. *Compare Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011) (First Amendment privilege did not apply to a filmmaker hired to make and edit a film at his client's direction), *with In re Pan Am Corp.*, 161 Bankr. 577, 581 (S.D.N.Y. 1993) (First Amendment privilege did apply to S&P because it always had the intent to disseminate the information to the public). Bonilla's "research" reports lack any such intent. Those reports are intended, from inception, to create a financial windfall, not to publish purported news.[3] The Second Circuit offered an illustrative example of this principle: Two people write a book about a public figure. Person A writes a book regardless of what the research reveals. Person B is hired by the public figure to write a book casting him or her in a positive light. Person B "either possesses no privilege at all or, if she possesses the privilege, holds one that is weaker and more easily overcome." *Berlinger*, 629 F.3d at 308. Like Person B, Bonilla does not publish his "research" reports regardless of what his finds, he publishes them only when he determines that he will be able to profit from short positions. To call this "journalism" would be to stretch any reasonable

---

[3] To the extent Bonilla suggests he has any incentive to be truthful, he conveniently ignores the reality of shorting stocks. When Bonilla publishes his short-and-distort reports, stock prices fall, and Bonilla immediately makes a profit, regardless of whether market forces may eventually drive the stock price back up. Moreover, the alleged truthfulness of Bonilla's statements would be a defense to TTI's defamation claims, not a basis to assert the journalist privilege.

definition of the term past the breaking point and diminish the profession.[4]

## III.   The Qualified Privilege Is Easily Overcome.

Even if Bonilla did qualify for the statutory or constitutional journalist privilege, these privileges are qualified, and here they would be easily overcome. Bonilla does not argue that the requested information is not relevant and material to TTI's claims, and he all but concedes that he is the only source for the requested information. ECF No. 47 at 13. Implicitly acknowledging that the privilege would be overcome by those facts, Bonilla pivots to a red herring estoppel argument that misconstrues the Court's decision on his motion to dismiss, which held that the Court could not conclusively resolve the public figure issue on a motion to dismiss.[5] And regardless of whether TTI is a public figure, TTI must establish that Bonilla published the defamatory statements with a culpable state of mind, whether that is negligence or actual malice. *See* ECF No. 42 at 16–17. There is no estoppel here, and TTI's need for the limited amount of information that Bonilla continues to withhold readily overcomes any applicable privilege.

## <u>CONCLUSION</u>

For the foregoing reasons, TTI requests that the Court overrule Bonilla's objections, grant its Motion to Compel, compel Bonilla to produce the withheld documents, and grant such further relief as the Court deems just and proper.

---

[4] Even if the First Amendment privilege did apply, which it does not, the Eleventh Circuit has not extended the privilege beyond confidential sources to include related documents or other information. *United States v. Vasquez-Ortiz*, 2008 WL 11449045, at *4 (N.D. Ga. Jan. 23, 2008).

[5] In its order denying Bonilla's motion to dismiss, the Court expressly permitted the parties to raise the issue of whether TTI is a public figure and, thus, whether it must establish that Bonilla acted with actual malice, at later stages in these proceedings. ECF No. 39 at 10–13.

Dated: January 23, 2024

By: */s/ Jason D. Sternberg*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
2601 South Bayshore Drive, 15 Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com

Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*