UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED and
TECHTRONIC INDUSTRIES FACTORY
OUTLETS, INC.

        Plaintiffs,

    v.

VICTOR BONILLA,

        Defendant.

Case No. 8:23-cv-01734-CEH-AEP

**MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

## I.   <u>INTRODUCTION</u>

Defendant Victor Bonilla hereby moves for summary judgment on all claims.

This case was filed in August 2023, seeking to chill the protected expression of a commentator who published his opinions about a large multinational company.  After 13 months' time and extensive discovery, it is now clear that Plaintiffs cannot identify any actionable defamatory statement by Victor Bonilla. Summary judgment is appropriate for the following reasons:

A. Techtronic failed to comply with Florida law requiring written notice of the defamatory statements before filing.

B. The statements sued upon are matters of opinion that cannot be proven true or false.  Such statements are protected and non-defamatory.

C. There is no evidence that any statements of fact were in fact **false and defamatory**.

D. Techtronic (and its factory outlet subsidiary) is a public figure.  As a result, Plaintiffs **must show actual malice**, i.e., that Bonilla published with a high degree of awareness that his statements were probably false.

E. Plaintiffs have **not shown any evidence of actual malice**. Plaintiffs deposed several of Bonilla's sources.  **Not a single source denied the authenticity of any of Mr. Bonilla's quotes**. Bonilla's identified sources had held high positions in the relevant companies and were reliable.   Actual malice requires that Bonilla deliberately disregard evidence that his statements were false; this did not happen.

F. Even if Plaintiffs are not public figures, they fare no better under the negligence standard for private figures. Bonilla used reasonable care, relying on ostensibly reliable sources, with knowledge of relevant facts, in compiling his thesis. No reasonable jury could find Bonilla negligent.

Even if the Court finds, despite all of the defects in the proof of this suit, that there is some triable issue of material fact buried within it, the Court should grant partial summary judgment as to each of the issues raised in this motion where there are no such triable issues of fact, so as to streamline any trial.

Discovery has shown that this suit was exactly what Bonilla always said it was—a large publicly traded foreign corporation that does massive business in the United States but is unable to accept that with that privilege comes the public criticism that is protected by our First Amendment. This Court should end it.

## II.  STATEMENT OF FACTS

### A.  Techtronic

Plaintiff Techtronic Industries Co. Ltd. is a publicly traded company. Amended Complaint ¶ 14 [Dkt. 68]. It began as a manufacturer for globally recognized brands including the famous brand Craftsman. *Id.* Its stock is listed on the Hong Kong Stock Exchange. *Id.* Its revenue is more than $13 billion and its market capitalization is nearly $20 billion. *Id.*

Beginning in 2005 with its acquisition of Milwaukee Power Tools, another famous tool brand, Techtronic became a global leader in battery development and is one of the largest manufacturers of batteries in the world. *Id.* at ¶ 15. In 2019,

Techtronic's stock was selected as one of fifty companies included in the Hang Seng Index, the Hong Kong analog to the U.S. Dow Jones Industrial Average. *Id.* at ¶ 16. Today, its products include numerous famous brands including Ryobi, Milwaukee, Hoover, Oreck and Dirt Devil. *Id.* at ¶ 17.

As a publicly traded company, Techtronic publishes its financial results twice per year. *Id.* at ¶ 20. In the US, TTI sells its Ryobi products through a contract with Home Depot, one of the most famous and largest home improvement retailers in the world. *Id.* at ¶ 21. Pursuant to that contract, Home Depot has the exclusive right to purchase and resell Ryobi products in the US. *Id.*

### B.    Bonilla

Bonilla is an independent researcher and analyst who publishes reports on publicly traded companies on his website, Jehoshaphat Research. Declaration of Victor Bonilla [Dkt. 98-2] ("Bonilla Decl.") ¶ 3; Ex. 1 [First Report] at 52; Ex. 2 [Second Report] at 67. Each report contains a disclaimer stating three times that the reports contain opinions, and frequently identifies analytical estimates, opinions, etc., as such. *Id.* The reports utilize publicly traded information, as well as former insiders cultivated by Bonilla as sources, to support the opinions. Bonilla Decl. ¶¶ 4-6. Bonilla attempts to expose what he believes to be corporate wrongdoing that may be of interest to the public. *Id.* His reports are always dozens of pages long and replete with footnotes and quotations. *Id.* Bonilla discloses to his readers that he has a potential financial interest in the subject company in the form of a "short sale" (essentially, a wager that the stock price will go down).

Bonilla Decl. ¶ 7; Ex. 1 [First Report] at 1; Ex 2 [Second Report] at 1.

