UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED and
TECHTRONIC INDUSTRIES FACTORY
OUTLETS, INC.

        Plaintiffs,

    v.

VICTOR BONILLA,

        Defendant.

Case No. 8:23-cv-01734-CEH-AEP

**<u>DEFENDANT'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT AND INCORPORATED MEMORANDUM OF LAW</u>**

## I.   __INTRODUCTION__

Plaintiffs' motion for partial summary judgment amounts to little more than a multi-billion dollar, publicly-traded company attempting to silence its critics.  In this case, the critic is a financial analyst with an MBA from the Wharton School of Business and significant relevant experience, whose data driven reports cite Plaintiffs' own financial disclosures as their foundation.  Everything else is an opinion, and therefore not actionable.  Bonilla's reports are well-researched, thorough examinations of publicly available data and recorded interviews with former employee whistleblowers.  They contain inferences drawn from hundreds of pages of dense financial data, for the convenience of public consumption – a public which has neither the experience nor the qualifications to detect anomalies in financial data.  Business journalism is free speech.

Fundamentally, this lawsuit centers around two financial reports (the "Reports"), which provide in-depth analysis and opinions about Techtronic's valuation and sales practices.  There is no factual dispute about the data provided in the Reports.  Instead, Plaintiffs ask this Court to find, as a matter of law, that the financial analysis in connection with the data is false.  The absurd request is a dangerous affront to the First Amendment.

Plaintiffs advance two arguments: (1) the Reports contain false statements; and (2) TTI should not be considered a public figure.  These arguments lack merit, for the following reasons:

1. Plaintiffs cannot establish that they are entitled to judgment as a matter of law as to falsity:

   a. With respect to the Second Report (Home Depot), ████████████

   ████████████████████████████████████████████

   ████████████████████████████████████████████

   ████████████████████████████████████████████

   ████████████████████████████

   b. With respect to the First Report, the actual **factual** claims made by Bonilla were also proven true. Plaintiffs' corporate representatives admitted to them at deposition. Plaintiffs contend that Bonilla's **opinions** were "false", but a false opinion is not a basis for a defamation claim and is in fact protected by the First Amendment.

2. Plaintiffs cannot establish that they are private figures. Private figures are those who do not have any access to the media and cannot counteract defamatory statements—think your next-door neighbor, your mail carrier, or the grocery store clerk. Those people need the protection of liberalized defamation law because they have no platform to publicly rebut defamation. A massive publicly traded company is not like this at all—Plaintiffs had full access to the press and indeed issued public statements giving their rebuttal to Bonilla's reports, which were extensively publicized.

Because there is no basis for a grant of partial summary judgment, the motion should be denied.

## II.   **STATEMENT OF FACTS**

### A.   **Techtronic**

Plaintiff Techtronic Industries Co. Ltd. is a publicly traded company. Amended Complaint ¶ 14 [Dkt. 68].  It began as a manufacturer for globally recognized brands including the famous brand Craftsman.  *Id.*  Its stock is listed on the Hong Kong Stock Exchange.  *Id.*  Its revenue is more than $13 billion and its market capitalization is nearly $20 billion.  *Id.*[1]

As a publicly traded company, Techtronic publishes its financial results twice per year.  *Id.* at ¶ 20.  In the US, TTI sells its Ryobi products through a contract with Home Depot, one of the most famous and largest home improvement retailers in the world.  *Id.* at ¶ 21.  Pursuant to that contract, Home Depot has the exclusive right to purchase and resell Ryobi products in the US.  *Id.*

### B.   **Bonilla**

Bonilla is a business journalist, an independent researcher and analyst who publishes reports on publicly traded companies on his website, Jehoshaphat Research.  Declaration of Victor Bonilla [Dkt. 98-2] ("Bonilla Decl.") ¶ 3; Ex. 1

---

[1] Beginning in 2005 with its acquisition of Milwaukee Power Tools, another famous tool brand, Techtronic became a global leader in battery development and is one of the largest manufacturers of batteries in the world.  *Id.* at ¶ 15.  In 2019, Techtronic's stock was selected as one of fifty companies included in the Hang Seng Index, the Hong Kong analog to the U.S. Dow Jones Industrial Average.  *Id.* at ¶ 16.  Today, its products include numerous famous brands including Ryobi, Milwaukee, Hoover, Oreck and Dirt Devil.  *Id.* at ¶ 17.

