Exhibit 28

```
 1                   UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                         TAMPA DIVISION

 3              CASE NO. 8:23-cv-01734-CEH-AEP

 4
     Techtronic Industries Company
 5   Limited, and Techtronic Industries
     Factory Outlets, Inc.,
 6
                  Plaintiffs,
 7
     v.
 8
     Victor Bonilla,
 9
                  Defendant.
10   _____/

11

12                   VIDEOTAPED DEPOSITION OF

13                        RALPH PISANI

14

15                   Thursday, June 20, 2024

16                   10:01 a.m. - 12:39 p.m.

17

18                        Conducted at
               Esquire Deposition Solutions, LLC
19                   Sarasota Executive Suites
                  677 North Washington Boulevard
20                   Sarasota, Florida 34236

21

22

23

24   Reported by:
     Janet Hamilton, RPR, CRC, FPR
25   Job No.:  J11337420
```



1   if someone doesn't pay you, it doesn't hit your profit

2   and loss.  You already recognized that impact and you

3   write it off to this reserve.

4              That was the context of the discussion.

5   And my point in the discussion was Home Depot and

6   Lowe's, regardless of how old they were, you would

7   typically get paid.  There really wasn't a large risk.

8   It was typically a process that you needed to work

9   through because of the shear volume of transactions.

10  And, ultimately, that debt would be good.

11             The risk typically came in with smaller

12  customers who may not be as financially sound.  And

13  then on those you would typically reserve based on the

14  age of the receivable.

15       Q.    Throughout that explanation you used the

16  word "typically" a couple of times.

17       A.    Yes.

18       Q.    Would you agree that that assessment that

19  you just provided is a general assessment?

20       A.    It was a general assessment.

21       Q.    During your February 3rd call through

22  Guidepoint, did you make an assessment about how TTI

23  was setting aside this reserve?

24       A.    No.  And, again, as I had in my -- the

25  documentation you have of my prescreening, I said I



1    knew nothing of specific processes, accounting, or

2    anything of TTI.  So I had disclosed even before the

3    conversation I have no specific knowledge other than

4    anything public.  So, no, I did not.

5         Q.   Okay.  We'll jump down a little bit

6    further.  There's a paragraph beginning:  "So we

7    estimated the earnings boost."

8              Do you see that paragraph?

9         A.   Yes.

10        Q.   At the bottom of that paragraph it says:

11   "To do so" -- calculating an earnings boost.  Right?

12   It says -- "we multiplied a reserve rate times the

13   ending 90-day, quote/unquote, 'default but not'

14   balance, using the input from the former finance

15   executive at Stanley."

16             Do you see that?

17        A.   Yes.

18        Q.   Do you remember a conversation about this

19   calculation?

20        A.   No.

21        Q.   Do you remember giving any kind of input on

22   what an appropriate reserve rate would be?

23        A.   Yes.  We did discuss different reserves.

24   And I don't recall if I gave them specific numbers.

25   But the intent of the conversation was the older it



1    trends and you can draw conclusions.  Is one of the

2    conclusions though that you could draw from that

3    report that a company is committing financial fraud?

4         A.   No.

5              ATTORNEY ESPER:  Object as to form.

6         Q.   (By Attorney Mac Neill) Did you draw a

7    conclusion from TTI's annual report and other

8    materials that you looked at that TTI was committing

9    financial fraud?

10        A.   No, I did not.

11        Q.   And did you give the individuals you spoke

12   with on February 3rd any reason to think that you

13   thought TTI was committing financial fraud?

14        A.   No.

15             ATTORNEY ESPER:  Object as to form.

16        Q.   (By Attorney Mac Neill) Did you suggest to

17   them in any way that TTI is committing financial

18   fraud?

19        A.   No.

20        Q.   Okay.  So you answered these screening

21   questions before the call?

22        A.   Yes.

23        Q.   And then when you actually got on the phone

24   on February 3rd there were two other people on the

25   call with you.  Right?

