UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.

        Plaintiffs,

– against –

Victor Bonilla,

        Defendant.

Case No. 8:23-cv-01734-CEH-AEP

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

I. BONILLA DOES NOT DEMONSTRATE THE EXISTENCE OF ANY GENUINE DISPUTE OF MATERIAL FACT WITH RESPECT TO THE FALSITY OF HIS REPORTS ................................................................................... 2

    A. Bonilla's Claims of Fraud Are Actionable Factual Assertions .............. 2

    B. Bonilla's Reports Were False And His Argument to the Contrary Is Unsupported by Any Evidence ............................................................. 4

II. BONILLA IDENTIFIES NO DISPUTE OF MATERIAL FACT REGARDING TTI'S STATUS AS A PRIVATE FIGURE .................................. 7

CONCLUSION ............................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Berisha v. Lawson*,
    973 F.3d 1304 (11th Cir. 2020)...........................................................................................9

*Borislow v. Canaccord Genuity Grp. Inc.*,
    2014 WL 12580259 (S.D. Fla. Jun. 27, 2014) .................................................................10

*Colodny v. Iverson, Yoakum, Papiano & Hatch*,
    936 F. Supp 917 (M.D. Fla. 1996) .....................................................................................3

*Computer Aid, Inc. v. Hewlett-Packard Co.*,
    56 F. Supp. 2d 526 (E.D. Pa. 1999) ...................................................................................8

*Fed. Trade Comm'n v. Consumer Collection Advocs., Corp.*,
    668 F. App'x 357 (11th Cir. 2016).....................................................................................5

*Ford v. Rowland*,
    562 So. 2d 731 (Fla. 5th DCA 1990)..................................................................................3

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ...........................................................................................................8

*Greenbelt Co-op. Pub. Ass'n v. Bresler*
    398 U.S. 6 (1970) ...........................................................................................................3, 4

*In re Paincare Holdings Sec. Litig.*,
    541 F. Supp. 2d 1283 (M.D. Fla. 2008) .............................................................................3

*Long v. Cooper*,
    848 F.2d 1202 (11th Cir. 1988).....................................................................................7, 8

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .........................................................................................10

*Mills v. NCL (Bahamas) Ltd.*,
    2015 WL 11201209 (S.D. Fla. Apr. 10, 2015) ..................................................................5

*Mitre Sports Int'l Ltd. v. HBO, Inc.*,
    22 F. Supp. 3d 240 (S.D.N.Y. 2014) ..................................................................................9

*Project Veritas v. Cable News Network, Inc.*,
    2024 WL 4702580 (11th Cir. Nov. 7, 2024) ............................................................. 1

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ........................................................................... 10

*World Wrestling Fed'n Entm't, Inc. v. Bozelli*,
    142 F. Supp. 2d 514 (S.D.N.Y. 2001) ................................................................. 10

## Other Authorities

Fed. R. Civ. P. 56 ................................................................................................. 5, 7

Bonilla anonymously published two reports about TTI that were proven in discovery to be unquestionably false and harmful. Bonilla tries to elide the untruthfulness of his statements by claiming that he is a financial journalist reporting on matters of public concern, but the Court has already rejected similar arguments from Bonilla. *See* ECF No. 39 ("Order"), ECF No. 55. In fact, Bonilla is a short seller who made over $1 million through his reports, based on a private agreement with Muddy Waters. Bonilla also claims that he cannot be liable for his misconduct because he was merely providing his "opinion," but his accusations that TTI was engaging in specific acts of fraud are not protected by the First Amendment, and the "truth is never an immaterial detail when accusing another of misconduct[.]" *Project Veritas v. Cable News Network, Inc.*, 2024 WL 4702580, at *12 (11th Cir. Nov. 7, 2024) (Carnes, J., concurring).

