UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED and TECHTRONIC INDUSTRIES FACTORY OUTLETS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> VICTOR BONILLA, <br><br> Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

I. INTRODUCTION

Plaintiffs' opposition relies on totally immaterial facts and misrepresentations to the record in an attempt to distract from the legal issues.

First, the fact Bonilla made money short selling Techtronic stock is immaterial to the legal elements of defamation. This is irrelevant.

Second, Plaintiffs repeatedly lament Bonilla's reporting on their accounting manipulation by citing the fact that they operated pursuant to their accounting policies. However, Bonilla never accused Plaintiffs of not having accounting policies; he **opined** that Techtronic was accounting aggressively.

Third, Plaintiffs misinform the Court that Bonilla misquoted his sources; Plaintiffs deliberately left out of their opposition portions of the source quotations Bonilla utilized, and Bonilla did not materially change any quotation.

Plaintiffs' claims fail for other reasons as well. Plaintiffs failed to provide required statutory notice for their claim, and Plaintiffs are public figures who failed to adduce evidence of actual malice or even negligence.

II. **PLAINTIFFS' CLAIM IS BARRED DUE TO LACK OF SUFFICIENT PRE-SUIT NOTICE.**

Plaintiffs' arguments on pre-suit notice have no merit. First, Plaintiffs contend that Bonilla is not a member of the news media. However, this argument ignores the plain text of the Fla Stat. § 770.01 ("a newspaper, periodical, or other medium"). Bonilla's reports are clearly an "other medium".

Despite the categorical and plain language of the statute, the cases

1

interpreting Section 770.01 have recognized two narrow exceptions to this rule: public relations firms and websites operated solely to sell a product or disparage a competitor. *Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1337-39 (S.D. Fla. 1998); *Sirer v. Aksoy*, 2021 WL 4952610, at *5 (S.D. Fla. Oct. 25, 2021); *San Juan Products, Inc. v. River Pools & Spas, Inc.*, 2023 WL 1994087 at *3 (M.D. Fla. Feb. 14, 2023). It is undisputed that Bonilla is neither of these.[1] Plaintiffs' contention that Bonilla's reports have no informational purpose is also belied by the reports themselves—with pages and pages of charts, analysis, and endnotes.[2]

Finally, the additional exception advocated by Plaintiffs where notice need not be given to short sellers, if taken seriously, would place defamation **plaintiffs** in an impossible position—they would not know if they were required to send notice. The two already recognized exceptions—PR firms and business competitors—are facts a defamation plaintiff would have available pre-suit. However, a plaintiff would not necessarily know defendant's investment activity pre-suit and thus would not know whether notice is required.[3]

---

[1] Plaintiffs' reliance on *Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So.2d 1376, 1379-80 (4th DCA 1997) is misplaced. *Mancini* held that columnists who publish opinions in the newspaper are covered by Section 770.01's protections. Plaintiffs seize on one sentence in *Mancini* that discusses the need to protect journalists quickly reporting hot news, but *Mancini* in no way limits its holding to hot news reporting and indeed applies it to people who engage in the exact same sort of conduct that Bonilla does.

[2] For much the same reason, Plaintiffs' claim that Bonilla adduces no evidence in support of his Section 770.01 defense is without merit. In addition to Bonilla's declaration about what he does, the reports themselves are evidence that Bonilla is providing information to the public.

[3] Plaintiffs also contend that their pre-suit notice was sufficient because Plaintiffs said outside the four corners of the notice that they disagreed with Bonilla's statements, but the cases interpreting Section 770.01 decisively reject this argument—the information regarding the alleged defamatory statements needs to be in the notice, not somewhere else. *Nelson v. Associated Press, Inc.*, 667

## III. BONILLA'S STATEMENTS ARE PROTECTED OPINIONS

Plaintiffs' arguments as to why Bonilla's statements are not protected opinions miss the mark. First, this Court's prior rulings on a motion to dismiss, made without any factual record, are not law of the case and have no relevance at all to this motion. *Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991).

Plaintiffs' case citations on this issue are inapposite. [Dkt. 105 at 12–14.] *In re Paincare Holdings Securities Litigation*, 541 F. Supp. 2d 1283, 1287 (M.D. Fla. 2008), was a securities fraud case in which plaintiffs claimed that the defendants' financial statements "overstated" performance, i.e., that they were fraudulent. The opinion says nothing about whether the word "overstated" is factual.[4]

Plaintiffs' reliance on *Farmland Partners Inc. v. Rota Fortunae*, No. 18-cv-02351-KLM, 2020 WL 12574993 at *14 (D. Colo. 2020) is likewise misguided. [Dkt. 105 at 14.] *Farmland Partners* holds **as a matter of law** that the defendant's statements that the plaintiff faced a significant risk of insolvency **were opinions** not capable of being proven true or false, **and** considered the fact that

---

F. Supp. 1468, 1474-75 (S.D. Fla. 1987) (holding statute requires "best possible notice" and citing cases rejecting notices as insufficient); *Rendón v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1274 (S.D. Fla. 2019) (when defamation is alleged in a written publication, Section 770.01 requires "reference to the subject article and verbatim quotes from it").

