## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## Tampa Division

TECHTRONIC INDUSTRIES COMPANY
LIMITED and TECHTRONIC INDUSTRIES
FACTORY OUTLETS, INC.,

                  Plaintiffs,

v.

VICTOR BONILLA,

                  Defendant.

Case No. 8:23-cv-01734-CEH-AEP

## NON-PARTY MUDDY WATERS' RESPONSE TO TTI'S TIME-SENSITIVE MOTION TO MODIFY STIPULATED PROTECTIVE ORDER

Non-parties Muddy Waters Capital LLC and MW Domino Management LLC (collectively, "Muddy Waters") respectfully submit this Response in opposition to TTI's Time-Sensitive Motion to Modify Stipulated Protective Order (ECF 118, "Motion").[1]  TTI fails to carry its burden of showing good cause for at least three reasons, each requiring denial of the Motion.

First, TTI requests that the Court modify the Protective Order, ECF 51-1, to allow TTI to use material designated "Confidential" by Muddy Waters for a

---

[1] Muddy Waters files this response now due to the alleged time sensitivity of the Motion.  Muddy Waters has separately sought leave to intervene for the limited purpose of opposing TTI's Motion.  For the reasons stated in Muddy Waters' Unopposed Motion to Intervene, Muddy Waters is entitled to intervene as of right or, at the very least, permissively, to protect its rights in its confidential information.  This Response in Opposition is filed without waiver or prejudice to Muddy Waters' right to object to personal jurisdiction or to raise further objections or defenses to any claim TTI might later assert.

putative new lawsuit TTI intends to file against Muddy Waters in Texas.  But the burden is on TTI to show that Muddy Waters' confidential information is necessary and relevant to a Texas claim.  TTI fails to do that.  The supposed lawsuit – which TTI describes as a defamation suit – is patently meritless.   TTI fails to identify the basic facts substantiating essential elements of defamation, namely, an allegedly false or defamatory statement made by Muddy Waters (as opposed to Mr. Bonilla) or publication of such a statement by Muddy Waters (again, as opposed to Mr. Bonilla).   Just as fundamental – and fatal – any defamation claim tied to the publication of Mr. Bonilla's 2023 reports is barred by Texas' one-year statute of limitations.

Second, Muddy Waters would be severely prejudiced by modification of the Protective Order.  The information TTI seeks to use is highly confidential and commercially sensitive, as it discloses the terms of Muddy Waters' business strategies, relationships, and practices.  And TTI has made no secret of its intent to make this information public.  The resulting prejudice to Muddy Waters thus far outweighs the need for this material (of which there is none) in the Texas lawsuit.

Third, any supposed urgency in the disposition of TTI's Motion is due to TTI's lack of diligence.  TTI should have been aware of Muddy Waters' connection to Mr. Bonilla in 2023, but it failed to seek relief from the Protective Order until now.  TTI's delay in seeking relief confirms the absence of good cause.

# I. Factual Background

## A. TTI's Complaint and the Protective Order

This action arises from TTI's allegations that Defendant Victor Bonilla defamed it. Specifically, TTI alleges that Mr. Bonilla issued two research reports – one dated February 22, 2023, and a second dated June 5, 2023 – that allegedly contain defamatory statements about TTI, including that TTI engaged in fraudulent accounting practices and defrauded one of its partners. *See* ECF 68 (Am. Compl.). Mr. Bonilla, a short seller, issued the reports under the name "Jehoshaphat Research." The Amended Complaint asserts two causes of action, Libel and Libel *Per Se*. *Id*. Mr. Bonilla is the sole defendant to this action.

This action is governed by a Protective Order, ECF 51-1, 54, which provides that "special protection" is needed "to prevent dissemination and unnecessary disclosure of . . . confidential business information, proprietary information, trade secrets, and/or confidential information." ECF 51-1 at p. 1 & § 1. It defines "CONFIDENTIAL" information as "Information (regardless of how it is generated, stored or maintained) or tangible things that are prohibited from disclosure by statute or qualify for protection under Federal Rule of Civil Procedure 26(c)." *Id*. § 2.2. The Protective Order expressly states that "[a] Receiving Party [here, TTI] may use Protected Material . . . **only** in connection with this case and for no other purpose of any kind." *Id*. § 7.1 (emphasis in original).

