UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED and
TECHTRONIC INDUSTRIES FACTORY
OUTLETS, INC.,

      Plaintiffs,

  v.

VICTOR BONILLA,

      Defendant.

Case No. 8:23-cv-01734-CEH-AEP

## MOTION OF VICTOR BONILLA TO REMOVE CONFIDENTIALITY DESIGNATION FROM CERTAIN DOCUMENTS PRODUCED BY TECHTRONIC

### I. INTRODUCTION

Defendant Victor Bonilla hereby moves, under the terms of this Court's protective order [Dkt. 51-1], for certain documents designated as "confidential" by Plaintiffs to be re-designated as non-confidential.

This defamation suit arises out of a public dispute between Plaintiffs Techtronic Industries Co. Ltd. and Techtronic Industries Factory Outlet, Inc. (collectively, "Techtronic"), two large tool manufacturers and retailers, on the one hand, and Bonilla, a business journalist and financial analyst who

publishes information about publicly traded companies of interest to the public and investors, on the other.

In this suit, Techtronic has made serious and grave public allegations that charge Bonilla with lying to the public in order to drive down Techtronic's stock price and profit from stock trades. As a result, this lawsuit has been damaging to Bonilla's reputation as a financial analyst.

Bonilla has obtained information in discovery that Bonilla believes establishes that his statements concerning Techtronic are true or substantially true. However, conveniently, Techtronic has marked this evidence as "confidential." Thus, while Techtronic continues to tell the world that Bonilla is a liar (and indeed just filed **another** public lawsuit against a third party in Texas repeating the same charges against Bonilla), Bonilla is unable to defend himself by pointing to the evidence that substantiates his financial reporting and that serves as the basis of his "truth" defense.

The evidence described in this motion is the same information that Techtronic voluntarily put at issue in this public lawsuit. By way of example, Techtronic has repeatedly alleged that it has a contract with Home Depot U.S.A., Inc. ("Home Depot") that allows Techtronic to sell certain products at Techtronic's factory outlet stores, Direct Tools Factory Outlet, as "exclusive to Home Depot." Yet, Techtronic has sought to ███████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████.

In effect, Techtronic is using the "confidentiality" designation as both a sword and a shield; ████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████.

There is no legitimate confidentiality interest here. "Confidentiality" is about protecting certain subject matters from discussion, not protecting the right of a party to a lawsuit to tell a false story in public while keeping the true story secret as "confidential."

Further, any legitimate interest Techtronic could have in confidentiality is very weak given that, once this case goes to trial, the "confidential" information will be shared in court and openly discussed in public proceedings anyway. The parties will openly debate whether Techtronic's supposedly confidential records show that Bonilla's reporting was true, substantially true, or false. There is simply no way, having filed this action, that Techtronic will be able to avoid public scrutiny of the subject matters that it chose to discuss in its Amended Complaint [Dkt. 68].

Finally, a significant public interest is involved as well. Techtronic is a massive multinational public company that makes some of the most famous brands of tools in the world and has an exclusive contract with Home Depot, one of the most famous retailers in the world. Bonilla is a business journalist and financial analyst who issues public reports about publicly traded companies of interest to investors. The general public has a strong interest in knowing who is telling the truth here. Techtronic is using confidentiality restrictions to hide from the public the information necessary to make this determination.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Techtronic's Amended Complaint

Techtronic alleges as follows: Techtronic is a publicly held Hong Kong company with $20 billion in market capitalization and $13 billion in annual revenue. Dkt. 68 at 4. It is one of 50 companies in the Heng Seng Index, which is the Hong Kong equivalent of the Dow Jones Industrial Average. *Id.* at 5. Techtronic's lines of product include a bevy of famous brand names: Ryobi, Milwaukee, Hoover, Oreck and Dirt Devil. *Id.* As a publicly traded company, Techtronic publishes its financial results twice a year. *Id.* at 6.

Techtronic has a contract with Home Depot under which Home Depot has the exclusive right to sell Ryobi products in the United States. *Id.*[1] Despite the claim of exclusivity that Home Depot makes to the public, Techtronic pleads that it operates a factory outlet program where Techtronic can nonetheless sell certain categories of Ryobi tools directly to the public. Dkt. 68 at 6–7. According to Techtronic's pleading, those categories include: (1) factory reconditioned products, (2) "factory blemished products that TTI cannot deliver to Home Depot due to imperfections in or damage to the packaging of the products", (3) excess products, and (4) obsolete products. *Id.*

Bonilla publishes research reports on publicly traded companies, including companies whose stock he has shorted. *Id.* at 7–8. Bonilla published two reports about Techtronic, in February and June 2023 (the "First Report" and "Second Report," respectively), which Techtronic claims contain false and defamatory statements. *Id.* at 9–20. The First Report relates to several suspicious items that Bonilla found in Techtronic's financial reports. Techtronic alleges that Bonilla's claims regarding these items are false and defamatory.

