UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED and
TECHTRONIC INDUSTRIES
FACTORY OUTLETS, INC.,

    Plaintiffs,

v.                                        Case No: 8:23-cv-1734-CEH-AEP

VICTOR BONILLA,

    Defendant.
_____/

# **ORDER**

This matter comes before the Court on Plaintiffs' Motion to Strike and Exclude the Opinions and Reports of Expert J. Christopher Westland (Doc. 95).[1] Plaintiffs request the Court exclude the opinions and testimony of Defendant's expert pursuant to Fed. R. Civ. P. 37 and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Defendant Victor Bonilla filed a response in opposition. Doc. 108.[2] The Court, having considered the motion and being fully advised in the premises, will deny, as moot the motion directed to Dr. Westland's opinions related to the First Report[3] and grant the Plaintiffs' motion to exclude the opinions of Dr. Westland

---

[1] The unredacted version of Plaintiffs' motion is filed under seal at Doc. 94-27.
[2] The unredacted version of Bonilla's response is filed under seal at Doc. 109-3.
[3] On September 19, 2025, this Court granted summary judgment in Defendant's favor on Plaintiffs' claims related to the First Report, and thus Plaintiffs' claims related to the First Report are no longer at issue in the case. *See* Doc. 179.

related to the Second Report. The Court defers ruling on Dr. Westland's opinions in the supplemental report to the extent they are directed to the opinions of Mr. Kopa and Mr. Rubel and are related to the Second Report.

I.  **BACKGROUND**[4]

In this defamation action, Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. ("Plaintiffs" or "TTI") sue Defendant Victor Bonilla ("Defendant" or "Bonilla") for statements made about TTI and its business practices by Bonilla in two reports he authored and published on his website Jehoshaphat Research in February and June 2023. TTI, a Hong Kong company traded on the Hong Kong Stock Exchange, manufactures well-known brands including Ryobi, Milwaukee, Hoover, Oreck, and Dirt Devil. TTI has a contract with Home Depot to have exclusive rights to sell certain merchandise in Home Depot stores. When TTI sells goods in its factory outlet stores ("DTFO stores"), the goods are labeled "blemished." In sum, Bonilla's "research" reports accuse TTI of corporate malfeasance in their accounting and of defrauding Home Depot, one of their biggest customers.

In August 2023, TTI filed this action suing Bonilla for libel and libel per se. Doc. 1. TTI's complaint seeks damages from Bonilla for publishing the alleged false and defamatory reports so that he could profit from short-selling TTI's stock. *Id.* The parties filed cross motions for summary judgment (Docs. 92, 101). In an order dated

---

[4] Additional background regarding the action can be found in the Court's Order on cross motions for summary judgment. *See* Doc. 179 at 2–7.

September 19, 2025, the Court granted in part and denied in part the parties' motions. Doc. 179. The Court granted Bonilla's motion for summary judgment as to the claims of defamation arising out of the First Report published by Bonilla (in February 2023) and denied Bonilla's motion as to the claims arising out of statements made in the Second Report (in June 2023). *See id.* The Court granted, in part, TTI's motion for partial summary judgment as to the falsity of the statements in the Second Report and as to TTI's status as a private figure. *Id.*

Pending before the Court is the Plaintiffs' Motion to Strike Defendant's Expert Dr. J. Christopher Westland. Doc. 95. Dr. Westland provided an initial report dated July 26, 2024 (Doc. 94-23) and a supplemental report (in response to the expert reports of Mr. Rubel and Mr. Kopa, Plaintiffs' experts) dated August 9, 2024 (Doc. 94-24). Dr. Westland was deposed August 22, 2024 (Doc. 94-22). TTI moves to strike Bonilla's expert under Fed. R. Civ. P. 37(c) because Dr. Westland violated Rule 26(a) in failing to provide the data upon which he relied in conducting his analysis. Next, TTI contends that Dr. Westland's opinions and testimony should be excluded under *Daubert* because Dr. Westland is unqualified and his opinions are unreliable.

