**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| |
|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc., <br><br> Plaintiffs, <br><br> – against – <br><br> Victor Bonilla, <br><br> Defendant. |

Case No. 8:23-cv-01734-CEH-AEP

**PLAINTIFFS' OPPOSITION TO DEFENDANT VICTOR BONILLA'S RENEWED MOTION TO REMOVE CONFIDENTIALITY DESIGNATION FROM CERTAIN EVIDENCE**

Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. (together, "TTI") respectfully file this opposition to Defendant Victor Bonilla's ("Bonilla") Renewed Motion to Remove Confidentiality Designation From Certain Evidence ("Renewed Motion") (ECF No. 177). The Court should deny the Renewed Motion for the reasons that follow.

**INTRODUCTION**

Two months ago, this Court denied Bonilla's motion to lift the confidentiality designations from the depositions of TTI employees Katherine Helf and David Stearns and from documents showing TTI employee compensation awards, also referred to as TTI's long term incentive plan award agreements ("LTIP Agreements"). The Court specifically observed that these items had "not even been

14645

filed on the docket" in connection with pending motions. ECF No. 175 at 3. Nothing has changed. With the limited exception of four transcript excerpts—which the Court already ordered sealed, ECF No. 164 at 14—the materials at issue remain unfiled on the Court's docket. Despite this, Bonilla now seeks identical relief this Court previously denied, relying on recycled arguments and presenting no intervening change in circumstances. In substance, Bonilla has filed a motion to reconsider disguised as a renewed motion to de-designate. But a motion for reconsideration should raise new issues, not "merely attempt[] to relitigate the issues already decided by the Court." *Sheets v. Jimenez*, 2025 WL 2161684, at *1 (M.D. Fla. July 30, 2025). The Court should reject Bonilla's attempt to bypass the higher standard that governs such motions.

Bonilla's motion also continues to fail substantively. Bonilla seeks to de-designate these materials so he can wage a media campaign against TTI with its confidential business information—a purpose courts routinely reject as improper. *See, e.g.*, *ZeniMax Media, Inc. v. Oculus VR, LLC*, 2016 WL 11430477, at *2 (N.D. Tex. June 2, 2016) (denying re-designation request because using discovery materials to rebut media statements constitutes improper use of discovery). Even if it were, the Court's recent summary judgment ruling eliminated any plausible basis for such a defense, as it granted summary judgment to Bonilla on the First Report and ruled, as a matter of undisputed fact, that the Second Report was false. The Court has now resolved the very issues Bonilla claims he needs to defend publicly. Yet despite the Court's summary judgment ruling that the Second Report

1

was false, Bonilla has left the Report on his website, which further suggests that his purpose in seeking disclosure of these documents is to damage TTI. Thus, far from an attempt to "narrow" the issues, Bonilla's Renewed Motion is another transparent attempt not only to weaponize confidential discovery for a media campaign against TTI, but also to publicly challenge this Court's findings.

Bonilla also fails substantively to establish that these documents are improperly designated as confidential. First, throughout his Renewed Motion, Bonilla improperly invokes the public's right of access and the legal standard for sealing court records—standards that apply only to materials filed with the Court. Here, the vast majority of the challenged documents were never filed in connection with any motion. Second, applying the correct standard, these materials are classic proprietary and confidential information, the likes of which are routinely protected from public disclosure. The LTIP Agreements contain details of TTI's carefully calibrated employee retention program that rival companies could use to target and poach key TTI personnel. Ms. Helf's deposition contains analysis and explanation of TTI's accounting policies, business practices, and commercial strategies. And Mr. Stearns' deposition includes discussion of TTI's relationship with its largest and most valued customer, as well as commercial strategies related to TTI's outlet store. This is information that any competitor could use to severely damage TTI by poaching personnel, stealing clients, and copying the business model that has led to TTI's extraordinary success.

The Court should deny the Renewed Motion.

