UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED,
TECHTRONIC INDUSTRIES
FACTORY OUTLETS, INC.,

       Plaintiffs,

v.                                                          Case No.:  8:23-cv-01734-CEH-AEP

VICTOR BONILLA,

       Defendant,

_____/

## ORDER

This matter is before the Court on Defendant Bonilla's *Daubert* Motion to Strike and/or Exclude Expert Testimony and Report of Jeffrey W. Kopa, CFA (Doc. 168).[1] Defendant requests the Court exclude the damage opinions and testimony of Plaintiffs' expert Jeffrey Kopa pursuant to Fed. R. Evid. 702 and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Plaintiffs filed a response in opposition (Doc. 106).[2] Upon consideration, Bonilla's motion will be denied.

## I.    BACKGROUND[3]

In this defamation action, Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. ("Plaintiffs" or "TTI") sue Defendant

---

[1] The unredacted version of Defendant's motion is filed under seal at Doc. 176.
[2] The unredacted version of Plaintiffs' response is filed under seal at Doc. 111-32.
[3] Additional background regarding the action can be found in the Court's Order on the parties' cross motions for summary judgment. *See* Doc. 179 at 2–7.

Victor Bonilla ("Defendant" or "Bonilla") for statements made about TTI and its

business practices by Bonilla in two reports he authored and published on his website

Jehoshaphat Research in February and June 2023. Following summary judgment, the

issues remaining in the case pertain only to Bonilla's statements made in the June 2023

report ("Second Report").

TTI, a Hong Kong company traded on the Hong Kong Stock Exchange,

manufactures well-known brands including Ryobi, Milwaukee, Hoover, Oreck, and

Dirt Devil. TTI has a contract with Home Depot to have exclusive rights to sell certain

merchandise in Home Depot stores. When TTI sells goods in its factory outlet stores

("DTFO stores"), the goods are labeled "blemished." In sum, Bonilla's Second Report

accuses TTI of corporate malfeasance in their accounting and of defrauding Home

Depot, one of their biggest customers.

In August 2023, TTI filed this action suing Bonilla for libel and libel per se. Doc.

1. TTI's complaint seeks damages from Bonilla for publishing the alleged false and

defamatory reports so that he could profit from short-selling TTI's stock. *Id.* The

parties filed cross motions for summary judgment (Docs. 92, 101). In an order dated

September 19, 2025, the Court granted in part the parties' motions. Doc. 179. The

Court granted Bonilla's motion for summary judgment as to the claims of defamation

arising out of the First Report published by Bonilla (in February 2023) and denied

Bonilla's motion as to the claims arising out of statements made in the Second Report

(in June 2023). *See id.* The Court granted, in part, TTI's motion for partial summary

judgment as to the falsity of some of the statements in the Second Report and as to

TTI's status as a private figure. *Id.*

Pending before the Court is Bonilla's Motion to Strike Plaintiffs' Expert Jeffrey

W. Kopa, CFA. Docs. 168, 178. Mr. Kopa issued an initial report on July 12, 2024

(Doc. 111-26) and a rebuttal report (in response to the report of defense expert, Dr.

Westland), dated August 9, 2024 (Doc. 111-27). The parties filed excerpts of Mr.

Kopa's deposition, which was taken August 15, 2024. Docs. 111-28, 176-1. TTI filed

the Declaration of Katherine Helf, Vice President of Group Finance at TTI in support

of its opposition. Doc. 111-29.

Bonilla moves to exclude TTI's expert under Fed. R. Evid. 702, arguing Mr.

Kopa's qualifications and opinions fail to meet the standards required by *Daubert* and

the Federal Rules of Evidence. Bonilla argues Mr. Kopa's methodology is wrong and

his opinions are unhelpful to the jury. TTI opposes the motion, arguing that Mr. Kopa

is qualified to render damages opinions, his methodology is reliable, and his testimony

would assist the jury. Given the Court's summary judgment ruling in favor of Bonilla

related to the statements made in the First Report, the Court will deny the motion as

moot regarding Mr. Kopa's testimony and opinions directed to the First Report. For

the reasons discussed below, the motion to exclude Mr. Kopa's opinions and

testimony directed to Bonilla's Second Report will also be denied.

