## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.,<br><br>        Plaintiffs,<br><br>    – against –<br><br>Victor Bonilla,<br><br>        Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

### PLAINTIFFS' OPPOSITION TO DEFENDANT BONILLA'S MOTION TO BIFURCATE PUNITIVE DAMAGES ISSUES

Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc. (together, "TTI") hereby oppose the Motion to Bifurcate Punitive Damages Issues (ECF No. 195) filed by Defendant Victor Bonilla ("Bonilla").

### INTRODUCTION

Bonilla asks this Court to split one straightforward trial into two—doubling deliberations, duplicating argument, and prolonging proceedings—all to isolate a handful of documents concerning his net worth. Nothing in Rule 42—the governing standard—supports that request, especially when a limiting instruction can address any hypothetical risk of prejudice. The motion should be denied.

Bonilla grounds his motion largely in the Florida Supreme Court's decision

in *W.R. Grace & Co.—Conn. v. Waters*, 638 So. 2d 502 (Fla. 1994), but that decision is doubly inapplicable. *W.R. Grace* addressed a purely procedural issue—the manner of conducting trial proceedings—and is thus not controlling in federal court, where the Federal Rules of Civil Procedure control. Even the logic of *W.R. Grace* does not apply here: That case arose out of a mass tort in which the defendant had previously been ordered to pay punitive damages to other plaintiffs, and the Florida Supreme Court held that it would be unduly prejudicial for the jury to hear evidence of those prior awards when still deciding whether compensatory damages were appropriate. *Id.* at 506. No similar circumstances exist here, and the Court should decline to import an inapplicable state-law framework.

Under Rule 42, separate trials are "the exception rather than the rule." *Transamerica Life Ins. Co. v. Wilbanks*, 2015 WL 12830476, at *1 (M.D. Fla. Oct. 27, 2015). Rule 42(b) permits departure from that rule only "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Bonilla's motion does not establish that bifurcation would serve any of these aims.

Notably, among the Rule 42 considerations, Bonilla only addresses one of them—avoiding prejudice—yet offers nothing more than a speculative risk of prejudice. *See* ECF 195 at 7. And for good reason. The principal evidence relevant to the *quantification* of punitive damages—and thus the principal evidence subject to bifurcation—is Bonilla's net worth. Yet, Bonilla does not explain how evidence of his net worth might sway the jury's determinations of liability and compensatory damages in a case that will, regardless of bifurcation, feature evidence of Bonilla

falsely asserting that TTI was engaged in a $2 billion fraud, causing TTI to lose $800 million in market capitalization, and earning $1 million in profit from his misdeeds. Indeed, this case stands in sharp contrast to the cases Bonilla cites, where bifurcation was warranted to prevent a jury from using a wealthy corporate defendant's net worth to inflate liability and compensatory damages in favor of a grievously injured plaintiff. No such considerations arise here, where the claim is for defamation causing financial and reputational harm.

The remaining considerations cut against bifurcation. The limited evidence of Bonilla's net worth would require minimal additional trial time, and bifurcation would therefore do nothing to serve judicial economy. To the contrary, bifurcation would force jurors to deliberate and reach consensus twice, undermining the interests of convenience and judicial economy alike. And even assuming some marginal risk of prejudice, there is a far simpler means of addressing it: a limiting instruction directing the jury to consider Bonilla's net worth only when determining the amount of any punitive damages award. *See United States v. Bell*, 112 F.4th 1318, 1341 (11th Cir. 2024); *State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, 2009 WL 10675125, at *2 (M.D. Fla. Jan. 8, 2009); *Brown v. Vivint Solar, Inc.*, 2020 WL 2309869, at *2 (M.D. Fla. May 8, 2020). The Court should follow suit and deny Bonilla's motion.

## ARGUMENT

## I.    RULE 42(b), NOT *W.R. GRACE*, GOVERNS BIFURCATION

The threshold question is straightforward: which law governs? The answer

3

is Rule 42(b)—not Florida law.  In diversity cases like this one, "[i]t is settled that if the [Federal Rule of Civil Procedure] in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of . . . state law." *Gasperini v. Ctr. for Human., Inc.*, 518 U.S. 415, 427 n.7 (1996).  Rule 42(b) is directly on point—it defines when district courts are authorized "to order a separate trial." Fed. R. Civ. P. 42(b).

Bonilla nonetheless grounds his motion largely in the Florida Supreme Court's decision in *W.R. Grace & Co.—Conn. v. Waters*, 638 So. 2d 502 (Fla. 1994). *See* ECF No. 195 at 4-5.  That reliance fails for two independent reasons.  First, W.R. Grace addressed a purely procedural question—the manner of conducting trial proceedings—and is not binding on this Court.  *See Lopez v. Zoll Servs., LLC*, 2022 WL 10189029, at *2 (S.D. Fla. Oct. 17, 2022) (explaining that "the decision about whether to bifurcate is discretionary under Rule 42(b), and the procedure described in *W.R. Grace* for submitting punitive damages to a jury in Florida 'is not binding upon a federal trial court'") (quoting *Soliday v. 7- Eleven, Inc.*, 2011 WL 2413656, at *1 (M.D. Fla. June 13, 2011)).  Second, even on its own terms, *W.R. Grace* addressed a specific problem: "the prejudice a defendant face[s] in trying to mitigate a potential punitive damage award by presenting evidence that it had already paid such awards for the same conduct.'" *B-K Cypress Log Homes Inc. v. Auto-Owners Ins. Co.*, 2012 WL 13018500, at *2 (N.D. Fla. May 10, 2012).  Evidence of such past punitive awards prejudices defendants who are simultaneously "'trying to convince a jury that its conduct is worthy of no

punishment at all." *Id.* (quoting *W.R. Grace*, 638 So. 2d at 506). No such circumstances exist here. Bonilla has not previously been found liable for punitive damages and will face no dilemma of asking the jury to find no liability while considering evidence of prior punitive damages awards.

## II.   BIFURCATION IS NOT APPROPRIATE UNDER RULE 42

Applying the correct standard, Bonilla's motion fails. Rule 42(b) authorizes district courts to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). But as both binding Circuit precedent and the Federal Rules' Advisory Committee have recognized, bifurcation "is not the usual course that should be followed." *Response of Carolina, Inc. v. Leaseco Response, Inc.*, 537 F.2d 1307, 1323-24 (5th Cir. 1976), *abrogated on other grounds*, *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36 (1977); *see* Fed. R. Civ. P. 42, Advisory Committee Note (cautioning that "separation of issues for trial is not to be routinely ordered"). And for good reason. "[T]he traditional r[o]le of the fact-finder" is "to make an ultimate determination on the basis of a case presented in its entirety." *Vance v. Deloach*, 2022 WL 19395700, at *1 (M.D. Fla. Apr. 18, 2022) (quotation omitted).

"The party seeking bifurcation bears the burden of pointing to 'particular facts and circumstances' and 'specific reason[s]' that justify bifurcation." *Wyndham Vacation Ownership, Inc. v. Bluhm*, 2022 WL 18492537, at *1 (M.D. Fla. Mar. 1, 2022) (citation omitted). Bonilla has not carried that burden. As set forth below, none of the Rule 42 factors supports his request.

## A.    BONILLA FACES MINIMAL, IF ANY, RISK OF PREJUDICE

Bonilla contends that he will "suffer unfair prejudice" (ECF No. 195 at 7) if evidence of his net worth is not bifurcated into a second phase of trial.  But his only support is vague speculation that the evidence may "confuse the jurors or create bias against" him.  ECF No. 195 at 7.  That is not enough.  *See Wyndham Vacation Ownership*, 2022 WL 18492537, at *1 (requiring "particular facts and circumstances" and "specific reasons" to support a bifurcation request).  And in context, the risk of prejudice is minimal at best.  Bonilla faces no plausible risk that evidence of his net worth will distort the jury's deliberations alongside evidence that he falsely accused TTI of a multi-billion dollar fraud—fraud that destroyed $800 million in market capitalization and earned Bonilla $1 million in profit.

The cases Bonilla cites confirm the point.  In each, an extremely wealthy corporate defendant alleged to have caused severe bodily injury sought bifurcation to avoid the concrete risk that the jury might allow sympathy for the plaintiff and the defendant's net worth to improperly influence its determination of liability and compensatory damages.  For example, in *Blanco v. Capform, Inc.*, a defendant corporation sought to exclude evidence of its net worth where an individual plaintiff suffered "a permanent and traumatic brain injury" "when a large metal object fell from the 14th floor of the job site and struck him in the head."  Plaintiff's Original Complaint at 2, *Blanco v. Capform, Inc.*, No. 1:11-CV-23508 (N.D. Fl. Sept. 27, 2011), 2011 WL 9323117.  The court found bifurcation appropriate because it reasoned "that [the plaintiff individual] suffered a catastrophic injury

6

and evidence of [the defendant corporation's] net worth may render some jurors more inclined to find [the defendant corporation] liable." *Blanco v. Capform, Inc.*, 2013 WL 118171, at \*4 (S.D. Fla. Jan. 9, 2013). *Horrillo v. Cook Inc.* presents a similar scenario. 2014 WL 2712341 (S.D. Fla. Apr. 29, 2014). In *Horrillo*, a defendant corporation sought to exclude evidence of its net worth where a plaintiff individual's death was allegedly caused by the use in surgery of a medical device manufactured by defendant. Defendant's Motion to Bifurcate at 2, No. 0:08-CV-60931-WM (S.D. Fla. Dec. 16, 2013), Dkt. No. 187; Amended Complaint at 2, No. 0:08-CV-60931-WM (S.D. Fla. Feb. 27, 2013), Dkt. No. 137.[1]

The circumstances here present a much different scenario. Here, a plaintiff corporation has experienced a financial and reputational harm and seeks damages from a defendant individual. Bonilla faces minimal, if any, risk that introduction of evidence of his net worth in these circumstances would cause a jury to sympathize with TTI and find liability or award inflated compensatory damages.[2]

Bonilla also argues that introducing evidence of the quantum of punitive

---

[1] In *Jacobson v. R.J. Reynolds Tobacco Co.*, the defendants' motion to bifurcate did not even identify what specific evidence was relevant to the quantification of punitive damages that might cause prejudice warranted bifurcation. Defendants' Contingent Motion to Bifurcate, No. 1:12-cv-223781 (S.D. Fla. June 28, 2013), Dkt. No. 121. And the plaintiff agreed to the defendants' motion. Order on Bifurcation, No. 1:12-cv-223781 (S.D. Fla. Sept. 12, 2013), Dkt. No. 336. That decision thus can carry no persuasive weight.

[2] This is especially true when one considers Bonilla's net worth within the context of the other evidence that will be presented at trial, including Bonilla's false statement that TTI perpetrated a $2 billion fraud, the $800 million in market capitalization his false statement destroyed, and the $1 million in profit he earned from his false statement.

7

damages "could cause a juror to presuppose . . . that punitive damages are appropriate before that threshold question is answered." ECF No. 195 at 7-8. That argument proves too much: in virtually *every* case, the jury is tasked with determining both liability and damages at the same time. Evidence relevant only to damages is almost always presented in one, unified trial, because juries are entrusted to follow the Court's instructions and to be able to weigh the evidence appropriately. *See Dick's Sporting Goods, Inc. v. Forbes/Cohen Fla. Props., L.P.,* 2024 WL 4003728, at *2 (S.D. Fla. Aug. 26, 2024) (quoting *Macneil v. Bengal Properties, Inc.,* 2022 WL 2231010, at *2 (S.D. Fla. Feb. 10, 2022) (explaining that Defendant's logic would require "every civil trial" to be "conducted in two phases"—"an untenable proposition"—and that any concern about net-worth evidence can be addressed through "appropriate instructions").

### B. Any Hypothetical Prejudice Can Be Remedied Through Limiting Instructions

Even assuming some risk of prejudice, there is a far less drastic remedy than bifurcation: The Court may give a limiting instruction directing the jury to consider Bonilla's net worth only when determining the amount of any punitive damages. The Eleventh Circuit has repeatedly endorsed limiting instructions as an effective means of mitigating prejudice. *See, e.g., Bell*, 112 F.4th at 1341 (explaining that "a limiting instruction mitigates the risk of undue prejudice" and affirming the district court's decision to admit allegedly prejudicial evidence with limiting instructions in view of extensive trial record).

Indeed, courts in this District have denied virtually identical requests. *See*

*State Farm*, 2009 WL 10675125, at \*1-2 (denying bifurcation where defendants failed to show prejudice from net-worth evidence and holding that a curative instruction could alleviate any concern); *see also Brown*, 2020 WL 2309869, at \*2 (denying motion to bifurcate punitive damages where "the Court can give jury instructions to ensure that the jury is not confused by the evidence admitted at trial"). A limiting instruction would similarly suffice here to alleviate any potential prejudice, the risk of which is minimal.

## III.    BIFURCATION WOULD BE INEFFICIENT AND INCONVENIENT

Defendant does not meaningfully address convenience or judicial economy, asserting only that the *W.R. Grace* framework would present a "convenient, streamlined manner to try the issues." ECF No. 195 at 8. The opposite is true. Without bifurcation, there will be one trial, one set of arguments, one deliberation, and one verdict. With bifurcation, there may well be two of each—all to isolate a handful of documents establishing Defendant's net worth.[3]

Bifurcation would be especially inefficient because there is a near-complete overlap between the evidence TTI will use to prove compensatory damages and punitive damages—with the sole exception of a handful of financial documents establishing Bonilla's net worth. Such overlap is a textbook reason for denying

---

[3] Bifurcation would be "more convenient" only if the Court assumes Bonilla will prevail in the first phase. But if the law presumed defendants would prevail, piecemeal trials would be the rule, not the exception. *See Transamerica Life Ins. Co. v. White*, 2024 WL 1573962, at \*6 (M.D. Fla. Apr. 11, 2024); *Response of Carolina*, 537 F.2d at 1323-24.

bifurcation. *See* 9A Wright & Miller, Fed. Practice & Procedure § 2388 & n.10 (3d ed. 2025) (explaining that bifurcation is generally *not* ordered when "the preliminary and separate trial of an issue will involve extensive proof and substantially the same facts or witnesses as the other issues in the cases"); *Jolly v. Hoegh Autoliners Shipping AS*, 2024 WL 1283690, at *3 (M.D. Fla. Mar. 26, 2024) ("[I]f bifurcation is granted, Plaintiffs will have to testify in the liability phase and then again during the damages phase. . . . In other words, bifurcation of the liability and damages phases will not be expedient.").

## <u>CONCLUSION</u>

Bonilla's Motion to Bifurcate Punitive Damages Issues should be denied.

Dated: March 25, 2026

By: /s/ *Jason D. Sternberg*
**QUINN EMANUEL URQUHART
& SULLIVAN LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
Laura N. Ferguson (FL Bar 1047701)
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com
lauraferguson@quinnemanuel.com

Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
555 13th St. NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries
Company Limited and Techtronic
Industries Factory Outlets, Inc.*