**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc., <br><br> Plaintiffs, <br><br> – against – <br><br> Victor Bonilla, <br><br> Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION *IN LIMINE* REGARDING PLAINTIFFS' EXPERT JEFFREY KOPA'S TESTIMONY**

Plaintiff Techtronic Industries Company Limited ("TTI") respectfully files this opposition to Defendant Victor Bonilla's ("Bonilla") Motion *In Limine* Regarding Plaintiffs' Expert Jeffrey Kopa's Testimony (ECF No. 217) (the "Motion"). The Court should deny the Motion for the reasons that follow.

**INTRODUCTION**

In June 2023, Bonilla published a false report (the "Second Report") accusing TTI of fraud, causing TTI's stock price to decline, and rewarding Bonilla with trading profits. Now, Bonilla seeks to prevent TTI's expert Jeffrey W. Kopa, CFA from explaining to the jury 1) that the drop in TTI's stock price came as a result of Bonilla's Second Report, and 2) that Bonilla profited from long and short trades

that he placed in connection with publishing the Second Report.[1]  Mr. Kopa's testimony is therefore directly relevant to the reputational harm Bonilla's false report caused TTI and the financial motive that drove Bonilla to publish it.

Mr. Bonilla has already tried to exclude this evidence, and the Court has already rejected his arguments once.  With his Motion, Bonilla attempts to relitigate the Court's *Daubert* order and to limit the same evidence and testimony that he sought to exclude in his Motion *in Limine* to Exclude Evidence and Argument Relating to "Benchmarking" Evidence for General Damages (ECF No. 196) ("Benchmarking Motion" or "Bench. Mot.").  For the same reasons already explained in TTI's opposition to that motion (ECF No. 202) ("Benchmarking Opposition" or "Bench. Opp."), and because the Court has already determined Mr. Kopa's testimony is relevant and would be helpful to the jury (ECF No. 200) ("Daubert Order"), this Motion should be denied.

## FACTUAL BACKGROUND

Bonilla's business model as an activist short seller is straightforward.  He publishes negative reports about public companies to profit from short positions when the share prices of the targeted companies decline.  In June 2023, Bonilla's

---

[1]   The Motion also seeks to limit evidence and testimony regarding 1) Bonilla's "First Report" published February 23, 2023, 2) professional fee invoices relating to the First Report, the 2021 LTIP Minimum Share Price, and the 2023 LTIP program, 3) trading profits earned by Bonilla as a result of the First Report, and 4) the impact of the First Report on TTI's stock price.  TTI has already conveyed to Bonilla through meet and confers that TTI does not intend to offer these categories of evidence through Mr. Kopa's testimony.  Accordingly, although TTI disagrees with Bonilla's contentions regarding relevance or admissibility of these categories of evidence, TTI does not oppose the Motion as to those four categories.

Second Report targeted TTI. The Second Report falsely accused TTI of defrauding The Home Depot ("THD") out of hundreds of millions of dollars per year. ECF No. 68 ¶¶ 60, 62. Despite the Second Report being unequivocally false, its publication caused TTI's stock price to drop nearly 5% and earned Bonilla over $1 million from the stock trades he made in connection with his publication of the report.

To quantify that damage, TTI's expert, Jeffrey Kopa, conducted an event study to evaluate the impact of the Second Report on TTI's stock. Daubert Order at 6. Mr. Kopa concluded, in relevant part, that the "share price of TTI's common stock declined in . . . June 6, 2023, following the . . . Second Report" and that Bonilla "profited from trading activity associated with" the Second Report. Daubert Order at 5-6. Bonilla moved to exclude Mr. Kopa's report, testimony, and opinions in his *Daubert* motion (ECF No. 168). The Court denied Bonilla's motion, finding that "testimony regarding TTI's damages is certainly relevant," that Mr. Kopa's event study was reliable, and that his "calculations and conversions" would help the jury understand the various figures associated with damages in this case. Daubert Order at 10-13.

Bonilla subsequently moved *in limine* to exclude evidence of Bonilla's "gains or profits made in buying and selling [TTI's] stock" and "fluctuations in [TTI's] stock price," (Bench. Mot. at 1)—the same evidence he targets in the present Motion. In its response , TTI explained that both categories of evidence are directly relevant to TTI's presumed damages and any punitive damages award. Bench. Opp. § II-III. The Court has yet to rule on this pending motion.

3

This Motion therefore represents Mr. Bonilla's third attempt to exclude Mr. Kopa's testimony regarding  the direct financial consequences of Bonilla's false and defamatory report.

## **LEGAL STANDARD**

"The federal rules favor admission of evidence over exclusion if the evidence has any probative value." *United States v. Wilson*, 2016 WL 5719578, at *1 (M.D. Fla. Sep. 30, 2016), *aff'd*, 750 F. App'x 877 (11th Cir. 2018).  The standard for relevance "is a low one," and permits introduction of evidence that "(a) [] has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  *Id.*  The Federal Rules are clear that all "[r]elevant evidence is admissible," unless an exclusionary rule applies.  Fed. R. Evid. 402.

## **ARGUMENT**

Evidence and testimony by Mr. Kopa regarding and explaining 1) Bonilla's trading profits earned from the Second Report and 2) TTI's stock price decline as a result of the Second Report are relevant to and probative of TTI's presumed and punitive damages.

## I.   BOTH CATEGORIES OF EVIDENCE ARE RELEVANT TO PRESUMED DAMAGES

Bonilla incorrectly asserts that Mr. Kopa's evidence and testimony regarding stock price decline and trading profits are irrelevant to the issues remaining in the case.  As an initial matter, these arguments are taken nearly verbatim from Bonilla's Motion to Exclude, and the Court should reject Bonilla's attempt to take

this improper second bite at the apple. *See* Bench. Mot.  Furthermore, as explained at length in TTI's Benchmarking Opposition (Bench. Opp. § II), both evidence of the stock price decline and trading profits are relevant to TTI's claim for presumed damages.   Bonilla's effort to exclude this evidence amounts to an attempt to sanitize the record of the very consequences of his wrongdoing—leaving the jury with no meaningful metric by which to assess the harm TTI has actually suffered and without which presumed damages become a purely speculative exercise.

Florida law does not require any "exact standard for fixing the compensation to be awarded" for presumed damages.  *Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1259-60 (N.D. Fla. 2007).  Instead, because reputational harm is difficult to quantify, the law calls for a standard to "be flexibly applied so as to provide fair compensation under the circumstances of the specific case."  *O'Leary v. Armstrong*, 2026 WL 404214, at *5 (S.D. Fla. Feb. 13, 2026).  Florida courts recognize that "[a]ny award should be fair and just in the light of the evidence.'"  *Sirer v. Aksoy*, 2023 WL 3166453, at *7 (S.D. Fla. May 1, 2023).  TTI's stock price decline and Bonilla's trading profits present a "fair and just" barometer to gauge the reputational impact of the Second Report.  *Id.*; *see also Rety v. Green*, 546 So. 2d 410, 423 n.16 (Fla. 3d DCA 1989) (finding, for defamation claim, that plaintiff "was entitled to recover for the loss in value of his corporate stock . . . caused by [] defamation").

### A.    Stock Price Decline

The stock price decline and resulting loss of market capitalization are a concrete, financial representation of reputational harm because a company's share price, at bottom, is the market's perception of the company's reputation. *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 2017 WL 6622648, at *3 (S.D. Fla. Dec. 22, 2017) ("A company's reputation is a strong indicator of its overall value"); *cf. Mercy Health Servs.-Inc. v. Efstratiadis*, 579 F. Supp. 3d 1096, 1106 (N.D. Iowa 2022) ("In the business context, reputation is '[t]he public's evaluation of and regard for the quality of a company's goods or services.' Thus, reputation relates to the public's evaluation of a business, which is slightly different from goodwill, which relates to the business's overall intangible value." (internal citation omitted)).

As a result, Mr. Kopa's testimony explaining the decline in the share price of TTI's common stock that occurred immediately following the Second Report's release is directly relevant evidence of the reputational damage TTI suffered and that presumed damages are intended to compensate.  Mr. Kopa's testimony would provide the jury with a tangible figure to help understand the harm caused by Bonilla's report and to properly grant "fair compensation under the circumstances of the specific case." *O'Leary*, 2026 WL 404214, at *5 ; *see In re Premiere Techs. Inc.*, 2000 WL 33231639, at *11 (N.D. Ga. Dec. 8, 2000)..

Bonilla's recycled arguments remain unavailing.  His first argument—that TTI's stock price decline is irrelevant because Mr. Kopa's report described the

6

decline as being "weakly significant" (Motion at 8 (quoting ECF No. 202 Ex. 3 ("Kopa Report") ¶ 97))—mischaracterizes the precise statistical terminology. The modifier "weakly" describes the strength of the association, but even a weak statistical significance indicates evidence of a causal relationship. This is precisely reflected in Mr. Kopa's conclusion that the Second Report "caused" a decline in TTI's share price. Kopa Report ¶ 97. Mr. Kopa's regression analyses produced p-values of between 0.086 and 0.148 (Kopa Report ¶ 91), which fall squarely within the range of statistically significant results courts routinely accept. *See, e.g.*, *Dennis v. Andersons, Inc.*, 2024 WL 5127313, at *4 (N.D. Ill. Dec. 17, 2024) (admitting event study analyses that produced p-values up to 0.20 where higher values are less statistically significant). And even so, this Court has already considered and rejected Bonilla's *Daubert* challenge to this same testimony. Daubert Order at 12. Any remaining dispute about the weight of Mr. Kopa's conclusions is a question for the jury, not a basis for exclusion. *See id.* (explaining that "testimony regarding TTI's damages is certainly relevant, at least with respect to damages related to publication of the Second Report" and "Bonilla's arguments to the contrary in an effort to exclude the opinions go more to the weight the jury should give the opinions and not to their admissibility"); *Chico's Fas, Inc. v. Clair*, 2015 WL 3496003, at *6 (M.D. Fla. June 3, 2015) (denying motion to exclude expert opinion because "[a]lthough such evidence may be weak, . . . Chico's position will be better served by vigorous cross examination of Wink's witnesses").

Bonilla's second argument fares no better.  In a single conclusory sentence, he states that "a decline in stock price does not support damages."  Motion at 8.  But, as explained above, the decline in TTI's stock price is evidence of its reputational damage and is, therefore, relevant to the jury's determination of presumed damages.  Bonilla again relies on *Sargent v. Genesco, Inc.*, 492 F.2d 750, 765 (5th Cir. 1974).  *See* Motion at 8.  But that authority is still unavailing.  *Sargent* addressed whether, in the context of an alleged securities statute violation, a company could directly seek compensation for a reduction in its share price and held that it could not because that harm was suffered by the shareholders, not the company.  *Sargent*, 492 F.2d at 765.  It says nothing of share price as evidence of reputational harm.  In fact, *Sargent* cuts against Bonilla's argument.  The court acknowledged that a lower share price could impair a company's ability to raise future capital—precisely the kind of difficult-to-quantify reputational harm for which presumed damages are intended to compensate.  *Id.*

## B.    Trading Profits

Likewise, Dr. Kopa's testimony explaining Bonilla's trading profits is relevant to presumed damages because it will help the jury award "fair compensation under the circumstances of" this case.  *O'Leary*, 2026 WL 404214, at *5.  TTI alleges that Bonilla was motivated to damage TTI's reputation because he would profit from the stock price decline.  The jury cannot issue a fair compensatory verdict without understanding the extent to which Bonilla profited.

8

Bonilla relies on the same inapposite cases as in his Benchmarking Motion. But as TTI has explained (Bench. Opp. at 14-15), none of Bonilla's authorities holds that a defendant's trading profits should be excluded or are not relevant to a jury's consideration of presumed damages caused by that defendant's libel. Instead, they consider whether a plaintiff may seek disgorgement of a short seller's trading profits under an unjust enrichment theory. *See Cason v. Baskin*, 20 So. 2d 243, 254 (Fla. 1944) (entitlement to profits in unjust enrichment context); *Salem Media Grp. v. Awan*, 301 A.3d 633, 659 (D.C. 2023) (disgorgement of profits in unjust enrichment context); *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 2012 WL 3569952, at *12 (N.Y. Sup. Ct. Aug. 16, 2012) (disgorgement of profits in an unjust enrichment context). Here, TTI has expressly disclaimed any claim for disgorgement. Instead, Mr. Kopa's testimony regarding Bonilla's profits is relevant as evidence of reputational harm to TTI and Bonilla's malicious motive, consistent with Florida's "flexibl[e]" legal standard for presumed damages that seeks "to provide fair compensation under the circumstances of the specific case." *O'Leary*, 2026 WL 404214, at *5.

## II.    BOTH CATEGORIES OF EVIDENCE ARE RELEVANT TO PUNITIVE DAMAGES

Bonilla's Motion also overlooks that—as explained at length in TTI's Benchmarking Opposition (Bench. Opp. § III)—Mr. Kopa's testimony regarding TTI's stock price decline and Bonilla's trading profits are independently relevant to any award of punitive damages. Excluding evidence that Bonilla earned over one million dollars in profit from trades associated with the Second Report is

9

prejudicial to TTI because it removes a key fact from the jury's consideration of punitive damages.

Florida law permits punitive damages in libel cases "upon some proof of the malicious character of the publication . . . to serve as a deterrent to others inclined to commit a similar offense." *O'Leary*, 2026 WL 404214, at *8 (quoting *Saunders Hardware Five & Ten, Inc. v. Low*, 307 So. 2d 893, 894 (Fla. 3d DCA 1974)).  Proof of malice "may come from two sources: the publication itself and extrinsic evidence concerning the defendant's feelings toward the plaintiff."  *Colbert v. Anheuser-Busch, Inc.*, 2013 WL 12145015, at *2 (M.D. Fla. Apr. 11, 2013).

When evaluating the amount of punitive damages to award, Florida's Pattern Jury Instructions permit the jury to assess "the nature, extent and degree of misconduct and the related circumstances," including whether the wrongful conduct was motivated solely by unreasonable financial gain; whether the unreasonably dangerous nature of the conduct together with the high likelihood of injury resulting from the conduct was actually known by the defendant; and whether at the time of the damage the defendant had a specific intent to harm the plaintiff.  *See* Florida Standard Jury Instructions in Civil Cases (2026), § 503.2 (Punitive Damages – Non-Bifurcated Procedure).

Here, the stock price decline and trading profits are relevant to both the degree of misconduct and Bonilla's unreasonable financial motivations.  TTI's stock price decline and the monetary value of that decline show the degree of harm Bonilla's conduct caused, to both TTI (*see supra* § I) and to third parties, like TTI's

10

shareholders, consideration of which is proper in a jury's assessment of punitive damages (s*ee Cote v. Philip Morris USA, Inc.*, 400 F. Supp. 3d 1295, 1310-11 (M.D. Fla. 2019), *aff'd*, 985 F.3d 840 (11th Cir. 2021); *Stockett v. Tolin*, 791 F. Supp. 1536, 1558 (S.D. Fla. 1992)).

Bonilla's trading profits are therefore relevant to the jury's determination of punitive damages. Without introducing that evidence, the jurors will not understand the full picture and scope of Bonilla's malfeasance—the end result of which was a profit of over one million dollars. If the jury is tasked with determining punitive damages, it is important that Mr. Kopa be permitted to explain that Bonilla profited as a result of the decline in TTI's stock and to quantify that profit. Without this information, the jury cannot meaningfully determine what amount of punitive damages would deter Bonilla from repeating similar conduct, a core purpose of punitive damages.

## III. BONILLA'S TRADING PROFITS DO NOT WARRANT EXCLUSION UNDER RULE 403

In another attempt to exclude relevant evidence of his trading profits, Bonilla argues that, even if the evidence were relevant, that "it would be unfairly prejudicial to Bonilla to present such evidence." Motion at 6. As explained in TTI's Benchmarking Opposition (Bench. Opp. § IV), exclusion of this evidence under Rule 403 is unwarranted.

Rule 403 calls for exclusion only in the "extraordinary circumstance" where the probative value of the evidence is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of

11

time, or needlessly presenting cumulative evidence." *United States v. Patrick*, 513 F. Appx. 882, 886 (11th Cir. 2013) (quoting Fed. R. Evid. 403); *Sardis v. Home Depot U.S.A., Inc.*, 2018 WL 11350227, at *2 (M.D. Fla. May 18, 2018).  This is a high standard that rarely leans in favor of exclusion because "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be unfair"— specifically, "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one."  *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. 1981) (internal quotation omitted).

As explained above (*see supra* §§ I-II), Bonilla's trading profits are relevant and probative, so the balance leans strongly toward admission.  Bonilla provides no support for his assertion that the evidence would be inflammatory or confusing to the jury.  Motion at 6-7.  Moreover, the Court has already rejected Bonilla's argument that he would be prejudiced by the introduction of evidence of his trading profits.  ECF No. 208 at 3-4 ("Defendant argues that he will be prejudiced by the introduction of evidence of . . . amounts made from stock trades involving Plaintiffs . . . On the facts of this case, Defendant's arguments are unavailing.").  Bonilla should not be allowed to unfairly tilt the scales in his favor by removing the relevant evidence of the profits that motivated and resulted from his defamatory report from the jury's consideration.  The "extraordinary remedy" of exclusion under Rule 403 is not warranted.

## IV.    A PROPHYLACTIC ORDER TO LIMIT MR. KOPA'S TESTIMONY IS NOT WARRANTED

In a vague and over-reaching request,  Bonilla preemptively asks the Court to bar Mr. Kopa from testifying to any damages theory or calculation not previously disclosed.  Motion at 8-9.  Bonilla identifies no specific testimony to exclude, relying only on speculation that "it appears Techtronic may attempt to introduce new damages theories and calculations," because "the damages landscape" has "chang[ed] considerably" following the Court's summary judgment ruling. *Id.* at 9.

As an initial matter, the "damages landscape" has not changed.  TTI maintains its claims for presumed and punitive damages stemming from Bonilla's publication of the Second Report, and as explained above, Mr. Kopa's testimony remains relevant to both damages theories.

Even so, the Court should decline to issue such a broad, prophylactic order. To be clear:  TTI does not intend to offer anything beyond Mr. Kopa's disclosed opinions. *See Taylor v. Allworth*, 2021 WL 4311051, at *4 (M.D. Fla. Sep. 22, 2021) ("Defendants do not provide the Court with any reason to expect that Plaintiffs would ask [the expert] to give opinions on matters beyond his knowledge, competence, or his written report. This Court will—of course—enforce the Federal Rules of Evidence and Civil Procedure, but it will not issue prophylactic orders without cause to believe a party intends to violate those rules.").

If Bonilla believes Mr. Kopa strays outside the scope of his report or deposition at trial, the appropriate recourse is to object at trial.  The Court may then properly rule in the context of actual evidence and trial, instead of on

hypothetical concerns raised in advance. *See Helmick v. Knauf Gips KG*, 2024 WL 2155110, at *3 (M.D. Fla. May 14, 2024) ("[W]ithout knowing what additional evidence — if any — will be disclosed before trial and the reasons for Plaintiff's delay, the Court will not exclude all late-disclosed evidence at this time. Instead, the Court will entertain objections at trial to such evidence.").  But at this time, without any context and in the face of TTI's expressed intention to keep Mr. Kopa's testimony within the scope of his previously disclosed expert report, any limiting order would be premature and unwarranted.

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court deny Defendant's Motion.


Dated: May 1, 2026

By: /s/ *Jason D. Sternberg*
**QUINN EMANUEL URQUHART
& SULLIVAN LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
Laura N. Ferguson (FL Bar 1047701)
David Nabors (FL Bar 1024722)
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com
lauraferguson@quinnemanuel.com
davidnabors@quinnemanuel.com

Christopher Tayback (admitted *pro hac vice*)
Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor

14

Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
christayback@quinnemanuel.com
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
555 13th St. NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*