UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES
COMPANY LIMITED and
TECHTRONIC INDUSTRIES FACTORY
OUTLETS, INC.

        Plaintiffs,

    v.

VICTOR BONILLA,

        Defendant.

Case No. 8:23-cv-01734-CEH-AEP

## DEFENDANT'S TRIAL BRIEF

### I.    INTRODUCTION

This is a case that has been narrowed by both this Court's summary judgment ruling and concessions by the Plaintiffs to a single issue—whether Victor Bonilla engaged in defamation *per se* when he published his Second Report about Techtronic, which alleged that Techtronic engaged in a fraud when it unilaterally labeled and then sold "factory blemished"[1] Ryobi tools in its own factory outlet stores, in violation of its exclusive contract with Home Depot.

Per this Court's summary judgment ruling, Bonilla will not contest that the Second Report contained a false statement as to the value, profit, and annual sales of the factory outlet program. However, other than that non-material false

---

[1] It is undisputed that the tools themselves were not blemished and were identical to "unblemished" tools, and the only damage, if any, was to the packaging.

statement as to the value, profit, and annual sales, the evidence will show that Bonilla's factual statements of and concerning Techtronic's factory outlet program were true or substantially true.

Similarly, this Court has rejected Bonilla's opinion defense with respect to his opinions that were purportedly premised on the statements as to the value, profit, and annual sales of the factory outlet program. This is a matter of law for the Court to decide, so Bonilla will not be presenting an opinion defense to the jury. However, the jury still has to find that Bonilla's statements were false statements of fact (this is one of the elements of a defamation claim, discussed below), and we anticipate Techtronic will be unable to prove that some of the allegedly defamatory statements were statements of fact.

On the other hand, this Court's summary judgment ruling will also constrain Techtronic. Other than perhaps a short statement about the fact that the First Report was written and was no longer in the case, Techtronic should be precluded from introducing evidence regarding the First Report, which this Court ruled consisted entirely of protected, non-actionable expression.

Techtronic has also withdrawn its defamation *per quod* claims (because it will be unable to show it suffered special damages such as lost business or lost financing as a result of the Second Report) and has withdrawn the claims made on behalf of its subsidiary, Techtronic Industries Factory Outlets, Inc. All that is left is a defamation *per se* claim on behalf of Techtronic corporate, which alleges that

-2-

the Second Report defamed Techtronic, and seeking nominal or general, and punitive damages.

## II.    EXPECTED LEGAL ISSUES AT TRIAL

Under Florida law, Techtronic has the burden of proving the following five elements in a defamation case:  "(1) publication; (2) falsity; (3) actor must act... at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory".  *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008).  Publication is not at issue—Bonilla does not deny he published the Second Report.

With respect to falsity, "[i]n Florida, a claim of defamation requires a false statement of fact".  *Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1361 (S.D. Fla. 2021).  Thus, Techtronic must prove by a preponderance of the evidence both that the statements it pleaded as defamatory in its Complaint are statements of fact, and that they are false.

With respect to negligence, Techtronic will have to prove Bonilla's conduct was unreasonable under an objective standard.  *Harrell v. Harris*, 2015 WL 2255096 at *2 (S.D.Ga. May 12, 2015).  This means that Bonilla's supposed intent to defame Techtronic (which Bonilla strenuously denies) is *irrelevant to liability in this case* and should not be admitted for that purpose.  If Techtronic fails to show that Bonilla's reporting techniques were unreasonable, this element will not be satisfied no matter what Bonilla's supposed intentions were.

With respect to damages, the evidence will show that Techtronic's Rule 30(b)(6) witness admitted it did not suffer any actual damage as a result of Bonilla's Second Report.  No lost contracts, no lost business, no lost sales.  Techtronic is seeking soley "presumed" damages.   But, in order to establish an entitlement to presumed damages, Techtronic must satisfy yet another test -- that the statements were defamatory *per se*, i.e., the sorts of statements that would inherently damage the plaintiff's reputation.  To prove this, Techtronic must prove by a preponderance of the evidence that the false statement of fact in the Second Report alleges "conduct, characteristics, or a condition incompatible with the proper exercise of [its] lawful business, trade, profession, or office".  *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014).  If Techtronic does not prove this, the jury may not award it "presumed" damages and must find for Bonilla.

If Techtronic is to receive general damages, it may not be benchmarked to some number presented to the jury such as Bonilla's profits from trading the stock or the decline in Techtronic's market capitalization (an injury that Techtronic's witnesses conceded would be to its shareholders and not to the company).  Rather, "[t]here is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any award should be fair and just in light of the evidence".  *O'Leary v. Armstrong*, 2026 WL 404214 at *6 (S.D. Fla. Feb. 13, 2026).  If the jury makes an award that is not fair and just in light of the evidence, this Court will be required to intervene post-trial.

-4-

More likely, Techtronic, if it even proves its defamation claim, will be limited to nominal damages.  Nominal damages are limited to an "inconsequential" amount.  *Prestige Gallery, Inc. v. Napleton*, 283 So.3d 875, 876 (Fla. 1st DCA 2019) (reversing award of $80,000 in nominal damages).

Finally, because the test for defamation *per se* subsumes the "defamatory" element of the test for defamation, if Techtronic succeeds in proving defamation *per se*, they will have satisfied this element.

Techtronic's claim for punitive damages faces additional hurdles.  Beyond being only available if liability is found and damages assessed, "[a] defendant may be held liable for punitive damages only if the trier of fact, **based on clear and convincing evidence**, finds that the defendant was personally guilty of intentional misconduct or gross negligence".  Fla. Stat. §768.72(2) (emphasis added).   "Intentional misconduct" means "that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage".  *Id.*  "Gross negligence" means that "the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct".

Much of the evidence that Techtronic seeks to admit—not evidence that Bonilla's statements were false or caused it damage were made negligently, but evidence that supposedly Bonilla had a financial motive to make false statements—

-5-

is only even arguably relevant to this punitive damages issue.  Thus, the Court will need to ensure that the jury understands such evidence is admitted, if at all, for a very limited purpose and that it may only be considered for that purpose.

In addition, Bonilla expects that Techtronic will seek to admit evidence of Bonilla's relationship with Muddy Waters Capital, a "balance sheet partner" that traded Techtronic's stock in connection with the **First** Report.  However, Muddy Waters was not able to confirm it traded Techtronic stock in connection with the Second Report, Bonilla received no money from Muddy Waters as a result of such trading, and in any event, the fact that another firm may have been trading Techtronic stock is irrelevant to whether Bonilla acted with any improper intent towards Techtronic.

Finally, there are constitutional limits on punitive damages awards.  These limits are the province of this Court and are based on "the degree of reprehensibility of the defendant's action, the disparity between the harm and the punitive damages award, and the difference between the award and the civil penalties authorized or imposed in comparable cases".  *Faulk v. Dimerco Express*, 172 F.4th 844, 862 (11th Cir. 2026).  The evidence will show that far from reprehensible, Bonilla's conduct was conscientious and that he did everything he could to produce accurate reports.  It will further show that Techtronic suffered no actual harm.  Finally, it will show that there are no civil penalties imposed for ordinary defamation.  An award of punitive damages in any amount will be unconstitutional.

Moreover, a single digit multiplier between compensatory and punitive damages is required under the Constitution. *Id.* at 864. Thus, the jury will be strictly limited in any punitive damages award, especially if the compensatory award is nominal.

## III.    CONCLUSION

For the foregoing reasons, this Court will need to carefully supervise the evidence that is offered by Techtronic at trial, especially on theories supposedly centered around Bonilla's "intent" rather than whether Techtronic was actually defamed and Bonilla's actions were objectively unreasonable, and whether Techtronic actually suffered damages. This Court must also ensure that evidence that only should come in, if at all, on punitive damages issues not be considered to impose liability.

Dated: May 5, 2026

By: */s/ Dilan A. Esper*
Dilan A. Esper (*pro hac vice*)
desper@Harderstonerock.com
Charles J. Harder (*pro hac vice*)
charder@Harderstonerock.com
Harder Stonerock LLP
6300 Wilshire Boulevard,
Suite 640
Los Angeles, CA 90048
Telephone (424) 203-1600

Respectfully submitted,

By: */s/ Jonathan R. Weiss*
Jonathan R. Weiss (FBN: 57904)
Jonathan.weiss@squirepb.com
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard,
Suite 3400
Miami, Florida 33131
Telephone: (305) 577-7000

*Attorneys for Defendant Victor Bonilla*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 5, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record

Jason Sternberg (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
2601 South Bayshore Dr., Ste 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
kristintahler@quinnemanuel.com

David A. Nabors
Fla. Bar No. 1024722
Quinn Emanuel Urquhart Sullivan LLP
2601 S. Bayshore Drive, Suite 1550
Miami, FL 33133-5417

Nicholas Inns (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
nicholasinns@quinnemanuel.com

*/s/ Dilan A. Esper*
Attorney

-8-