# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

|  |  |
|---|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc., <br><br> Plaintiffs, <br><br> – against – <br><br> Victor Bonilla, <br><br> Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

## <u>PLAINTIFFS' TRIAL BRIEF</u>

Plaintiffs Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.[1] (together, "TTI"), by and through the undersigned counsel, respectfully submit their Trial Brief pursuant to the Court's Case Management and Scheduling Order dated January 12, 2026.  ECF No. 193 at 2.  TTI files this brief to provide its position on three key issues that the parties disputed throughout their pretrial conferrals and that are reflected in the parties' competing proposed jury instructions and in anticipation of Defendant Victor Bonilla's ("Bonilla") filing of a pretrial brief.

---

[1]  TTI does not currently intend to pursue claims on behalf of Techtronic Industries Factory Outlets, Inc.

**INTRODUCTION**

Victor Bonilla is a self-proclaimed activist short seller.  He takes positions in publicly traded stocks that become more valuable if the price of the stock declines, publishes negative reports to reduce that price, and then profits when the stock price falls.  In February 2023, operating pseudonymously through his website Jehoshaphat Research, Bonilla published a report about TTI—a global power tools manufacturer—alleging that TTI had engaged in manipulative accounting to inflate revenue and hide expenses.  TTI's stock dropped by nearly 20%, and Bonilla profited enormously from his short-selling.

Motivated by the profits he had earned, Bonilla again set his sights on TTI and released a Second Report in June 2023.  This time, Bonilla falsely accused TTI of "systematically defrauding Home Depot," TTI's single largest customer and long-standing collaborative partner.  Bonilla falsely asserted that TTI "mislabel[s] Home Depot-exclusive brands as 'Factory Blemished' in order to sell them through an outlet channel TTI owns . . . called 'Direct Tools Factory Outlet' or DTFO." Bonilla further falsely stated that DTFO sold between $693 million and $2.46 billion in Factory Blemished products annually and that TTI earned nearly $401 million per year in profits from this alleged fraud—which Bonilla calculated as "a material portion of TTI's total expected . . . 2023 gross profit."  Bonilla promoted this report, amplified his false statements on Twitter, and coordinated an anonymous appearance on Zer0esTV, an online platform that supports short sellers.  Despite being unequivocally false, the Second Report caused TTI's stock

price to plunge 5%—destroying over $800 million in market capitalization—while Bonilla pocketed more than $1 million in trading profits from trades placed around the Second Report.

TTI now seeks to hold Bonilla liable for defamation *per se*.[2]  Notably, the Court has already granted summary judgment on important threshold issues in TTI's favor.  The Court determined that TTI is a private figure, rather than a public figure, meaning that "TTI need only prove to a jury that Bonilla acted ***negligently*** in making the statements in the Second Report."  ECF No. 179 at 31 (emphasis added).  Additionally, the Court granted partial summary to TTI on the falsity element of the Second Report.  The Court ruled that the Second Report "***falsely state[d]*** that TTI's DTFO sales represented $1-2 billion (when it was actually about $100,000,000) in annual sales" and that these "numbers reported by Bonilla were wrong—***by more than a billion dollars***."  ECF No. 179 at 25, 27 (emphasis added).  The Court explained that the Second Report's statements that TTI was misleading The Home Depot were "buttressed by the false numbers Bonilla reported for the value, sales, and profits related to DTFO inventory," and that "[t]hat factual error ***undermine[d] the entire premise*** that TTI was selling significantly more products from its DTFO stores to Home Depot's detriment."  *Id*. at 25-27 (emphasis added).

---

[2]  TTI's Amended Complaint seeks to hold Bonilla liable for both libel (Count I) and libel *per se* (Count II).  Following the Court's order on summary judgment (ECF No. 179), TTI determined it would proceed to trial solely on Count II.

As this Court ruled in its summary judgment order, only three narrow issues remain for the jury and require the presentation of evidence. *First*, the jury must determine "whether the statements predicated on the false facts were made negligently." *Id.* at 27. *Second*, the jury must determine whether the statements were defamatory *per se*. *Id.* To be defamatory *per se*, Bonilla's statements must have (1) charged that TTI had committed a felony, (2) tended to subject TTI to hatred, distrust, ridicule, or contempt, or (3) tended to injure TTI in its trade or profession.

*Third*, the jury must decide the amount of general and punitive damages to award against Bonilla. *Id.* General damages are intended to compensate TTI for damage to its reputation that the Second Report caused. Punitive damages are intended to punish Bonilla and deter similar conduct. Punitive damages are particularly warranted here for at least two reasons: first, because the Second Report, which the Court has already determined contains false statements, remains published on Bonilla's Jehoshaphat Research website *in its entirety and without any changes since the original day of publication (and irrespective of the Court's order on summary judgment)* to this day; and second, because Bonilla has continued to make statements demonstrating his contempt for TTI and these proceedings. Punitive damages will be especially important to send a message to Bonilla that his brand of "activism"—publishing false reports to destroy a company's stock price and pocket the profits—carries consequences.

4

**MEMORANDUM OF LAW**

TTI's trial brief addresses three disputed issues that will frame the forthcoming trial.[3]  First, the Court should reject Bonilla's attempt to narrow the Court's summary judgment holding that the statements in the Second Report were false and should likewise preclude any argument that Bonilla may present on this issue.  The Court has already determined the issues that will proceed to trial—falsity is not one of them.  Second, the Court should reject Bonilla's attempt to introduce materiality as an issue for the jury's consideration.  As the Court's order on summary judgment recognized, Bonilla's miscalculation of the DTFO revenue by more than two billion dollars was indisputably material to the Second Report.  Finally, Bonilla's attempt to have the jury decide causation as a liability element of defamation *per se* is incompatible with the Florida Standard Jury Instructions and Florida law.  The Court should reject that construction and strike the proposed instruction.

I.     **THE COURT GRANTED SUMMARY JUDGMENT IN FAVOR OF TTI ON THE FALSITY OF THE STATEMENTS IN THE SECOND REPORT**

To prevail on its defamation *per se* claim, TTI must show that the Second Report was false in some significant respect.  The Court already conclusively resolved that question in favor of TTI when it granted partial summary judgment to TTI on falsity.

---

[3]   The Parties have conferred extensively concerning these issues and have not been able to reach agreement.

As this Court recognized on summary judgment, the Second Report falsely claimed that TTI was systematically defrauding its largest partner, The Home Depot.  The Court agreed with TTI's argument that Bonilla's numbers regarding the "values, sales, and profits related to DTFO," were wrong "by more than one billion dollars." *Id.* The Court further found that Bonilla's massive numerical error and "the fact that he had never seen the Home Depot Agreement" that governed TTI's relationship with The Home Depot buttressed the statements that Bonilla made in the Report. *Id.* at 27.  Bonilla now seeks to relitigate this ruling.  He argues that the Court resolved only the narrow question of the falsity of DTFO inventory value, sales, and profits.  *See* ECF No. 215 (Joint Pretrial Statement contentions) at 6; ECF No. 215-5 (Proposed Jury Instructions) at 6, 33 n.13, 44-45.  Bonilla asserts that he may present argument and evidence at trial regarding the falsity of his statements regarding TTI's practice of labelling products at DTFO "factory blemished" and systematic defrauding of The Home Depot.

The Court's order forecloses Bonilla's attempt to relitigate falsity.  In the Court's view, Bonilla's fraud argument was necessarily false because "[t]hat factual error [regarding the false numbers] undermine[d] the entire premise that TTI was selling significantly more products from its DTFO stores to Home Depot's detriment." ECF No. 179 at 25.  In addition to explaining the scope of its ruling, the Court's summary judgment order also expressly enumerated the issues remaining for trial—which did ***not*** include falsity. *See id.* at 25-26 ("Whether the statements made in the Second Report that are based on these false facts are

6

defamatory, and what damages, if any, TTI suffered . . . are questions of fact that will go to the jury."). All that remains for the jury on this issue is whether Bonilla was negligent in determining the statements' truth or falsity. *See* Florida Standard Jury Instructions in Civil Cases (2026) ("Fla. CJI") § 405.7 (Issues on Plaintiff's Claim – Falsity).

## II. BONILLA'S INCORRECT VALUATION OF DTFO WAS MATERIAL TO THE SECOND REPORT

Bonilla further attempts to evade the effects of the Court's summary judgment order by arguing that "the statements in the Second Report regarding value, profits and annual sales of DTFO's stores" were not materially false. ECF No. 215 at 6. This argument is incompatible with both the Court's summary judgment reasoning and the Second Report itself.

In its order, the Court ruled that the figures in the Second Report were not just numerically false, but also foundational to the Second Report's allegations. The Court explained that Bonilla's false numbers regarding the value, sales, and profits related to DTFO inventory "***undermine[d] the entire premise*** that TTI was selling significantly more products from its DTFO stores to Home Depot's detriment." ECF No. 179 at 25 (emphasis added). Far from immaterial, the Court found that "the numbers reported by Bonilla were wrong—***by more than a billion dollars***." *Id.* at 27 (emphasis added). These false statements that the Court itself described as undermining the "entire premise" of the Second Report are material by definition

Bonilla's argument that his egregiously false statements regarding the value

of DTFO's sales and profits are immaterial to his Report is incompatible with the Court's summary judgment order. By recognizing that the valuation figures were fundamental to the premise of the Second Report's ultimate and false conclusion that TTI was defrauding The Home Depot, the Court necessarily resolved any question of the statement's materiality. By attempting to recast his statement on "value, profit, and annual sales" as inconsequential, Bonilla effectively seeks an untimely reconsideration of the Court's order on summary judgment.

Bonilla's Report itself further confirms the significance of the false statements he made regarding the value of DTFO's sales. Not only does half of Bonilla's Second Report fall under the heading "Is It Material" (which Bonilla answers in the affirmative), but Bonilla relies on his false numbers to "estimate one-third (or more) of TTI's [earnings] comes from" the fraud he falsely asserts TTI engaged in. ECF No. 1-2 at 55. By Bonilla's own admission, the purpose of the Report was to decrease TTI's share price in service of his own profits. His estimate that one-third of TTI's earnings are based on fraud—an estimate that is inextricably tied to his false DTFO numbers—is essential to his purpose of convincing investors that TTI's stock is worth less than its current value to cause them to sell the stock, lower its price, and make him money. The Court's ruling that Bonilla's false statements regarding DTFO numbers "undermine[d] the entire premise" of his Report reflects this reality about Bonilla's Report. ECF No. 179 at 25.

8

The Court has already conclusively resolved the issues of falsity and materiality. Bonilla should not be permitted to dispute these determinations and create a trial issue on them.

### III. CAUSATION OF HARM IS NOT AN ELEMENT OF LIABILITY FOR DEFAMATION *PER SE*

Bonilla has proposed that the jury determine, as an element of liability, whether his Second Report "caused" any damage to TTI. Specifically, Bonilla's proposed jury instruction would require TTI to prove as a standalone element to establish liability that TTI's alleged damages were "caused by Bonilla's allegedly false statements of fact about TTI," applying a "but for" causation standard borrowed from general tort negligence law. ECF No. 215-5 (Bonilla's Proposed Jury Instruction) at 8. That requirement has no place in a defamation *per se* case and is incompatible with Florida law.

It is blackletter Florida law that causation is presumed and need not be proven at trial for a defamation *per se* claim. The very premise underlying a defamation *per se* claim is that certain statements are "so obviously defamatory" and "damaging to reputation" that they give "rise to an absolute presumption both of malice and damage." *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973).

Recovery for defamation *per se* therefore includes general damages, which are "those which the law presumes must naturally, proximately, and necessarily result from the publication of the libelous matter." *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA 2010) (quoting *Miami Herald Publ'g Co. v. Brown*, 66 So. 2d 679, 681 (Fla. 1953)). These damages "arise by inference of

9

law, and are not required to be proved by evidence." *Id*. (citing *Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 497-98 (Fla. 1953)). Florida's Standard Jury Instructions expressly adopt this principle and explain that a causation instruction should be given "subject to" the general damages framework. *See* Fla. CJI § 405.9, Note on Use 1-2 (recognizing that, for a defamation *per se* claim, "general damages are presumed," "instruction 405.5[4] may be unnecessary for defamation per se," and contrasting that "[d]efamation *per quod*, however, does require proof of causation"). And federal courts applying Florida law have consistently applied this rule. *See Grippa v. Rubin*, 2023 WL 3683977, at *5 (N.D. Fla. Mar. 22, 2023), *aff'd in part, appeal dismissed in part*, 133 F.4th 1186 (11th Cir. 2025); *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1254 (M.D. Fla. 2007), *aff'd*, 294 F. App'x 502 (11th Cir. 2008). Because damages are presumed as a matter of law, there is no gap for a causation instruction to fill—the law itself presumes that defamatory *per se* statements cause harm. *Lawnwood*, 43 So. 3d at 729 ("[L]iability itself creates a conclusive legal presumption of loss or damage").

Thus, under Florida law, once TTI establishes that Bonilla published the false statements negligently, and that the statements were defamatory *per se*, the causal link between Bonilla's statements and TTI's reputational harm is established as a matter of law and TTI has established all elements of its claim.

---

[4] The reference to Instruction 405.5 in footnote 1 of Instruction 405.9 is likely a typographical error that should have read "405.9". Instruction 405.5 provides the pattern for the elements of defamation, and it is highly unlikely the Committee intended to omit that Instruction for defamation *per se* claims.

TTI's proposed instruction correctly reflects this framework.  ECF No. 215-5 (TTI's Proposed Jury Instruction) at 35-37.  Bonilla's attempt to graft a causation element onto this framework is flatly at odds with defamation *per se* liability.

The Court should reject Bonilla's attempt to heighten TTI's burden of proof.

## CONCLUSION

TTI respectfully asks this Court to reject Bonilla's attempt to relitigate the resolved questions of falsity and materiality and his attempt to inflate TTI's burden of proof at trial.

Dated: May 5, 2026

11

By: /s/*Jason D. Sternberg*

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
Laura N. Ferguson (FL Bar 1047701)
David Nabors (FL 1024722)
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com
lauraferguson@quinnemanuel.com
davidnabors@quinnemanuel.com

Christopher Tayback (admitted *pro hac vice*)
Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
christayback@quinnemanuel.com
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
555 13th Street, NW, Suite 600
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited and Techtronic Industries Factory Outlets, Inc.*

12