**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.

Plaintiffs,

– against –

Victor Bonilla,

Defendant.

Case No. 8:23-cv-01734-CEH-AEP

**DEFENDANT'S SUPPLEMENTAL BRIEF RE: MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

The Court's August 12, 2026 Order narrows this supplemental proceeding to three statements that neither party specifically briefed. Doc. 247 at 8-9. Those statements are analytically distinct from both (i) the numerical estimates concerning DTFO inventory, sales, and profits that the Court found false, and (ii) the statements the Court has already ruled will proceed to trial. *Id.* at 9-11. Rule 56 therefore requires a separate analysis of what each of these three statements actually says, in the context in which it appeared.

That statement-specific analysis resolves all three statements. The first is expressly framed as a question posed while Bonilla described a developing hypothesis; it does not assert the hypothesis as an established fact and uses the same sort of rhetorical and hyperbolic language the Court already held nonactionable in the First Report. The second is an evaluative conclusion expressly attributed to, and immediately supported by, interviews with former Home Depot and Techtronic executives. The third is narrower still: it says only that multiple former Techtronic employees "indicate" a particular motive, and the Report then accurately discloses what those employees said. Because the underlying source material is disclosed, Bonilla's opinion based on the disclosed facts is protected.

The Report also disclosed the factual basis for Bonilla's characterizations. The Techtronic–Home Depot Agreement authorizes the sale of "reconditioned, obsolete or excess inventory," but does not use or define the term "Factory Blemished." Bonilla also quoted former Techtronic and Home Depot personnel

who described how Techtronic used that nomenclature in connection with the sale of Home Depot-exclusive products through Techtronic's outlet channel. Although the Court has recognized a factual dispute over whether Techtronic mislabeled products as "Factory Blemished," Doc. 247 at 6; Doc. 179 at 26–27, that broader dispute does not determine whether the three particular statements addressed here are independently actionable.

They are not. Each statement must be evaluated according to its own language, immediate context, and disclosed factual basis. That analysis establishes that Bonilla is entitled to partial summary judgment on the three statements identified in paragraph 68(a)–(c) of the Second Amended Complaint.

## II. THE COURT SHOULD APPLY A STATEMENT-SPECIFIC, CONTEXTUAL ANALYSIS.

As this Court previously recognized, a defamation claim requires a false statement of fact. Accordingly, true or substantially true statements are not actionable, nor are statements that, viewed in context, constitute pure opinion, rhetorical hyperbole, or commentary not readily capable of being proven false. *Techtronic Industries Co. v. Bonilla*, 2025 WL 2687164, at *7–8 (M.D. Fla. Sept. 19, 2025) (citing *Keller v. Miami Herald Publishing Co.*, 778 F.2d 711, 714–15, 717 (11th Cir. 1985)). The Court determines the character of a challenged statement by considering the publication as a whole, including the statement's language and context. *Id.* *8–11; *Utterback v. Morris*, 2024 WL 3809368, at *5 (N.D. Fla. July 24, 2024). An author's interpretation of facts disclosed to the reader is likewise protected where the reader can independently evaluate the facts and draw his or

her own conclusion. *Turner v. Wells*, 879 F.3d 1254, 1264–65 (11th Cir. 2018); *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981).

The Clarification Order reinforces the need for that disciplined analysis. The Court rejected Techtronic's contention that the adjudicated error in Bonilla's numerical estimates rendered the entire Second Report false. Doc. 247 at 7–8. Instead, liability must rest on a particular actionable statement. *Id.* The three statements at issue therefore must be evaluated according to their own words, their immediate context and supporting material, and the meaning a reasonable reader would draw from the publication as a whole.

## III. THE "WHAT IF" QUESTION IS NONACTIONABLE.

The first challenged statement appears while Bonilla narrates how the information he had gathered led him to investigate a possible connection:

> It slowly dawned on us that despite undercutting Home Depot, TTI must be making a far higher gross margin on these sales than it does selling the same products to Home Depot. And now you're starting to understand why we, the authors of a report about how TTI's gross margins are basically impossible, were so intrigued by this new lead. **What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer?** We began to fear that the exhaustive accounting examination we gave TTI in our first report had missed the worst behavior of all. It was time to open another investigation into TTI – "Blemishgate."

Doc. 233-2 at 9-10 (emphasis in original).

### A. The question does not assert the hypothesized answer as fact.

The sentence's grammar and placement matter. "What if" introduces a possibility; it does not tell the reader that the possibility has been established. The

surrounding paragraph confirms that function: Bonilla explains why he became "intrigued by this new lead" and states the hypothesis the ensuing investigation would examine. A reasonable reader would understand the sentence as the question that prompted further inquiry, not as a freestanding factual accusation. "[I]nquiry itself, however embarrassing or unpleasant to its subject, is not accusation." *Sullivan v. Malta Park*, 156 So.3d 1200, 1210 (La. App. 2014) (quoting 50 Am.Jur.2d Libel and Slander § 154 (2006)).

**B. The question is independently protected opinion and rhetorical hyperbole.**

The Court has already applied these principles to materially similar language in the First Report, correctly holding that merely asking questions is not actionable defamation. *Bonilla*, 2025 WL 2687164 at *9 ("Review of Bonilla's discussion of the purported capitalization in the First Report reveals his commentary is filled with rhetorical questions ('How could the value of these PP&E assets have been so inflated?'), [and] colorful hyperbole ('This struck us as odd, but maybe it was a one-off with a good explanation? It's not. This garbage has been happening every year in a row since 2012')") (internal quotation marks added). The same contextual indicators are present here.

Other courts likewise recognize that a genuine question ordinarily communicates uncertainty rather than an assertion of fact. *See Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1338–39 (D.C. Cir. 2015) (questions may "explore," "prompt further inquiry," or "frame discussion" and generally reflect a lack of definitive knowledge); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093–

94 (4th Cir. 1993) (holding subjective language cannot be proven false and because bases for opinions were disclosed "no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related"); *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995) ("statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment"); *id.* ("[T]he rhetorical device used by Bugliosi negates the impression that his statement implied a false assertion of fact. Bugliosi's use of a question mark serves two purpose[s]: it makes clear his lack of definitive knowledge about the issue and invites the reader to consider the possibility of other justifications for the defendants' actions."). Although a question containing an embedded assertion of fact may sometimes be actionable, *Abbas*, 783 F.3d at 1338–39[1], this question does not contain such an assertion. It expressly asks the reader to consider a possible explanation for the information Bonilla was then investigating.

The language of the question confirms that understanding. Terms such as "insane profit margins,"[2] "accounting games," and "rather powerful" are deliberately evaluative and hyperbolic. Indeed, this Court has already held that

[1] Importantly, as this Court has noted, Techtronic has never asserted a claim for defamation by implication in this case. Doc. 247 at 7 n. 8.

[2] The phrase "TTI's insane profit margins" refers back to the companywide gross-margin issues analyzed in the First Report—not to Bonilla's separate estimates of DTFO inventory, sales, and profits that the Court adjudicated false. *See* Doc. 179 at 25. The sentence asks whether the profit-margin concerns addressed in the First Report might be attributable not only to "accounting games," but also to the outlet practices newly investigated in the Second Report.

Bonilla's use of "manipulative accounting" and "accounting games" constituted "nonactionable opinion or colorful rhetoric". *Bonilla*, 2025 WL 2687164, at *8. And, in context, "fraud" appears as part of the hypothesis Bonilla asks the reader to consider—not as an affirmative assertion that the hypothesis had been established. *See Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1383–84 (S.D. Fla. 2006).

The Court need not decide whether every factual premise discussed elsewhere in the Report was correct to resolve this statement. The relevant question is whether this sentence itself asserts a provably false fact. It does not. Summary judgment should be entered for Bonilla on statement (a).

## IV. THE "INTERVIEWS ... CONFIRM IT" STATEMENT IS PROTECTED COMMENTARY BASED ON DISCLOSED SOURCES.

The second challenged statement is a section heading: "Interviews with former Home Depot & TTI executives confirm it: TTI has successfully deceived Home Depot." Doc. 233-2 at 20. The heading does not purport to rest on unnamed or undisclosed facts. It identifies its basis—interviews with former executives—and is followed immediately by the relevant interview excerpts. *Id.* at 20-28. The reader is therefore given the evidence on which Bonilla's conclusion rests and can determine whether the interviews "confirm" it.

That structure is dispositive under Florida's disclosed-facts doctrine. "Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the

reader or listener as a member of the public." *From*, 400 So. 2d at 57. Disagreement with an author's interpretation of disclosed facts does not prove defamation. *Turner*, 879 F.3d at 1264-65. "Confirm" and "successfully deceived" communicate Bonilla's evaluation of the interviews the Report reproduces, and are not an implication that Bonilla possessed additional, undisclosed proof.

The heading also accurately identifies the source of Bonilla's conclusion. Hartman and Vita were former executives of Techtronic and Home Depot, respectively, and the Report reproduced their statements concerning the outlet program and Techtronic's use of the "Factory Blemished" label. *See* Declaration of Jonathan R. Weiss ("Weiss Decl.") ¶ 3, Ex. 1 at 4:6-8, 7:14-23:19 ; ¶ 4, Ex. 2 at 5:20-6:5, 9:20-22, 10:15-11:2; *compare* Doc. 233-2 at 20-28, *with* Weiss Decl. ¶ 7, Ex. 5 at 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 20, 21, 22, 26, 27; Weiss Decl. ¶ 5, Ex. 3 at 5; Weiss Decl. ¶ 6, Ex. 4 at 2, 3, 4, 5, 6, 14, 15, 16, 17, 18, 19; Weiss Decl. ¶ 8, Ex. 6.[3] Techtronic has not identified any material aspect in which Bonilla altered those quotations. Whether those interviews persuasively "confirm" Bonilla's conclusion is a matter the disclosed-facts doctrine leaves to the reader.

The Home Depot Agreement provides additional disclosed context for Bonilla's interpretation. It permits the sale of "reconditioned, obsolete or excess

[3] Without waiving the right to prepare his own transcripts of the recordings of these calls with Hartman and Vita or to later challenge Plaintiff's transcriptions, for purposes of this motion, Defendant cites to the pages of transcripts of these telephone conversations prepared by Plaintiff's counsel in support of this motion. Defendant is happy to provide copies of the recordings to the Court if so directed.

inventory," but does not use or define "Factory Blemished." Doc. 94-13 at TTI0002881, TTI0002886. That fact is sufficient by itself to negate a defamation claim. Bonilla was reporting his sources' statements that Techtronic had no right to sell the blemished goods, and the contract confirms that the sources' statements were correct. *See., e.g., Seitz-Partridge v. Loyola University*, 987 N.E.2d 34, 42 (Ill. App. 2013) (summary judgment proper when discovery confirmed allegation that plaintiff committed plagiarism was true). Techtronic may contend that "Factory Blemished" was merely its nomenclature for one or more contractually permitted categories. But that competing interpretation does not make the challenged heading a *false statement of fact*. The heading communicates Bonilla's evaluation of the interviews which were disclosed to the reader; it does not imply that Bonilla possessed additional, undisclosed evidence (such as how Techtronic internally categorizes goods). Under *From* and *Turner*, disagreement with that disclosed interpretation does not create an actionable false statement. Summary judgment should therefore be entered on statement (b).

## V. THE "MULTIPLE FORMER TTI EMPLOYEES INDICATE" STATEMENT IS LITERALLY TRUE AND, IN CONTEXT, PROTECTED OPINION.

The third statement is even more limited: "Multiple former TTI employees indicate that TTI has used the 'Factory Blemished' nomenclature specifically to deceive Home Depot." Doc. 233-2 at 25. Its subject is "multiple former TTI employees," and its verb is "indicate." Thus, the statement reports what the sources

conveyed; it does not claim direct access to the subjective intent of Techtronic's current decisionmakers.

The record establishes the statement's truth in the limited form in which Bonilla wrote it. Hartman and the source identified as "TTI Man" were former Techtronic employees, and each described facts connecting the "Factory Blemished" nomenclature to the sale of Home Depot-exclusive products through Techtronic's outlet channel. *See* Ex. 4 at 2, 3, 4, 5, 6, 14, 15, 16, 17, 18, 19; Ex. 3 at 5; Weiss Decl. ¶ 9-10, Ex. 7 at 6:11-14, 218:22-25; Ex. 8 at 28 ("I believe you have an accurate evaluation of the business. Having worked there [TTI] for several years and having a Glassdoor review you were so kind to use, I believe I can illuminate several points you may find interesting."); *id.* at 4 ("I personally believe that the blemished nomenclature is designed to be deceptive, only to get around the Home Depot relationship."). The Report then reproduced the substance of those accounts for the reader. *See* Doc. 233-2 at 25-28. The statement accurately reports what those sources conveyed; it does not independently assert that Bonilla possessed direct evidence of Techtronic's institutional intent.

The statement is independently protected as opinion based on disclosed facts. Whether the cited accounts persuasively establish Techtronic's institutional purpose is an inference drawn from those accounts, the Agreement's language, and the outlet practices described in the Report. Because the Report supplies the material underlying that inference rather than implying the existence of undisclosed proof, the reader can evaluate Bonilla's conclusion independently.

Under *From* and *Turner*, that disclosed interpretation is nonactionable as a matter of law. Summary judgment should be entered on statement (c).

## VI. THE ADJUDICATED NUMERICAL ERRORS DO NOT CREATE A GENUINE DISPUTE AS TO THESE THREE STATEMENTS.

Techtronic cannot avoid a statement-specific analysis by importing the numerical errors (as to the value, sales, and profits of the factory outlet program) into every sentence of the Second Report. The Court has already rejected that approach, clarifying that its falsity ruling concerned only "the statements contained in the Second Report regarding factory outlet inventory value, sales, and profits" and did not render the entire Report false. Doc. 247 at 8 (quoting Doc. 179 at 25). The Court further emphasized that liability must rest on an actual defamatory statement, not a generalized theory or "gist" attributed to the publication as a whole. *Id.* at 4, 6–8.

None of the three statements at issue asserts an inventory value, sales figure, or profit calculation. Statement (a) poses the question that initiated Bonilla's inquiry; statements (b) and (c) characterize what former executives and employees conveyed and disclose the accounts supporting those characterizations. The previously adjudicated numerical errors therefore do not supply the false factual content necessary to impose liability for these distinct statements.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment in Bonilla's favor on each of the three statements identified in paragraph 68(a)–(c) of the Second Amended Complaint.

Dated: September 8, 2026

By: */s/ Dilan A. Esper*
Dilan A. Esper (*pro hac vice*)
desper@harderstonerock.com
Charles J. Harder (*pro hac vice*)
charder@harderstonerock.com
Harder Stonerock LLP
6300 Wilshire Boulevard,
Suite 640
Los Angeles, CA 90048
Telephone: (424) 203-1600

Respectfully submitted,

By: */s/ Jonathan R. Weiss*
Jonathan R. Weiss (FBN: 57904)
Jonathan.weiss@squirepb.com
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard,
Suite 3400
Miami, Florida 33131
Telephone: (305) 577-7000

*Attorneys for Defendant Victor Bonilla*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record

Jason Sternberg (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
2601 South Bayshore Dr., Ste 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
kristintahler@quinnemanuel.com

David A. Nabors
Fla. Bar No. 1024722
Quinn Emanuel Urquhart Sullivan LLP
2601 S. Bayshore Drive, Suite 1550
Miami, FL 33133-5417

Nicholas Inns (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
nicholasinns@quinnemanuel.com

*/s/ Jonathan Weiss*
Attorney