**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| | |
|---|---|
| Techtronic Industries Company Limited,<br><br>Plaintiff,<br><br>v.<br><br>Victor Bonilla,<br><br>Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF RE: MOTION FOR PARTIAL SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Defendant Victor Bonilla published a 73-page report falsely stating TTI was "systematically defrauding" The Home Depot ("THD"). He now attempts to avoid liability by arguing that each of the three statements at issue is beyond the reach of libel. These arguments fail. The first statement—that TTI was earning "insane profit margins" due to "outright contractual and product diversion fraud"—is an assertion of fact masquerading as a rhetorical question. When it is read in the required context of the entire report, Bonilla's self-serving framing of this statement as an inactionable question does not withstand scrutiny. His arguments as to his other statements also fail. Bonilla claims he merely reported that his sources "confirm[ed]" and "indicate[d]" that TTI "deceived" THD. But they did no such thing. One source called the Report "malicious," "misleading," and "manipulative." Another, when asked if the Report was "fair" based on what he had told Bonilla, testified "definitely not." And, no source had read the agreement with THD. The statements are false and the Court should deny the motion.

## COUNTER-STATEMENT OF FACTS

Bonilla's Second Report began with an email from an anonymous source, "TTI_MAN_2023." ECF 256-8. Bonilla later interviewed Mark Hartman, a former TTI marketing executive (ECF 227-6 ("Hartman Tr."), 7:14-9:18), and Albert Vita, a former merchandising executive at THD (ECF 227-9 ("Vita Tr."), 10:9-11:10). Each interview lasted over an hour (ECF 256-3, 256-4, 256-5), and during each one, neither individual used the word "deceive" or any similar word, such as "trick,"

"mislead," or "dupe" (*see id.*). They said the opposite: Hartman said DTFO "is helpful to [THD], because it helps them … get inventory out of their system as well." ECF 256-4 at 6. And Vita said TTI was "very open about" DTFO. ECF 256-5 at 6-7.

Bonilla later published a report stating throughout that TTI was "systematically defrauding Home Depot." ECF 233-2 at 2. Three statements are at issue here. First, "What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer?" ("Statement 1"). *Id.* at 10. Second, following curated excerpts of interviews with Hartman and Vita, Bonilla stated: "Interviews with former Home Depot & TTI executives confirm it: TTI has successfully deceived Home Depot" ("Statement 2"). *Id.* at 21. Third, "Multiple former TTI employees indicate that TTI has used the 'Factory Blemished' nomenclature specifically to deceive Home Depot" ("Statement 3"). *Id.* at 26.

Hartman later testified that he did not recall "communicat[ing] to anybody that TTI was systematically defrauding [THD] at all" and instead "was trying to convey that [he] did not think there was deliberate fraud." Hartman Tr. 45:2-6. Hartman further testified that Bonilla's statement was not "something a person could fairly write based on what [he] communicated to them." *Id.* 45:7-21. Similarly, Vita had "zero inclination" "to suspect that [TTI] was using its [DTFO] stores to defraud [THD]" and was "shocked" by the Second Report, describing it as "malicious," "misleading," and "manipulative" and stating that it did "not report the … whole truth." Vita Tr. 32:2-23, 35:13-18, 37:20-38:17. Neither Bonilla nor his

sources saw the agreement between TTI and THD ("Agreement"), nor did he ask anyone to see it prior to publication. ECF 233-2 at 7.

## ARGUMENT

Each of Bonilla's three statements is actionable and, at a minimum, raises a genuine dispute as to falsity. The Court should deny Bonilla's motion.

## I. STATEMENT 1 IS AN ACTIONABLE FACTUAL STATEMENT

Bonilla casts Statement 1 as a "genuine question" that does no more than "ask[] the reader to consider a possible explanation." Mot. at 4-5. Bonilla is mistaken: Courts have rejected precisely this argument. For example, in *Grlpwr, LLC v. Rodriguez*, the court repudiated "a blanket protection of defamation liability" for statements phrased as questions, holding that a question is actionable where it "both in tone and in context demonstrates that [the declarant] knows what the answer is and that there is only one obvious conclusion." 2023 WL 5666203, at *5 & n.5 (N.D. Fla. Aug. 25, 2023) (citing *Boulger v. Woods*, 917 F.3d 471, 480 (6th Cir. 2019)). A question is actionable where a "common mind" would "construe [it] as an accusation" and the accusation "can be proven true or false." *Id.* at *5; *see also Bell v. Pollock*, 2025 WL 1148677, at *13 (M.D. Fla. Apr. 17, 2025) (assessing whether a rhetorical question is defamatory based on the statement it implies). Bonilla concedes as much: "a question containing an embedded assertion of fact may . . . be actionable." Mot. at 5. Statement 1 is exactly that.

The context—which Bonilla agrees must be considered—confirms that Bonilla's rhetorical question is a statement. The Second Report's Executive

Summary opens with a declaration: "We believe that Techtronic has been defrauding Home Depot on a massive scale for at least four years." ECF 233-2 at 2. A later section heading lacks even the pretense of a question: "We Estimate One-Third (or More) of TTI's EBIT Comes From This Lucrative Scam." *Id.* at 5, 55. A "common mind" reading the Second Report as a whole would be left with no doubt that Statement 1 was another assertion that TTI was committing fraud.

Bonilla seeks to avoid this result through sleight of hand. *First*, Bonilla misstates this Court's prior holdings. The Court did not hold that "merely asking questions is not actionable defamation." Mot. at 4. Nor did the Court hold that the phrases "manipulative accounting" or "accounting games" transform any statement into "nonactionable opinion or colorful rhetoric." *Id.* at 5-6. Instead, the Court considered a specific rhetorical question and those specific phrases in the context of the First Report. *Techtronic Indus. Co. v. Bonilla*, 2025 WL 2687164, at *7-8 (M.D. Fla. Sept. 19, 2025) ("SJ Order"). While the Court found that the First Report's statements were inactionable, Statement 1 asserts a fact readily capable of being proven false: that TTI committed "fraud against" THD, generating its "insane profit margins."[1] As TTI's concurrent summary judgment motion establishes, his accusation that TTI was "insane[ly] profiting from product

[1] Bonilla conclusorily asserts that his reference in Statement 1 to "TTI's insane profit margins" refers to his First Report's allegations about TTI's "companywide gross-margin[s]," not the false DTFO profits from his Second Report. Mot. at 5 n.2. The context of this statement, however, is a discussion of whether TTI makes a "far higher gross margin" on DTFO sales—not TTI's companywide profits. Further, Bonilla's Second Report explicitly disclaims Bonilla's reading: "The article we are publishing today relates to totally new, totally incremental discoveries at TTI. It has absolutely nothing to do with accounting." ECF 233-2 at 7.

diversion and contractual fraud" is indisputably false. *See* ECF 259-1.

*Second*, Bonilla asks the Court to read Statement 1 in isolation, confined to its single paragraph. Mot. at 3. This is incorrect, as Bonilla admits and this Court has ruled: "The Court determines the character of a challenged statement by considering the publication as a whole." *Id.* at 2 (citing SJ Order at *8-11). Judged that way, Statement 1 is not an isolated question. It is one line in a 73-page accusation of fraud. The motion should be denied as to Statement 1.

## II. STATEMENTS 2 & 3 ARE FALSE STATEMENTS OF FACT

Bonilla's argument that Statements 2 and 3 are protected by "Florida's disclosed-facts doctrine" and are "[p]ure opinion" because he "set[s] forth" the facts on which they are based fails in two respects. Mot. at 6.[2]

*First*, the Statements are not pure opinion. Bonilla did not "merely provide [his] characterization" of his interviews, but instead made concrete factual statements that TTI "successfully deceived" THD, which are "not [a] matter[] of opinion." *See Hadley v. Perez*, 2026 WL 1017588, at *14 (S.D. Fla. Apr. 15, 2026). For example, in Statement 2, Bonilla responded to his own question whether the supposed fraud was a "big misunderstanding," by asserting his interviews "confirm it: TTI has successfully deceived Home Depot." A writer merely relaying his sources does not announce that they "confirm" his or her accusation; the word "confirm" "implies the allegation of undisclosed defamatory facts." *Bell*, 2025 WL

[2] As an initial matter, the Court should deny Bonilla's motion with respect to Statement 2 because Bonilla did not request and this Court did not grant leave to brief it. ECF 253 at 2. *See Nationalist Movement v. City of Cumming, Ga.*, 92 F.3d 1135, 1139 (11th Cir. 1996).

1148677, at *7. Similarly, instead of merely relaying his sources, Bonilla represents throughout the Report that there is undisclosed information underlying his opinions—even undisclosed information that contradicts his sources. For example, Bonilla wrote that Hartman was "100% sure there's never a deliberate strategy to go to DTFO with a new product," but Bonilla immediately rejected Hartman's statement: "We aren't so sure about that last sentence." ECF 233-2 at 27. The statements are thus Bonilla's, not merely his opinions about what his sources said.

Similarly, Bonilla's argument that the Agreement "provides additional disclosed context for Bonilla's interpretation," Mot. at 7-8, fails. Neither Bonilla nor his sources ever saw the Agreement. ECF 233-2 at 7. But Bonilla selected quotes from Vita that implied the opposite: knowledge of fraud based on personal knowledge of the Agreement. ECF 233-2 at 21, 23. Regardless, Bonilla's argument that a contract neither he nor his sources ever saw (and thus had no idea what it said) was somehow "disclosed context" for his statement fails basic logic.

*Second*, even if Statements 2 and 3 were just recitations of Bonilla's sources' statements, they are false. Bonilla cherry-picked excerpts from hours-long interviews in a way that the sources themselves described as "malicious," "misleading," "manipulative" (Vita Tr. 35:13-18, 37:20-38:17), and "definitely not" "fair" (Hartman Tr. 45:7-46:2). The full transcripts, which Bonilla did not disclose, make that clear: he repeatedly excerpted partial answers that convey a false impression about what Hartman and Vita said. *See, e.g.*, ECF 256-4 at 3, 4; ECF 256-5 at 5-8. What is more, neither Hartman nor Vita "indicated" or "confirmed"

that TTI was deceiving THD; the word "deceive" appears nowhere in either interview. *See* ECF 256-3, 256-4, 256-5. What the sources did say (and what the Report omits) confirms the opposite. For example, Hartman stated that TTI "would never do anything . . . to rock the boat" with THD and that there had not "been one [THD] email or call in a decade about" DTFO. ECF 256-4 at 9, 10. And Vita said "nothing about [his] relationship with TTI has indicated that they would do anything to rock it" and THD has "walked the [DTFO] stores." ECF 256-5 at 7. These interviews did not "confirm" or "indicate" that TTI was deceiving THD.

Hartman's and Vita's testimony confirms that Bonilla's characterizations of their interviews are false. Hartman was "trying to convey that [he] did not think there was deliberate fraud" (Hartman Tr. 45:2-6) and Vita had "zero inclination" "to suspect that [TTI] was using its [DTFO] stores to defraud [THD]" (Vita Tr. 32:2-23). Bonilla's statement that the interviews "confirm" deceit misrepresented this. ECF 233-2 at 21, 26. Bonilla may not "invoke a 'pure opinion' defense" to protect Statements 2 and 3 where "the facts underlying the opinion are false or inaccurately presented." *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1213 (M.D. Fla. 2021). Bonilla's sole case merely stands for the axiom that a true statement is not false. *See* Mot. at 9 (citing *Seitz-Partridge v. Loyola Univ. of Chicago*, 987 N.E.2d 34, 42 (Ill. App. 2013)). Here, however, genuine issues of material fact about the accuracy of Statements 2 and 3 abound, so his motion fails.

## CONCLUSION

For the foregoing reasons, the Court should deny Bonilla's motion.

Dated: September 22, 2026

By: /s/ *Jason D. Sternberg*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
Laura N. Ferguson (FL Bar 1047701)
David Nabors (FL Bar 1024722)
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com
lauraferguson@quinnemanuel.com
davidnabors@quinnemanuel.com

Christopher Tayback (admitted *pro hac vice*)
Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
christayback@quinnemanuel.com
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
555 13th St., NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited*