**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| | |
|---|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.<br><br>Plaintiffs,<br><br>– against –<br><br>Victor Bonilla,<br><br>Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

Techtronic's Motion conflates distinct statements. The Court previously adjudicated specific estimates of factory outlet inventory, sales, and profits and separately addressed the statement that Techtronic was "systematically defrauding" Home Depot. The statement now before the Court is different. It asks a question, while describing the investigation that produced the Second Report, as to whether *companywide* margins discussed in the First Report might be attributable not "simply" to accounting practices examined there, but "also" to suspected contractual and product-diversion misconduct. It neither repeats nor depends upon factory outlet volume and sales estimates previously adjudicated.

Bonilla simply asks a question, which is legally protected under the opinion privilege. That doctrine allows people to ask such questions. Read in context, the question does not make a statement of fact—it describes Bonilla's investigative hypothesis. Independently, even if it were construed as a factual statement, Techtronic cannot establish falsity as a matter of law. The Techtronic-Home Depot Agreement permits sales of "reconditioned, obsolete or excess inventory," yet Techtronic repeatedly adds "slightly damaged" to those categories. The contract does not. And Techtronic's speculation that Home Depot would not have wanted to accept damaged products does not establish that Techtronic was permitted to sell factory blemished goods through its outlet stores without complying with the contractual requirements of advance notice and the right of first-refusal. Indeed, the record is clear that Techtronic violated the terms of its contract with Home

Depot – and Techtronic's underhanded attempt to include "slightly damaged" product in its Motion is a tacit acknowledgement that Techtronic was diverting unauthorized products to its own outlet stores, without advance notice to Home Depot, in a manner inconsistent with its contractual restrictions.

Techtronic also relies on Home Depot's post-publication review of the factory-outlet website, its decision not to take action, and its continued commercial relationship with Techtronic. *See* Doc. 259-4. But that evidence does nothing to establish that those factory outlet sales complied with the Home Depot Agreement, or even that Home Depot approved of the specific sales. At best, that evidence might support competing inferences concerning Home Depot's knowledge and approval that cannot be resolved in Techtronic's favor on summary judgment.

## II. THE CHALLENGED STATEMENT

The challenged passage appears in Bonilla's account of how he came to investigate Techtronic's outlet practices:

> It slowly dawned on us that despite undercutting Home Depot, TTI must be making a far higher gross margin on these sales than it does selling the same products to Home Depot. And now you're starting to understand why we, the authors of a report about how TTI's gross margins are basically impossible, were so intrigued by this new lead. **What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer?** We began to fear that the exhaustive accounting examination we gave TTI in our first report had missed the worst behavior of all. It was time to open another investigation into TTI — "Blemishgate."

Doc. 233-2 at 9–10 (emphasis in original).

## III. LEGAL STANDARD

Summary judgment is appropriate only if Techtronic establishes that no genuine dispute of material fact exists, with the evidence and reasonable inferences viewed in Bonilla's favor. *Tonkyro v. Secretary, Department of Veterans Affairs*, 2024 WL 2846356, at *4–5 (M.D. Fla. June 5, 2024). As this Court has held, defamation requires a false statement of fact; truth, substantial truth, pure opinion, and rhetorical hyperbole are not actionable. *Techtronic Indus. Co. v. Bonilla*, 2025 WL 2687164, at *7–8 (M.D. Fla. Sept. 19, 2025). The Court evaluates the challenged statement *in the context of the publication as a whole*. *Id.* at *8–11.

## IV. THE COURT'S PRIOR RULINGS DO NOT ADJUDICATE THE FALSITY OF BONILLA'S QUESTION.

Techtronic conflates the Court's treatment of different statements: Bonilla's numerical estimates concerning factory outlet inventory, sales, and profits and the separate assertion that Techtronic was "systematically defrauding" Home Depot. *See* Docs. 179 at 24–27; 247 at 8–10. The scope of the latter ruling remains the subject of Bonilla's pending motion for clarification.[1] Importantly, this Court has rejected the premise that Bonilla's inaccurate estimates rendered the *entire* Second Report false and emphasized that liability must rest on a particular actionable statement. Doc. 247 at 4, 6–8. The question now before the Court contains no inventory value, sales figure, or profit estimate for the factory outlets. The

[1] Bonilla's pending motion asks the Court to clarify that its ruling concerning the "systematically defrauding Home Depot" statement does not preclude truth or substantial-truth arguments independent of the previously adjudicated inventory-value, sales, and profit figures. Doc. 250. Nothing in this Opposition waives those arguments. Regardless of that motion's disposition, the different statement challenged here requires its own statement-specific and contextual analysis.

immediately preceding sentence identifies Bonilla as the author of the First Report concerning Techtronic's companywide margins, and the question asks whether those margins (which Bonilla characterizes as "insane", a clear opinion) might be attributable not "simply" to the accounting practices discussed in the First Report but "also" to the newly investigated outlet practices and sale of "blemished" goods.

## V. BONILLA'S QUESTION IS PROTECTED UNDER THE OPINION RULE.

Bonilla asks a question, which he is entitled to do under the opinion rule. The general rule is that merely asking questions is protected and non-actionable. "[I]nquiry itself, however embarrassing or unpleasant to its subject, is not accusation." *Sullivan v. Malta Park*, 156 So.3d 1200, 1210 (La. App. 2014) (quoting 50 Am.Jur.2d Libel and Slander § 154 (2006)). Here, Bonilla is clearly asking a question. Extensive legal authority holds that this sort of question is protected opinion. *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1338–39 (D.C. Cir. 2015) (Kavanaugh, J.) ("Are the sons of the Palestinian president growing rich off their father's system?" and "Have they enriched themselves at the expense of regular Palestinians—and even U.S. taxpayers?" were held not actionable statements of fact); *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995) ("[T]he rhetorical device used by Bugliosi negates the impression that his statement implied a false assertion of fact. Bugliosi's use of a question mark serves two purpose[s]: it makes clear his lack of definitive knowledge about the issue and invites the reader to consider the possibility of other justifications for the defendants' actions.").

Techtronic argues that a question can sometimes be construed as a statement of fact. However, the questions that have been held to contain statements of fact in the cases cited by Techtronic are entirely different than Bonilla's. For instance, the question held to be a statement of fact in *Grlpwr, LLC v. Rodriguez*, 2023 WL 5666203, at *5 (N.D. Fla. Aug. 25, 2023), was "doesn't [Plaintiff's general business structure] fall in line with what a pyramid scheme is? Hello? Hello? It's right in front of your face." It is perfectly clear that despite nominally framing a question (and then answering it), the defendant there was making an affirmative claim that the plaintiff ran a pyramid scheme. In *Bell v. Pollock*, 2025 WL 1148677, at *12-13 (M.D. Fla. Apr. 17, 2025), the question was "If it wasn't an FBI agent's kids, would seven judges have recused themselves?", which while formed as a question is obviously making an argument that seven judges would not have recused themselves in a normal case.

Additionally, the surrounding language and context makes clear that Bonilla is describing his investigative process, not stating factual conclusion: "It slowly dawned on us"; "What if"; "We began to fear"; and "It was time to open another investigation." Doc. 233-2 at 9–10. Those words convey uncertainty and an investigative premise, not a definitive factual claim.

That contextual analysis is reinforced by this Court's treatment of similar rhetorical questions in the First Report, which this Court ruled to be protected opinion. *Bonilla*, 2025 WL 2687164, at *9 ("Review of Bonilla's discussion of the purported capitalization in the First Report reveals his commentary is filled with

rhetorical questions ('How could the value of these PP&E assets have been so inflated?'), [and] colorful hyperbole ('This struck us as odd, but maybe it was a one-off with a good explanation? It's not. This garbage has been happening every year in a row since 2012')") (internal quotation marks added). This Court has already held that Bonilla's use of "manipulative accounting" and "accounting games" constituted "nonactionable opinion or colorful rhetoric." *Id.* at *8. The surrounding phrases here— "insane profit margins," "accounting games," and "rather powerful"— are similarly evaluative and hyperbolic. In the context of the challenged question, "fraud" appears as part of the hypothesis Bonilla asks the reader to consider, and Bonilla is entitled to use this sort of rhetoric in describing what he is seeking to find. *National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (referring to workers in union dispute as "traitors" is protected rhetoric); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1383–84 (S.D. Fla. 2006) (referring to an NBA player's physical play as a "mugging", "malicious", etc., is protected).

Bonilla's passage expressly identifies the question as the impetus for a new investigation—not simply rephrasing affirmative factual claims in the form of a question. Bonilla's statement is not an actionable statement of fact and is protected by the opinion privilege.[2]

[2]Techtronic's effort to extract additional factual propositions from the question also conflicts with its own pleadings. As the Court observed, Techtronic has not asserted defamation by implication. Doc. 247 at 7 n.8. Techtronic therefore cannot use implication to graft the previously adjudicated inaccurate factory outlet estimates onto a sentence that contains no

## VI. ALTERNATIVELY, GENUINE FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT ON FALSITY.

Even if the challenged question is construed to imply factual assertions, Techtronic has not established falsity as a matter of law. The question does not repeat the adjudicated factory outlet volume, sales, and profit estimates, and the record does not establish that any, let alone every, challenged sale was contractually authorized, or that all relevant products were offered to Home Depot for right of first refusal, or that Home Depot knew of and approved the challenged practices.

### A. The Question Does Not Repeat the Adjudicated Factory Outlet Profit Estimates.

As explained above, the phrase "insane profit margins" refers back to the First Report's discussion of Techtronic's reported profit margins. The challenged question does not make any numerical representation concerning the factory outlets' sales, profits, or contribution to Techtronic's operating income. Evidence that Techtronic lost money at its factory outlets therefore does not establish the falsity of this different question.

### B. The Record Does Not Establish as a Matter of Law That Every Challenged Sale Was Contractually Authorized.

The Home Depot-Techtronic Strategic Initiative Agreement ("SIA") requires that Techtronic's tools be sold exclusively at Home Depot, absent written consent from Home Depot. Doc. 102-2 at TTI0002881. The SIA contains a narrow

---

inventory value, sales figure, or profit calculation. The relevant inquiry is whether the words Techtronic actually challenged assert a provably false fact when read in context. They do not.

exception to exclusivity to allow Techtronic to sell "reconditioned, obsolete or excess inventory" under specified conditions. Doc. 102-2 at TTI0002881, TTI0002886. The SIA does not contain an exception for "factory blemished" goods or even use that term. *Id.* That omission is particularly significant because Techtronic's Motion repeatedly describes the SIA as permitting the sale of "excess, obsolete or slightly damaged product." Doc. 257 at 4, 9. But "slightly damaged" is Techtronic's addition, not what the contract says. Techtronic thus inserts into its description of the agreement the very category whose contractual status is disputed.

Techtronic's deceptive addition of "slightly damaged" is significant because it assumes the very proposition its Motion must establish: that products bearing that description necessarily qualified as "reconditioned, obsolete or excess inventory." The SIA does not say that. Nor does Techtronic's conjecture that Home Depot would not have wanted damaged products establish compliance with the agreement's notice and first-refusal requirements. Stearns's testimony reinforces the dispute. [redacted] *See* Declaration of Jonathan R. Weiss, Ex. 1 - Stearns Tr. 92:6–14. That testimony may explain Techtronic's business rationale, but it does not establish contractual compliance. [redacted]

[redacted], that Home Depot would reject any product that Techtronic categorizes as “factory blemished”. (The Second Report documents numerous examples of products sold in the factory outlets that do not appear to be damaged at all.) [redacted]

Techtronic responds that Home Depot did not object to its conduct. But Home Depot’s non-objection does not establish falsity as a matter of law. The relevant question is whether the challenged sales complied with the SIA—not whether Home Depot later acquiesced in the practice, waived a contractual right, or declined to pursue a remedy. Those issues support competing inferences that must be resolved in Bonilla’s favor on Techtronic’s Motion.

[redacted]

[redacted]

### C. The 2024 Supplier Buying Agreement Is Inadmissible And Irrelevant.

[redacted]

## VII. CONCLUSION

For the foregoing reasons, the Court should deny Techtronic's Motion for Partial Summary Judgment.

Dated: September 22, 2026

Respectfully submitted,

By: _/s/ Dilan A. Esper_
Dilan A. Esper (*pro hac vice*)
desper@harderstonerock.com
Charles J. Harder (*pro hac vice*)
charder@harderstonerock.com

By: _/s/ Jonathan R. Weiss_
Jonathan R. Weiss (FBN: 57904)
Jonathan.weiss@squirepb.com
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard,

---

[3] Importantly, Techtronic has not produced the entire SIA, asserting that it is too sensitive to even show Bonilla's lawyers under the terms of the protective order in this case. *See* Declaration of Dilan Esper. The redactions to the SIA, for all Bonilla knows, might even contain provisions such as a prohibition on modifying the contract or requiring some formal process for such a modification. Having declined to produce the entire SIA in discovery, Techtronic cannot be permitted to argue that the SBA modified the exclusivity provisions in the SIA.

Harder Stonerock LLP
6300 Wilshire Boulevard,
Suite 640
Los Angeles, CA 90048
Telephone: (424) 203-1600

Suite 3400
Miami, Florida 33131
Telephone: (305) 577-7000

*Attorneys for Defendant Victor Bonilla*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 22, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record.

Jason Sternberg (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
2601 South Bayshore Dr., Ste 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
kristintahler@quinnemanuel.com

David A. Nabors
Fla. Bar No. 1024722
Quinn Emanuel Urquhart Sullivan LLP
2601 S. Bayshore Drive, Suite 1550
Miami, FL 33133-5417

Nicholas Inns (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
nicholasinns@quinnemanuel.com

*/s/ Jonathan Weiss*
Attorney