**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

Techtronic Industries Company Limited,

Plaintiff,

v.

Victor Bonilla,

Defendant.

Case No. 8:23-cv-01734-CEH-AEP

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Bonilla attempts to avoid summary judgment by pressing an interpretation of his report that cannot be reconciled with its actual words. He calls his accusation of fraud a mere "inquiry," and he attempts to recast his allegation that TTI schemed to defraud THD as a garden-variety contract dispute. But Bonilla answered his own "inquiry" in the report's first line, declaring not that TTI had breached its contract with THD (which neither Bonilla nor his sources had ever seen), but that TTI "has been defrauding Home Depot on a massive scale for at least four years." ECF 233-2 at 2. The Court should grant TTI's Motion.

## I. THE ASSERTION IS AN ACTIONABLE FACTUAL STATEMENT

Bonilla first argues that his statement is not actionable because it merely poses an "inquiry." Opp. at 2-4. Bonilla is mistaken, as his distinguishable, out-of-circuit cases reveal. In *Partington v. Bugliosi*, an attorney wrote a book describing a past trial and, in critiquing his former adversary for his failure to raise a contradiction in his cross-examination, asked, "Had [the] defense lawyers not *read* the theft-trial transcripts?" 56 F.3d 1147, 1155 (9th Cir. 1995). Unlike Bonilla, the author did "not claim to know the reason for the defense lawyers' failure to bring out . . . the contradiction; rather, he speculate[d] on the basis of the limited facts available to him." *Id.* In *Abbas v. Foreign Pol'y Grp., LLC*, an article addressed the wealth of a political leader's sons and its "possible sources" asking, "Are the sons of the Palestinian president growing rich off their father's system?" 783 F.3d 1328, 1332-33 (D.C. Cir. 2015). The article did not answer the question but merely reported the fact that the question was "a source of quiet controversy" about which

members of the public "continue[d] to whisper." *Id.* at 1333, 1338-39. Bonilla did the opposite. He answered his own question, including in the report's first line, ECF 233-2 at 2 ("We believe that Techtronic has been defrauding Home Depot on a massive scale for at least four years."), and his rhetorical framing "knows what the answer is and that there is only one obvious conclusion." *Grlpwr, LLC v. Rodriguez*, 2023 WL 5666203, at *5 & n.5 (N.D. Fla. Aug. 25, 2023).

Bonilla next contends that his question differs from the rhetorical questions Florida courts have held to be actionable because those questions, but not his, "made an argument." Opp. at 3. That distinction fails. In *Bell v. Pollock*, a film alleged that an FBI agent exploited his position to conceal his son's involvement in a murder. A producer remarked, "If it wasn't an FBI agent's kids, would seven judges have recused themselves?" 2025 WL 1148677, at *12 (M.D. Fla. Apr. 17, 2025). That question, Bonilla states, "made an argument that seven judges would not have recused themselves in a normal case." Opp. at 3. Bonilla's question is no different. Bonilla's "systematic fraud" thesis permeates the entire report, which Bonilla admits must be considered as a whole, ECF 255 at 2. Accordingly, a "common mind" would "construe" Bonilla's question as reflecting the same "accusation." *See Grlpwr, LLC*, 2023 WL 5666203, at *5 & n.5.

Finally, Bonilla argues that the statement is not actionable because the Court held "colorful rhetoric" to be "nonactionable" and his statement includes the words "insane," "accounting games," and "rather powerful." Opp. at 3-4. But these examples are inapposite. In its ruling, the Court assessed First Report statements

in which it held "manipulative accounting" and "accounting games" were central to the meaning of the statements. *See* ECF 179 at 6. That is, the truth or falsity of the statements hinged on the meaning of those phrases. In contrast, the falsity of Bonilla's statement here does not depend on whether TTI's profit margins were "insane," whether there were "accounting games," or whether THD is "rather powerful." *See* Opp. at 3-4. It turns on his accusation that TTI defrauded its largest customer THD, and that accusation is a fact capable of being proved false, not rhetoric. *See Rudnitsky v. Int'l Checkers Ass'n of N. Am., Inc.*, 2026 WL 2718401, at *7 (S.D. Fla. Sept. 15, 2026). Surrounding a false accusation of fraud with words the Court found "hyperbolic" in other contexts cannot inoculate it from liability.

## II. UNDISPUTED FACTS CONFIRM THE STATEMENT IS FALSE

Bonilla's next effort to evade summary judgment involves claiming general factual disputes. He does so by wrongly purporting to transform his accusation of fraud into an allegation of contract breach. He then leans on this sleight of hand to insist that the "relevant question is whether the challenged sales complied with the SIA." Opp. at 9. But Bonilla did not state TTI was *breaching its contract* with THD. Instead, he asserted that TTI was committing "***fraud*** against [THD]," its biggest customer. ECF 233-2 at 10 (emphasis added). His entreaties that the Court decide whether the undisputed facts "establish contractual compliance," and "establish compliance with the agreement's notice and first-refusal requirements," Opp. at 6, are therefore a transparent red herring.

In any event, the undisputed facts establish that TTI complied with its

contractual obligations. *See* ECF 259-1. Bonilla's arguments rest on incorrect assertions. ***First***, he argues TTI "deceptive[ly]" added "slightly damaged" product to the categories the SIA permits TTI to sell through DTFO. Opp. at 5-6. It did not. Under the SBA, [redacted] ECF 259-4. Selling that product through DTFO to mitigate losses is thus not a deceptive breach of the contract but a consequence of it. ECF 259-2 ("Bradley Tr.") 32:11-24, 33:8-15, 167:7-168:4; ECF 259-3 ("Stearns Tr.") 25:15-20.

***Second***, Bonilla claims that because the specific copy of the SBA cited took effect in March 2024, it could not have authorized TTI's sales before the Second Report issued in June 2023. Opp. at 7 n.3. But an [redacted] the Second Report was published. Ex. 1, Bradley Tr. 72:21-25; *see, e.g.*, Ex. 2, [redacted]

***Third,*** Bonilla argues that his statement tying TTI's alleged fraud to its "insane profit margins" "contains no inventory value, sales figure, or profit estimate" and simply "refers back to the First Report's discussion of . . . profit margins." Opp. at 2, 5. But Bonilla cannot escape the context: The statement appears in a discussion of TTI's margins on DTFO sales, not TTI's companywide margins. And the alleged fraud of selling product in DTFO could have produced "insane profit margins" only if it were large and profitable. The Court has already ruled that it was neither; TTI "was losing money through the outlet stores." ECF

[1] All exhibit references are to the exhibits to the Declaration of Jason D. Sternberg.

179 at 25. The statement is thus indisputably false.

***Fourth,*** Bonilla incorrectly asserts that "whether [THD] acquiesced" to TTI selling products in DTFO stores and whether THD "declined to pursue a remedy" are irrelevant to falsity. Opp. at 6-7. But fraud requires an "inten[t] to induce the [victim's] reliance by creating a false impression." *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022). So THD's knowledge of, acquiescence in, and reaction to DTFO are squarely relevant to whether TTI was defrauding THD. And the undisputed evidence establishes no deceit:

- The TTI-THD contracts permitted TTI to sell "reconditioned, obsolete or excess inventory" and slightly damaged product that THD does not want through other channels, ECF 111-11, SIA § 7.6; ECF 259-4, SBA § 5.2;
- The parties' relationship is [redacted] and "[redacted]" Stearns Tr. 39:1-5; Bradley Tr. 20:8-11;
- The parties [redacted] Bradley Tr. 13:11-20, 24:8-14; Stearns Tr. 69:9-24;
- THD has "[redacted]" Bradley Tr. 41:7-16;
- TTI repeatedly pitches product to THD first, because its "number one goal is always for" THD to purchase its product, Stearns Tr. 53:15-25, 100:5-11;
- Two THD executives made one call each to TTI to inquire solely about the false inventory figures in the Second Report, not questioning DTFO's products, Stearns Tr. 36:21-38:10, 41:6-13;
- THD [redacted] and [redacted] Bradley Tr. 53:6-9, 140:6-15;
- THD [redacted] since the Second Report, Bradley Tr. 62:12-23; and
- THD has given TTI multiple vendor awards since 2023, ECF 93-58.

Bonilla does not and cannot engage with these undisputed facts because his allegation that TTI committed "contractual and product diversion fraud" is false.

## <u>CONCLUSION</u>

The Court should grant TTI's Motion for Partial Summary Judgment.

Dated: September 29, 2026

By: /s/ *Jason D. Sternberg*

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Jason D. Sternberg (FL Bar 72887)
Tara MacNeill (FL Bar 1028931)
Laura N. Ferguson (FL Bar 1047701)
David Nabors (FL Bar 1024722)
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975
jasonsternberg@quinnemanuel.com
taramacneill@quinnemanuel.com
lauraferguson@quinnemanuel.com
davidnabors@quinnemanuel.com

Christopher Tayback (admitted *pro hac vice*)
Kristin Tahler (admitted *pro hac vice*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
christayback@quinnemanuel.com
kristintahler@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
555 13th St., NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
nicholasinns@quinnemanuel.com

*Attorneys for Techtronic Industries Company Limited*