**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| | |
|---|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.<br><br>Plaintiffs,<br><br>– against –<br><br>Victor Bonilla,<br><br>Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Techtronic has not identified a ground to deny summary judgment. Statement 1 asks the question that prompted Bonilla's investigation. Statements 2 and 3 identify the sources of Bonilla's conclusions and appear alongside the interview excerpts on which he relied. Techtronic points to the sources' later disagreement with Bonilla's opinions, but that evidence is not relevant to falsity.

Statement 1 is protected by the opinion privilege as stated in the moving papers. Statements number 2 and 3 are descriptions of what Bonilla's sources told him at the time of the Second Report. It is undisputed Bonilla's sources said:

> "It's kind of like a wink-wink thing. It's a way to get rid of newish stuff. If you know something is not doing well, and you're sitting on some replenishment inventory, you know it's not going to be bought, you basically scratch the box and say, Oh it's blemished."
>
> "I'm looking at the site right now, it looks like everything they're selling that's new, they're calling blemished. Everything that's unused is going in under the label of blemished."
>
> "Oh yeah, they are absolutely playing that game... and I'm sorry that I didn't look at this site before the call, but this is evidence they're selling stuff that IS a velocity product in Home Depot, and calling it blemished."
>
> "I would be if I were Home Depot.... If a product is being sold at or below Home Depot pricing, then yeah I would raise hell.... This is directly selling against Home Depot, this is a new one, I haven't seen this."

*See* Doc 256-4 at 6; 14 (paragraphs 4 & 6); 14 paragraphs 6, 7 & 9); 16 (paragraph 3).

Bonilla fairly presented the sources' observations and identified the basis for the inferences he drew from them. Summary judgment should be granted.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED ON STATEMENT 1.

Techtronic argues that questions can contain defamatory statements. However, the cases that hold this all involve questions that were obviously just disguised factual claims, far removed from the facts of this case. *See Grlpwr, LLC v. Rodriguez*, 2023 WL 5666203, at *5 (N.D. Fla. Aug. 25, 2023); *Bell v. Pollock*, 2025 WL 1148677, at *12-13 (M.D. Fla. Apr. 17, 2025). The question in the Second Report does not tell the reader that the answer is already known or obvious. Its wording and placement convey the hypothesis Bonilla set out to investigate. Doc. 233-2 at 9–10 (stating "What if" and "time to open another investigation").

*Boulger v. Woods*, 917 F.3d 471, 479-80 (6th Cir. 2019), cited by Techtronic, requires review of a question's context, just as Bonilla argues. There, the defendant tweeted a photo of plaintiff next to a photo of a similar looking woman making a Nazi salute, with the caption "So-called #Trump 'Nazi' is a #BernieSanders agitator/operative?" The court held that was not defamatory as a matter of law.

Techtronic cites the Executive Summary's accusation of fraud and a later "lucrative scam" heading. Opp. at 4–5. Those passages appear several pages before Bonilla's question in the report. Even if they are considered immediate context, they do not change the narrative function of Bonilla's question asking whether the newly identified outlet practices might offer another explanation for concerns discussed in the First Report, and indicating that he is beginning an investigation. Statements elsewhere in the Report cannot change the clear meaning of Bonilla's question.

## III. SUMMARY JUDGMENT SHOULD BE GRANTED ON STATEMENTS 2 AND 3.

Statements 2 and 3 contain Bonilla's characterizations of what his sources told him.[1] Bonilla's characterizations are accurate. (A selection of statements are quoted in the introduction.) Bonilla's sources said outright that Techtronic was calling products "blemished" in order to sell them at its own factory. Techtronic does not dispute that these sources had been highly placed executives in Techtronic and Home Depot; Bonilla was entitled to tell the public what they told him, and did. Bonilla's characterization of what the statements from his sources showed is his opinion based on the extensively disclosed statements from those sources (they are quoted throughout the Second Report). There is no triable issue of fact.

Techtronic makes much of the fact that later, at their depositions, two sources (Hartman and Vita) criticized Bonilla. However, that evidence is irrelevant. The only relevant evidence on falsity is *what they said to Bonilla*, not whether they were later embarrassed by the Second Report. *See Machleder v. Diaz*, 801 F.2d 46, 57 (2d Cir. 1986) (no evidence of falsity as a matter of law where the defendant aired plaintiff's statements on television and accurately portrayed what he said, but plaintiff was later embarrassed by it). Independently, *none of the deposition excerpts quoted by Techtronic actually show Hartman or Vita*

[1] Techtronic argues in a footnote that Statement 2 is outside the permitted supplemental briefing. Opp. at 5 n.2. But the Court's clarification order identified **three** statements in paragraph 68(a)–(c) for separate analysis, including Statement 2. Doc. 247 at 8–9. Bonilla's discussion of that statement responds to the Court's stated concern; it does not introduce a new statement or expand the subject of the motion. In any event, Techtronic has fully addressed Statement 2 on the merits in its opposition and is not prejudiced.

*claiming any of the quotations in the Second Report were false*. Instead, the quotes say Bonilla was "malicious" and "manipulative" and "definitely not… fair" (Opp. at 1), and talked about what the sources were "trying to convey", what their "inclination" was, and that they were "shocked" (Opp. at 2). None of these are evidence of any misquotation. Techtronic also quotes sources saying Bonilla was "misleading" and "did not report… the whole truth" (Opp. at 2), but even if the *post hoc* statements of sources were relevant, the standard in a defamation case is whether there is a false statement and there is no obligation to report the whole truth. *Turner v. Wells*, 198 F. Supp. 3d 1355, 1371 (S.D. Fla. 2016) ("Publishers have no legal obligation to present a balanced view of what led up to the publicized event. The law of defamation is concerned with whether a publisher reports a story truthfully, not generously.") (cleaned up). Moreover, Vita specifically was asked over 14 pages of his deposition to identify a single inaccurate quotation—he agreed he actually said every single thing Bonilla quoted. Declaration of Jonathan Weiss, Ex. 1 at p. 103-16.

Moreover, with respect to Statement 3, TTI Man expressly stated that he believed the nomenclature was "designed to be deceptive, only to get around the Home Depot relationship." Doc. 256-8 at 5. This is sufficient by itself to establish the truth of Bonilla's statement, because the statement reports what those former employees indicated; it does not say that either had direct knowledge of every decisionmaker's intent.

Techtronic cites *Bell v. Pollock*, 2025 WL 1148677 at *7 (M.D. Fla. Apr. 17, 2025), claiming it holds that using the word "confirm" implies undisclosed facts. *Bell* says no such thing, and in fact the allegedly defamatory material in *Bell* never used the word "confirm". In the case at bar, the use of the word "confirm" in Statements 2 and 3 is describing the very statements from Bonilla's sources that Bonilla details in the Second Report—an opinion based on *disclosed* facts.

Techtronic argues that Bonilla and the interviewees had not seen the Home Depot agreement before publication. Opp. at 3, 6.[2] But this argument irrelevant to falsity because it is undisputed that the agreement permits sales only of "reconditioned, obsolete or excess inventory" and does not use the term "Factory Blemished." Doc. 94-13 at TTI0002881, TTI0002886.

## IV. CONCLUSION

For the foregoing reasons and those stated in the moving papers, the Court should grant summary judgment in Bonilla's favor on the three statements.

[2] Techtronic's argument that there was something wrong with Bonilla not asking for the agreement prior to publishing the Second Report (Opp. at 3) is disingenuous at best; Techtronic has declined even in this litigation and under protective order to provide Bonilla with the full agreement.

Dated: September 29, 2026

Respectfully submitted,

By: _/s/ Dilan A. Esper_
Dilan A. Esper (*pro hac vice*)
desper@harderstonerock.com
Charles J. Harder (*pro hac vice*)
charder@harderstonerock.com
Harder Stonerock LLP
6300 Wilshire Boulevard,
Suite 640
Los Angeles, CA 90048
Telephone: (424) 203-1600

By: _/s/ Jonathan R. Weiss_
Jonathan R. Weiss (FBN: 57904)
Jonathan.weiss@squirepb.com
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard,
Suite 3400
Miami, Florida 33131
Telephone: (305) 577-7000

*Attorneys for Defendant Victor Bonilla*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 29, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record.

Jason Sternberg (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
2601 South Bayshore Dr., Ste 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
kristintahler@quinnemanuel.com

David A. Nabors
Fla. Bar No. 1024722
Quinn Emanuel Urquhart Sullivan LLP
2601 S. Bayshore Drive, Suite 1550
Miami, FL 33133-5417
davidnabors@quinnemanuel.com

Nicholas Inns (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
nicholasinns@quinnemanuel.com

_/s/ Jonathan Weiss_
Attorney