**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

| | |
|---|---|
| Techtronic Industries Company Limited, and Techtronic Industries Factory Outlets, Inc.<br><br>Plaintiffs,<br><br>– against –<br><br>Victor Bonilla,<br><br>Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Techtronic's Motion conflates distinct statements. The Court previously adjudicated certain factory outlet financials and separately addressed the statement that Techtronic was "systematically defrauding" Home Depot. The statement now before the Court is different. It asks a question: whether *companywide* margins discussed in the First Report might be attributable not "simply" to accounting practices examined there, but "also" to suspected contractual and product-diversion misconduct.

That question is legally protected under the opinion privilege and describes Bonilla's investigative hypothesis. Independently, even if it were construed as a factual statement, Techtronic cannot establish falsity as a matter of law. At best, the evidence Techtronic cites might support competing inferences concerning Home Depot's knowledge, but disputes cannot be resolved in Techtronic's favor in this Motion. Accordingly, Techtronic's Motion should be denied.

## I. THE CHALLENGED STATEMENT

The challenged passage appears in Bonilla's account of his investigation:

> It slowly dawned on us that despite undercutting Home Depot, TTI must be making a far higher gross margin on these sales than it does selling the same products to Home Depot. And now you're starting to understand why we, the authors of a report about how TTI's gross margins are basically impossible, were so intrigued by this new lead. **What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer?** We began to fear that the exhaustive accounting examination we gave TTI in our first report had missed the worst behavior of all. It was time to open another investigation into TTI — "Blemishgate."

Doc. 233-2 at 9–10 (emphasis in original).

## II. THE COURT'S PRIOR RULINGS DO NOT ADJUDICATE THE FALSITY OF BONILLA'S QUESTION.

Techtronic conflates the Court's treatment of different statements: Bonilla's numerical estimates concerning factory outlet inventory, sales, and profits and the separate assertion that Techtronic was "systematically defrauding" Home Depot. *See* Docs. 179 at 24–27; 247 at 8–10.[1] The question now before the Court contains no inventory value, sales figure, or profit estimate. The immediately preceding sentence identifies Bonilla as the author of the First Report concerning Techtronic's companywide margins, and the question asks whether those margins (which Bonilla characterizes as "insane", a clear opinion) might be attributable not "simply" to the accounting practices discussed in the First Report but "also" to the newly investigated sale of "blemished" goods.

## III. BONILLA'S QUESTION IS PROTECTED UNDER THE OPINION RULE.

The general rule is that: "[I]nquiry itself, however embarrassing or unpleasant to its subject, is not accusation." *Sullivan v. Malta Park*, 156 So.3d 1200, 1210 (La. App. 2014) (quoting 50 Am.Jur.2d Libel and Slander § 154 (2006)). Extensive legal authority holds that this sort of question is protected opinion. *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1338–39 (D.C. Cir. 2015) (Kavanaugh, J.) ("Are the sons of the Palestinian president growing rich off their father's system" not actionable statement of fact); *Partington v. Bugliosi*, 56 F.3d

[1] Bonilla's pending motion asks the Court to clarify that its ruling concerning the "systematically defrauding Home Depot" statement does not preclude truth or substantial-truth arguments independent of the previously adjudicated inventory-value, sales, and profit figures. Doc. 250.

1147, 1157 (9th Cir. 1995) ("Bugliosi's use of a question mark serves two purpose[s]: it makes clear his lack of definitive knowledge about the issue and invites the reader to consider the possibility of other justifications[.]").

Techtronic argues that a question can sometimes be a statement of fact. However, the questions that have been held to contain statements of fact are entirely different than Bonilla's. For instance, the question held to be a statement of fact in *Grlpwr, LLC v. Rodriguez*, 2023 WL 5666203, at *5 (N.D. Fla. Aug. 25, 2023), was "doesn't [Plaintiff's general business structure] fall in line with what a pyramid scheme is? Hello? Hello? It's right in front of your face." Despite nominally framing a question (and then answering it), the defendant there was making an affirmative claim. In *Bell v. Pollock*, 2025 WL 1148677, at *12-13 (M.D. Fla. Apr. 17, 2025), the question was "If it wasn't an FBI agent's kids, would seven judges have recused themselves?", which while formed as a question is made an argument that seven judges would not have recused themselves in a normal case.

Additionally, the surrounding context makes clear that Bonilla is describing his investigative process, not stating a factual conclusion: "It slowly dawned on us"; "What if"; "We began to fear"; and "It was time to open another investigation." Doc. 233-2 at 9–10.

That contextual analysis is reinforced by this Court's treatment of similar rhetorical questions in the First Report, which this Court ruled to be protected opinion. Doc. 179 at 20 ("Review of Bonilla's discussion of the purported capitalization in the First Report reveals his commentary is filled with rhetorical

questions . . . [and] colorful hyperbole . . . ."). This Court has already held that Bonilla's use of "manipulative accounting" and "accounting games" constituted "nonactionable opinion or colorful rhetoric." *Id.* at 17-18. The surrounding phrases here—"insane profit margins," "accounting games," and "rather powerful"—are similarly evaluative and hyperbolic. In the context of the challenged question, "fraud" appears as part of the hypothesis Bonilla asks the reader to consider, and Bonilla is entitled to use this sort of rhetoric in describing what he is seeking to find. *National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (referring to workers in union dispute as "traitors" is protected rhetoric); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1383–84 (S.D. Fla. 2006) (referring to an NBA player's physical play as a "mugging", "malicious", etc., is protected). Bonilla identifies the question as the impetus for a new investigation—not simply rephrasing affirmative factual claims. Bonilla's statement is not an actionable statement and is protected by the opinion privilege.[2]

## IV. ALTERNATIVELY, GENUINE FACTUAL DISPUTES PRECLUDE SUMMARY JUDGMENT ON FALSITY.

Even if the challenged question is construed to imply factual assertions, Techtronic has not established falsity as a matter of law. The question does not repeat the adjudicated factory outlet volume, sales, and profit estimates, and the

[2]Techtronic's effort to extract additional factual propositions from the question also conflicts with its own pleadings. As the Court observed, Techtronic has not asserted defamation by implication. Doc. 247 at 7 n.8. Techtronic therefore cannot use implication to graft the previously adjudicated inaccurate factory outlet estimates onto a sentence that contains no inventory value, sales figure, or profit calculation.

record does not establish that any, let alone every, challenged sale was contractually authorized, or that all relevant products were first offered to Home Depot, or that Home Depot knew of and approved the challenged practices.

**A. The Question Does Not Repeat the Adjudicated Estimates.**

As noted, the phrase "insane profit margins" refers back to the First Report's discussion of Techtronic's reported profit margins. The challenged question does not make any numerical representation concerning the factory outlets' sales, profits, or contribution to Techtronic's operating income. Evidence that Techtronic lost money at its outlets does not establish the falsity of this different question.

**B. The Record Does Not Establish as a Matter of Law That Every Challenged Sale Was Contractually Authorized.**

The Home Depot-Techtronic Strategic Initiative Agreement ("SIA") requires that Techtronic's tools be sold exclusively at Home Depot, absent written consent from Home Depot. Doc. 102-2 at TTI0002881. The SIA contains a narrow exception, allowing Techtronic to sell "reconditioned, obsolete or excess inventory" under specified conditions. Doc. 102-2 at TTI0002881, TTI0002886. The SIA does not contain an exception for "factory blemished" goods or even use that term. *Id.* That omission is particularly significant because Techtronic's Motion repeatedly describes the SIA as permitting the sale of "excess, obsolete or slightly damaged product." Doc. 257 at 4, 9. But "slightly damaged" is Techtronic's addition, not what the contract says.

Techtronic's deceptive addition of "slightly damaged" is significant because it assumes the very proposition its Motion must establish: that products bearing that description necessarily qualified as "reconditioned, obsolete or excess inventory." The SIA does not say that. Nor does Techtronic's conjecture that Home Depot would not have wanted damaged products establish compliance with the agreement's notice and first-refusal requirements. Stearns's testimony reinforces the dispute. [redacted] Declaration of Jonathan Weiss Ex. 1 - Stearns Tr. 92:6–14. That testimony may explain Techtronic's business rationale, but it does not establish contractual compliance. [redacted]

Techtronic responds that Home Depot did not object to its conduct. But Home Depot's non-objection does not establish falsity as a matter of law. The relevant question is whether the challenged sales complied with the SIA—not whether Home Depot later acquiesced in the practice, waived a contractual right,

or declined to pursue a remedy. Those issues support competing inferences that must be resolved in Bonilla's favor on Techtronic's Motion.

[redacted][4]

## V. CONCLUSION

For the foregoing reasons, the Court should deny Techtronic's Motion.

---

3 [redacted]

4 [redacted]

Dated: September 29, 2026

Respectfully submitted,

By: /s/ Dilan A. Esper
Dilan A. Esper (*pro hac vice*)
desper@harderstonerock.com
Charles J. Harder (*pro hac vice*)
charder@harderstonerock.com
Harder Stonerock LLP
6300 Wilshire Boulevard,
Suite 640
Los Angeles, CA 90048
Telephone: (424) 203-1600

By: /s/ Jonathan R. Weiss
Jonathan R. Weiss (FBN: 57904)
Jonathan.weiss@squirepb.com
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard,
Suite 3400
Miami, Florida 33131
Telephone: (305) 577-7000

*Attorneys for Defendant Victor Bonilla*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 29, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record.

Jason Sternberg (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
2601 South Bayshore Dr., Ste 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
kristintahler@quinnemanuel.com

David A. Nabors
Fla. Bar No. 1024722
Quinn Emanuel Urquhart Sullivan LLP
2601 S. Bayshore Drive, Suite 1550
Miami, FL 33133-5417

Nicholas Inns (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
nicholasinns@quinnemanuel.com

/s/ Jonathan Weiss
Attorney