UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TECHTRONIC INDUSTRIES COMPANY LIMITED and TECHTRONIC INDUSTRIES FACTORY OUTLETS, INC.<br><br>Plaintiffs,<br><br>v.<br><br>VICTOR BONILLA,<br><br>Defendant. | Case No. 8:23-cv-01734-CEH-AEP |

**DEFENDANT'S MOTION TO EXCLUDE HOME DEPOT SUPPLIER BUYING AGREEMENTS NOT LISTED ON PLAINTIFF'S EXHIBIT LIST FROM TRIAL, AND FOR SANCTIONS UNDER RULE 37**

## I. INTRODUCTION

Defendant Victor Bonilla ("Defendant" or "Bonilla") moves for an Order precluding Plaintiff Techtronic Industries Co. ("Techtronic") under Federal Rule of Civil Procedure 37(c)(1) from introducing or mentioning at trial two "Supplier Buying Agreements" ("SBAs") that Techtronic submitted as part of its supplemental filings regarding summary judgment, and for monetary sanctions against Techtronic and its counsel for reasonable expenses caused by the disclosure failures. Alternatively, Bonilla requests targeted supplemental discovery before Techtronic may rely on those SBAs at trial.

Discovery in this case closed on August 2, 2024. Doc. 50. During that entire period of discovery, Techtronic took the position that a single, heavily redacted agreement, the Strategic Initiative Agreement ("SIA") with Home Depot, governed whether or not it could sell "factory blemished" goods in its factory outlet stores (the subject matter of Bonilla's Second Report, which Techtronic claims is false and defamatory). Techtronic swore this was true in interrogatory responses, had its Rule 30(b)(6) corporate designee testify to this effect at deposition, and identified the SIA as the relevant document in its disclosures.

However, just three months before the November 30 trial date, for the first time, Techtronic introduced the new contention that two SBAs that it never produced in discovery and never identified, govern whether it can sell factory blemished goods at its factory outlet stores. Techtronic attached a 2024 SBA to its supplemental motion for summary judgment (Doc. 259-4), and a 2022 SBA to its reply brief (Doc. 270-3).[1]

Techtronic has recently taken, in its September 2026 summary judgment supplemental filings, the brand new position that the SBAs permit Techtronic to sell "factory blemished" goods in its outlet stores, and has indicated that it intends

[1] The redacted SIA that Techtronic had long said was the only contract governing its right to sell factory blemished goods, said that Techtronic's tools would be sold exclusively at Home Depot, with the only exceptions being for excess, obsolete, or reconditioned goods that could be sold at factory outlets. *See* Declaration of Dilan Esper ("Esper Decl."), Ex. 1 (SIA) at §§ 4.1, 7.6. The provisions produced to Bonilla contained no exception the "factory blemished" goods Techtronic sold at the stores. Bonilla surmises that the reason for Techtronic's very late change in its position is not that it suddenly discovered the "actual" documents that govern its relationship with Home Depot, but rather that Techtronic knew its argument that the SIA permitted sales of factory blemished goods was a losing one.

to take the same position at trial. However, (1) the 2022 SBA that Techtronic contends was the operative SBA at the time of the Second Report was never listed on Techtronic's trial exhibit list, (2) neither the 2022 nor 2024 SBA used in its summary judgment papers were produced by Techtronic in discovery, (3) no SBA was ever identified as relevant in Techtronic's Rule 26 disclosures, (4) no SBA was identified as relevant in an interrogatory response identifying the contracts that governed the Techtronic-Home Depot relationship, and (5) Techtronic's corporate designees never identified or discussed the SBAs, despite the fact Techtronic was asked to produce a witness to testify on the subject matter of Techtronic's relevant contracts with Home Depot at deposition. Techtronic did not even identify the SBAs as relevant during initial summary judgment briefing, despite extensive discussion by both parties in their papers and arguments about what goods Techtronic was permitted to sell in its factory outlet stores under its contract with Home Depot. *See, e.g.*, Docs. 92, 105. The issue is therefore whether Techtronic's own disclosure failures deprived Bonilla of a meaningful opportunity to obtain the discovery needed to test the asserted authorization, and whether the omitted trial exhibits should now be permitted. The record is clear that it did deprive Bonilla of that opportunity, and this Court should exclude the SBAs.

Techtronic's last minute decision to change its arguments and contend that the SBAs—which has always been in its possession—permit it to sell "factory blemished" goods at the outlet stores is massively prejudicial, especially if this Court intends to maintain a November 30 trial date. Specifically, Bonilla

conducted all of his discovery and trial preparation in this case based on the premise that Techtronic had produced the sole contractual language that governs its relationship with Home Depot and whether it could sell "factory blemished" goods in its factory outlet stores, which is the crux of the Second Report that Techtronic alleges to be false and defamatory. Techtronic was explicitly asked to identify all relevant contracts between Techtronic and Home Depot; in response, Techtronic identified **only** the redacted version of the SIA. Techtronic never produced the 2022 or 2024 SBA it now relies on. If Techtronic is allowed to now change its position and rely on completely different contracts (the SBAs), Bonilla will be severely prejudiced at trial because he was deprived the opportunity to discover this information due to Techtronic's gamesmanship. Moreover, Techtronic has still not produced even a complete copy of the SIA. Bonilla therefore still lacks the complete provisions necessary to access portions of the SIA that may be relevant and which may rebut Techtronic's arguments relating to the SBA (such as provisions that govern which terms of the contract may be modified, who would have to approve any modification, etc.).

The Court should exclude the SBAs under Rule 37(c)(1) because the identified disclosure failures were neither substantially justified nor harmless. Alternatively, the Court should condition any use on completion of targeted discovery requested below and award the reasonable expenses caused by Techtronic's failures, with the amount established by a supported fee submission.

The alternative relief should include complete unredacted copies of the operative agreements and related amendments and authorizations; a supplemental Rule 30(b)(6) deposition; and, limited additional examinations of Techtronic witnesses David Stearns and Randy Davis, who are both listed on Techtronic's trial witness list and both of whom have extensive knowledge of the contracts between Techtronic and Home Depot. Bonilla requests a schedule that permits this discovery to be completed before the SBAs are used against him – at trial.

## II. STATEMENT OF FACTS

Techtronic alleges that Bonilla's Second Report's statements that Techtronic was defrauding Home Depot by selling goods labeled "factory blemished" in its factory outlet stores, were false and defamatory. Doc. 233 (Sec. Am. Compl.) ¶ 3. The Second Report contained extensive discussion about this claim, including statements from Bonilla's sources about what Techtronic was and was not permitted to sell in its factory outlet stores under its contract with Home Depot. *See* Doc. 233-2.

On July 3, 2024, Techtronic served amended Rule 26 disclosures in this case. Esper Decl., ¶ 4, Ex. 2. With respect to its relationship with Home Depot, Techtronic stated its intent to rely on "[c]ertain documents and communications related to [Techtronic]'s contractual relationship with The Home Depot, Inc., including any contracts and agreements between them." *Id.*, Ex. 2 at 9. Techtronic did not specifically identify or produce any documents along with this disclosure,

nor did Techtronic subsequently amend these disclosures. *Id.*, ¶¶ 4, 13, Ex. 2. Accordingly, the disclosures did not contain any reference to the SBAs.

On January 25, 2024, Bonilla served a document demand for "[a]ll writings constituting contracts, amendments to contracts or draft contracts or amendments, between [Techtronic] and Home Depot." *Id.*, ¶ 5, Ex. 3 at 78-79 (No. 71). Techtronic responded on February 26, 2024: "[Techtronic] ***will*** conduct a reasonable search and ***produce*** its relevant, non-confidential contracts with The Home Depot Inc. that were in effect between 2020 and June 2023 and that relate to [Techtronic]'s DTFO business." *Id.*, Ex. 3 at 79 (Resp. to No. 71) (emphases added). Techtronic subsequently dumped over 11,000 pages of documents in response to Bonilla's document requests. *Id.*, ¶ 6. The SBAs attached to Techtronic's summary judgment briefing (Docs. 259-4 and 270-3) were not included in Techtronic's production. *Id.*, ¶ 7. The production did include, however, a heavily redacted version of the SIA, dated April 2, 2003. *Id.*, ¶ 4, Ex. 1. The only material provisions of the SIA that Techtronic provided to Bonilla consisted of language saying that Techtronic was to exclusively sell its tools in North America to Home Depot, and further containing an exception to that exclusivity for excess, obsolete, or reconditioned tools, and only to the extent that they were first offered in writing to Home Depot. *See id.*, Ex. 1 §§ 4.1 & 7.6.[2]

---

[2] Techtronic initially produced a version of the SIA with only some recitals, Section 4.1, and the signatures disclosed. During the deposition of Techtronic's Rule 30(b)(6) designee, David Stearns, Techtronic subsequently produced a slightly less redacted version of the SIA disclosing one additional paragraph: Section 7.6. *See* Esper Decl., ¶ 8, Ex. 4 ("Stearns Tr.") at 74:25-76:15.

After receiving Techtronic's production, Bonilla noticed Rule 30(b)(6) depositions, including requesting a deponent on the subject area of "[t]he definition of 'factory blemished' goods, including any contractual definition, any definition provided by Home Depot, and any definition utilized by TTI." Esper Decl., Ex. 4 (Am. Dep. Not. ¶ 58). Techtronic produced David Stearns as their witness on the categories relating to the Second Report, and Bonilla examined him extensively about the agreements between Techtronic and Home Depot and the legal and contractual basis for Techtronic's claim that it was permitted to sell "factory blemished" goods at its factory outlet stores. *See id.*, Ex. 4 (Stearns Tr.) at 16:22-23 ([redacted]) (emphasis added); *id.* at 17:2-9 ("[redacted]"); *see also id.* at 50:23-25, 51:23-24, 53:16-19 (similar). As Techtronic admitted in a filing, "[redacted]" Doc. 156 at 6-7 (emphasis added); Doc. 183 at 4 (same).

Bonilla presented the redacted SIA to Mr. Stearns and asked "[redacted]" Stearns Tr. at 87:5-13. Mr. Stearns answered "[redacted]" *Id.* Bonilla

confirmed: "[redacted]" Stearns Tr. at 87:11-13. At no point during the deposition did Stearns mention the SBAs.

Critically, the SIA refers to written consents by Home Depot that permit Techtronic to sell excess, obsolete, and reconditioned goods in the factory outlets, so Bonilla asked how that written consent process worked. Stearns gave a long answer describing Techtronic offering the goods to Home Depot, Home Depot declining to sell excess goods, and then Techtronic selling them in the factory outlets. *See* Stearns Tr. at 53:25-55:6. Bonilla then asked Stearns about what he was calling "slightly damaged" goods—the supposedly "blemished" goods at the center of this case. *See id.* at 55:2-21. [redacted] *Id.* at 92:22-93:1. Once again, Stearns never mentioned the SBAs.

On July 2, 2024, Bonilla then propounded special interrogatories that specifically inquired of the following:

> Describe, as of June 3, 2023, what the contractual preconditions under TTI's [Techtronic's] relationship with Home Depot were (including whether the tool had to be blemished, obsolete, end of life, etc.) for TTI to be able to sell a tool from one of Home Depot's brands in a DTFO brick-and-mortar or online store.

Esper Decl., ¶ 9, Ex. 5 at 5 (No. 2). After completing its Rule 30(b)(6) depositions, and consistent with Mr. Stearns' testimony, Techtronic responded:

> Subject to and without waiving [boilerplate] objections, TTI responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), ***TTI refers Defendant to the relevant document, TTI0002878***, which TTI has already produced to Defendant and which speaks for itself.

*Id.* at 6 (Resp. to No. 2) (emphasis added). In other words, Techtronic stated that the ***only*** agreement containing contractual terms applicable to the sale of "blemished" tools to factory stores is TTI0002878—the heavily redacted SIA about which Techtronic, via Mr. Stearns, had testified to in deposition. *Id.* To date, Techtronic has not supplemented its responses to Bonilla's Interrogatories or Document Requests. *Id.*, ¶ 13.

Bonilla prepared his contractual defense using the SIA provisions that Techtronic identified and the testimony described above. Specifically, Bonilla worked diligently on preparing a defense to this lawsuit based on the claim that while there were exceptions for excess, obsolete, or reconditioned tools, there was no exception for factory blemished tools, and thus Bonilla's reporting that this was a violation of Techtronic's obligations to Home Depot was correct. *Id.*, ¶¶ 10-11. In its original motion for summary judgment in 2025, Techtronic argued that its conduct was permissible under the limited SIA language that it had already produced to Bonilla. *See* Docs. 92, 105. Techtronic never mentioned the SBAs or disclosed that it thought the SBAs had any relevance to its claimed right to sell factory blemished goods at its outlet stores. *See id.*

Techtronic filed its exhibit list on April 17, 2026. Doc. 215-3. The list does not include either SBA. On or about May 23, 2026, Techtronic provided copies of

its stamped exhibits to Bonilla, including six additional stamped exhibits that are not referenced on the filed exhibit list. Esper Decl., ¶ 12. Among these documents, Techtronic stamped the 2024 SBA as exhibit 124 without calling any attention to it. *Id.* To date, Techtronic has not supplemented its exhibit list to add either the 2022 or 2024 SBA, and has never marked the 2022 SBA as a trial exhibit. *Id.*, ¶¶ 12-13.

In September 2026, for the first time in this case, Techtronic argued that the SBAs authorized factory-blemished sales. It attached the 2024 SBA to its moving papers, and the 2022 SBA to its reply (after Bonilla pointed out the 2024 SBA was irrelevant because it was entered into after the Second Report was published). *See* Docs. 259-4 & 270-3. Bonilla promptly objected to the SBA pursuant to Federal Rule of Civil Procedure 56(c)(2). Doc. 274.

The SBAs, as of the time of this motion, have still never been produced by Techtronic, listed as an exhibit, or identified in a Rule 26 disclosure by Techtronic. Esper Decl., ¶ 13. However, Techtronic indicated in meet and confer discussions for this motion that it intended to seek to introduce the SBAs at trial.

The SBAs were produced by a third party, Home Depot, in this litigation, in the summer 2024 near the close of fact discovery in this case. From 2024 all the way through September 2026, Techtronic never repudiated or modified its position that the only document governing the relationship between Techtronic and Home Depot was the heavily-redacted SIA document. Techtronic never identified the SBAs as documents it intended to rely on or changed any of its

discovery responses or disclosures explicitly representing that the SIA was the only relevant document in this case.

## III. ARGUMENT

### A. Governing Law

Listing documents on a trial exhibit list is a mandatory precondition of their admissibility at trial. *See* Fed. R. Civ. Proc. 26(a)(3)(A)(iii). "The parties must specifically and individually identify each document or other item of evidence within the time set in the local rules or a separate scheduling order, or the document will not be admissible." *Burkhart v. R.J. Reynolds Tobacco Co.*, 2014 WL 12617550 at *7 (M.D. Fla. Apr. 30, 2014).

Parties also have an obligation to disclose at the outset of the case "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment". Fed. R. Civ. Proc. 26(a)(1)(A)(ii). Moreover, Rule 26(e) provides that "[a] party who has made a disclosure under Rule 26(a)—or who has responded to . . . [a] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete." Fed. R. Civ. Proc. 26(e)(1)(A).

"If a party fails to provide information... as required by Rule 26(a)..., the party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1). "Rule 37(c) appears to be self-executing." *Friedman v. Ace Ins. Co. of Midwest*, 2023 WL 11256678, at *1 (M.D. Fla. Aug. 1, 2023) (citation omitted).

In addition, when a party fails to provide Rule 26(a) information, the Court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure". Fed. R. Civ. Proc. 37(c)(1)(A). The Court may also impose other sanctions as appropriate. Fed. R. Civ. Proc. 37(c)(1)(C).

The Court may also impose monetary sanctions where there has been a failure to comply with valid discovery. Fed. R. Civ. Proc. 37(a)(5)(A)."The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009) (quotation omitted). In addressing a Rule 37 motion, reviewing courts consider the nondisclosing party's explanation for the failure, the importance of the information, and whether the opposing party is prejudiced by the discovery violation. *Lips v. City of Hollywood*, 350 Fed. Appx. 328, 340 (11th Cir. 2009). The Court has broad discretion in fashioning remedies for the failure to disclose material evidence. *Higgs v. Costa Crociere S.PA. Co.*, 969 F.3d 1295, 1305 (11th Cir. 2020) (affirming adverse evidentiary inference sanction against party who failed to disclose key witness in Rule 26 disclosures and only disclosed the witness two weeks before trial).Techtronic failed to timely disclose the SBAs.

Techtronic clearly and repeatedly failed to disclose the SBAs. It did not do so in its initial disclosures under Rule 26, did not disclose them in discovery including interrogatories and corporate designee depositions, did not supplement its initial disclosures to disclose them, did not supplement its interrogatory responses to disclose them, and did not list them on their exhibit list. Indeed, Techtronic's corporate representative denied having reviewed any contract other than the SIA, despite being designated as a topic of examination. *See* Esper Decl., Ex. 4 at 20:6-12. Techtronic also represented it would produce all contracts, but did not produce the SBAs that it relied upon in support of supplemental summary judgment briefing and which it intends to use at trial. *See id.*, Ex. 3 at 79 (Resp. to No. 71). As a result, the entirety of the discovery and trial preparation process in this case was taken under the factual assumption, based on Techtronic's own representations, that the only relevant contract that governed what it could permissibly sell in its factory outlet stores was the redacted form of the SIA that it produced, authorizing sales of excess, obsolete, or reconditioned goods at the outlets.

There can be no dispute that Techtronic should have identified the SBAs in response to Interrogatory No. 2, and produced them in response to RFP No. 71. As a party to the SBAs, Techtronic cannot justify withholding these agreements. Moreover, despite knowing it would advance this new argument in reliance on the SBAs in supplemental summary judgment briefing (and even after making the

argument), Techtronic still failed to supplement its disclosures, its written discovery responses, and its production.

**B. Plaintiff's failure to disclose is not substantially justified or harmless.**

Techtronic cannot avail itself of the safe harbor under Rule 37 where a party's conduct was substantially justified or harmless. "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997). Reasonable people cannot differ on Techtronic's conduct here, which involved the failure to identify on multiple occasions and over three years what it now contends are key contracts with Home Depot in a case that turns on the terms of Techtronic's agreements with Home Depot. Further, there's no reasonable disagreement on the meaning of any of Techtronic's discovery responses—at all times, through written disclosures, interrogatory responses, and corporate designee deposition testimony, Techtronic assured Bonilla that the redacted SIA was the only contract that mattered in this case, and the only contract that governed whether Techtronic could sell factory blemished goods and the factoy outlet stores. Nor can Techtronic plead a lack of diligence as a basis to escape sanctions. *Romero v. Drummond Co.*, 552 F.3d 1303, 1322 (11th Cir. 2008) (finding no abuse of discretion in the exclusion of evidence when the failure to disclose was based in part on plaintiffs' own lack of diligence).

Techtronic's failure to produce was not harmless. The fact that the 2022 and 2024 SBAs were buried in Home Depot's document productions, and that a handful of other SBAs were included in some Techtronic document productions, does not cure the prejudice, because the prejudice arises from Techtronic's failure to disclose its contention that the 2022 and 2024 SBAs are relevant and determinative as to whether it can sell factory blemished goods. Techtronic represented to Bonilla that the SIA was the sole agreement that governed whether factory outlets could sell blemished goods, and provided discovery responses and deposition testimony to that effect. Then, with less than 3 months before trial date and having denied Bonilla any discovery on its newly asserted contentions, Techtronic now claims that entirely different contracts governed the issue – contracts which it has always had in its possession. The prejudice is manifest.

The manifest prejudice here arose out of Techtronic's own litigation tactics. Techtronic represented to the Court that it was centrally important that the SIA had to be used only in its highly redacted form in this litigation, and opposed a motion by Bonilla to lift its confidentiality designation. In opposing the motion, Techtronic repeatedly emphasized the SIAs central role in its relationship with Home Depot and the sensitivity of its terms. The quotations below provide context for Techtronic's production and Bonilla's examination of Mr. Stearns.

"TTI's [Techtronic's] contract with The Home Depot, Inc. ("THD") represents the cornerstone of TTI's relationship with its largest customer." Doc. 156 at 1. Techtronic further said:

> [redacted]

*Id.* at 5 (citations omitted).

> . . . TTI's agreement with THD represents the cornerstone of a longstanding relationship between TTI and its largest, and most important, business partner. [redacted] These terms are competitively sensitive. Protecting the terms of that contract is critical to ensuring that TTI's business interests are protected from competitors, who seek equal shares of THD's business.
>
> Maintaining confidentiality is also important to protect THD. . . . TTI's contract with THD contains sensitive terms about the parties' mutually productive relationship.

*Id.* at 11-12 (citations omitted & emphasis added).

Having misled Bonilla (and the Court) that the redacted SIA was the only contract, Techtronic then waited until less than two months before a scheduled trial date to announce for the first time that it contends that the *SBAs* (which were not disclosed during Techtronic's deposition or in its response to interrogatories) actually authorize its sales of "factory blemished" goods despite the language of the redacted SIA that Bonilla had relied on throughout discovery.

This is obviously prejudicial. Had Bonilla known that Techtronic would rely on the SBAs, Bonilla would have (1) demanded unredacted copies of the SIA, which could have provisions that govern or are relevant to the interpretation of the SBA,

(2) examined Stearns on the SBAs and its provisions, (3) sought additional discovery including all drafts and executed SBAs and regarding the negotiations and interpretation of the SBAs' terms, and (4) prepared a defense for trial based on the language of the SBAs. None of this happened, precisely because Techtronic withheld these documents until just before trial.

This is not merely an academic point. Any of the following facts might be true, and could have come out in discovery had Techtronic claimed from the outset that the SBA's governed whether it could sell "factory blemished" goods: (1) other provisions of the SIA, which Techtronic redacted from their production, might preclude that interpretation of the SBAs, (2) provisions of the SIA which Techtronic redacted may preclude the SBAs from modifying the scope of goods that can be sold at the factory outlets, (3) provisions of the 2017 SBA that the 2022 and 2024 SBAs reference, and which has never been produced by Techtronic, could refute Techtronic's claim that it is permitted to sell "factory blemished" goods at the factory outlet stores, or (4) Mr. Stearns might have conceded at deposition that actually the SBAs do not govern whether Techtronic could sell "factory blemished" goods at the outlet stores (*i.e.*, that his actual sworn testimony in this case that the SIA was the sole operative agreement was true). Any number of facts could be true, but because Bonilla was denied the discovery and disclosure, Bonilla does not know them. And if Techtronic gets its way, neither will the jury.

All of this should be understood as what it is—a sandbagging. Techtronic led Bonilla to believe that its central concern was protecting confidential corporate

information, and essentially told Bonilla that broad disclosure of its contractual relationships with Home Depot would not be necessary because Bonilla had the only contractual language that mattered: the SIA with its language permitting sale of obsolete, excess, and reconditioned goods. This was a choice Techtronic made to protect corporate confidentiality and to avoid extensive discovery into its contracts. Then, having denied Bonilla any broader discovery into its contracts with Home Depot, Techtronic found itself close to trial and relying on contractual language that did not authorize sale of "factory blemished" goods at its outlet stores. So it decided that a couple of randomly selected SBAs (essentially purchase order documents) could be grafted into their case as a pre-trial surprise, without any discovery of how those documents worked, to what extent they governed the actual Techtronic-Home Depot relationship, to what extent they supersede the terms of the SIA or are permitted to modify the SIAs terms, and without even producing all of the SBAs or the 2017 SBA that apparently contains material terms that the SBAs Techtronic is relying on is subject to. The 2022 and 2024 SBAs also state they are subject to Home Depot's summary of business terms and supplier reference guide, neither of which has been produced by Techtronic.

Moreover, it's important to understand that whatever the actual truth is about what Techtronic is contractually permitted to sell in its factory outlet stores (and Bonilla believes, of course, that it is exactly what the SIA says it is, and does not cover "factory blemished" goods other than excess, obsolete, or reconditioned ones), Techtronic knew this truth at the start of the litigation. The Techtronic-

Home Depot relationship is a billion dollar relationship—of course Techtronic would know, at the beginning of a defamation case it filed based on its sales of "factory blemished" goods at its outlet stores, what contract governs that activity. This is not something that Techtronic could have "forgotten". It is not plausibly an oversight. What happened is Techtronic took one strategic position (to protect contractual confidentiality and rely solely on the SIA) at the start of the case, including giving discovery responses and sworn deposition testimony in support of that position, and then, when they realized that was a losing position with trial looming, attempting to change their story at the last minute.

This is exactly the sort of sharp practice and hiding the ball that the discovery and disclosure rules are designed to prevent.

Bonilla expects Techtronic to argue that there was no prejudice because Home Depot produced the two SBAs in response to a third party subpoena near the close of discovery. However, a third party producing a document in no way changes Techtronic's obligations to disclose the documents it intended to rely on, in its initial disclosures, in response to interrogatories and document requests, and in its trial exhibit list. *See, e.g.*, *X Soc. Media LLC v. X Corp.*, No. 6:23-CV-1903-JA-NWH, 2025 WL 2306960, at *5 (M.D. Fla. Aug. 11, 2025) (finding that the "Defendant's possession of the [at-issue] exhibit does not by itself establish that the Plaintiff's late disclosure of the at-issue documents was harmless" and excluding evidence). (And of course there is no dispute that Techtronic had these

supposedly important contracts in its possession, custody, and control and could have produced them in response to Bonilla's document demand.)

In sum, Techtronic's failure to disclose documents and a newly discovered legal theory as to why it has supposedly been allowed to sell "factory blemished" goods advertised to consumers as "exclusive to Home Depot" at its outlet stores, for three years while it litigated a defamation case contending that Bonilla's statements that it was not allowed to do so were incorrect, was a massively prejudicial disclosure and discovery violation. The 2022 and 2024 SBAs should be excluded at trial and Techtronic should be precluded from introducing evidence or argument regarding them or their terms.

**C. The Court should impose additional monetary sanctions.**

As argued above, this Court should exclude the two SBAs from trial and preclude Techtronic from referencing them in front of the jury. In addition, this Court should enter a monetary sanction, established through a supported submission, against Techtronic and its counsel to compensate Bonilla for the costs of bringing this motion.

Rule 37(c)(1)(A) permits the award of "reasonable expenses, including attorney's fees, caused by the failure" to disclose. *See, e.g.*, *Action Marine, Inc. v. Continental Carbon, Inc.*, 243 F.R.D. 670, 679 (M.D. Ala. 2007) ("Rule 37(c)(1) sanctions are broad and encompass not only the rectification of actual harm, but also allow for sanctions for a [party's] failure to maintain and preserve the sanctity of the court and to respect its rules.").

Rule 26(g) affords an independent basis for monetary sanctions. When signing an interrogatory response, the party "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. Proc. 26(g)(1)(B). A court "must" impose a sanction for violation of this certification. Fed. R. Civ. Proc. 26(g)(3). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id.*

Under these standards, Techtronic's failure to disclose the 2022 and 2024 SBAs and its misleading interrogatory answers and Rule 30(b)(6) testimony, until less than 3 months before trial, is clearly sanctionable.

**D. While Bonilla Does Not Believe Any Lesser Remedy Will Cure the Prejudice, if This Court Does Not Believe Preclusion Is Appropriate, This Court Must Order Significant Additional Discovery And Continue the Trial Date To Permit It To Take Place.**

In the alternative, while Bonilla does not believe any lesser remedy could cure the prejudice caused by Techtronic, at the very least, if the Court decides not to order exclusion, the Court should (1) order production of all pages, unredacted, of all contracts in effect between Home Depot and Techtronic at the time of the Second Report, and (2) order additional depositions, at Techtronic's expense, of Techtronic corporate representative and fact witnesses David Stearns and Randy Davis, who are both listed on Techtronic's trial witness list and both of whom have extensive knowledge of the contracts between Techtronic and Home Depot. Stearns was Techtronic's original corporate designee on contractual terms relating

to "factory blemished", and Davis is named on the SBAs as Techtronic's representative and was identified by Techtronic as a person with knowledge of its communications with Home Depot on the issue.[3]

## IV. CONCLUSION

For the foregoing reasons, the motion should be granted, the SBAs excluded, and reasonable monetary sanctions in an amount to be determined after a supported submission against Techtronic and its counsel. Alternatively, this Court should order full disclosure of all contracts between Techtronic and Home Depot, unredacted, and order the limited depositions of Techtronic's 30(b)(6) corporate representative, Randy Davis and David Stearns, at Techtronic's expense.

[3] Techtronic had always identified Mr. Davis as a person who had a short conversation with a Home Depot representative regarding the Second Report and Techtronic's sales of "factory blemished" goods. Given the clear terms of the SIA, Techtronic's admissions that it was the only relevant document, and Mr. Stearns' corporate designee testimony that there were no writings authorizing sales of damaged goods, Bonilla did not consider Davis' deposition to be necessary. However, if Techtronic is to be allowed to rely on possibly ambiguous SBAs that Mr. Davis executed, his deposition definitely would be necessary.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that, prior to filing this request, Bonilla's counsel conferred via Zoom conference on October 14, 2026 with counsel for Techtronic, which opposes the relief requested herein. At the meet and confer and in writing before it, Bonilla informed Techtronic of the basis for this motion.

Dated: October 29, 2026

Respectfully submitted,

By: *<u>/s/ Dilan A. Esper</u>*
Dilan A. Esper (*pro hac vice*)
desper@Harderstonerock.com
Charles J. Harder (*pro hac vice*)
charder@Harderstonerock.com
Harder Stonerock LLP
6300 Wilshire Boulevard,
Suite 640
Los Angeles, CA 90048
Telephone (424) 203-1600

By: *<u>/s/ Jonathan R. Weiss</u>*
Jonathan R. Weiss (FBN: 57904)
Jonathan.weiss@squirepb.com
Squire Patton Boggs (US) LLP
200 S. Biscayne Boulevard,
Suite 3400
Miami, Florida 33131
Telephone: (305) 577-7000

*Attorneys for Defendant Victor Bonilla*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 29, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will electronically send a notice of electronic filing to Plaintiff's attorneys of record

Jason Sternberg (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
2601 South Bayshore Dr., Ste 1550
Miami, FL 33133
jasonsternberg@quinnemanuel.com

Kristin Tahler (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
kristintahler@quinnemanuel.com

David A. Nabors
Fla. Bar No. 1024722
Quinn Emanuel Urquhart Sullivan LLP
2601 S. Bayshore Drive, Suite 1550
Miami, FL 33133-5417

Nicholas Inns (*pro hac vice*)
Quinn Emanuel Urquhart Sullivan LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
nicholasinns@quinnemanuel.com

*/s/Jonathan R. Weiss*
Attorney