Bonilla's business model depends on his credibility in the market.  Bonilla Decl. ¶ 8.  If the public believes that the information he publishes is untrustworthy, the stock price will not go down when he issues a report and he will lose money on his short sales.  *Id*.  Thus, he has no incentive to distort or disseminate false information and every incentive to report accurately and provide sound opinions. *Id*.  His credibility is the lifeblood of his business.

### C.   The First Report

Bonilla published his First Report of and concerning Techtronic on February 22, 2023.  Amended Complaint ¶ 36 [Dkt. 68]; Ex. 1 [First Report].  It was an extensive examination of Techtronic's publicly available financial statements. Bonilla Decl. ¶¶ 9-10; Ex. 1 [First Report].  It contained extensive analysis from Bonilla, numerous verbatim quotations from Techtronic's own financial statements, and quotations from sources.  *Id*.  The First Report's key thesis was that in Bonilla's opinion, it was suspicious that Techtronic was reporting increases in its gross margin over 19 consecutive semiannual reports unlike any similar company, and that this anomaly was driven by aggressive accounting choices.  Ex. 1 [First Report] at 1.

Bonilla worked extensively on the reporting for the First Report.  Bonilla Decl. ¶ 10.  He obtained public financial statements of Techtronic and analyzed them, cultivated former high executives at Techtronic and its competitors who had information about what Techtronic was doing, and searched the Internet for

publicly available information. *Id.* The First Report is 60 pages long. Declaration of Dilan A. Esper [Dkt. 98-3] ("Esper Decl.") ¶ 12; Ex. 1 [First Report]. It contains verbatim quotations from Techtronic's public financial statements, as well as charts generated by Bonilla based directly on those statements. *Id.* Bonilla then analyzes those statements and charts over pages and pages of the First Report, providing extensive support for his opinions. *Id.* He also accurately quotes from his interviews with former Techtronic executives, interviews that were produced in transcript and audio form to Plaintiffs in this action. *Id.* No witness or document identified any inaccuracy in any of Bonilla's quotations. Esper Decl., ¶ 12. The First Report concludes with eight pages of endnotes providing citations to the voluminous material that Bonilla analyzes in the First Report. Ex. 1 [First Report] at 53-60.

The First Report's conclusions were all Bonilla's opinions: (1) that Techtronic was carrying dangerously excessive and excessively aged accounts payable, indicating it was having difficulty paying its bills; (2) that Techtronic's CEO, Joe Galli, was in Bonilla's opinion doing a poor job; (3) that Techtronic was "capitalizing its intangible assets" that Bonilla believed were allowed by accounting rules but in his opinion would be more accurately characterized as expenses, making their performance look better in the short term; (4) that Techtronic's Property Plant and Equipment was being, in Bonilla's opinion, improperly accounted for, requiring Techtronic to then take losses later on when they sold the items for scrap; (5) that Techtronic was, in Bonilla's opinion, not properly

accounting for its aging accounts receivable, some of which could be unlikely to be collected; and (6) that Techtronic's inventory was, in Bonilla's opinion, excessive and this would lead to financial problems in the future.  Ex. 1 [First Report] at 2-8..  Further, Bonilla commented on publicly reported trends such as layoffs at Techtronic indicating stress at the company, Techtronic's high level of debt, which in Bonilla's opinion was excessive and presented financial risk, and overly optimistic earnings forecasts by Wall Street for Techtronic, which Bonilla believed Techtronic would "miss."  *Id.*

Bonilla's basic premises turned out to be true.  Galli left the company.  Ex. 9 [Article re Galli Retirement].  ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  And Techtronic's high inventory did in fact lead to poorer financial results.  Ex. 11 [Techtronic Interim Report 2023] at 4 (discussing "inventory reduction" driving a "decline" in "overall sales").  The facts that came out in discovery proved Bonilla right.

### D.    The Second Report

Bonilla then discovered that Techtronic's factory outlets were behaving suspiciously.  Bonilla Decl. ¶ 11.  The factory outlets (called DTFO stores) sold the

same lines of tools, such as Ryobi and Ridgid, that are advertised by Home Depot as "exclusive". *Id.* In Bonilla's experience, factory outlet stores generally sold obsolete goods or goods that were different than what was being sold by mainstream retailers; however, the Ryobi and Ridgid tools sold by the factory outlets were the exact same tools that were on sale at the Home Depot stores and seemed to violate Home Depot's "exclusivity". *Id.* So, Bonilla reviewed publicly available documents, obtained photographs and tools from Home Depot and Techtronic physical and online stores, and cultivated and talked to more sources. *Id.* The result was the Second Report, published June 5, 2023. *Id.*

The Second Report, like the first, contained Bonilla's disclaimer that mentioned three times that it contained Bonilla's opinions. Ex. 2 [Second Report]. It contained photographs, verbatim quotations from publicly available documents, and verbatim quotations from sources who had worked for Techtronic and Home Depot. *Id.* Transcripts and recordings of Bonilla's communications with sources were produced in discovery, and Plaintiffs never identified any inaccurate quotations. Esper Decl. ¶ 12.

Bonilla's thesis in the Second Report was simple: that Techtronic was violating its agreements with Home Depot by selling goods that were supposedly exclusive to Home Depot, at its factory outlets at lower prices, by labeling the goods "blemished", which could just mean a hole in the packaging. Ex. 2 [Second Report]. Bonilla opined that this was a fraud. *Id.* He backed up his reporting with quotations from his sources, photographs of the identical items being sold by

Home Depot and the Techtronic factory outlets, and information from the websites. *Id.*

The Second Report was proven true in discovery. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Bonilla's reporting was completely confirmed.

Discovery disclosed only one apparent error in the Second Report. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████; Ex. 2 [Second Report] at 1.

### E.   Plaintiffs' Insufficient Demand Letter

On June 30 and July 3, 2023, Plaintiffs sent "demand" letters to Bonilla and Jehoshaphat.  Ex. 3 [Techtronic Demand Letters]; Bonilla Decl. ¶ 13.  These letters asserted that Bonilla defamed Techtronic but provided no specific identification of defamatory statements.  *Id.*  On July 10, 2023, Bonilla responded through counsel with a letter requesting specifics.  Ex. 8 [Bonilla Response Email]; Esper Decl. ¶ 7. This response was ignored and Plaintiffs filed this action.  Esper Decl. ¶ 7.

## III. THE MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED[1]

### A. Plaintiffs Failed To Comply With Fla. Stat. § 770.01

Defamation plaintiffs suing any sort of publication must, before suit, provide notice of their specific claims of defamation:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

Fla. Stat. § 770.01

This statute requires:  (1) publication or broadcast in a newspaper, periodical or other medium, (2) a claim for libel or slander, (3) giving of 5 days written notice,

---

[1] Summary judgment must be granted when there are no triable issues of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(a). Summary judgment is not disfavored. *Celotex Corp. v. Catrett*, 477 US 317, 327 (1986). Facts unnecessary to the decision at trial are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 US, 242 248 (1986). Plaintiffs are entitled to have inferences drawn in their favor, but only if they are justifiable. *Id.* at 255. If Plaintiffs fail to identify the existence of a triable issue of fact, summary judgment should be granted; Bonilla, as the Defendant, has no obligation to affirmatively negate Plaintiffs' claims. *Celotex*, 477 U.S. at 322.

and (4) specifying the specific article or broadcast **and** specific statements claimed to be defamatory.

Plaintiffs did purport to serve a pre-suit notice. However, that letter provided **no** specifics whatsoever regarding the statements Plaintiffs claimed were defamatory. This violated the statute. *See Rendón v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1274 (S.D. Fla. 2019) (when defamation is alleged in a print publication, Section 770.01 requires "reference to the subject article and verbatim quotes from it"); *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1474 (S.D. Fla. 1987).

Bonilla expects Plaintiffs to claim that this action is not covered by Section 770.01 because Bonilla's publications are not "a newspaper, periodical, or other medium". This interpretation contradicts the plain meaning of the statute. Bonilla's regular publication of reports regarding publicly traded companies on the Jehoshaphat website constitute a "newspaper, periodical, or other medium". An Internet newsletter or commentary website is a "medium". *See Merriam-Webster's Dictionary*, "medium" ("a channel or system of communication, information, or entertainment"; "a mode of artistic expression or communication"), at https://www.merriam-webster.com/dictionary/medium.

The cases interpreting Section 770.01 confirm the statute's applicability to Bonilla. *Comins v. Vanvoorhis*, 135 So.3d 545 (Fla. 5th DCA 2014) is precisely on point. In *Comins*, the defendant was a blogger who commented on issues of public concern. The Court rejected the plaintiff's argument that Section 770.01 is strictly

limited to traditional news media, holding that "a site operated by a single individual or a small group that has primarily an informational purpose, most commonly in an area of special interest, knowledge or expertise of the blogger, and which usually provides for public impact or feedback" constitutes a newspaper, periodical, or other medium under the statute.  Bonilla's Jehoshaphat Research site is on all fours with the blog in *Comins*—it is a site operated by a single individual (Bonilla) that has primarily an informational purpose (reporting and commentary on public companies), in an area of special interest, knowledge or expertise of the blogger (Bonilla's careful reporting and extensive experience) and provides for public impact (the effect of the information on the financial market) and feedback (a contact address appears on the site).  *Comins* confirms what the plain meaning of Section 770.01 provides:  the Jehoshaphat Research website is a newspaper, periodical, or other medium.[2]

### B.   Independently, the Statements Plaintiffs Have Sued On Are Bonilla's Opinions And Are Not Actionable As Defamation

Only statements of fact, not opinion, are actionable as defamation:  "[T]he

---

[2] *Accord Buckley v. Moore*, 2021 WL 3173185 at *6 (S.D. Fla. Jul. 26, 2021) (operator of website reviewing investment products covered by statute); *Tobinick v. Novella*, 2015 WL 1191267 at *9 (S.D. Fla. Mar. 16, 2015) (medical ethics blog covered by statute); *Alvi Armani Medical, Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1308 (S.D. Fla. 2008) (publisher of website that publishes commentary on hair restoration treatments and represents competitors to plaintiff is "other medium" covered by Section 770.01); *Plant Food Systems, Inc. v. Irey*, 165 So.3d 859, 861 (Fla. 5th DCA 2015) (publisher of technical journals is "other medium"; statute applies to "a public medium engaging in the free dissemination of information or disinterested and neutral commentary or editorializing on matters of public interest"); *Grlpwr, LLC v. Rodriguez*, 2023 WL 5666203 at *3 (N.D. Fla. Aug. 25, 2023) (YouTube channel created to advocate against multi-level marketing schemes is covered by Section 770.01); *Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So.2d 1376, 1378 (Fla. 4th DCA 1997) (section 770.01 applies to columnists).

test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published." *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981). Thus, even statements that might be considered factual if presented in a purely factual context should be considered "opinion" if the overall context of the publication is such that readers will perceive it to be the author's subjective opinion. *Fortson v. Coangelo*, 434 F. Supp. 2d 1369, 1381 (S.D. Fla. 2006) (holding claims about basketball player were opinion). Further, where it is clear that there are disagreements and views are strongly held on both sides, statements within such a debate should be considered opinion. *Id.*

This standard applies here. Bonilla's publications were labeled opinions. *Turner v. Wells*, 879 F.3d 1254, 1264 (11th Cir. 2018) (report that states explicitly that it contains author's opinions found to be protected opinion). They are written as commentary, in a very informal style and with linguistic choices that do not signal neutral reportage of the news. They are full of hyperbolic statements and rhetorical questions that are not found in news reporting. Any reasonable reader encountering a Jehoshaphat Report will know immediately that they are reading the author's opinions about a publicly traded company. And Plaintiffs had access to the media and were able to issue rebuttals to Bonilla's claims, giving rise to a

public debate between two sides with strongly held views.[3]

In addition, Bonilla's statements are also protected as **opinions based on disclosed facts**. This doctrine applies where a speaker or publisher makes available the facts upon which an opinion is based. "Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." *From*, 400 So.2d at 57. It is undisputed on this record that this is what Bonilla did—he set forth in painstaking detail the facts, taken from either Plaintiffs' publicly available financial reports, publicly available statements about the company, photos from Bonilla's personal investigations, or **verbatim quotations** from Bonilla's sources, that backed up each of his opinions. To bring a defamation suit against an author's topline conclusion, Plaintiffs must show that the publication implies there are some concealed, undisclosed facts that are false and defamatory. "For a statement to be mixed opinion, the communicator's statement must imply that a concealed or undisclosed set of defamatory facts

---

[3] Bonilla's writing style also confirms this. Plaintiffs concede Bonilla uses colorful language, such as asking rhetorical questions, e.g., "If committing outright financial fraud is the 'hard stuff,' would defying one's accountants be a 'gateway drug?'", *see Amended Complaint* ¶ 40 [Dkt. 68]., or "What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer." *Id.* ¶ 69(a). However, this sort of hyperbolic rhetoric in fact precludes a defamation action, because it clearly signals to readers that the contents of Bonilla's statements are opinions. *Fortson*, 434 F. Supp. 2d at 1383 ("Vecsey simply used colorful language—invective—to denounce Fortson; and Vecsey's readership could not have interpreted it any other way."), 1384 (asking rhetorical questions is protected opinion). "Name-calling" is also not actionable defamation. *Id.* at 1383 (citing *Haberstroh v. Crain Publications, Inc.*, 545 N.E.2d 295, 298–99 (1989)); *Logue v. Book*, 297 So.3d 605, 614 (Fla. 4th DCA 2020) ("But merely tossing insults, as Respondent did in this case, is not defamation."). "[C]ourts have rejected the notion that evocative opinions about the plaintiff's business practices could amount to defamation." *Hanks v. Wavy Broadcasting, LLC*, 2012 WL 405065 at 11 (E.D.Va. Feb. 8, 2012).

would confirm the statement." *Ozyesilpinar v. Reach PLC*, 365 So.3d 453, 459 (Fla. 3d DCA 2023) (cleaned up).  Bonilla's reports imply nothing concealed from the reader.  They are pure opinion.  *See Turner*, 879 F.3d at 1264 (plaintiff could not state claim for defamation based on argument that defendant misinterpreted underlying fact); *id*. at 1265 ("it is well settled in Florida that commentary or opinion based on accurate facts set forth in an article 'are not the stuff of libel.'").

Moreover, when the specific statements charged to be defamatory are examined, it is clear they are opinions.  Words that cannot be objectively determined to be true or false are not actionable as defamation.  *Palm Beach Newspapers, Inc. v. Early*, 334 So.2d 50, 52 (Fla. 4th DCA 1976) (calling politician's tenure "unsuccessful" and replete with "ineptness, incompetence, and indecisiveness" was protected opinion):

***Alleged defamatory statement 1:***

> First, Defendant claimed that TTI's financial reports, which it makes regularly to the public and Hong Kong securities regulators, were a "web of deceit".  Defendant then doubled down and inexplicably claimed that TTI's great success–its decade-long streak of increasing its gross margin each year–must, on its own, be evidence of some sort of accounting trickery and that TTI's operating income is "overstated by ~40-70% by accounting games."

*Amended Complaint* (Dkt. 68) ¶ 38.

This statement is replete with Bonilla's opinions:  a "web of deceit"; "Accounting trickery"; "Overstated"; and "Accounting games."  None of these things are provable, true or false, factual statements.  All of them are characterizations, expressing the personal view of Bonilla.

"A connotation or implication is only actionable if it is provably false."

*Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1276 (S.D. Fla. 2023)

(cleaned up) (*citing Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6

F.4th 1247, 1252 (11th Cir. 2021)) (comparison of politician to Hitler makes no

factual claim that can be proven true or false).

Is there an objective test by which we can tell that X constitutes "a web of

deceit" or "accounting trickery" and Y does not?  None of this is a statement of

fact—it's all a matter of one person's opinion.  "Overstated" is the same.  What is

the test for "overstated"?  Again, there's no factual, yes-or-no content to any of this;

it's all a person's opinion.  Finally, "accounting games" expresses an opinion for

the exact same reason "accounting trickery" does.

### *Alleged defamatory statement 2*:

> Second, Defendant falsely claimed that "TTI's financials are littered
> with evidence of costs being deceptively managed downward" through
> capitalization of costs and under-depreciation of capital assets and
> that, as a result, "TTI's balance sheet has become a vast, toxic
> graveyard where the accounting bodies are buried." Because of the
> alleged under-depreciation, Defendant falsely claimed, TTI is pushing
> costs into the future where it eventually is forced to write off capital
> assets for excessive losses.

Amended Complaint (Dkt. 68) ¶ 39.

Once again, the language clearly conveys that these are Bonilla's opinions.

"TTI's financials are littered with evidence of costs": How does one determine

whether financial statements are "littered" with something?  "Costs being

deceptively managed downward":   What is the test for "managed downward"?
How does one objectively determine if it is "deceptive"?

### Alleged defamatory statement 3:

> Third, Defendant falsely claimed that TTI was improperly refusing to write down certain overdue debts owed to it despite, Defendant claimed, accountants stating that such overdue accounts receivable should be discounted or written off entirely. Defendant implied without any basis that "If committing outright financial fraud is the 'hard stuff,' would defying one's accountants be a 'gateway drug?"

Amended Complaint (Dkt. 68) ¶ 40.

Once again, there is nothing here that can be proven true or false as a factual matter.   What does it mean to be "improperly" refusing to write down overdue debts?   Further, the claim that Plaintiffs' actions were in violation of accounting standards for when aging debts must be written down is also a matter of his opinion.   (And once again, it is based on the disclosed facts in the First Report that show Plaintiffs reporting they are carrying aging debts.)

### Alleged defamatory statement 4:

> Fourth, Defendant falsely asserted that TTI is "literally struggling to pay its bills on time" and "failing to pay [its suppliers and vendors] within existing [payment] terms.

Amended Complaint (Dkt. 68) ¶ 41.

How does one determine whether a company is "struggling" to pay its bills? That's a value judgment and opinion.   Bonilla's opinion was based on the disclosed fact of Plaintiffs' aging accounts payable, taken from Plaintiffs' financial reports.

### Alleged defamatory statement 5:

In short, the Second Report falsely asserts that TTI fraudulently labels hundreds of thousands of its products as "factory blemished" so that it can sell them through its DTFO stores. According to Defendant's false telling, DTFO maintains an inventory of more than $500 million of "factory blemished" products, its sales total up to $2 billion per year, and TTI reaped huge profits from DTFO sales, according to the Second Report's false claims, accounting for $400 million, or 37%, of TTI's operating profit.

Amended Complaint (Dkt. 68) ¶ 41.

Labeling something a "fraud" is protected opinion.  *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D. Fla. 1996) (accusing plaintiff of "fraud" is protected opinion) (citing *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 14 (1970) (concluding that the word "blackmail" in context was not defamatory).[4]

**C.    To the Extent There Are Non-Opinion Statements in Either of the Reports, There Is No Evidence of Material Falsity Unprotected By the Substantial Truth Doctrine.**

---

[4] *Accord Seropian v. Forman*, 652 So.2d 490, 498 (4th DCA 1995) (concluding that the words "influence peddling" in context were not defamatory); *600 West 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 937 (N.Y. 1992) ("as fraudulent as you can get" is protected opinion); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999) (accusation of "fraud" non-actionable); *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1232 (D. Utah 2018) ("In sum, terms such as 'fraud' and 'harassment' found in some of Rushton's online comments would have been understood to be no more than rhetorical hyperbole.") (cleaned up); *Walter v. Herbert*, 2024 WL 2159516 at *6 (claim that plaintiff is a "fraud" is non-actionable); *see also Old Dominion Branch No. 496 Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 285-86 (1974) (accusations of "treason" in labor dispute were protected hyperbole); *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002) (labeling plaintiff "accomplice to murder" as part of heated debate could not be taken as a literal accusation of a crime and was protected opinion); *Horsley v. Feldt*, 304 F.3d 1125, 1133 (11th Cir. 2002) (statement that plaintiff conspired with a murderer was non-actionable and protected); *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812 at *5 (M.D. Fla. Nov. 16, 2020) (holding that statements that literally accused plaintiff of worker's compensation fraud were protected opinion and hyperbole).

"[F]alsity only exists if the publication is substantially and materially false, not just if it is technically false." *Smith v. Cuban American Nat'l Foundation*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999).[5]

The evidence in discovery established:

1.  The Second Report's thesis that Plaintiffs violated the terms of their contract with Home Depot by selling "blemished" goods at their factory outlet stores was **true**. ████████████████████████

    ████████████████████████████████████████

    ████████████████████████████████████████

    ████████████████████████████████████

2.  The First Report's claim that Plaintiffs failed to pay their bills in a timely manner was **true**. ████████████████████████

    ██████████████████████

3.  The First Report's claim that there were substantial write-offs of intangible assets was **true**. ████████████████████

    ██████████

4.  The First Report's claim that there were dangerously aging accounts receivable was **true**. ████████████████████

    ████████████████

---

[5] *Accord Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502–03 (Fla. 3d DCA 1993); *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234–35 (Fla. 3d DCA 2021) ("Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true.").

5. The First Report's claim that Plaintiffs' reporting of the sale of items for scrap constituted a significant accounting irregularity was **true**. █████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

It is possible Bonilla made one mistake of substance: █████████████

███████████████████████████████████████████

████████████████████ However, even assuming Bonilla was incorrect about the size of the factory outlet program, this statement was **not defamatory**, because it does not expose Plaintiffs to any "hatred, ridicule, or contempt or injures his business or reputation or occupation". *Markle v. Markle*, 2024 WL 1075339 at *5 (M.D. Fla. Mar. 12, 2024).

## D. Independently, There Is No Triable Issue of Fact That Bonilla Acted with the Requisite Mental State for a Defamation Action

### 1. Plaintiffs Are Public Figures

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344-45 (1974), the Supreme Court extended First Amendment protection in libel cases, which had previously been applied to public **officials**, to public **figures**, and that public figure plaintiffs must show "actual malice" (knowledge of falsity or reckless disregard of the truth) with clear and convincing evidence to recover for defamation. The rationale for *Gertz* was because public figures had the resources and access to rebut defamatory

statements without having to resort to a defamation suit: "Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Id.*

It is undisputed Plaintiffs enjoyed that privilege of access in this case. Techtronic, as a large publicly traded company, put out extensive statements purporting to rebut Bonilla's allegations, which were then carried across major financial news networks. Stock analysts, following the company's lead, amplified its rebuttals in its own public statements. The stock price of Techtronic recovered over the short and long term after having declined on the days of Bonilla's reports.

Techtronic's own Amended Complaint contains detailed admissions of its public figure status:

> The company was founded in Hong Kong in 1985 by Horst Pudwill and Roy Chi Ping Chung. It began as an original equipment manufacturer for globally recognized brands including Craftsman.

> In 1990, TTI made an initial public offering and its stock was listed on the Hong Kong Stock Exchange. Since its initial public offering, TTI's revenue has grown from $63.1 million to more than $13 billion. The company's market capitalization has likewise grown and is currently nearly $20 billion Beginning in 2005 with its acquisition of Milwaukee Power Tools, TTI began investing heavily in lithium-ion battery technology. Over the nearly two decades since then, TTI has become a global leader in battery research and development and is one of the largest manufacturers of batteries in the world reflecting its status as not only a manufacturer of reliable tools but as a technological leader and innovator.

> In 2019, reflecting the great success and growth of the company, TTI's stock was selected as one of fifty companies included in the Hang Seng

Index, the Hong Kong analog to the U.S. Dow Jones Industrial
Average.

Today, TTI's lines of products include numerous famous and
respected brands including Ryobi, Milwaukee, Hoover, Oreck and
Dirt Devil....

In the United States, TTI sells its Ryobi products through a contract
with Home Depot. Pursuant to that contract, Home Depot has the
exclusive right to purchase and resell Ryobi products in the United
States.

Amended Complaint ¶¶ 13-21 [Dkt. 68]

Nonetheless, Plaintiffs claim to be private figures.  This claim has no merit.
First, Plaintiffs are general purpose public figures.  "General public figures are
individuals who, by reason of fame or notoriety in a community, will in all cases be
required to prove actual malice." *Turner*, 879 F.3d at 1272.  Plaintiffs are a massive
corporate conglomerate that makes some of the most famous brands of tools in the
world, they are listed on one of the most important financial indices in all of
investing, and they have an exclusivity contract with the most important retailer of
home repair products in the entire United States.  And as noted above, the
undisputed facts are that they had access to the press and specifically availed
themselves of that access to rebut Bonilla's alleged defamation.

But they are also a limited public figure with respect to anything contained
in their public financial statements.  While limited public figure cases speak of
"attempting to influence a public controversy", controlling Eleventh Circuit
authority makes clear that simply taking on a particular public task is sufficient to
meet that test.  In the *Turner* case, the Eleventh Circuit held that Coach Turner

need not have made any public statements for him to become a limited public figure with respect to anything relating to his role as an NFL coach. Simply taking on the task voluntarily injected him into the public debate. *Id.* at 1273. So it is with Plaintiffs; they regularly issue financial statements that made claims regarding the condition of their business, an issue of great import to all the investors who are either already invested in Plaintiffs or who may be considering such an investment. Indeed, Plaintiffs have a substantial Investor Relations operation which holds out their financial numbers in order to market their stock to investors.[6]

Massive corporations cannot be given a privilege to say whatever they want in their public financial statements, which investors, regulators, and the public rely on, while retaining the right to use immense resources to file suit against anyone who dares comment on what they say. Plaintiffs are public figures.

2.      There Is No Evidence of Actual Malice

As public figures, Plaintiffs must show clear and convincing evidence that Bonilla either knowingly lied or made statements with a "high degree of awareness of . . . probable falsity". *Gertz*, 418 U.S. at 332.

---

[6] *Accord Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020) (son of Albanian politician is limited public figure with respect to arms deal he participated in whether or not he commented publicly); *Mile Marker, Inc. v. Petersen Publishing, L.L.C.*, 811 So.2d 841, 845 (Fla. 4thh DCA 2002) (holding a niche company is a public figure with respect to public commentary on its products' usefulness); *Church of Scientology v. Cazares*, 423 (M.D. Fla. 1978) (church, a corporation, was a public figure with respect to a purchase of land that resulted in significant publicity; no showing needed to be made that it made any specific public statements as part of the debate); *Maverick Boat Co. v. American Marine Holdings, Inc.*, 2004 WL 1093035 at *13 (S.D. Fla. Feb. 10, 2004) (holding a corporation was a public figure with respect to alleged defamatory statements about its boats because it publicly sold them and participated in boat shows and the like).

Plaintiffs took the depositions of Bonilla, his consultant Mitchell Schwartz who worked on the two reports, and several of Bonilla's sources.  Plaintiffs also received verbatim transcripts and/or recordings of all calls with Bonilla's sources.  All of them **confirmed** Bonilla accurately quoted all of his sources.  It is further undisputed that these sources were former high level employees or Board members at Techtronic, Home Depot, and Techtronic's competitor, and had reason to know the information they provided to Bonilla.  "Reliance upon a reliable source insulates a defendant from a finding of actual malice as a matter of law." *Dockery v. Florida Democratic Party*, 799 So.2d 291, 296 (Fla. 2d DCA 2001) (affirming summary judgment).  Bonilla also took photographs and purchased products at the factory outlet stores that were used in his Second Report.

All of the rest of the material in Bonilla's reports was **publicly available**—accurate quotations from Plaintiffs' publicly available financial statements, and quotations from Internet commenters which are expressly identified as such.

This **easily** defeats any argument of actual malice and thus requires a judgment for Bonilla.  *Mile Marker*, 811 So.2d at 847 (publication that relied on ostensibly reliable source and set forth its methodology for reaching its conclusions negated actual malice as a matter of law and justified summary judgment).

Notably, Plaintiffs face a heightened burden on this issue.  "[T]here is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254

(1986).  There is nothing in this record that shows that Plaintiffs can possibly establish actual malice with clear and convincing evidence.[7]

## IV.   UNDER THE FLORIDA ANTI-SLAPP STATUTE, BONILLA IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES

The Florida Anti-SLAPP Statute provides that in certain circumstances, a defendant can obtain an award of attorney's fees if he prevails on a motion for summary judgment:

> The person or entity may file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the claimant's or governmental entity's lawsuit has been brought in violation of this section.... The court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section.

Fla. Stat. § 768.295(4).

The statute also defines what kind of lawsuit violates its terms:

> A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

*Id.* § 3.

This action was filed to suppress Bonilla's free speech rights, in connection

---

[7] Even if Plaintiffs are private figures, they still must show negligence.  For the same reasons they cannot show actual malice, they also cannot show negligence.

with his speaking on a public issue, specifically, the financial reports and public conduct of an important publicly traded company. *Parekh v. CBS Corp.*, 820 Fed. App'x 827, 836 (11th Cir. 2020) ("publishing a news report on a matter of public concern" is protected activity under the anti-SLAPP statute; attorney's fees award affirmed).[8]  This statute applies in federal court. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021).  The suit is without merit.  Bonilla is entitled to an award of attorney's fees.[9]

## V.    CONCLUSION

For the foregoing reasons, the motion for summary judgment should be granted and attorney's fees awarded to Bonilla.

Dated: October 18, 2024                     Respectfully submitted,

By: */s/ Dilan A. Esper*
Dilan A. Esper (*pro hac vice*)
DEsper@HarderLLP.com
Charles J. Harder (*pro hac vice*)
CHarder@HarderLLP.com
Harder Stonerock LLP
6300 Wilshire Boulevard, Suite 640
Los Angeles, CA 90048
Telephone (424) 203-1600

Dawn Siler-Nixon
Dsiler-nixon@fordharrison.com
Viktoryia Johnson
vjohnson@fordharrison.com
FordHarrison, LLP
401 E. Jackson St., Ste. 2500
Tampa, FL 33602-5133
Telephone (813) 261-7800

*Attorneys for Defendant Victor Bonilla*

---

[8] *Accord Mac Isaac v. Twitter, Inc.*, 557 F.Supp.3d 1251, 1261 (S.D. Fla. 2021) (suit against website that sought to interfere with content moderation policies protected by the First Amendment fell under Section 768.295).

[9] Bonilla believes that for multiple reasons there are no triable issues of fact on any of Plaintiffs' claims.  However, if this Court finds that it believes some specific claim should survive and go to trial, Bonilla respectfully requests this Court grant partial summary judgment on as many issues as possible where there are no triable issues of fact, to streamline any trial.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 18, 2024, the foregoing document was

electronically filed with the Clerk of Court using CM/ECF, which will electronically

send a notice of electronic filing to Plaintiff's attorneys of record

| | |
|---|---|
| Jason Sternberg (*pro hac vice*) <br> Quinn Emanuel Urquhart Sullivan LLP <br> 2601 South Bayshore Dr., Ste 1550 <br> Miami, FL 33133 <br> jasonsternberg@quinnemanuel.com | Kristin Tahler (*pro hac vice*) <br> Quinn Emanuel Urquhart Sullivan LLP <br> 865 S. Figueroa St., 10th Floor <br> Los Angeles, CA 90017 <br> kristintahler@quinnemanuel.com |
| David A. Nabors <br> Fla. Bar No. 1024722 <br> QUINN EMANUEL URQUHART & <br> SULLIVAN, LLP <br> 2601 S. Bayshore Drive, Suite 1550 <br> Miami, FL 33133-5417 | Nicholas Inns (*pro hac vice*) <br> Quinn Emanuel Urquhart Sullivan LLP <br> 1300 I Street, NW, Suite 900 <br> Washington, D.C. 20005 <br> nicholasinns@quinnemanuel.com |

_/s/   Dilan A. Esper_
Dilan A. Esper