[First Report, Dkt. 98-4] at 52; Ex. 2 [Second Report, 98-5] at 67.   Each report contains a disclaimer stating three times that the reports contain opinions, and frequently identifies analytical estimates, opinions, etc., as such.  *Id.*  The reports utilize publicly traded information, as well as former insiders cultivated by Bonilla as sources, to support the opinions.   Bonilla Decl. [Dkt. 98-2] ¶¶ 4-6.   Bonilla attempts to expose what he believes to be corporate wrongdoing that may be of interest to the public.   *Id.*   His reports are dozens of pages long and replete with footnotes and quotations.   *Id.*

### C.   The First Report

Bonilla published his First Report on February 22, 2023.   Amended Complaint ¶ 36 [Dkt. 68]; Ex. 1 [First Report, Dkt. 98-4].   It was an extensive examination of Techtronic's publicly available financial statements.   Bonilla Decl. ¶¶ 9-10; Ex. 1 [First Report, Dkt. 98-4].   It contained extensive analysis from Bonilla, numerous verbatim quotations from Techtronic's own financial statements, and quotations from sources.   *Id.*   The First Report's key thesis was that in Bonilla's opinion, it was suspicious that Techtronic was reporting increases in its gross margin over 19 consecutive semiannual reports unlike any similar company, and that this anomaly was driven by aggressive accounting choices.   Ex. 1 [First Report, Dkt. 98-4] at 1.[2]

---

[2] Bonilla worked extensively on the reporting for the First Report.  Bonilla Decl. [Dkt. 98-2]¶ 10. He obtained and analyzed public financial statements of Techtronic, cultivated former high level executives at Techtronic and its competitors who had information about what Techtronic was doing, and searched the Internet for publicly available information.  *Id.*  The First Report is 60 pages long.  Declaration of Dilan A. Esper [Dkt. 98-3] ("Esper Decl.") ¶ 12; Ex. 1 [First Report,

Bonilla's First Report turned out to be true. CEO Joe Galli, whom Bonilla criticized, left the company. Ex. 9 [Article re Galli Retirement, Dkt. 98-12]. Techtronic did in fact capitalize its intangible assets more than its competitor, Makita, did, as Bonilla said. Ex. 4 [Rubel Expert Report, Dkt. 102-2] at 34. Techtronic was in fact selling Property Plant and Equipment for scrap but not depreciating it to scrap value, forcing it to take write-offs, as Bonilla said. Ex. 5 [Helf Depo, Dkt. 102-2] at 122; Ex. 10 [Techtronic Annual Report 2021, Dkt. 98-13] at 101; Ex. 1 [First Report, Dkt. 98-4] at 15 . Techtronic was in fact not collecting some of its accounts receivable on a timely basis, as Bonilla said. Ex. 5 [Helf Depo, Dkt. 102-2] at 48-49. And Techtronic's high inventory did in fact lead to poorer financial results, as Bonilla said. Ex. 11 [Techtronic Interim Report 2023, Dkt. 98-14] at 4 (discussing "inventory reduction" driving a "decline" in "overall sales").

### D.    The Second Report

Acting on a tip from a whistleblower, Bonilla later discovered that Techtronic's factory outlets were behaving suspiciously. Bonilla Decl. [Dkt. 98-2]¶ 11. The factory outlets (called DTFO stores) sold the current versions of the same

---

Dkt. 98-4]. It contains verbatim quotations from Techtronic's public financial statements, as well as charts generated by Bonilla based directly on those statements. *Id.* Bonilla then analyzes those statements over pages and pages of the First Report, providing extensive support for his opinions. *Id.* He also accurately quotes from his interviews with former Techtronic executives, interviews that were produced in transcript and audio form to Plaintiffs in this action. *Id.* No witness or document identified any inaccuracy in any of Bonilla's many quotations. Esper Decl. [Dkt. 98-3] ¶ 12. The First Report concludes with eight pages of endnotes providing citations to the voluminous material that Bonilla analyzes. Ex. 1 [First Report, Dkt. 98-3] at 53-60.

lines of tools, such as Ryobi and Ridgid, that are advertised by Home Depot as "exclusive". *Id.* In Bonilla's experience, factory outlet stores generally sold obsolete goods or goods different than what was being sold by mainstream retailers; however, the Ryobi and Ridgid tools sold by the factory outlets were the exact same tools on sale at Home Depot and seemed to violate Home Depot's "exclusivity". *Id.* So, Bonilla reviewed publicly available documents, obtained photographs and tools from Home Depot and Techtronic physical and online stores, and talked to more sources. *Id.* The result was the Second Report, published June 5, 2023. *Id.*[3]

Bonilla's thesis in the Second Report was that Techtronic was violating its agreements with Home Depot by selling identical goods supposedly exclusive to Home Depot, at its factory outlets at lower prices, by labeling the goods "blemished". Ex. 2 [Dkt. 98-5] [Second Report]. Bonilla opined that this was a fraud. *Id.* He backed up his reporting with quotations from his sources, photographs of the identical items being sold by Home Depot and the Techtronic factory outlets, and information from the websites. *Id.*

The Second Report was further proven true in discovery. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[3] The Second Report, like the First, contained Bonilla's disclaimer that mentioned three times that it contained Bonilla's opinions. Ex. 2 [Second Report, Dkt. 98-5]. It contained photographs, verbatim quotations from publicly available documents, and verbatim quotations from sources who had worked for Techtronic and Home Depot. *Id.*

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████[4]

## III.   THE MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE DENIED[5]

### A.   The Statements Plaintiffs Have Sued On Are Bonilla's Opinions.

---

[4] Discovery disclosed only one apparent error in the Second Report.  Bonilla estimated sales at the outlets at between $600 million and $1.2 billion a year; apparently this turned out to be incorrect and the real number was approximately $100 million.  Ex. 7 [Stearns Depo., Dkt. 102-2] at 44; Ex. 2 [Second Report, Dtk. 98-5] at 1.

[5] Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law".  Fed. R. Civ. P. 56(a).  In determining whether a genuine dispute of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiffs' argument that Bonilla's statements should be summarily adjudicated to be false presumes that they are statements of fact that this Court can adjudicate as false. However, Bonilla's statements are his opinions, so Plaintiffs are not entitled to an adjudication that they are false.[6]

Bonilla's publications were labeled opinions. *Turner v. Wells*, 879 F.3d 1254, 1264 (11th Cir. 2018) (report that states explicitly that it contains author's opinions found to be protected opinion). They are written as commentary, in a very informal style and with linguistic choices that do not signal neutral reportage of the news. They are full of hyperbolic statements and rhetorical questions that are not found in news reporting. Any reasonable reader encountering a Jehoshaphat Report will know immediately that they are reading the author's opinions about a publicly traded company. And Plaintiffs had access to the media and were able to issue rebuttals to Bonilla's claims, giving rise to a public debate between two sides with strongly held views.[7]

---

[6] Only statements of fact, not opinion, are actionable as defamation: "[T]he test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published." *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981). Thus, even statements that might be considered factual if presented in a purely factual context should be considered "opinion" if the overall context of the publication is such that readers will perceive it to be the author's subjective opinion. *Fortson v. Coangelo*, 434 F. Supp. 2d 1369, 1381 (S.D. Fla. 2006) (holding claims about basketball player were opinion). Further, where it is clear that there are disagreements and views are strongly held on both sides, statements within such a debate should be considered opinion. *Id.*

[7] Bonilla's writing style also confirms this. Plaintiffs concede Bonilla uses colorful language, such as asking rhetorical questions, e.g., "If committing outright financial fraud is the 'hard stuff,' would defying one's accountants be a 'gateway drug?'", *see Amended Complaint* ¶ 40 [Dkt. 68]., or "What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer." *Id.* ¶ 69(a). However, this sort of hyperbolic rhetoric in fact precludes a defamation action, because it

In addition, Bonilla's statements are also protected as **opinions based on disclosed facts**. This doctrine applies where a speaker or publisher makes available the facts upon which an opinion is based.[8]  It is undisputed on this record that this is what Bonilla did—he set forth in painstaking detail the facts, taken from either Plaintiffs' publicly available financial reports, publicly available statements about the company, photos from Bonilla's personal investigations, or **verbatim quotations** from Bonilla's sources, that backed up each of his opinions. To bring a defamation suit against an author's topline conclusion, Plaintiffs must show that the publication implies there are some concealed, undisclosed facts that are false and defamatory. "For a statement to be mixed opinion, the communicator's statement must imply that a concealed or undisclosed set of defamatory facts would confirm the statement." *Ozyesilpinar v. Reach PLC*, 365 So.3d 453, 459 (Fla. 3d DCA 2023) (cleaned up). Bonilla's reports imply nothing concealed from the reader. They are pure opinion. *See Turner*, 879 F.3d at 1264 (plaintiff could not state claim for defamation based on argument that defendant misinterpreted

---

clearly signals to readers that the contents of Bonilla's statements are opinions. *Fortson*, 434 F. Supp. 2d at 1383 ("Vecsey simply used colorful language—invective—to denounce Fortson; and Vecsey's readership could not have interpreted it any other way."), 1384 (asking rhetorical questions is protected opinion). "Name-calling" is also not actionable defamation. *Id.* at 1383 (citing *Haberstroh v. Crain Publications, Inc.*, 545 N.E.2d 295, 298–99 (1989)); *Logue v. Book*, 297 So.3d 605, 614 (Fla. 4th DCA 2020) ("But merely tossing insults, as Respondent did in this case, is not defamation."). "[C]ourts have rejected the notion that evocative opinions about the plaintiff's business practices could amount to defamation." *Hanks v. Wavy Broadcasting, LLC*, 2012 WL 405065 at 11 (E.D.Va. Feb. 8, 2012).

[8] "Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public." *From*, 400 So.2d at 57.

underlying fact); *id.* at 1265 ("it is well settled in Florida that commentary or opinion based on accurate facts set forth in an article 'are not the stuff of libel.'").

Moreover, when the specific statements charged to be defamatory are examined, it is clear they are opinions. Words that cannot be objectively determined to be true or false are not actionable as defamation. *Palm Beach Newspapers, Inc. v. Early*, 334 So.2d 50, 52 (Fla. 4th DCA 1976) (calling politician's tenure "unsuccessful" and replete with "ineptness, incompetence, and indecisiveness" was protected opinion):

### Alleged defamatory statement 1:

> First, Defendant claimed that TTI's financial reports, which it makes regularly to the public and Hong Kong securities regulators, were a "web of deceit". Defendant then doubled down and inexplicably claimed that TTI's great success–its decade-long streak of increasing its gross margin each year–must, on its own, be evidence of some sort of accounting trickery and that TTI's operating income is "overstated by ~40-70% by accounting games."

*Amended Complaint* (Dkt. 68) ¶ 38.

This statement is replete with Bonilla's opinions: a "web of deceit"; "Accounting trickery"; "Overstated"; and "Accounting games."[9]

### Alleged defamatory statement 2:

> Second, Defendant falsely claimed that "TTI's financials are littered with evidence of costs being deceptively managed downward" through capitalization of costs and under-depreciation of capital assets and that, as a result, "TTI's balance sheet has become a vast, toxic

---

[9] "A connotation or implication is only actionable if it is provably false." *Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1276 (S.D. Fla. 2023) (cleaned up) (*citing Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021)) (comparison of politician to Hitler makes no factual claim that can be proven true or false).

graveyard where the accounting bodies are buried." Because of the alleged under-depreciation, Defendant falsely claimed, TTI is pushing costs into the future where it eventually is forced to write off capital assets for excessive losses.

Amended Complaint (Dkt. 68) ¶ 39.

Once again, the language clearly conveys that these are Bonilla's opinions. "TTI's financials are littered with evidence of costs." "Costs being deceptively managed downward."

***Alleged defamatory statement 3:***

Third, Defendant falsely claimed that TTI was improperly refusing to write down certain overdue debts owed to it despite, Defendant claimed, accountants stating that such overdue accounts receivable should be discounted or written off entirely. Defendant implied without any basis that "If committing outright financial fraud is the 'hard stuff,' would defying one's accountants be a 'gateway drug?'"

Amended Complaint (Dkt. 68) ¶ 40.

Once again, there is nothing here that can be proven true or false as a factual matter. What does it mean to be "improperly" refusing to write down overdue debts? Further, the claim that Plaintiffs' actions were in violation of accounting standards for when aging debts must be written down is also opinion.

***Alleged defamatory statement 4:***

Fourth, Defendant falsely asserted that TTI is "literally struggling to pay its bills on time" and "failing to pay [its suppliers and vendors] within existing [payment] terms.

Amended Complaint (Dkt. 68) ¶ 41.

How does one determine whether a company is "struggling" to pay its bills? That's a value judgment and opinion.

***Alleged defamatory statement 5*:**

> In short, the Second Report falsely asserts that TTI fraudulently labels hundreds of thousands of its products as "factory blemished" so that it can sell them through its DTFO stores. According to Defendant's false telling, DTFO maintains an inventory of more than $500 million of "factory blemished" products, its sales total up to $2 billion per year, and TTI reaped huge profits from DTFO sales, according to the Second Report's false claims, accounting for $400 million, or 37%, of TTI's operating profit.

Amended Complaint (Dkt. 68) ¶ 41.

Labeling something a "fraud" is protected opinion. *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D. Fla. 1996) (accusing plaintiff of "fraud" is protected opinion) (citing *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 14 (1970) (concluding that the word "blackmail" in context was not defamatory).[10]

---

[10] *Accord Seropian v. Forman*, 652 So.2d 490, 498 (4th DCA 1995) (concluding that the words "influence peddling" in context were not defamatory); *600 West 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 937 (N.Y. 1992) ("as fraudulent as you can get" is protected opinion); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999) (accusation of "fraud" non-actionable); *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1232 (D. Utah 2018) ("In sum, terms such as 'fraud' and 'harassment' found in some of Rushton's online comments would have been understood to be no more than rhetorical hyperbole.") (cleaned up); *Walter v. Herbert*, 2024 WL 2159516 at *6 (claim that plaintiff is a "fraud" is non-actionable); *see also Old Dominion Branch No. 496 Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 285-86 (1974) (accusations of "treason" in labor dispute were protected hyperbole); *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002) (labeling plaintiff "accomplice to murder" as part of heated debate could not be taken as a literal accusation of a crime and was protected opinion); *Horsley v. Feldt*, 304 F.3d 1125, 1133 (11th Cir. 2002) (statement that plaintiff conspired with a murderer was non-actionable and protected); *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812 at *5 (M.D. Fla. Nov. 16, 2020) (holding that statements that literally accused plaintiff of worker's compensation fraud were protected opinion and hyperbole).

Plaintiffs respond to this point by citing to some criminal cases defining "securities fraud", *In re Bausch & Lomb, Inc. Securities Litigation*, 2003 WL 23101782 at *23-24 (W.D.N.Y. Mar. 28, 2003); *In re Paincare Holdings Securities Litigation*, 541 F. Supp. 2d 1283, 1291 (M.D. Fla. 2008), but that misses the point: a term can have a legal definition, but that does not mean that anyone who uses that term is referring to the legal definition and that if the legal definition is not met, there is defamation liability. "Fraud", "blackmail", "treason", and "accomplice to murder"

-12-

Finally, Plaintiffs own argument implies that Bonilla was giving his opinions—Plaintiffs cite to the statement of their auditors that "Each year, after an exhaustive audit, Deloitte confirms that TTI's financial statements are 'fair and true.'" What Plaintiffs fail to tell the Court is that the document where this is done is explicitly labeled as the auditors "opinion". *Techtronic 2023 Annual Report* [Dkt. 98-14] at 93 (at [https://www.ttigroup.com/sites/default/files/2024-03/ar2023_0.pdf](https://www.ttigroup.com/sites/default/files/2024-03/ar2023_0.pdf) ).

Accordingly, Bonilla's statements are protected by the opinion rule and it is thus immaterial whether or not any of them are found to be "false".

## B.   Independently, There Is No Evidence of Material Falsity Unprotected By the Substantial Truth Doctrine.

A defamation plaintiff claiming falsity faces a heavy burden because not only must they prove a statement is literally false, but that it is both **materially** false and is not **substantially true**.   "[F]alsity only exists if the publication is substantially and materially false, not just if it is technically false." *Smith v. Cuban American Nat'l Foundation*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999).[11]

With respect to the Second Report, the Second Report's thesis that Plaintiffs violated the terms of their contract with Home Depot by selling "blemished" goods

---

are all terms that have legal definitions, and yet they all were held in cases to be protected by the opinion rule.

[11] *Accord Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502–03 (Fla. 3d DCA 1993); *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234–35 (Fla. 3d DCA 2021) ("Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true.").

at their factory outlet stores was **true**. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████[12]

  Finally, Bonilla's Second Report itself documents that many of the goods he found were in fact exactly the same goods being sold at Home Depot as "exclusive". Plaintiffs are asking this Court to believe that it did not do what is proven by photographic evidence![13]

---

[12] Plaintiffs argue that they simply categorized excess or obsolete goods as "blemished", but that is refuted by the evidence. ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

[13] Plaintiffs also argue that Home Depot has accepted what they did despite the contractual language.  This, however, gets to the difference between breach of contract law and defamation law.  Bonilla's claim was not "Home Depot has a viable claim for breach of contract against Plaintiffs".  His claim was that Plaintiffs were selling blemished goods at its factory outlets that were identical to goods sold as "exclusive to Home Depot", and in his opinion this was a form of fraud.  It is entirely possible that due to its own acquiescence to this, Home Depot cannot sue Plaintiffs for breaching their contract with Home Depot.   But that does not make Bonilla's statements in any way false.  He truthfully reported that Plaintiffs were selling blemished goods, and ████████████████████████████████████████████
████████████████████████████████.

With respect to the First Report, the evidence in discovery established:

1. The First Report's claim that Plaintiffs failed to pay their bills in a timely manner was **true**.    It was confirmed by Plaintiffs' corporate representative at deposition!

2. The First Report's claim that there were substantial write-offs of intangible assets was **true**.   It was confirmed by Plaintiffs' corporate representative.

3. The First Report's claim that Plaintiffs were not writing down aging accounts receivable was **true**.   In fact, Plaintiffs failed to collect some accounts receivable for substantial lengths of time without writing them down.   Plaintiffs' response is to argue they took adequate reserves and made judgments based on their customers' payment histories, but these are matters of pure opinion.

4. The First Report's claim that Plaintiffs' sales of items for scrap at far lower than book value was **true**.    In fact, Plaintiffs' corporate representative testified that the items should have been depreciated over their useful life (and thus there should not have been write-downs). Plaintiffs response is to claim that they have to scrap their tooling because it is proprietary, which may be true, but does not in any way refute the fact that the tooling should be sufficiently depreciated so there are not write-offs on scrap sales.

5. The First Report's claim that Techtronic was capitalizing research and development costs more than their competitors (including Makita, which uses international accounting standards just like Techtronic does) was **true**.  Plaintiffs provide no evidence that this section of the report was false.  Plaintiffs instead argue that their capitalization was reasonable, but that is a matter of opinion.[14]

It is possible Bonilla made one mistake of substance:  there is evidence that shows that the factory outlet program achieved about $100 million in sales; Bonilla estimated it at signifcantly more than that.  However, even assuming Bonilla was incorrect about the size of the factory outlet program, this statement was **not defamatory**, because it does not expose Plaintiffs to any "hatred, ridicule, or

---

[14] Plaintiffs identify two alleged falsehoods not referenced in their Complaint.  These should be disregarded as they were unpleaded.  If they are considered, The First Report's claim that Techtronic was overproducing inventory is also both **pure opinion** and **an opinion based on disclosed facts**.  The inventory numbers themselves are undisputed, and notably, Bonilla's prediction (which, of course, was his opinion) about inventory came true, as Techtronic in fact engaged in publicized inventory reductions after Bonilla's First Report.  "Gross Margin Expanded to 39.9%, Net Profit Increased to US$550 Million", *Business Wire* (Aug. 6, 2024) ("We finished the first half of 2024 with US$4,027 million of inventory, a reduction of... US$554 million compared to the first half of last year.") (at https://www.businesswire.com/news/home/20240806160397/en/Techtronic-Industries-Delivers-Strong-2024-First-Half-Results ).  The issue of whether the inventory was overproduced is Bonilla's opinion based on the disclosed amounts of inventory, which are undisputed.

The First Report's discussion of prepayments is also **pure opinion**.  Indeed, Bonilla specifically said it was "(Suspected)" at the very head of the discussion.  [Dkt. 69-1] at 34.  He said it was "most likely another example of snowballing expenses", again with the "most likely" signal indicating he is giving his opinion.  [Dkt 69-1] at 35.  Bonilla's graph, taken directly from Techtronic's financial data and undisputed, shows that in fact after being steady for years, the prepayment number skyrocketed in the first half of 2022.  *Id.*  He then says "We aren't going to spend a lot of time on this "red flag" because we don't know much about it."  Plaintiffs' claim that this is making definitive factual claims that can be proven true or false is preposterous—the **only** factual claim Bonilla makes is that the prepayments shot way up, and that is **true**.

contempt or injures his business or reputation or occupation". *Markle v. Markle*, 2024 WL 1075339 at *5 (M.D. Fla. Mar. 12, 2024).

Bonilla made no statements that were both materially false and unprotected by the substantial truth doctrine.

### C.   Plaintiffs Are Public Figures

Plaintiffs are not entitled to a partial summary judgment holding that they are private figures.[15]  It is undisputed Plaintiffs enjoyed wide access to the media in this case.  Techtronic, as a large publicly traded company, put out extensive statements purporting to rebut Bonilla's allegations, which were then carried across major financial news networks.  Stock analysts, following the company's lead, amplified its rebuttals in its own public statements.[16]   Also, Techtronic pleaded detailed factual admissions of its public figure status.   Amended Complaint ¶¶ 13-21 [Dkt. 68].

Nonetheless, Plaintiffs claim to be private figures.  This claim has no merit. First, Plaintiffs are **general purpose public figures**.  "General public figures

---

[15]The public figure-private figure distinction is set out in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344-45 (1974), which held that public figure plaintiffs must show "actual malice" (knowledge of falsity or reckless disregard of the truth) with clear and convincing evidence to recover for defamation.  The rationale for *Gertz* was because public figures had the resources and access to rebut defamatory statements without having to resort to a defamation suit: "Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Id.*

[16]  Techtronic's CEO even went on CNBC to rebut the First Report.  Glass Lewis, *Controversy Alert Roundup—Techtronic Industries* (May 8-12, 2023) (at https://www.glasslewis.com/controversy-alert-roundup-techtronic/ ).  The stock price of Techtronic recovered over the short and long term after having declined on the days of Bonilla's reports.

are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice." *Turner*, 879 F.3d at 1272.  Plaintiffs are a massive conglomerate that makes some of the most famous brands of tools in the world, they are listed on one of the most important exchanges, and they have an exclusivity contract with the most important retailer of home repair products in the entire US.  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (holding musician Prakazrel Michel was a general purpose public figure, relying on Michel's allegations in his Complaint: "He describes himself in his complaint as 'a two-time Grammy winning artist, a founding member of the famous music group, the Fugees, and … an acclaimed philanthropist.' And in subsequent court documents, he describes himself as a 'world-renown[ed] philanthropist.'")  The undisputed facts are that they had access to the press and specifically availed themselves of that access to rebut Bonilla's alleged defamation.[17]

---

[17] *Accord Mimedx Group v. Sparrow Fund Mgmt., L.P.*, 2018 WL 847014 at \*6 (S.D.N.Y. Jan. 12, 2018) (in defamation action against short seller, holding plaintiff was a public figure because it is a publicly traded company); *Borislow v. Canaccord Genuity Group*, 2014 WL 12580259 at \*2 (S.D. Fla. Jun. 27, 2014) (executive who alleged in his complaint that he took a company to $2 billion in valuation and revolutionized long distance service was a public figure); *La Marca v. Capella University*, 2009 WL 10698387 at \*\*6–7 (C.D. Cal. Jan. 6, 2009) (large corporation with $169 million in assets which issues frequent press releases is an all-purpose public figure); *Reliance Insurance Co. v. Barron's*, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977) (insurance company with over a billion dollars of assets a public figure).

      Plaintiffs argue they are not general purpose figures based on *Mitre Sports Int'l Ltd. v. HBO, Inc.*, 22 F. Supp. 3d 240, 250 (S.D.N.Y. 2014), but the language in that case is unpersuasive dicta; the plaintiff in *Mitre Sports* was a British sports equipment manufacturer of little note, whereas Techtronic makes and sells some of the most famous and highest selling tool brands in the world.  Plaintiffs also cite *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999), a case that with no reasoning at all held that Hewlett-Packard, one of the most famous household name corporations in the entire world, was not a general purpose public figure.  The holding in *Computer Aid* cannot be taken seriously by any court; if Hewlett-Packard is not a public figure, nobody is.  (Notably, while *Computer Aid* has been cited by several courts on certain

But independently, they are also **limited public figures** with respect to anything contained in their public financial statements.  While limited public figure cases speak of "attempting to influence a public controversy", controlling Eleventh Circuit authority makes clear that simply taking on a particular public task meets the test.  In *Turner*, the Eleventh Circuit held that Coach Turner need not have made any public statements for him to become a limited public figure with respect to anything relating to his role as an NFL coach.  Simply taking on the task voluntarily injected him into the public debate.  *Id.* at 1273.  So it is with Plaintiffs; they regularly issue financial statements that made claims regarding the condition of their business. Indeed, Plaintiffs have a substantial Investor Relations operation which markets their stock to investors.[18]

---

points, no court has ever followed its holding and held that a company that makes products as famous as the ones Hewlett-Packard or Techtronic makes is not a public figure.)

Notably, *World Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F. Supp. 2d 514, 523 (S.D.N.Y. 2001), which is cited by Plaintiffs, is on point here.  The WWE was held a general public figure because of the popularity of its product (the wrestling events it puts on).  That is exactly why Plaintiffs are general purpose public figures.

[18] *Accord Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020) (son of Albanian politician is limited public figure with respect to arms deal he participated in whether or not he commented publicly); *Mile Marker, Inc. v. Petersen Publishing, L.L.C.*, 811 So.2d 841, 845 (Fla. 4thh DCA 2002) (holding a niche company is a public figure with respect to public commentary on its products' usefulness); *Church of Scientology v. Cazares*, 423 (M.D. Fla. 1978) (church, a corporation, was a public figure with respect to a purchase of land that resulted in significant publicity; no showing needed to be made that it made any specific public statements as part of the debate); *Maverick Boat Co. v. American Marine Holdings, Inc.*, 2004 WL 1093035 at *13 (S.D. Fla. Feb. 10, 2004) (holding a corporation was a public figure with respect to alleged defamatory statements about its boats because it publicly sold them and participated in boat shows and the like).

Indeed, even if one were to construe "voluntary injection into the debate" as a more searching standard, Plaintiffs still meet it.  They made numerous public statements about their earnings and financial statements, where they spin and promote the supposedly great job done by their management.   *E.g.,* "Techtronic Industries Delivers Sold 2022 Annual Results" (press

Plaintiffs also are limited public figures with respect to their public, highly lucrative relationship with Home Depot, one of the biggest retailers in the world.

Massive corporations cannot be given a privilege to make extensive public statements of how great their management is doing, which investors and regulators rely on, while retaining the right to use immense resources to file suit against anyone who dares comment on what they say.  Plaintiffs are public figures.

## IV.   CONCLUSION

For the foregoing reasons, the motion should be denied.

Dated: October 22, 2024                 Respectfully submitted,

By: */s/ Dilan A. Esper*                    By: */s/ Jonathan R. Weiss*
Dilan A. Esper (*pro hac vice*)          Jonathan R. Weiss (FBN: 57904)
desper@harderllp.com                  Jonathan.weiss@squirepb.com
Charles J. Harder (*pro hac vice*)       Squire Patton Boggs (US) LLP
charder@harderllp.com                 200 S. Biscayne Boulevard,
Harder Stonerock LLP                     Suite 3400
6300 Wilshire Boulevard,                 Miami, Florida 33131
Suite 640                                Telephone: (305) 577-7000
Los Angeles, CA 90048
Telephone: (424) 203-1600
                                         Bradley W. Crocker (FBN: 118616)
                                         Bradley.crocker@squirepb.com
                                         Squire Patton Boggs (US) LLP
                                         777 S. Harbour Island,
                                         Suite 420
                                         Tampa, Florida 33602
                                         Telephone: (813) 202-1300
                                         *Attorneys for Defendant Victor Bonilla*

---

release, Mar. 1, 2023) (at https://doc.irasia.com/listco/hk/techtronic/annual/2022/respress.pdf ); "Techtronic Industries Delivers Exceptional 2021 Results With Outstanding Revenue And Profit Growth", *PR Newswire* (press release, Mar. 2, 2023) (at https://www.prnewswire.com/news-releases/techtronic-industries-delivers-exceptional-2021-results-with-outstanding-revenue-and-profit-growth-301494003.html ).  These statements then get widely repeated in the financial press.  *See* "Techtronic Industries Delivers Solid 2023 Annual Results", *Yahoo Business Wire* (Mar. 6, 2024) (https://finance.yahoo.com/news/techtronic-industries-delivers-solid-2023-130000632.html ).  It would be a total perversion of the public figure doctrine to allow a giant corporation to make statements like this and then sue its critics under a private figure standard.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2024, the foregoing document was

electronically filed with the Clerk of Court using CM/ECF, which will electronically

send a notice of electronic filing to Plaintiff's attorneys of record

Jason Sternberg (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
2601 South Bayshore Dr., Ste 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
kristintahler@quinnemanuel.com

David A. Nabors
Fla. Bar No. 1024722
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
2601 S. Bayshore Drive, Suite 1550
Miami, FL 33133-5417

Nicholas Inns (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
nicholasinns@quinnemanuel.com

_/s/   Dilan A. Esper_
Dilan A. Esper