The Court should grant summary judgment in TTI's favor. Bonilla's Opposition ignores TTI's arguments, re-hashes arguments this Court already rejected, and offers unsupported non-sequiturs. Referring to only a handful of excerpts from a single deposition (of 12 taken in this case), Bonilla provides no evidence (let alone the required, specifically identified evidence) that demonstrates the existence of any genuine dispute of material of fact on the falsity of Bonilla's reports or TTI's status as a private figure. This Court should reject Bonilla's unsupported arguments, rule that the facts underlying TTI's motion are deemed admitted and undisputed, and grant TTI's motion.

## I. BONILLA DOES NOT DEMONSTRATE ANY GENUINE DISPUTE OF MATERIAL FACT WITH RESPECT TO THE FALSITY OF HIS REPORTS

Bonilla fails to offer any substantive response to TTI's argument—substantiated by dozens of references to specific lines of testimony and pages of evidence—that the headline factual assertions of both of his Reports are false. Instead, Bonilla attempts to evade responsibility for those statements by re-hashing arguments that this Court has already rejected, making evidence-free assertions about the supposed truth of immaterial and mischaracterized statements from his Reports, and—to the extent he supports any of his arguments with evidence—offering a single witness's misrepresented testimony purportedly to defeat TTI's motion. These arguments all fail.

### A. Bonilla's Claims of Fraud Are Actionable Factual Assertions

Bonilla argues that TTI's motion "presumes that [Bonilla's statements] are statements of fact[.]" Opp. at 8. But TTI does not "presume" anything. This Court **_already ruled_** that Bonilla's Reports included factual statements: "Bonilla argues that any statement alleged to be false was merely rhetorical hyperbole or opinion. The Court disagrees." Order 14. Bonilla's Opposition fails to address the Court's prior ruling, and there is no basis to reconsider it.

Bonilla also argues, over the course of three pages, that specific statements from his reports are opinions. Opp. at 10-12. But Bonilla again does not even acknowledge that this Court has **_already ruled_** that numerous of those statements were factual in nature. *See* Order 14. For example, Bonilla argues that

2

his assertion that TTI's operating income is "overstated by ~40-70% by accounting games" is opinion (Opp. at 10) even though this Court already ruled that this exact statement was among the factual assertions in the First Report (Order at 14).

Moreover, even were Bonilla's re-hashed opinion argument proper, which it is not, he does not even attempt to argue that the First Report's principal factual assertion—that TTI has "been inflating its profits dramatically for over a decade with manipulative accounting" (ECF 69-1 at 1)—is opinion. *See* Opp. at 10-12. Nor could he, as this Court has already rejected that argument (Order 14), and accounting fraud, as Bonilla states TTI is engaged in, is a factual issue the truth or falsity of which is regularly adjudicated by courts. *See, e.g.*, *In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1287 (M.D. Fla. 2008).

The same is true with the Second Report: Bonilla's statement that TTI "has been defrauding" The Home Depot ("THD") out of hundreds of millions of dollars is a quintessential factual statement asserting "facts about [TTI and] activities which [TTI] participated in." *Ford v. Rowland*, 562 So. 2d 731, 735 (Fla. 5th DCA 1990) (internal citation omitted). The cases on which Bonilla relies to avoid this straight-forward result are inapposite. *See* Opp. at 12. In *Colodny v. Iverson, Yoakum, Papiano & Hatch*, the defendant did not state (as Bonilla does here) that the plaintiff was perpetrating a fraud, but stated that he was "confident that full disclosure of all the tape recordings … will expose [a book] as a fraud." 936 F. Supp 917, 922 (M.D. Fla. 1996). Likewise, in *Greenbelt Co-op. Pub. Ass'n v. Bresler*, the Supreme Court held that the defendants' use of the word "blackmail" was opinion

3

because, among other reasons, "[n]o reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging [the defendant] with the commission of a criminal offense." 398 U.S. 6, 14 (1970). By contrast, Bonilla's statement that TTI "has been defrauding" THD for years plainly conveys that Bonilla is charging TTI with a multi-year and multi-billion dollar fraud. Indeed, Bonilla doubles down, confirming his assertion that TTI was engaged in "outright contractual and product diversion fraud against" THD. ECF 69-2 at 9. Bonilla's opinion arguments fail.

### B. Bonilla's Reports Were False And His Argument to the Contrary Is Unsupported by Any Evidence

Bonilla next argues that his Reports were true. Opp. at 13-16. This argument fails on two independent grounds: it is non-responsive to TTI's motion and is unsupported by any evidence that demonstrates a genuine dispute of material fact.

First, TTI's motion argues that the headline statements of each Report—that TTI was "inflating its profits dramatically for over a decade with manipulative accounting" and "has been defrauding [THD] on a massive scale for at least four years"—were false. Mot. at 15 (quoting ECF 69-1 at 1 and ECF 69-2 at 1). Tellingly, Bonilla does not address these arguments. He instead addresses immaterial, cherry-picked, misleadingly summarized aspects of the Reports. *See* Opp. at 15-16. For example, Bonilla argues that his statement in the First Report that "there were substantial write-offs of intangible assets was **true**." *Id.* at 15. But he fails to address the statements in the First Report about "accounting manipulations" as to intangible assets that TTI's motion addresses: that TTI is engaging in "excessive

4

capitalization" to "massage" its earnings and "inflat[ing]" its earnings by capitalizing property, plant and equipment expenses that should not be capitalized. *See* Mot. at 17-18. Each of the claims Bonilla now argues is true is similarly unresponsive to TTI's motion. Because Bonilla has failed to respond to TTI's argument, the entry of summary judgment is appropriate. *See, e.g.*, *Mills v. NCL (Bahamas) Ltd.*, 2015 WL 11201209, at *8 (S.D. Fla. Apr. 10, 2015).

Independently, Bonilla fails to meet his burden to demonstrate the existence of any genuine dispute of material fact. A "memorandum in opposition [to a motion for summary judgment] shall specify the material facts as to which the opposing party contends that there exists a genuine issue for trial and shall be accompanied by affidavit(s) and other evidence" including "pinpoint citations to the pages and lines of the record supporting each material fact." ECF 35 at 7. With one isolated and misleading exception (addressed below), Bonilla does not do so.

Instead, Bonilla either ignores TTI's statement of undisputed facts or seeks to refute those facts with bald assertions. For example, Bonilla argues that five statements in his First Report were true without citing to a single document or line of deposition testimony in support. Opp. at 15-16. Because Bonilla fails to address TTI's assertions of fact or offer any evidentiary basis to dispute those assertions, the Court should deem them admitted and enter summary judgment for TTI. *See* Fed. R. Civ. P. 56(e)(2); *Fed. Trade Comm'n v. Consumer Collection Advocs., Corp.*, 668 F. App'x 357, 358 (11th Cir. 2016) (proper to deem admitted facts that

5

party opposing summary judgment does not address).[1]

The sole record evidence that Bonilla cites in opposition to TTI's entire motion is a handful of excerpts from the deposition of David Stearns, one of TTI's two corporate representatives. Bonilla argues, supposedly based on Mr. Stearns' testimony, that TTI sold goods through DTFO in violation of its contract with THD. Opp. at 14 n.12. This argument is unsupported by the record and therefore fails.

As an initial matter, the deposition excerpts cited in Opposition fail to support Bonilla's factual assertions. For example, Bonilla argues that Mr. Stearns "conceded … that … 'blemished goods' were never offered to Home Depot for sale" (Opp. at 14 n.12), but the cited excerpts do not include any such testimony. Nor could they, because, as TTI showed and as is uncontradicted, Mr. Stearns testified the opposite: "When TTI has excess products, it 'pitch[es] [them] to [THD] so [it] can sell through the inventory.' Only when THD 'do[es not] want to take that product' does TTI sell the excess inventory through DTFO." Mot. at 11 (quoting Stearns Tr. at 90:16-91:2).

Likewise, Bonilla's assertion that Mr. Stearns testified that TTI is "selling blemished goods … whether or not they are excess or obsolete" (Opp. at 14 n.12) is contradicted by the very deposition testimony Bonilla cites: "Q: How would you determine [if a product is to be labeled factory blemished]? A: It would be a process

---

[1] Bonilla's argument that his Reports were true because, more than a year later, TTI's former CEO retired, is bizarre and nonsensical. Not only does the Amended Complaint contain no allegations relating to the former CEO, Bonilla offers no assertion, let alone any evidence, that the former CEO's retirement had anything to do with his Reports, because it did not.

6

of whether it is excess or obsolete product first and foremost[.]" ECF 109-2 at 16:1-3. Other testimony cited by Bonilla is irrelevant to any material factual issue. *See id.* at 73:15-23 (discussion of SKU count). Still other sections of the transcript Bonilla cites are not testimony at all, but instead questions by Bonilla's counsel. *See id.* at 50:2-7. Bonilla's cited testimony falls short of creating any genuine dispute of material fact regarding whether TTI was defrauding THD, and the Court should enter summary judgment for TTI on the falsity of the Second Report.

## II. BONILLA IDENTIFIES NO DISPUTE OF MATERIAL FACT REGARDING TTI'S STATUS AS A PRIVATE FIGURE

Bonilla's arguments that TTI is a public figure likewise fail.

First, the only concrete purported factual support offered for this argument are a website link to an article that refers to an interview TTI's former Chief Executive Officer did on CNBC (Opp. at 17 n.16), and a handful of websites purporting to show TTI press releases (*id.* at 19-20 n.18). This attempted reliance on factual matter outside the evidentiary record, such as website hyperlinks in footnotes, is improper. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact … is genuinely disputed must support the assertion by citing to particular parts of materials **in the record**[.]" (emphasis added)).

Second, Bonilla's argument that TTI is a public figure solely because it is a large, publicly traded company engaged in routine business operations is wrong. *See* Opp. at 17-18. Not only has this Court previously rejected this argument (*see* Order 11-12), Bonilla continues to offer no case law in support of it. In fact, Eleventh Circuit authority supports TTI. In *Long v. Cooper*, 848 F.2d 1202 (11th

7

Cir. 1988), the court ruled that a corporation that was "one of the leading discount sellers" of satellite televisions in the country was a private figure where, despite the company engaging in extensive advertising of its products, there was no evidence that it had thrust itself into the public controversy at issue. *Id.* at 1204-05. The same is true here. The few points offered by Bonilla in purported support of his theory are akin to the routine advertising and business that the *Long* court held was insufficient to render a company a public figure. Bonilla's argument fails.

Bonilla likewise offers no persuasive argument against the numerous other cases that also support this conclusion. For example, Bonilla's dismissal of the Eastern District of Pennsylvania's ruling that Hewlett Packard is not a general purpose public figure as one that "cannot be taken seriously by any court" is disrespectful, unsupported, and belied by the host of courts that have since relied on that decision. Opp. at 18 n.17 (citing *Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 535 (E.D. Pa. 1999)). Contrary to Bonilla's argument, that court did not rule that HP was a private figure "with no reasoning at all[.]" Opp. at 18 n.17. Rather, the court engaged in pages of analysis of case law, including the text and policy groundings of the Supreme Court's ruling in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), before concluding that HP's merely being a large, well-known company did not mean that it enjoyed "such pervasive fame or notoriety to be deemed a general purpose public figure" and that it did not "voluntarily thrust[] itself into a public controversy." *Computer Aid, Inc.*, 56 F. Supp. 2d at 535-37.

The *Computer Aid* reasoning applies with even more force here: TTI's

8

revenues may be significant, but it is not well-known and there is no evidence that it is pervasively famous or voluntarily thrust itself into a public controversy. Indeed, it could not have. No public controversy existed until Bonilla targeted TTI.[2]

Bonilla's laundry list of other cases lack any explication. This is for good reason, as this purported authority fails to move the needle in support of his argument. Opp. at 18-19 & nn.17-18. In *Berisha v. Lawson*, the plaintiff was the son of the former Prime Minister of Albania who claimed that allegations that he was involved in an arms dealing scandal were defamatory. 973 F.3d 1304, 1306-10 (11th Cir. 2020). After noting that the plaintiff "had one hundred percent name recognition in Albania," the court declined to rule on whether he was a general purpose public figure and instead ruled that he was a limited purpose public figure. *Id.* at 1310. In making this ruling, the court relied on the plaintiff's encouragement of third parties to make statements about him and the arms dealing scandal. *Id.* at 1310-11. To the extent the court also opined that, even without that active encouragement, the plaintiff might be a "rare case" of an involuntary limited purpose public figure, that was only because "he was widely known to the public, he had been publicly linked to a number of high-profile scandals of public interest, he availed himself of privileged access to the Albanian media in an effort to present

---

[2] Bonilla's attempt to distinguish *Mitre Sports Int'l Ltd. v. HBO, Inc.*, 22 F. Supp. 3d 240 (S.D.N.Y. 2014) fails. *See* Opp. at 18 n.17. His argument only further highlights the similarities of that case to this one: Mitre was a British manufacturer (*id.*); TTI is a Hong Kong manufacturer. Mitre was "the leading maker of soccer shoes and balls in the U.S." and sponsored Major League Soccer games attended by millions of people, *Mitre Sports*, 22 F. Supp. 3d at 248; TTI sells well-known tool brands (Opp. at 18 n.17). So like Mitre, TTI is not a public figure.

9

his own side of the story, and he was in close proximity to those in power." *Id.* at 1311. There is no evidence that any of those factors apply to TTI. Quite the opposite, the evidence—which Bonilla does not even attempt to dispute—is that "no one really knows who TTI is[.]" ECF 109-2, Stearns Tr. 96:25-97:1.

Lastly, Bonilla's attempted reliance on *World Wrestling Fed'n Entm't, Inc. v. Bozelli*, 142 F. Supp. 2d 514 (S.D.N.Y. 2001) (Opp. at 18-19 n.17), seals the futility of his argument. There, the dispute related to allegedly defamatory statements about television programming causing children to commit homicide. *Id.* at 519. The World Wrestling Federation—an entity that the Court stated "influences the television industry and the programming to which children are exposed[,]" *id.* at 523—**conceded** that it was a public figure. *Id.* at 531.[3]

Here, there is no evidence that TTI has any analogous level of influence or notoriety, and TTI has made no such concession. The Court should enter summary judgment that TTI is not a public figure.

## CONCLUSION

For the foregoing reasons and the reasons stated in TTI's motion, this Court should grant TTI's motion for summary judgment.

---

[3] Bonilla's other cases involving notorious individuals, not companies, also fall flat. Opp. at 18. James Turner was not only the head coach of an NFL football team, he was also voluntarily the focus of an HBO television show. *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018). Prakazrel Michel had won multiple Grammy awards and was a "world-renown[ed] philanthropist." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). Daniel Borislow was the subject of "extensive media coverage of his business ventures, including his high-profile involvement in the Women's Professional Soccer league" and pled that he "holds a high status" in the business community. *Borislow v. Canaccord Genuity Grp. Inc.*, 2014 WL 12580259, at *2 (S.D. Fla. Jun. 27, 2014). TTI has done none of these things; it is a private figure.

Dated: November 12, 2024

By: /s/ *Jason D. Sternberg*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
Laura N. Ferguson (FL Bar 1047701)
2601 South Bayshore Drive, 15 Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com

Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*