[4] *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 519 (7th Cir. 2012), is similarly inapplicable; in *Neuros* a defamation action was reinstated after trial **not** because the word "fraud" was held factual (that was not an issue in the case) but because the defendant made all sorts of detailed false statements of fact about statements made by the plaintiffs. *Neuros* supports Bonilla's argument—the Court cannot find a triable issue of fact based on labels such as "fraud" which are pure opinion, but must focus its attention on whether any false and defamatory underlying **facts** were published.

3

the defendants labeled them "opinions" in reaching that conclusion. *Id.*[5]

## IV. THERE IS NO TRIABLE ISSUE OF FACT AS TO FALSITY.

Plaintiffs cherry-pick a few of the alleged defamatory statements and claim that there are triable issues of fact as to falsity. However, there are not. For instance, Plaintiffs argue that Bonilla falsely reported that Techtronic was "struggling to pay its bills on time." [Dkt. 98 at 15-16.] This is hyperbole ("struggling" is not a concept that can be objectively proven true or false) and Bonilla's opinion is based upon accurate and well-researched facts. The record is undisputed on this point; Plaintiffs were not paying bills on time. Helf Tr. at 75:2-76:13, 104:11-15. Instead, Plaintiffs take the position that there were certain "strategic" reasons for not timely paying their creditors. But this is immaterial. So long as Bonilla was correct that bills were not being paid (and he was), Plaintiffs' explanation as to why does not make Bonilla's statement false or defamatory.

With respect to Plaintiffs' defrauding Home Depot, these statements were proven true, as set forth in the moving papers. However, Plaintiffs claim the recorded audio statements by whistleblowers were transcribed inaccurately. [Dkt. 98 at 7.] Plaintiffs' argument is entirely unsupported. The recorded statements by these whistleblowers are in substance precisely how they are described in Bonilla's reports. What Plaintiffs call "misquoting" is nothing more than removing the

---

[5] In fact, Plaintiffs do not even attempt to defend their lawsuit as to the great majority of the statements they allege. Bonilla's statements, set out in pages 14-16 of the moving papers, are clearly his opinions. [Dkt. 98 at 14-16.] Since Plaintiff has failed to respond as to these statements, summary judgment is appropriate. *Schwarz v. Board of Supervisors*, 672 F. App'x 981, 983 (11th Cir. 2017).

4

"um's" and "uh's" and deleting filler terms and immaterial passages.[6]

## V.    THERE IS NO EVIDENCE OF ACTUAL MALICE.[7]

Plaintiffs' actual malice argument makes no reference to the legal standard for actual malice and cites no cases where similar facts to this case were found to establish actual malice, and there is no wonder—the doctrine protects Bonilla.[8]

Under controlling law, defendants are not even required to conduct **any** investigation before publishing a claim, under the actual malice standard. *Michel v. NYP Holdings*, 816 F.3d 686, 704 (11th Cir. 2016). Rather, the plaintiff must produce "facts giving rise to a reasonable inference that the defendants acted to intentionally avoid learning the truth". *Id.* This is a very stringent standard. *Id.* at 705. Thus, *Michel* held that a report based on sources who worked for an organization and had reason to know its activities was protected by the actual malice standard as a matter of law even though the defendant had seen an e-mail

---

[6] Plaintiffs likewise accuse Bonilla of defamation with regard to his opining on their accounting policies. [Dkt. 98 at 15.] But Bonilla never claimed in his reports that Plaintiffs did not have accounting policies. The only relevant question is whether Bonilla provided accurate facts to the reader to accompany his financial opinions (including his opinion whether Plaintiffs violated their own policies). And it is undisputed that the facts in Bonilla's reports were accurate. E.g., Plaintiffs are unable to point to any evidence in the record to rebut the fact that they were capitalizing intangible assets more than Makita was; or that they were not taking write-offs on scrapped property plant and equipment; or that they were not carrying dangerously high inventory that they later had to reduce. **It was all true**.

[7] Bonilla refers the Court to the discussion of this issue in Bonilla's opposition to Plaintiffs' motion for summary judgment. [Dkt. 107 at 17–20.]

[8] Once again, this Court's previous ruling on the motion to dismiss [Dkt. 39] is not law of the case and it was improper for Plaintiffs to refer to or rely upon it in their opposition. [Dkt. 105 at 12–13, 17–18, 20.]

5

that contradicted its claim.[9]  Further, *Berisha v. Lawson*, 973 F.3d 1304, 1312-13 (11th Cir. 2020), held there was no actual malice as a matter of law where defendant relied on even unreliable sources with criminal records, where their statements were consistent with other reporting.  Here, Bonilla's actual malice defense is even stronger than the defense in *Berisha*.[10]  Thus, there's no authority that comes close to permitting an actual malice finding here.[11]

Plaintiffs' argument that Bonilla "misquoted" sources is a meritless deception on this Court.  For instance, the long block quote from Vita on page 7 of Plaintiffs' brief, cited by Plaintiffs as evidence that Bonilla misquoted his sources, **omits** where Vita said it was a "no-no", which appears on page 7 of Exhibit 38.  Similarly, Plaintiffs quote Hartmann as saying he is "not sure" about Plaintiffs' deceptive conduct. [Dkt. 98 at 6.]  Plaintiffs fail to inform the Court that Hartmann then **reversed** himself after seeing the evidence of it!  Ex. 2 at 27-28. [12]

---

[9] Similarly, *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1241 (11th Cir. 1999), reviewing a trial record, found that as long as ABC consulted with experts with reason to know the subject matter, they could not have "entertained serious doubts" about their publication and did not act with actual malice.

[10] Plaintiffs contend that Bonilla somehow acted with actual malice because he did not record every single source interview.  This argument, supported by no authority, is frivolous.

[11] The only case Plaintiffs cite (in the face of Bonilla's Eleventh Circuit and Supreme Court authority) is an unpublished District Court case, *King v. Southern Poverty Law Center, Inc.*, 2023 WL 3061825, at *19 (M.D. Ala. Apr. 24, 2023), which talks about turning a "blind eye". But the "blind eye" turned in *King* was to extensive publicly available and published information that decisively refuted the defendant's claim.  Plaintiffs have not pointed to any public information that decisively refutes Bonilla's claims here; indeed, Plaintiffs have stamped many of the documents that supposedly refute Bonilla "confidential" and have required them to be filed under seal.

[12] Plaintiffs also cite Ralph Pisani's "no specific knowledge [of Techtronic]" quote, but of course, Bonilla did not utilize Pisani for specific knowledge of Techtronic.  It is undisputed he never

6

The US Supreme Court has specifically rejected the notion that correction of grammar or syntax or even significant alteration constitutes actual malice. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 515 (1991) ("We reject the idea that any alteration beyond correction of grammar or syntax by itself proves falsity in the sense relevant to determining actual malice under the First Amendment."). Only "material change" in the meaning is actionable. *Id.* at 517.[13]

## VI.   CONCLUSION

The motion should be granted.

| | |
|---|---|
| Dated: November 12, 2024<br>By: */s/ Dilan A. Esper*<br>Dilan A. Esper (*pro hac vice*)<br>desper@harderllp.com<br>Charles J. Harder (*pro hac vice*)<br>charder@harderllp.com<br>Harder Stonerock LLP<br>6300 Wilshire Boulevard,<br>Suite 640<br>Los Angeles, CA 90048<br>Telephone: (424) 203-1600<br><br>*Attorneys for Defendant Victor Bonilla* | Respectfully submitted,<br>By: */s/ Jonathan R. Weiss*<br>Jonathan R. Weiss (FBN: 57904)<br>Jonathan.weiss@squirepb.com<br>Squire Patton Boggs (US) LLP<br>200 S. Biscayne Boulevard,<br>Suite 3400<br>Miami, Florida 33131<br>Telephone: (305) 577-7000<br>Bradley W. Crocker (FBN: 118616)<br>Bradley.crocker@squirepb.com<br>Squire Patton Boggs (US) LLP<br>777 S. Harbour Island,<br>Suite 420<br>Tampa, Florida 33602<br>Telephone: (813) 202-1300 |

---

worked there, and Bonilla identified him as the former employee of a competitor. Bonilla used other sources who did work at Techtronic for specific knowledge of Techtronic.

[13] Plaintiffs argue that because Bonilla sought to make money, this shows actual malice. Of course, almost all journalism has a profit motive, and that is not considered actual malice. *Jankovic v. International Crisis Group*, 822 F.3d 576, 596 (D.C. Cir. 2016).

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 12, 2024, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record.

| | |
|---|---|
| Jason Sternberg (*pro hac vice*)<br>Quinn Emanuel Urquhart Sullivan LLP<br>2601 South Bayshore Dr., Ste 1550<br>Miami, FL 33133<br>jasonsternberg@quinnemanuel.com | Kristin Tahler (*pro hac vice*)<br>Quinn Emanuel Urquhart Sullivan LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>kristintahler@quinnemanuel.com |
| David A. Nabors<br>Fla. Bar No. 1024722<br>Quinn Emanuel Urquhart Sullivan LLP<br>2601 S. Bayshore Drive, Suite 1550<br>Miami, FL 33133-5417 | Nicholas Inns (*pro hac vice*)<br>Quinn Emanuel Urquhart Sullivan LLP<br>1300 I Street, NW, Suite 900<br>Washington, D.C. 20005<br>nicholasinns@quinnemanuel.com |

*/s/ Dilan A. Esper*
Attorney