The Protective Order contains fundamental and agreed-on protections over the discovery materials non-party Muddy Waters produced in this case. It is this

Protective Order that TTI seeks to circumvent without demonstrating the good cause required by law.

### B. Muddy Waters' Research Agreement with Mr. Bonilla

Non-parties Muddy Waters Capital LLC and MW Domino Management LLC, its relying adviser, are each registered with the U.S. Securities and Exchange Commission. Carson Block is Muddy Waters' founder and CIO. Freddy Brick is a Muddy Waters employee. Neither Muddy Waters, Mr. Block nor Mr. Brick is a party to this action. They are not accused by TTI of making any defamatory statements in this or any other action. They are not mentioned at all in TTI's Complaint or Amended Complaint.





Mr. Bonilla discussed his research on an online platform owned by Mr. Block called ZeroesTV, ECF 118-3 & 118-4. Mr. Bonilla's interviews on ZeroesTV included a disclaimer that entities associated with ZeroesTV—a reference to Muddy Waters' funds—had positions in TTI. *See* ZeroesTV, [https://www.zeroes.tv/big-announcements/undamaged-goods/](https://www.zeroes.tv/big-announcements/undamaged-goods/) (last accessed Feb. 4, 2025) (video at 38:36). TTI thus knew or should have known at the time of these interviews that Muddy Waters was connected with Mr. Bonilla.

### C. TTI's Subpoenas to Muddy Waters, Mr. Block and Mr. Brick, and Their Depositions

TTI issued discovery subpoenas to non-parties Freddy Brick (dated March 26, 2024), Muddy Waters Capital LLC (May 23, 2024), and Carson Block (July 6 and 26, 2024). Following meet and confers and the resolution of discovery motions in the Western District of Texas, Muddy Waters and Mr. Brick produced documents in response to the subpoenas. Mr. Brick and Mr. Block were deposed. The testimony and documents produced were designated "Confidential" pursuant to the Protective Order at issue. None of the materials produced in discovery show that Muddy Waters made any false or defamatory statement concerning TTI or published any such defamatory statement.



In short, TTI cannot show that it learned anything in discovery that establishes a defamation claim against Muddy Waters – no defamatory statement by Muddy Waters and no publication of any such statement.

**D.     TTI Seeks to De-Designate Muddy Waters' Confidential Information and Use It in Litigation against Muddy Waters**

In January 2025, after the close of discovery in this action, counsel for TTI contacted counsel for Muddy Waters to meet and confer regarding TTI's requests to: (1) de-designate as "Confidential" the Research Agreement; and (2) modify the Protective Order to allow TTI to use unspecified documents, information, and testimony designated "Confidential" under the Protective Order, in a separate potential lawsuit against Muddy Waters. *See* ECF 118-9 (Ltr. from J. Sternberg to J. Summers, Jan. 2, 2025). The undersigned advised TTI's counsel, *inter alia*, that there was no good faith basis for any such lawsuit against Muddy Waters. *Id.* (Ltr. from J. Summers to J. Sternberg, Jan. 3, 2025).

In subsequent exchanges, TTI stated its disagreement with the designation of the Research Agreement as "Confidential" and – just like in the pending Motion before this Court – refused to identify the nature of the claim it intended to bring against "Muddy Waters."



ECF 118-9 (Ltr. from J. Summers to J. Sternberg, Jan. 17, 2025). After the exchange of correspondence, the parties met and conferred on

January 16.  On January 24, TTI filed the instant Motion to Modify the Protective Order.  ECF 118.

## II.  ARGUMENT

The party moving to modify a protective order bears the burden of demonstrating good cause for that modification.  *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1250 (11th Cir. 2020).  Although the Eleventh Circuit has not articulated a standard for the modification of a protective order where a party seeks to use protected information in a separate litigation, District Courts in this Circuit have applied a balancing test.  That test weighs, on the one hand, the need for or the relevance of the protected discovery in the collateral proceeding, *see, e.g.*, *Arconic, Inc. v. Universal Alloy Corp.*, No. 15-cv-11466, 2018 WL 4839225, at *3 (N.D. Ga. July 31, 2018); *Trans Techs. Co. v. Hendrickson USA, LLC*, No. 16-cv-1778, 2017 WL 11629834, at *1 (N.D. Ga. Sept. 1, 2017), against, on the other hand, the reliance interests of the producing party and the prejudice the modification would cause to that party, *see, e.g.*, *SRS Techs., Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 528 (N.D. Ala. 2003) (denying motion to modify protective order); *Santiago v. Honeywell Int'l, Inc.*, No. 16-cv-25359, 2017 WL 3610599, at *3 (same).

TTI has failed to carry its burden to show good cause.  First, there is no need or relevance for the protected discovery in any collateral litigation because TTI cannot establish any non-frivolous claim against Muddy Waters.  Second, modification of the Protective Order would severely prejudice Muddy Waters by forcing it to defend against meritless litigation and risking disclosure of its

confidential information.  Third, TTI's Motion misstates the basis for its supposed time-sensitivity, further illustrating the lack of good cause.

### A.     TTI Fails to Demonstrate that a Non-Frivolous Claim against Muddy Waters Exists

Muddy Waters' confidential discovery is not relevant to or necessary in any collateral litigation because there is no non-frivolous claim that TTI could bring against Muddy Waters in Texas.

### 1.     TTI Cannot Show any Basis for a Defamation Claim against Muddy Waters

TTI contends that the confidential discovery produced by Muddy Waters will be relevant to a new claim for defamation against Muddy Waters in Texas.  *See* ECF 118 at 10 n.4.  TTI fails to describe the precise factual nature of its supposed claim.[2]

---

[2] Despite Muddy Waters' repeated requests, TTI has never revealed the precise nature of its supposed claim against Muddy Waters.  TTI's Motion alludes to defamation but also refers in a conclusory manner to unspecified "tortious conduct" by Muddy Waters. ECF 118 at 4, 9 & 14.  To the extent TTI intends to pursue any claim against Muddy Waters apart from defamation, TTI has not described any factual basis for such a claim, much less a basis sufficient to demonstrate good cause to modify the Protective Order.

████████████████████████████████████

████████████████████████ This "secretive" arrangement,

contends TTI, is actionable.  ECF 118 at 2.  But none of this establishes any claim,

much less a defamation claim.

### (a)     TTI Cannot Establish Actionable Defamation

TTI's factual characterizations fall far short of alleging actionable

defamation.  Under Texas law, defamation requires "(1) the publication of a false

statement of fact to a third party, (2) that was defamatory concerning the plaintiff,

(3) with the requisite degree of fault, and (4) damages, in some cases." *See In re

Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015); *see also* Restatement (Second) of Torts

§ 558.[3]  But the discovery TTI seeks to use in the putative Texas litigation

conclusively shows that Muddy Waters *did not* publish the purportedly defamatory

research reports about TTI in February and June 2023.  Instead, TTI concedes that

*Mr. Bonilla* was the publisher.  ECF 118 at 1-2 ("Mr. Bonilla published two false

and misleading 'research reports' . . . .").  Muddy Waters therefore cannot be liable

for defamation, even under TTI's unsupported characterization of the record.

---

[3] "Publication occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is capable of understanding their defamatory import and in such a way that the third person did so understand." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572 (Tex. 2017) (internal quotation marks and citation omitted); *see also* Restatement (Second) of Torts § 577 (definition of publication); 50 Tex. Jur. 3d Libel and Slander § 16 ("[P]ublication of a false statement of fact to a third party is a threshold requirement for proving defamation.").

TTI glosses over these obviously fatal defects by accusing Muddy Waters of being involved with Mr. Bonilla's research reports in other ways ███████████ ███████████████████████████████████████████████████████████ ████████████████████████ (3) inviting Mr. Bonilla to appear on a streaming channel owned by Carson Block. Modifying a protective order to allow a litigant to use the confidential information of another is a serious matter; here, none of this alleged conduct comes anywhere close to being actionable as defamation or otherwise.[5] And these alleged facts fall short of the "clear and specific" pleading standard that TTI concedes it will be subject to under the Texas Anti-SLAPP law,

_____

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

[5] TTI has not asserted any publication by ZeroesTV as a basis for its purported claim against Muddy Waters; nor could TTI do so, given that ZeroesTV and Muddy Waters are separate entities. █████████████████████████████ █████████████████████████████████ Further, TTI has not identified any potential claim against ZeroesTV and no such claim exists.

the Texas Citizen's Participation Act.  *See* ECF 118 at 15 (citing Tex. Civ. Prac. & Rem. Code § 27.005(c)).

Nor could TTI allege that Muddy Waters is somehow vicariously liable for defamation, though it has not raised such a claim.  For example, some jurisdictions recognize a cause of action for civil conspiracy.  But even if TTI were making such a claim, a conspiracy requires, at a minimum, that "the defendant knew that the conduct of the tortfeasor constituted defamation and that the defendant substantially assisted the tortfeasor or encouraged that conduct." 16 Am. Jur. 2d Conspiracy § 61; *see also Backes v. Misko*, 486 S.W.3d 7, 27-28 (Tex. Ct. App. 2015) (conspiracy to defame requires "more than an inference" but rather "clear and specific evidence" that conspirators "agreed to defame" plaintiff).

Among other flaws, TTI's motion describes *no facts* suggesting that Muddy Waters acted with the requisite knowledge, giving this Court no basis to conclude that there is any non-frivolous claim.  And the existing record plainly confirms that there is no such basis:



Additionally, any claim that TTI might assert against Muddy Waters would stretch the law of defamation so far as to raise serious First Amendment concerns. A claim premised on ███████████████████████ ████████████████████ would be akin to a lawsuit against a *New York Times* subscriber over a defamatory statement appearing in that newspaper, or a lawsuit against an ACLU donor for a defamatory statement made by that organization. This would raise substantial free association concerns. *Cf. NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).

### (b)    Any Defamation Claim Is Time-Barred

Any defamation claim by TTI against Muddy Waters would fail for another critical reason, the applicable statute of limitations. Any such claim would be governed by Texas law, which applies a one-year statute of limitations to defamation and related torts. Tex. Civ. Prac. & Rem. Code § 16.002(a); *see Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). Accordingly, the alleged defamatory statements published by Mr. Bonilla in

---

[6] Other vicarious liability theories fail for similar reasons. Civil aiding and abetting liability, for example, also requires that (1) the defendant knew that the primary actor's conduct constituted a tort; and (2) the defendant intentionally assisted the primary actor. *Immobiliere Jeuness Establessement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. Ct. App. 2017).

February and June of 2023 are not actionable because the statute of limitations has already run.

Nor could TTI possibly be heard to argue that the discovery rule applies. Texas's discovery rule tolls the statute of limitations only when "the defamatory statement is inherently undiscoverable or not a matter of public knowledge." *Deaver v. Desai*, 483 S.W.3d 668, 674 (Tex. Ct. App. 2015). Here, TTI does not dispute that it learned of Mr. Bonilla's purportedly defamatory statements on the dates of their publication, *i.e.*, in February and June 2023.

TTI appears to believe that a two-year statute of limitations would apply to the claim it intends to bring against Muddy Waters in Texas. That belief seems to be the basis for TTI's designation of its motion as "time-sensitive," *i.e.*, because a two-year statute of limitations would run (under Florida law) as to Mr. Bonilla's first report in February 2025. But TTI is plainly incorrect that any law other than Texas law applies to its supposed claim against Muddy Waters. Among other reasons: ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████ (2) TTI concedes that Muddy Waters is based in Texas and does not have any connection to Florida with respect to the purported claim, ECF 118 at 4; and (3) in any event, under conflict of law principles, the law applies of the jurisdiction with the most significant relationship to the parties and the occurrence, which is undoubtedly Texas, Restatement (Second) of Conflict of Laws §§ 149, 150(1)(3).

Though TTI claims that it has a "good-faith" basis for holding Muddy Waters liable, ECF 118 at 21, respectfully, TTI's say-so is not good enough. Muddy Waters therefore requests that this Court decline to countenance TTI's baseless defamation claim. This Court should deny the Motion.

## 2. Good Cause Requires an Inquiry into the Merits of TTI's Collateral Claim

TTI argues that now is not the proper time to evaluate the merits of the suit that it intends to bring in Texas. ECF 118 at 19 (citing *Arconic*, 2018 WL 4839225, at *4). But that is not the law, and TTI's cases do not support the proposition that this Court cannot consider the merits of collateral claims when deciding whether to modify a protective order.[7] Instead, TTI's cases confirm that this Court has a duty to scrutinize whether TTI has a reasonable basis to sue Muddy Waters: a party seeking modification of a protective order must have a "reasonable need[]" for the protected discovery "in other, related litigation," *Arconic*, 2018 WL 48939225, at *4 (quoting *Insituform Techs., Inc. v. Amerik Supplies, Inc.*, No. 8-cv-333, 2015 WL 13064917, at *3 (N.D. Ga. July 31, 2018)); s*ee also Philips Med. Sys. Nederland BV v. TEC Holdings, Inc.*, No. 17-cv-2864, 2019 WL 11825448, at *1 (N.D. Ga. May 20, 2019) (same); *Trans Techs.*, 2017 WL 11629834, at *1 (asking "how relevant the protected documents would be in the other proceeding"); *In re Depositio*

---

[7] *Arconic*, on which TTI principally relies, did not involve a situation where the moving party's proposed lawsuit was meritless on its face, as TTI's supposed claim against Muddy Waters is. Rather, the party opposing modification of the protective order in *Arconic* argued that the moving party's collateral lawsuit would have been *procedurally* improper. 2018 WL 48939225, at *4.

*Centralizado*, No. 20-cv-25212, 2022 WL 21835295, at *2 (S.D. Fla. Nov. 21, 2022) (describing the basis for the movant's collateral claims). And the Court does not need to parse complicated facts or novel law; as shown above, TTI has failed to identify even the most basic facts that would support a defamation claim. Put another way, if the Court were prohibited from testing TTI's collateral claims, then the "good cause" requirement would be meaningless.

Muddy Waters is thus not seeking to be "immunized" from its purportedly tortious conduct. ECF 118 at 12, 13 & 15. All Muddy Waters asks is that the Court hold TTI to its required showing for relief, namely, identifying the legal and factual basis for a nonfrivolous claim. TTI must abide by the bargain it struck when it entered the Protective Order: Muddy Waters would produce confidential documents, but those documents are to be used in this litigation and for "no other purpose of any kind." ECF 51-1 § 7.1. Moreover, even TTI, by its own admission, "believes that it has enough information to plead its claim [against Muddy Waters] even without the information it discovered here." ECF 118 at 15. TTI should be held to that representation.

An animating concern in the case law is efficiency – whether sharing discovery between the original and collateral cases will save the parties' and the court's resources. *See In re Depositio Centralizado*, 2022 WL 21835295, at *4; *Trans Techs. Co.*, 2017 WL 11629834, at *1; *SRS Techs*, 216 F.R.D. 525, 528. Here, it would be inefficient to force Muddy Waters to re-litigate TTI's meritless claims in a second forum. By far the more efficient outcome is for this Court to put a stop

to TTI's tactics now by declining to modify the Protective Order for TTI's failure to show good cause. *See* Fed. R. Civ. P. 1 (stating that all the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

**B.** **TTI Lacks Good Cause To Modify The Protective Order Because Modification Would Prejudice Muddy Waters**

TTI has failed to establish good cause because modification of the Protective Order would significantly prejudice Muddy Waters. In particular – and in addition to the prejudice that Muddy Waters would face from having to defend against a meritless lawsuit – modification of the Protective Order would risk disclosure of Muddy Waters' confidential documents and information.

The Research Agreement contains confidential details about the business arrangement between Muddy Waters and Mr. Bonilla. Muddy Waters regards this Agreement as highly sensitive, and public disclosure would impose serious harm on Muddy Waters' business. ██████████████████████████████

████████████████████████████████████████████████████

Muddy Waters agreed to produce the Research Agreement and other confidential documents to TTI because they would be insulated from disclosure under the Protective Order. But TTI has already signaled its intent to renege on those promises and seek unsealing of the Research Agreement here. *See* ECF 118-9 (Ltr. from J. Sternberg to J. Summers, Jan. 2, 2025). TTI has also coyly signaled

- 18 -

its intent to do the same in any Texas proceeding, promising only to keep the Research Agreement under seal at the *outset* of the Texas lawsuit. ECF 118 at 10 (promising to "file the information in question under seal *in the first instance*") (emphasis added); *id.* at 18 ("TTI will maintain the current confidentiality designations *when filing* its new suit.") (emphasis added). Far from "obviating any conceivable prejudice Muddy Waters could face," *id.* at 18, TTI's statements confirm that Muddy Waters will be prejudiced by likely having to defend the confidentiality of its documents in two forums.

### C. TTI Lacks Good Cause to Modify the Protective Order Because TTI's Motion Misstates the Basis for Its Time-Sensitivity

TTI misstates the factual basis for its purported time-sensitivity. TTI claims that it must file a claim against Muddy Waters now because TTI did not learn of the supposedly "clandestine arrangement" between Muddy Waters and Mr. Bonilla ███████████████████████████████████████████████████ ████████████ In fact, however, TTI knew or could easily have known that Muddy Waters had traded on Mr. Bonilla's research as early as February 2023, when the first report was published. This is because (1) on the date he published each report, Mr. Bonilla pseudonymously discussed his TTI short thesis on ZeroesTV, a streaming service openly associated with Carson Block, the principal of Muddy Waters; and (2) each of these interviews included a disclaimer that entities under common control with ZeroesTV—a reference to Muddy Waters' funds—had

positions in TTI. TTI's contention that Muddy Waters was unknown to it until June 30, 2024 thus strains credulity.[8]

## III. CONCLUSION

For the foregoing reasons, the Court should deny TTI's Motion to Modify the Stipulated Protective Order.

Date: February 7, 2025          Respectfully submitted,

/s/ John E. Clabby
John E. Clabby
Florida Bar Number 113664
Julian C. Velez
Florida Bar Number 1032236
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor (33607)
P.O. Box 3239
Tampa, Florida 33601
Telephone: (813) 223-7000
Fax: (813) 229-4133
jclabby@carltonfields.com
jcvelez@carltonfields.com

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
John S. Summers (*pro hac vice* forthcoming)
jsummers@hangley.com
Andrew M. Erdlen (*pro hac vice*)
aerdlen@hangley.com
Kyle Victor (*pro hac vice*)
kvictor@hangley.com
Mark A. Aronchick (*pro hac vice*)
maronchick@hangley.com
One Logan Square, 27th Floor
Philadelphia, PA 19103

---

[8] Mr. Bonilla's opposition to TTI's Motion asserts additional bases on which TTI learned or should have learned of Muddy Waters' relationship with Mr. Bonilla well before June 30, 2024, including Mr. Bonilla's written discovery responses.

(215) 568-6200

*Counsel for Non-Parties Muddy Waters Capital LLC and MW Domino Management LLC*