---

[1] Home Depot advertises Techtronic's Ryobi products to the public as "exclusive." *See* https://www.homedepot.com/b/RYOBI/Exclusive/N-5yc1vZm5dZ1z17hrl .

For instance, in his First Report, Bonilla claimed that Techtronic capitalized its research and development costs in a way that made its financial results misleading as compared to competitors who handled this issue differently; Techtronic contends this is false and defamatory. *Id.* at 9–10. Bonilla claimed that Techtronic under-depreciated its assets resulting in later write-offs when it sold materials for scrap; Techtronic contends this is false and defamatory as well. *Id.* at 9–11. Bonilla claimed that Techtronic was not writing off aging accounts receivable that had not been collected; Techtronic contends this is false a defamatory as well. *Id.* at 10–11. Bonilla also claimed that Techtronic was failing to timely pay accounts payable; Techtronic contends this is false and defamatory. *Id.* at 10–11.

In Bonilla's Second Report, Bonilla claimed that Techtronic was mislabeling non-blemished Ryobi tools as "factory blemished" so that Techtronic could sell them in its own factory outlet stores rather than at Home Depot, despite Home Depot's public claim that Ryobi tools are exclusively sold at Home Depot. *Id.* at 14, 16. Techtronic contends this is false and defamatory. *Id.* at 15.

**B. The Protective Order**

In January 2024, the parties stipulated to a protective order as discovery was getting underway, and the Magistrate Judge signed it on January 30, 2024. Dkt. 54. The protective order permits the designation of information as

"confidential" that is "prohibited from disclosure by statute or qualif[ies] for protection under Federal Rule of Civil Procedure 26(c)". Dkt. 51-1 at ¶ 2.2. (Rule 26(c) does not contain specific standards for confidentiality but allows for protection of trade secrets as well as material that would cause "annoyance, embarrassment, oppression, or undue burden or expense".)

> Each Party or Non-Party that designates information or items for protection under this Protective Order must in good faith take care to limit any such designation to specific material that qualifies under the appropriate standards. The designation of any document, material, or information as "CONFIDENTIAL" . . . shall constitute a representation that such document, material, or information has been reviewed by an attorney for the Designating Party and that, in such counsel's opinion, there is a good faith basis for such designation.

*Id.* at ¶ 5.1.

Confidential information may not be disclosed other than as part of the case and only to those categories of people listed in the protective order. Dkt. *Id.* at ¶¶ 70.1, 7.2. However, the order does not prohibit the use of confidential information in a public trial. *Id.* at ¶ 3.

Any party can challenge a designation of confidentiality at any time. *Id.* at ¶ 6.1. The order provides that, after a meet and confer process, the party may move for de-designation to the Court, and contains no restrictions on the Court's power to de-designate materials. *Id.* at ¶ 6.3.

**C. Depositions**

Bonilla deposed Techtronic's Vice President of Group Finance, Katherine Helf, as well as the Senior Vice President of Direct Tools Factory Outlet, David Stearns, in July 2024. Declaration of Dilan A. Esper. ¶¶ 3–4. The following month, he conducted the deposition of an expert witness for Techtronic, Jeffrey Kopa. *Id.* ¶ 5. At the conclusion of each examination, counsel for Techtronic verbally designated the entire deposition transcript as "confidential" on the record pursuant to Paragraph 5.3(b) of the Stipulated Protective Order. *Id.* ¶¶ 4–5.

Each of the witnesses delivered multiple hours of testimony, the vast majority of which does not satisfy the criteria for treatment as "confidential" under the order, *i.e.*, neither "prohibited from disclosure by statute" nor "qualify[ing] for protection under Federal Rule of Civil Procedure 26(c)." Dkt. 51-1 at ¶ 2.2; Esper Decl. ¶ 6.

**D. The Documents At Issue**

On November 20, 2024, counsel for Bonilla sent a letter to counsel for Techtronic listing various documents that he wished be de-designated. Esper Decl., Ex. A. On December 16, 2024, Techtronic agreed to de-designate certain documents but declined to de-designate many others. *Id.* Ex. B. The documents it declined to de-designate include:

1. ████████████████████████████████████
████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████

2. All deposition testimony of Techtronic executive Katherine Helf and Home Depot executive David Stearns, including testimony discussing what goods Techtronic was permitted to sell at Home Depot, as well as the facts relating to the other defamation allegations (capitalization of research and development, depreciation, accounts payable and receivable) advanced by Techtronic.  (Techtronic designated each **entire transcript** as "confidential".)

3. All deposition testimony of Techtronic's expert Jeffrey Kopa, including his testimony concerning the amount of and basis for the damages that Techtronic claims to have suffered as a result of Bonilla's alleged defamation.  (Techtronic designated this **entire transcript** as "confidential".)

4. The expert reports of Jeffrey Kopa, and of Bonilla's expert Chris Westland, which extensively discuss Techtronic's damages theories that it intends to present to the jury.

5. Techtronic's accounting policies that it claims it followed with respect to Bonilla's contentions in the First Report.

6. Redacted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ disclose the amounts that Techtronic claims ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as a result of Bonilla's alleged defamation. (Techtronic never produced the un-redacted documents.)

7. Correspondence showing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that Techtronic claims as damages in this case.

Esper Decl. ¶ 9.

The parties met and conferred on December 30, 2024, but Techtronic refused to de-designate any additional documents. *Id.* ¶ 10.

### E. Techtronic Publicly Discloses Victor Bonilla's Confidential Information.

In the fall of 2024, the parties briefed their respective cross-motions for summary judgment. In Techtronic's reply papers (after properly filing the information under seal in initial briefing), Techtronic publicly disclosed the amount of money that Victor Bonilla made based on a private agreement with Muddy Waters, which was information that had been marked "confidential" in the discovery process. Dkt. 114 at 1.

### F. Techtronic Sues Muddy Waters and Publicly Repeats Its Claims That Bonilla Made False Statements of and Concerning Techtronic.

Techtronic informed this Court during the recent proceedings on its motion to permit use of confidential information that it intended to sue Muddy Waters Capital LLC, another investment company and research analyst ("Muddy Waters"). It has now done so and, in the Complaint of that case, Techtronic repeats many of the allegations against Bonilla that it made in this litigation, giving these allegations yet more publicity and public exposure. *Techtronic Industries Co. v. Muddy Waters Capital LLC*, No. 1:25-cv-00249 (W.D. Tex. Feb. 20, 2025) Dkt. 1.

Prior to filing its Complaint against Muddy Waters, Techtronic successfully moved this Court to modify the protective order so as to allow Techtronic to publicly reference confidential information that was discovered in this case. Dkt. 146. Among Techtronic's arguments was that Muddy Waters should not be able to use the protective order as a shield. Dkt. 118. Techtronic has therefore already benefited from the public dissemination of confidential information in this case, through modification of the protective order. Bonilla now asks this Court for that same treatment.

### III.  ARGUMENT

The text of the Protective Order as well as Eleventh Circuit authority grant this Court wide discretion to de-designate documents. *See Federal Trade Commission v. Abbvie Products LLC*, 713 F.3d 54, 61 (11th Cir. 2013). (Indeed, this Court just exercised that discretion in allowing Techtronic to use


information from this case in its Texas district court suit against Muddy Waters. Dkt. 146.)

There is a common law right of access to the courts that extends to the right of the public to access documents from court cases. *Landmark Communications v. Virginia*, 435 U.S. 829, 839 (1978). That creates a presumption of public access. *Perez-Guerrero v. U.S. Attorney General*, 717 F.3d 1224, 1236 (11th Cir. 2013).

However, that right of access is not absolute. Courts have unquestioned power to fashion protective orders to protect private and confidential information disclosed in the discovery process. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Trial courts must weigh the "competing needs and interests of parties affected by discovery." *Id.* This balancing test is the legal standard for a de-designation motion. *Pettaway v. Barber*, 645 F. Supp. 3d 1269, 1276 (M.D. Ala. 2022).

Bonilla, as the moving party, bears the burden of proof. *Id.* However, in the absence of "a particularized showing of the specific harm that would result from loss of confidentiality on the documents at issue and how that harm outweighs the interest of the public in accessing information regarding a publicly filed dispute," Bonilla should be granted relief. *Theriot v. Northwestern Mutual Life Insurance Co.*, 382 F. Supp. 3d 1255, 1259 (M.D. Ala. 2019) (holding internal documents produced by corporation non-

confidential where the corporation was unable to demonstrate any specific harm that would result from public disclosure).

> [C]ourts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative.

*Id.* at 1277 (quoting *Romero v. Drummond Co.*, 480 F.3d 1234, 1236 (11th Cir. 2007)).

Under this multifactor balancing test, this Court should exercise its discretion and de-designate the documents. Such a de-designation will not impair any court functions. This is not the sort of case that is so famous that potential jurors would be reading the financial press and learning about claims made by the litigants herein, and it would be easy to screen any jurors who did hear about either of these parties' statements during *voir dire*.

Nor will it harm legitimate privacy interests; while Techtronic has every right to shield information that may have been disclosed in discovery that involves confidential business matters having little to do with its claims against Bonilla, Techtronic has no privacy interests in the subjects it put at issue by making public claims against Bonilla. It has no legitimate privacy interest in the documents that will show whether the public allegations it has lodged against Bonilla are true or false.

-13-

This is especially the case when a number of the documents at issue (including, most importantly, Techtronic's contract with Home Depot) have already been heavily redacted. The issue is narrowly limited to the disclosure of the specific portions of these documents that Techtronic deemed directly relevant to its claims in this action.

In any event, any concern about Techtronic's privacy interests are further mitigated by the fact that, at trial, all of these documents and all of Techtronic's internal policies and practices with respect to the subject areas of Techtronic's defamation claims will be publicly discussed in open court. Indeed, the redacted Home Depot contract will be a central piece of evidence.

Techtronic is not likely to suffer any cognizable injury if this information is made public. The only possible such injury would be that its defamation claims might be proven to be false or overstated, but that is not an injury the Court should take into account.

There is no dispute as to the reliability of this information. All of it comes directly from Techtronic. Techtronic has extensive access to the press as a multi-billion dollar corporation and will have every chance to respond to any publicity that this information garners.

The information concerns matters of great public concern. This is a lawsuit between a multi-billion dollar, publicly traded multinational company and a business journalist and financial analyst who has been charged with

publishing misleading public statements. Whether or not Bonilla's reports are truthful is of massive importance to the investing public; indeed, the main theory of damages Techtronic advances here is that investors took Bonilla's reports so seriously that they sold their shares of Techtronic stock. Dkt. 68 at 13, 21. Techtronic has also selectively presented to the public "facts" that cast Bonilla in the worst possible light (including information marked "confidential" relating to Bonilla's relationship with Muddy Waters) while asserting confidentiality to prevent any public rebuttal.

Finally, there is no other alternative available that will allow Bonilla to protect and restore his reputation against Techtronic's public attacks through its lawsuits. Techtronic has told the world that Bonilla is a liar; he should be entitled to point to Techtronic's documents that prove he told the truth.

Accordingly, the factors overwhelmingly favor public access to these documents. Techtronic, having told the public that Bonilla lied about the company, should not be permitted to use a confidentiality designation to prevent Bonilla from restoring his reputation and getting the truth out.

Very specifically, Bonilla should be able to tell the public (1) whether in fact he was right that the Home Depot contract does not permit sales of "factory blemished" goods at factory outlet stores, (2) whether or not Techtronic followed its own policies as to the accounting issues raised in the First Report, and (3) whether or not Techtronic suffered the damages it claims it suffered.

The public interest will be served from hearing both sides of the story and not only Techtronic's highly publicized and inaccurate version of the facts.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant this motion and designate the documents at issue as non-confidential.

Dated:  March 6, 2025          Respectfully submitted,

By: */s/ Dilan A. Esper*
Dilan A. Esper (*pro hac vice*)
DEsper@HarderStonerock.com

Charles J. Harder (*pro hac vice*)
CHarder@HarderStonerock.com
Harder Stonerock LLP
6300 Wilshire Boulevard, Suite 640
Los Angeles, CA 90048
Telephone (424) 203-1600

By: */s/ Jonathan R. Weiss*
Jonathan R. Weiss (FBN: 57904)
Jonathan.weiss@squirepb.com
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard,
Suite 3400
Miami, Florida 33131
Telephone: (305) 577-7000
Bradley W. Crocker (FBN: 118616)
Bradley.crocker@squirepb.com
Squire Patton Boggs (US) LLP
777 S. Harbour Island, Suite 420
Tampa, Florida 33602
Telephone: (813) 202-1300

*Attorneys for Defendant Victor Bonilla*

I HEREBY CERTIFY that on March 6, 2025, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record

| | |
|---|---|
| Jason Sternberg (*pro hac vice*)<br>Quinn Emanuel Urquhart Sullivan LLP<br>2601 South Bayshore Dr., Ste 1550<br>Miami, FL 33133<br>jasonsternberg@quinnemanuel.com | Kristin Tahler (*pro hac vice*)<br>Quinn Emanuel Urquhart Sullivan LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017<br>kristintahler@quinnemanuel.com |
| David A. Nabors<br>Fla. Bar No. 1024722<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>2601 S. Bayshore Drive, Suite 1550<br>Miami, FL 33133-5417 | Nicholas Inns (*pro hac vice*)<br>Quinn Emanuel Urquhart Sullivan LLP<br>1300 I Street, NW, Suite 900<br>Washington, D.C. 20005<br>nicholasinns@quinnemanuel.com |

*/s/    Dilan A. Esper*
　　Attorney