Bonilla opposes the motion, arguing that TTI's challenges to Dr. Westland go to the weight of his opinions and not his qualifications or his methodologies. Doc. 108. Given the Court's summary judgment ruling in favor of Bonilla related to the statements made in the First Report, the Court will deny the motion as moot regarding

Dr. Westland's testimony and opinions directed to the First Report.[5] Because the Court finds that Dr. Westland's opinions related to the Second Report lack reliability and/or will be unhelpful to the jury, TTI's motion to exclude the testimony and opinions of Dr. Westland is granted as to the expert's testimony and opinions directed to the Second Report. The Court defers ruling as to the testimony and opinions of Dr. Westland from the supplemental report in response to the opinions of Mr. Rubel and Mr. Kopa related to the Second Report.[6]

## II.   LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[5] The denial of the motion will be without prejudice. To the extent that Plaintiffs and/or Defendant take the position that Dr. Westland's opinions related to the First Report are relevant to issues pertaining to the Second Report, such as damages, for example, the parties shall confer and may file a renewed motion, as necessary, on or before October 31, 2025.
[6] By separate order, the Court will address Dr. Westland's opinions contained in his supplemental report directed to Plaintiffs' experts, Mr. Kopa and Mr. Rubel, when the Court addresses the Defendant's *Daubert* Motion to Strike Jeffrey Kopa, CFA (Doc. 168).

Fed. R. Evid. 702. Rule 702 is a codification of the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.* at 589; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). The Supreme Court extended its reasoning in *Daubert* to non-scientist experts in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

> In performing its gatekeeping function, the Court must consider whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Thus, the three discrete inquiries to determine the admissibility of expert testimony are qualifications, relevance, and reliability. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1341 (11th Cir. 2003). Although there is some overlap among these inquiries, they are distinct concepts that the Court and litigants must not conflate. *Id.*

"The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004) (citation omitted). "Presenting a summary of a proffered expert's

5

testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1113 (11th Cir. 2005). The admission of expert testimony is a matter within the discretion of the district court, which is afforded considerable leeway in making its determination. *Frazier*, 387 F.3d at 1258.

"The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786. The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999).

Under Rule 37(c)(1), a district court may exclude expert testimony if the proponent does not provide information as required by Rule 26(a). Fed. R. Civ. P. 37(c); *Romero v. Drummond Co.*, 552 F. 3d 1303, 1323 (11th Cir. 2008). If the proponent can show that its failure to abide by Rule 26(a) was substantially justified or harmless, the Court has broad discretion to decide whether it will admit the evidence. Fed. R. Civ. P. 37(c)(1). *See also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1315 (11th Cir. 2014) ("District courts have broad discretion to exclude untimely disclosed expert-witness testimony.").

And under Rule 26, a party must supplement an expert witness's report and testimony. Fed. R. Civ. P. 26(e)(2). A party must supplement expert disclosures under Rule 26(e) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect ...." Fed. R. Civ. P. 26(e)(1)(A). A party must supplement its expert disclosures "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.* The noncomplying party must establish that a failure to disclose is substantially justified or harmless.

## III. DISCUSSION

In his report, Dr. Westland offers the following opinions regarding the statements made by Bonilla in the Second Report.[7]

- Bonilla's calculation of revenue for DTFO is very conservative and his methods are appropriate. Doc. 94-23 at 27.

- TTI's stock price movements around June 5, 2023, when conflating factors are discounted,[8] appear to be random. (Doc. 94-23 at 26). Traders discounted as implausible the Second Report's claim of fraud on Home Depot, and as such, the report had seemingly no significant impact on stock price. *Id.* at 26. In his deposition Dr. Westland explained that mentioning the share price in his report was for purposes of context and was not an opinion. He clarified that his opinion is about market value impact and investor return impact. He opined

---

[7] Dr. Westland's initial report contained lengthy narratives/summaries of Bonilla's reports making it difficult to discern from Dr. Westland's initial report whether some of this narrative intended to be merely observations or an offered opinion. For that reason and because the Court granted summary judgment in Bonilla's favor on the issues related to the First Report, this order focuses on the opinions set forth in the section of the Westland initial report that specifically addresses Bonilla's Second Report. *See* Doc. 94-23 at 24–27.

[8] Dr. Westland explains in greater detail related to his opinions directed to the First Report that conflating macroeconomic factors include changes in the Federal Reserve Rate, the M2 money supply, Personal Consumption Expenditures Index, and average sales prices of houses. These factors, Dr. Westland opines, depressed the demand for home workshop and home building tools such as manufactured by TTI. Doc. 94-23 at 6.

7

that whether using the date June 5 or June 6, there is no change in either investor wealth or TTI's wealth due to the Second Report. Doc. 94-22 at 34–35.

1. Qualifications

The first question under *Daubert* is whether the proposed expert witness is qualified to testify competently regarding the matters he or she intends to address. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998). Dr. Westland holds a Ph.D. in Computers and Information Systems from the University of Michigan and an MBA in accounting from Indiana University. Doc. 94-23 at 3. Over the past thirty years, Dr. Westland's primary scholarly research has focused on data analytics and machine learning in accounting and finance. According to Bonilla's response, Dr. Westland has taught at several domestic and overseas academic institutions, including the Hong Kong University of Science and Technology, Tsinghua University, University of Science and Technology of China, Harbin Institute of Technology and others. In 2012 he received High-Level Foreign Expert status in China under the 1000-Talents Plan and is currently Overseas Chair Professor at Beihang University.

Plaintiffs do not specifically challenge Dr. Westland's professional credentials. Rather, they attack his qualifications to the extent that Dr. Westland himself acknowledged a lack of experience with employer incentive plans and Hong Kong accounting standards.[9] Doc. 95 at 3. Given Dr. Westland's education, credentials, and

---

[9] These challenges appear more relevant to Dr. Westland's opinions directed to the First Report, which the Court finds, in this order, to be moot given the Court's ruling on summary judgment. *See* Doc. 179.

experience, Dr. Westland appears at least nominally qualified to offer opinions in data analysis. That said, because the Court concludes that the opinions he offers regarding the Second Report are not reliable and/or are unhelpful to the jury, the motion to exclude Dr. Westland will be granted, in part.

    2.    <u>Methodology</u>

The second prong of the *Daubert* analysis considers whether Dr. Westland's methodology is reliable. "Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Frazier*, 387 F.3d at 1262 (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four non-exhaustive factors district courts consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

*Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. *Id.* (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (citation and

9

internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" *Seamon*, 813 F.3d at 988 (citation omitted).

Regarding Dr. Westland's opinion that Bonilla's calculation of revenue for DTFO is very conservative and his methods appropriate, the opinion is not well-supported or reliable. Discussing Bonilla's Second Report, Dr. Westland finds the online retailer comparisons used by Bonilla to be "appropriate" comparison companies based upon the monthly visitor traffic. He concludes the methods utilized by Bonilla in his calculations are appropriate. However, as Bonilla concedes in his response to TTI's motion for partial summary judgment, he got the numbers (very) wrong about DTFO's sales and profit. Doc. 107 at 17. Bonilla argues that it would be error for the Court to strike Dr. Westland's opinion for relying on facts that were wrong. In support, he submits that Fed. R. Evid. 702 is "not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Here, however, there are not two versions of the facts. It is undisputed that Bonilla admittedly used the wrong numbers in the Second Report—Bonilla reported that DTFO had annual sales of $1-2 billion when evidence shows that DTFO had only $100 million in annual sales. *See* Doc. 107 at 17; Doc. 1-2 at 2. Dr. Westland's reliance on Bonilla's incorrect numbers from the Second Report wholly undermines his opinion that Bonilla's calculation of DTFO revenues was appropriate and conservative, making the opinion unreliable.

10

Regarding Dr. Westland's opinion about the market value and investor return impact, Plaintiffs contend Dr. Westland's opinions are unreliable because he analyzed the wrong date when considering the effect that the Second Report had on TTI's stock price. That is, although the Second Report is dated June 5th, it was not published in Hong Kong until June 6th because of the time change. Thus, TTI argues Dr. Westland's analysis of TTI's stock price on June 5 (the day before the report was published in Hong Kong) was in error. In his deposition, Dr. Westland acknowledges this error, conceding the event date should have been June 6, 2023 (Doc. 94-22 at 32, 40),[10] but Dr. Westland testified that he recalculated his event study based on a June 6th event date and opined that it made no difference. *Id.* at 40. However, at his August 2024 deposition he acknowledged he did not provide any data related to that event study to counsel.[11] *Id.* The ability to test an expert's methodology is one of the factors courts consider in determining the reliability of the opinion. The expert's failure to provide the supporting data he relies upon to demonstrate there would be no difference in using a June 6 date versus a June 5 date precludes any meaningful testing of his opinion and undercuts the reliability of the opinion.

Dr. Westland also opined that traders apparently discounted as implausible the Second Report's claim of fraud on Home Depot, and as such the report had seemingly

---

[10] The Court refers to the CM/ECF page number when citing to depositions and other exhibits filed in the court record.
[11] Bonilla's response indicates that supplemental spreadsheets containing additional backup data were provided on July 31, 2024 (Doc. 108 at 5–6), but according to Westland's testimony, that would not have included information related to his recalculated event study based on a June 6th event date.

11

no significant impact on stock price. According to Dr. Westland, "[t]he financial markets appeared to completely disregard the allegations" and "ignored the second report." Doc. 94-23 at 26. He states that the reasons for this dismissal are "unclear." *Id.* The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). How a court evaluates reliability will vary from case to case, but in all cases of proffered expert testimony, the court must find that it is "properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.* at 1262 (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.)). Dr. Westland's opinion that traders simply ignored or discounted the Second Report, for reasons he cannot explain, appears speculative at best.

      3.    <u>Helpfulness to the Jury</u>

The Court next considers whether an expert's opinions would be helpful to the jury. To satisfy the helpfulness requirement, expert testimony must be relevant to an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). Relevant expert testimony "logically advances a material aspect of the proposing party's case" and "fits" the disputed facts. *McDowell v. Brown*, 392 F.3d 1283, 1298–99 (11th Cir. 2004). Expert testimony does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997).

The opinions discussed above related to the Second Report would be unhelpful to the jury. First, Dr. Westland's opinion predicated on data that is off by over a billion dollars is irrelevant and will not logically advance any of the issues in this case. Similarly, Dr. Westland's opinion based on an analysis using the wrong date is unhelpful. Finally, Dr. Westland's speculative opinion that the market simply ignored the Second Report for unknown reasons does not offer insight beyond a juror's common understanding. Accordingly, it is

**ORDERED**:

1. Plaintiffs' Motion to Strike and Exclude the Opinions and Reports of Expert J. Christopher Westland (Doc. 95) is **granted-in-part** and **denied-in-part**. The motion is **granted** as to Dr. Westland's opinions and testimony directed to the Second Report as discussed herein. The motion is **denied as moot** as to Dr. Westland's opinions and testimony directed to the First Report. The denial is without prejudice to being raised again to the extent that Dr. Westland's opinions related to the First Report are relevant to any issues pertaining to the second report, such as damages, for example. The parties shall confer and may file a renewed motion, as necessary, on or before October 31, 2025.

2. The Court defers ruling as to the motion to strike the opinions and testimony of Dr. Westland contained in his supplemental report that are directed to the opinions of Kopa and Rubel concerning Bonilla's Second Report.

**DONE AND ORDERED** in Tampa, Florida on September 26, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any