## FACTUAL BACKGROUND

    A.    <u>Bonilla's First Motion to De-Designate</u>

On August 3, 2023, TTI brought this action against Bonilla for libel and libel per se to defend its interests following two false and defamatory attacks. ECF No. 1. The First Report, published in February 2023, claimed that TTI had engaged in years of accounting manipulation and fraud in its financial reporting. The Second Report, published in June 2023, claimed that TTI defrauded The Home Depot ("THD") out of hundreds of millions of dollars per year. TTI alleged that these reports were false. Despite their falsity, as a result of the First Report, TTI's stock price dropped by nearly 20%, and by 5% as a result of the Second Report. As a short seller, Bonilla profited through TTI's harm.

Bonilla first moved to de-designate certain of TTI's confidential materials on March 6, 2025—more than five months after agreeing to sealing in connection with TTI's motion for summary judgment, and four months after first raising confidentiality concerns. *See* ECF No. 153. Among other documents, Bonilla sought to de-designate the deposition testimony of both Katherine Helf and David Stearns, (ECF No. 102-1 at 54-62, 94-105), and TTI's redacted long term incentive plan award agreements.

***Deposition Testimony of Katherine Helf and David Stearns***. Bonilla deposed Katherine C. Helf, TTI's Vice President of Group Finance, and David Stearns, TTI's Senior Vice President of Direct Tools Factory Outlet ("DTFO") and Channel Marketing. Ms. Helf testified as TTI's Rule 30(b)(6) representative

3

regarding TTI's accounting policies, business practices, commercial strategies and TTI's internal analysis regarding Bonilla's First Report, specifically as to whether the First Report had any truth to it.  Mr. Stearns testified as a representative of TTI about TTI's DTFO outlet stores and historical relationship with THD, including the confidential contract between the two companies.  TTI designated both depositions as "CONFIDENTIAL" under the terms of the parties' Stipulated Protective Order.

>***TTI's LTIP Agreements***.  TTI's LTIP Agreements contain information about individual grants of phantom stock units that TTI issued to employees—a key retention tool for the company's most valuable personnel.  ECF No. 156 Ex. 1, Declaration of Katherine C. Helf ("Helf Dec.") ¶ 11.  TTI produced these documents with the recipients' names redacted to protect their privacy, and designated them as confidential due to their competitive sensitivity:  If competitors learn the details of how TTI compensates its employees, they could use this information to recruit away  key company leaders.  *Id.*

Neither party cited these documents in their entirety in the summary judgment motion or any other dispositive motion.  Limited excerpts of the Helf and Stearns depositions, however, were filed with both parties' briefing.  *See* Helf Depo. 160:18-20; Stearns Depo. 14:19-19:16; *id.* 47:11-51:22; *id.* 92:3-14.  Bonilla filed an unopposed motion to seal those transcript excerpts that were filed in connection with the summary judgment briefing.  ECF No. 98.  Given the delay between Bonilla's first motion to de-designate and the summary judgment filings

4

from months prior, TTI opposed this motion, among other grounds, as a pretext for Bonilla to release TTI's confidential information to the market and damage TTI (not unlike the circumstances that led to this lawsuit).

On June 23, 2025, this Court ruled upon the parties' motions to seal documents filed in connection with the parties' summary judgment and contemporaneous *Daubert* motions. The Court granted in part, denied in part, and deferred in part. ECF No. 164. The Court unsealed certain documents—accounting policies, expert reports, and expert depositions—directly at issue in the parties' dispositive motions. *Id*. at 13-18. The Court granted the motion to seal as to excerpts from the Helf and Stearns depositions. *Id*. at 14.

B. The Court Rejects Bonilla's Motion to De-Designate

On July 22, 2025, the Court granted in part and denied in part Bonilla's first motion to de-designate. *See* ECF No. 175. The Court denied Bonilla's request to de-designate "items not filed on the docket, including the entire deposition transcripts of Helf and Stearns [and] the redacted compensation vouchers [LTIP Agreements]." The Court denied Bonilla's motion "without prejudice" as to those items. *Id*. at 3. The Court noted that Bonilla had failed to present any new argument to alter the Court's prior decision that certain excerpts of the expert depositions could remain under seal. *Id*.

C. Bonilla Renews His Motion

On September 12, 2025, Bonilla renewed his motion to de-designate a subset of the same documents from the Court's July 22 ruling. *See* ECF No. 177. Bonilla

5

identified twelve excerpts from the Helf and Stearns deposition testimony, but the Renewed Motion is not clear as to whether it seeks solely to de-designate those excerpts or the deposition transcripts in their entirety. Mot. 2-4. Bonilla also seeks to de-designate the LTIP Agreements. Mot. 2. Of the eleven deposition excerpts identified by Bonilla, eight—and the LTIP Agreements—were never filed in connection with any motion, and thus are not on the docket. Only four of the deposition excerpts were filed in connection with the cross-motions for summary judgment: (1) Helf Depo. at 156:4-160:23 (as a partial citation, 160:18-20); (2) Stearns Depo. at 14:19-19:16; (3) Stearns Depo. at 47:11-51:22; and (4) Stearns Depo. at 92:3-14. Mot. 3-4.

       D.    <u>The Court's Ruling on Summary Judgment Narrows the Issues</u>

On September 19, 2025, the Court granted in part and denied in part the parties' cross-motions for summary judgment. ECF No. 179. As relevant here, the Court resolved TTI's defamation claims arising from the First Report in Bonilla's favor and ruled as a matter of undisputed fact that the Second Report was false. The case will proceed to trial on the remaining issues in connection with the Second Report. *Id.* at 33. Because the Court resolved the First Report claims on summary judgment, evidence relating solely to the First Report is no longer at issue in this case.

**<u>STANDARD OF REVIEW</u>**

Generally, "[w]hen a confidentiality designation is challenged, the designating party must establish 'good cause' to maintain its confidentiality."

6

*Smart Commc'ns Holding, Inc. v. Correct Sols., LLC*, 2022 WL 1081564, at *2 (M.D. Fla. April 11, 2022). "In order to demonstrate good cause…the party seeking protection must show that: (1) the information sought is a trade secret or other confidential information; and (2) the harm caused by its disclosure outweighs the need of the party seeking disclosure." *Id*. Good cause is often satisfied when the documents contain "competitively sensitive information, which if disclosed, could give…competitors a competitive advantage." *Id*. at *3.

Only "[m]aterial filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007). Good cause can "overcome" the common law right of access, "which requires balancing the asserted right of access against the other party's interest in keeping the information confidential." *Id*. at 1246 (cleaned up). Courts consider "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id*. "[T]he privacy of confidential business information can constitute good cause for keeping documents from the public view." *Nolen v. Wyndham Vacation Resorts, Inc.*, 2021 WL 3036460, at *2 (M.D. Fla. June 15, 2021).

7

## **ARGUMENT**

**I.    THE COURT'S PRIOR RULING CONTROLS**

Bonilla's motion is an improper attempt to relitigate issues this Court has already decided. This Court rejected Bonilla's original request to de-designate the "entire deposition transcripts of Helf and Stearns [and] the redacted compensation vouchers" because these "items [were] not filed on the docket." ECF No. 175 at 3. The Court's orders "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Carter v. Premier Rest. Mgmt.*, 2006 WL 2620302 (M.D. Fla. Sept. 13, 2006). For this reason, reconsideration must "be used sparingly," *id.*, and is permitted only when there is "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." *True v. Comm'r of the I.R.S.*, 108 F. Supp. 2d 1361, 1365 (M.D. Fla. 2000).

None of these factors are present here. With the exception of four deposition excerpts, *see supra* at 6, these documents remain unfiled, so the original basis for denying Bonilla's first motion remains intact. *See Smart Commc'ns Holding, Inc.*, 2020 WL 10498682, at *2 (denying motion challenging confidentiality designations because party failed to "identif[y] any motion that it intends to support with the challenged materials"). At the very least, there is no reason to reconsider the order as to the remaining eight deposition excerpts and LTIP Agreements.

8

Indeed, the only intervening circumstance—the recent summary judgment order—cuts against Bonilla's motion because it narrowed the scope of the case and reduced the likelihood that these documents will be disclosed at trial.  "Judicial review of challenged designations should be limited to 'those matters relevant to the legal issues raised.'" *In re Photochromic Lens Antitrust Litig.*, 2014 WL 12618104, at *2 (M.D. Fla. May 29, 2014) (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)).  At most, the documents at issue here may be relevant to a future trial.  But courts have found requests to de-designate documents "premature" when they seek to de-designate documents "not yet required to be considered with respect to a **pending** motion or hearing." *Id.* (emphasis added); *see also Fennell v. Navient Sols., LLC*, 2018 WL 7411857, at *3 (M.D. Fla. Dec. 10, 2018) (denying motion to unseal deposition because defendant's interest in keeping such information confidential outweighed the public's interest in accessing the information where deposition had little relevance to the case).  Because these documents are not being considered by the Court in connection with any pending motion or hearing, they should remain confidential.  A hypothetical future trial—the contours of which will be adapted to the Court's recent summary judgment order—cannot serve as the basis to publicly release TTI's confidential documents.

Bonilla seeks to justify the Renewed Motion by arguing that the Court "invite[d] narrowing," but nothing in the order suggests that "narrowing" is appropriate, or even contemplated.  To the contrary, the Court expressly decided

9

that these documents should remain confidential. Bonilla reads too much into the "without prejudice" designation, which simply preserves the right to renew a motion if circumstances change—such as if a party files the materials in connection with a substantive motion. *In re Seroquel Prods. Liability Litigation*, 2008 WL 508393, at *3 (M.D. Fla. Feb. 21, 2008). Here, no such change has occurred. There is no new motion on the docket requiring these documents and thus no basis for reconsideration of the Court's ruling.

This Court should reject Bonilla's attempt to relitigate this settled issue.

## II. THE COMMON LAW RIGHT OF ACCESS DOES NOT APPLY TO MATERIALS THAT NEITHER PARTY FILED IN CONNECTION WITH A MOTION

Bonilla's renewed motion also fails because he applies the wrong legal standard. Bonilla relies on the common law right of access to materials filed in connection with a judicial proceeding—a standard that simply does not apply here. The Eleventh Circuit has made clear that there is no presumptive right of access to discovery materials—like most of what is at issue here—that are not filed on the docket, "as these materials are neither public documents nor judicial records." *Chi. Tribune Co. v. Bridgestone/Firestone Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). "[D]ocuments obtained or produced in discovery are generally not considered judicial records because discovery has traditionally been a private process." *A. L. v. Walt Disney Parks & Resorts US, Inc.*, 2015 WL 13951518, at *2 (M.D. Fla. Oct. 16, 2015); *ATLC, Ltd. v. Eastman Kodak Co.*, 2007 WL 9677272, at *2 n.12 (M.D.

10

Fla. June 26, 2007) (granting protective order, but excluding document not filed on the docket filed in connection with summary judgment motion).

Here, the parties did not file the LTIP Agreements in connection with their summary judgment motions, and they cited only limited excerpts of the deposition transcripts of both Ms. Helf and Mr. Stearns. The LTIP Agreements and all portions of the transcripts not filed on the docket are therefore not subject to the common law right of access standard that Bonilla proffers. As for the four deposition excerpts that were filed in connection with the summary judgment motions, the Court has already granted the parties' motion to seal those documents. ECF No. 164 at 14. Moreover, as explained below, *see infra* Section IV, good cause exists to maintain the confidentiality designations applied to those excerpts and maintain them under seal.

### III. GOOD CAUSE EXISTS TO MAINTAIN THE CONFIDENTIALITY OF TTI'S COMPETITIVELY SENSITIVE INFORMATION THAT WAS NEVER FILED ON THE DOCKET

TTI easily satisfies the good cause standard for these unfiled materials. Good cause exists to continue protecting the proprietary and confidential information contained in the eight deposition excerpts and LTIP Agreements, which were produced in discovery, but not filed in connection with any motion, because their disclosure would unquestionably harm TTI. *Smart Commc'ns Holding*, 2022 WL 1081564, at *1-2. Indeed, courts regularly uphold confidentiality designations on competitively sensitive documents just like these. *See id.* at *3.

The eight unfiled deposition excerpts contain strategic and operational information that would put TTI at a competitive disadvantage if disclosed. Helf. Dec. ¶¶ 13-15. At their depositions, Ms. Helf and Mr. Stearns both discussed TTI's competitively sensitive information. *See Barkley v. Pizza Hut of Am., Inc.*, 2015 WL 5915817, at *3 (M.D. Fla. Oct. 8, 2015) (ordering deposition to be sealed because "of the competitively sensitive information" it contained). Ms. Helf testified about TTI's internal policies and strategic decision making. Helf Dec. ¶ 13. Mr. Stearns testified about TTI's internal operations and revenue with respect to its DTFO stores and TTI's relationship with its largest customer. *Id.* ¶ 14. Competitors do not have access to this information and could use it to try to poach clients or copy TTI's revenue models. This would cause immeasurable damage to TTI.

The LTIP Agreements likewise contain competitively sensitive information about how TTI compensates its employees. If competitors were to learn the details of such agreements, they could use this information to recruit key company leaders. *Id.* ¶ 11. The redaction of employee names does not diminish this sensitivity—the compensation structure is the commercially sensitive information that TTI seeks to protect from competitors through a confidentiality designation. Furthermore, neither party needs the individual LTIP Agreements to litigate this case. While the LTIP Agreements are relevant to TTI's damages, both parties rely on the awards in the aggregate to support their damages arguments, not on the

individual award documents. Neither party requires the individual LTIP Agreements in order to maintain their claims and defenses.

## IV. GOOD CAUSE EXISTS TO OVERCOME THE COMMON LAW RIGHT OF ACCESS TO MATERIALS THAT WERE FILED IN CONNECTION WITH A MOTION

Even for the four filed deposition excerpts, good cause overcomes any common law right of access. *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, 2010 WL 6790538, at *2 (M.D. Fla. Oct. 28, 2010); *see Local Access, LLC v. Peerless Network, Inc.*, 2015 WL 5897743, at *1 (M.D. Fla. Oct. 7, 2015) ("A party's interest in the privacy of its financial records and the terms of confidential agreements oftentimes outweighs the public's right of access."). The common law right of access is overcome when documents contain "extremely confidential material that would cause economic harm or significant competitive disadvantage," *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, 2015 WL 1351153, at *2 (M.D. Fla. Mar. 25, 2015) (internal citation and quotation marks omitted), such as when disclosure would allow competitors to gain an advantage. *See Toms v. State Farm Life Ins. Co.*, 2022 WL 2953523, at *4 (M.D. Fla. July 26, 2022); *Local Access, LLC v. Peerless Network, Inc.*, 2017 WL 2021761, at *1-3 (M.D. Fla. May 12, 2017). As detailed above, *see supra* Section II, the documents from which Bonilla seeks to remove the confidentiality designations meet this standard. None of Bonilla's arguments to the contrary are availing.

*First*, TTI's privacy interest is not "mitigated" because of the upcoming trial. Mot. 7. With respect to the three excerpts of Mr. Stearns' testimony that were filed,

TTI retains its privacy interest in protecting the details of its longstanding business relationship with THD, which competitors could seek to copy and jeopardize. Moreover, the parties have yet to discuss, or present the Court with, proposals regarding trial procedure in light of both the changed framework of the case and TTI's competitively and commercially sensitive information. Any such procedure will inevitably allow Bonilla to make full use of the documents at trial and prevent any risk of prejudice while also safeguarding TTI's confidential and competitively sensitive materials from unnecessarily broad public disclosures. Bonilla's Renewed Motion is thus once again not only without merit, but also premature.

In addition, TTI's privacy interest is heightened as to evidence relevant to the First Report, which is no longer part of the case. *See* ECF No. 179. TTI's privacy interest in documents that will not be relevant to trial outweighs the right of access. Indeed, Bonilla concedes that TTI "has every right to shield information that may have been disclosed in discovery that involves confidential business matters having little to do with its claims against Bonilla." Mot. 6. The Court's summary judgment order resolved the claims relating to the First Report, rendering any evidence related solely to those claims irrelevant to the remaining issues for trial. This further undermines Bonilla's argument that the public has a right to access information that is no longer relevant to a surviving claim. Such documents should remain confidential.

*Second*, by asserting without support that TTI is not likely to suffer any cognizable injury through unsealing, Bonilla incorrectly minimizes the sensitivity

of the information contained in the challenged materials. As described above, TTI would suffer extensive harm if these deposition excerpts—in which TTI executives made numerous statements regarding TTI's financial reporting and proprietary commercial strategies—were disclosed. Bonilla has made no effort to rebut the arguments that TTI raised in its earlier opposition on the commercial sensitivity of these documents and the harm to TTI.

*Third*, these documents do not involve matters of public concern. Bonilla himself recognizes that "[t]his is not the sort of case that is so famous that" people would read about it in the press. *Id.* Bonilla does not identify any specific information in the documents that involves a matter of public concern. *Id.* at 7-8. Nor could he: As this Court recognizes, financial records and proprietary commercial strategies of private companies—just like those at issue here—typically do not amount to a matter of public concern. *See Local Access*, 2017 WL 2212786, at *2 (determining business plans and confidential information at issue were not related to public concerns). That TTI engages in public marketing and press releases does not transform testimony about its internal strategic operations into public information. Rather, the sensitive competitive information discussed in or reflected by these documents strongly suggests they ought to remain private and confidential.

Bonilla's remaining arguments fare no better. Bonilla claims that TTI "already introduced these topics into the public consciousness" before Bonilla published anything. Mot. 8. This argument inverts reality. It was Bonilla who

15

dragged TTI into the spotlight, as this Court acknowledged when it determined that TTI is a private figure. ECF No. 179 at 27-31. Moreover, disclosure of confidential depositions of TTI executives and compensation agreements creates a risk of unfair bias and prejudice that could "impair" the Court's function especially where Bonilla's only reason for seeking the de-designation is to pursue a campaign in the media against TTI. Mot. 6; *Romero*, 480 F.3d at 1246 (noting that courts balance any public interest in disclosure with, among other things, the risk of impairing court functions). De-designating TTI's proprietary information will "impair" court functions while allowing Bonilla to wage a public relations campaign using proprietary commercial information and strategies while simultaneously harming TTI's legitimate privacy interests. *See* Mot. 6-7.

This Court has already undertaken this balancing exercise before and rejected Bonilla's request to de-designate. Nothing has changed. The Court should deny the Renewed Motion for the same reasons.

## **CONCLUSION**

For the foregoing reasons, TTI respectfully requests that the Court deny Bonilla's Renewed Motion to Remove Confidential Designations From Certain Documents Produced By Techtronic.

Dated: October 3, 2025

By: *Jason D. Sternberg*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
Laura N. Ferguson (FL Bar 1047701)
2601 South Bayshore Drive, 15 Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com
lauraferguson@quinnemanuel.com

Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*