## II.    LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence

702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise
> if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a fact in
> issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts
> of the case.

Fed. R. Evid. 702. Rule 702 is a codification of the United States Supreme Court's

decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*,

the Supreme Court described the gatekeeping function of the district court to "ensure

that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.*

at 589; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*).

The Supreme Court extended its reasoning in *Daubert* to non-scientist experts in *Kumho*

*Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

> In performing its gatekeeping function, the Court must consider whether:
>
> (1) the expert is qualified to testify competently regarding the matters he
> intends to address, (2) the methodology by which the expert reaches his
> conclusions is sufficiently reliable as determined by the sort of inquiry
> mandated in *Daubert*, and (3) the testimony assists the trier of fact,
> through the application of scientific, technical, or specialized expertise,
> to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d

548, 562 (11th Cir. 1998)). Thus, the three discrete inquiries to determine the

admissibility of expert testimony are qualifications, relevance, and reliability. *Quiet*

*Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1341 (11th Cir. 2003). Although there

is some overlap among these inquiries, they are distinct concepts that the Court and litigants must not conflate. *Id.*

"The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004) (citation omitted). "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1113 (11th Cir. 2005). The admission of expert testimony is a matter within the discretion of the district court, which is afforded considerable leeway in making its determination. *Frazier*, 387 F.3d at 1258.

"The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786. The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999).

## III.    DISCUSSION

In his initial report, Mr. Kopa offers the following opinions:

1. The market for the common stock of TTI was open, developed, and efficient before and around the time of the Jehoshaphat Reports ("JR") were publicly issued based on the results of standard market efficiency tests.
2. The share price of TTI's common stock declined in February 23, 2023 and June 6, 2023, following the First Report and Second Report, respectively, and the negative abnormal return following the First Report's publication was highly statistically significant.
3. Defendant profited from trading activity associated with the JR Reports.
4. TTI incurred approximately US$152 thousand in incremental professional fees to address the JR Reports.
5. TTI's incremental compensation plans have a total attributable value to the JR Reports of approximately US$23.6 million.

Doc. 111-26 at 8–9. In his rebuttal report (Doc. 111-27), Mr. Kopa critiqued the opinions of Bonilla's expert, Dr. Westland. In his deposition taken August 15, 2024, Mr. Kopa discussed the methodology of an event study, which is the standard statistical technique he used to evaluate the impact of Bonilla's reports on TTI's stock. Doc. 111-28.

Defendant challenges Mr. Kopa's second, fourth, and fifth opinions referenced above. Doc. 168. Defendant notes, *see* Doc. 168 at 5 n.2, that as to the third opinion Bonilla's profits are not an item of damage that Plaintiffs can claim, but he does not otherwise challenge the analysis or conclusion related to Mr. Kopa's opinion that Bonilla profited from trading activity associated with the reports.[4]

---

[4] Although Bonilla is not challenging Dr. Kopa's opinion related to his trading activity, Bonilla recently filed two motions seeking to exclude from trial evidence of the amounts he made from trading TTI stock. *See* Doc. 195 at 7, Doc. 196 at 2-3. The Court will address that issue when it rules on the pending motions.

1.    Qualifications

The first question courts address under *Daubert* is whether the proposed expert

witness is qualified to testify competently regarding the matters he or she intends to

address. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562–63 (11th Cir. 1998).

Mr. Kopa is a partner and managing director at AlixPartners in the Investigations,

Disputes and Risk practice. He holds a Bachelor of Business Administration degree

with an emphasis on finance and accounting from the University of Michigan and a

Master of Business Administration degree and Master of Science degree in Finance

from Indiana University School of Business. He has developed an extensive litigation-

consulting, financial, valuation, and investing practice over his past 20 years of

professional experience. He has analyzed damages through his litigation-consultant

services in a variety of areas including antitrust, audit malpractice, breach of contract,

false advertising, intellectual property litigation, purchase price and transaction

disputes, shareholder disputes, fraudulent conveyance, and preference actions. He has

experience examining damages and lost profits caused by alleged wrongful acts and

has been qualified as an expert to present damages opinions and statistical analyses in

state, federal, and bankruptcy courts. In addition to performing damages analyses, he

has performed accounting investigations, assessed credit worthiness, advised creditors

and board members, participated in capital raising efforts and worked to restructure

and refinance companies.

Bonilla does not challenge Kopa's professional credentials. Indeed, his motion

represents that he "does not doubt" Kopa's credentials." Doc. 168 at 8. Instead,

Bonilla argues that Kopa's qualifications do not "fit" his opinions. In that regard,

Bonilla contends that Kopa offers no testimony on the salient issues that would be

helpful to the jury, such as identifying which damages resulted from the alleged false

and defamatory statements and whether the LTIP executive compensation program

was necessary. This argument appears to go to the last prong of the *Daubert* analysis

and not to Kopa's qualifications to offer a damages opinion in this case. As courts in

this Circuit have noted, "[t]he qualification standard for expert testimony is 'not

stringent' and 'so long as the expert is minimally qualified, objections to the level of

the expert's expertise [go] to credibility and weight, not admissibility.'" *Vision I

Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla.

2009) (citations omitted). Given Kopa's education, experience, and credentials, the

Court finds that Mr. Kopa is at least minimally qualified to offer damages opinions in

this case.[5]

    2.    <u>Methodology</u>

The second prong of the *Daubert* analysis considers whether Mr. Kopa's

methodology is reliable. "Exactly how reliability is evaluated may vary from case to

case, but what remains constant is the requirement that the trial judge evaluate the

reliability of the testimony before allowing its admission at trial." *Frazier*, 387 F.3d at

---

[5] However, the scope of the opinions may be limited on relevancy grounds to damages opinions resulting from statements made in Bonilla's Second Report, given the Court's summary judgment ruling and the fact that only the statements made in the Second Report remain at issue in this case.

1262 (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four

non-exhaustive factors district courts consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is
> capable of being tested; (2) whether the technique has been
> subjected to peer review and publication; (3) the known and
> potential error rate of the methodology; and (4) whether the
> technique has been generally accepted in the proper
> scientific community.

*Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted).

A district court can take other relevant factors into account as well. *Id.* (citations

omitted).

In formulating his opinions, Mr. Kopa utilized the methodology of an "event

study" to analyze the impact of Bonilla's reports on TTI's stock. "An event study . . .

is a statistical regression analysis that examines the effect of an event, [such as the

release of information,] on a dependent variable, such as a corporation's stock price."

*FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1313 (11th Cir. 2011) (quoting

*United States v. Schiff*, 602 F.3d 152, 173 n. 29 (3d Cir. 2010) (citation modified)). Mr.

Kopa testified that he combined a quantitative analysis of the change in TTI's stock

with a qualitative loss causation analysis of TTI-focused news. Doc. 111-28 at 50:13–

19.

In his motion to exclude Mr. Kopa, Bonilla argues that although Mr. Kopa

purports to conduct an event study to show the connection between the First and

Second Reports and the stock drop, he does not use any methodology to determine if

the stock drops were due to the alleged false and defamatory statements, as opposed

to being due to true statements or opinions in the reports. TTI responds that Mr. Kopa

did not need to analyze the impact of specific statements, noting that Bonilla fails to

cite any legal authority for this argument. Instead, TTI cites to Florida caselaw

standing for the proposition that courts should consider publications in their totality

in assessing defamation claims. Doc. 111-32 at 12–13.

As event studies are a "common method" of establishing loss causation,

*FindWhat*, 658 F.3d at 1313, the Court finds Mr. Kopa's methodology to be generally

accepted in the scientific community and therefore reliable. The district court has wide

latitude in deciding how to determine reliability. *See Kumho*, 526 U.S. at 142. Bonilla's

challenges to Mr. Kopa's methodology are more appropriately addressed on cross

examination rather than striking the expert.

Mr. Kopa also uses the net present value technique, a commonly accepted

methodology, to calculate TTI's damages. Bonilla argues that Mr. Kopa's analysis of

the legal and accounting bills do not use an accepted methodology at all; rather, he

just adds them up. Bonilla complains that Mr. Kopa did not analyze whether the legal

and accounting work performed was necessary. For the same reason, he challenges

Mr. Kopa's testimony about the executive compensation issue contending Kopa

merely asserts a but-for test that is unscientific and unreliable. Whether or not the

services were needed does not appear to be an opinion that Mr. Kopa is offering. TTI

represents that Mr. Kopa is not offering a causation opinion regarding the LTIP

(executive compensation) program. Doc. 111-32 at 15. Rather, he analyzed TTI's

incremental additional LTIP program awards and guarantees and calculated the net

present value of the additional costs these incremental changes imposed on TTI. *Id.* Net present value analyses are an acceptable and common methodology used by financial experts. TTI indicates that Mr. Kopa could appropriately rely on testimony of TTI's executives for causation. *Id.* at 19 (citing *Pandora Jewelers 1995, Inc. v Pandora Jewelry*, LLC, Case No. 09–61490–Civ, 2011 WL 2295269, at *3 (S.D. Fla. June 8, 2011) (holding that an expert witness may assume liability for purposes of calculating damages). Mr. Kopa's reliance on the causation testimony of other witnesses is not a basis to strike Mr. Kopa or his opinions. *See, e.g.*, *Polypack, Inc. v. Nestle USA, Inc.*, No. 8:23-cv-318-SPF, 2025 WL 748261, at *5 (M.D. Fla. Mar. 7, 2025) ("As an initial matter, a damages expert is expected to assume liability and does not need to conduct an independent investigation on causation.") (collecting cases); *Painteq, LLC v. Omnia Med., LLC*, No. 8:20-cv-2805-VMC-AAS, 2024 WL 4834790, at *6 (M.D. Fla. Nov. 20, 2024) (holding that damages expert "did not have to provide an explanation to make his opinions admissible because he can assume liability"). The Court finds that Mr. Kopa's causation assumption does not render his damages opinion inadmissible. Bonilla will certainly be able to challenge TTI's witnesses, as well as question Mr. Kopa about his assumptions, through cross examination.

     3.    <u>Helpfulness to the Jury</u>

     The Court next considers whether Mr. Kopa's opinions would be helpful to the jury. To satisfy the helpfulness requirement, expert testimony must be relevant to an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). Relevant

expert testimony "logically advances a material aspect of the proposing party's case" and "fits" the disputed facts. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). Expert testimony does not fit when there is "too great an analytical gap" between the facts and the proffered opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

As a preliminary matter, testimony regarding TTI's damages is certainly relevant, at least with respect to damages related to publication of the Second Report. TTI contends that Mr. Kopa did not simply look at a stock market drop as Bonilla suggests. TTI represents that Mr. Kopa's opinions are formed based upon a statistical causal analysis utilizing an event study. Bonilla's arguments to the contrary in an effort to exclude the opinions go more to the weight the jury should give the opinions and not to their admissibility. Finally, Bonilla complains that some of the calculations are simple math calculations for which an expert is not needed. While performing simple mathematical calculations or conversion of money from Hong Kong to U.S. dollars may not necessarily require expert testimony, to the extent that Mr. Kopa is permitted to testify, his performance of these calculations and conversions will be helpful to the jury. This is not a basis to exclude the expert.

Accordingly, it is

**ORDERED:**

1.    Defendant Bonilla's *Daubert* Motion to Strike and/or Exclude Expert Testimony and Report of Jeffrey W. Kopa, CFA (Docs. 168, 176) is **denied as moot** as to Mr. Kopa's damages opinions and testimony related to the First Report and

**denied** as to Mr. Kopa's damages opinions and testimony related to the Second Report.

      **DONE** and **ORDERED** in Tampa, Florida on March 6, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties