UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TECHTRONIC INDUSTRIES COMPANY LIMITED,

Plaintiff,

v. Case No.: 8:23-cv-01734-CEH-AEP

VICTOR BONILLA,

Defendant,
_______________________________/

**ORDER**

This matter is before the Court on Defendant's Supplemental Motion for Partial Summary Judgment (Doc. 255), Plaintiff's Motion for Partial Summary Judgment (Docs. 257, 259-1),[1] the parties' responses (Docs. 260, 266-1, 273),[2] replies (Docs. 268, 270-1, 271),[3] and exhibits filed in support (Docs. 256, 258, 259, 263, 264, 269, 270, 272).[4] Upon consideration of the parties' motions, declarations and exhibits, and otherwise being fully advised in the premises, the Court will deny Plaintiff's motion and will grant-in-part and deny-in-part Defendant's motion.

## I. BACKGROUND

The Court adopts the factual and procedural history referenced in its prior summary judgment order. *See* Doc. 179 at 2–5. For purposes of summary judgment,

---

[1] Plaintiff's redacted motion for partial summary judgment is filed at Doc. 257, and the unredacted version is filed under seal at Doc. 259-1.
[2] Defendant's redacted response is at Doc. 273, and the unredacted response is filed under seal at Doc. 266-1.
[3] Plaintiff's redacted reply is Doc. 268, and the unredacted reply is under seal at Doc. 270-1.
[4] The Court permitted supplemental summary judgment briefing. *See* Docs. 247, 253.

the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

On August 12, 2026, the Court provided the parties an opportunity to submit additional briefing on the following three statements from the Second Report that were referenced in the operative complaint but that had not been specifically briefed at the time of initial summary judgment briefing:

> (a) "What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer?"
> (b) "Interviews with former Home Depot & TTI executives confirm it: TTI has successfully deceived Home Depot."
> (c) "Multiple former TTI employees indicate that TTI has used the 'Factory Blemished' nomenclature specifically to deceive Home Depot."

Doc. 68 ¶ 69.

Defendant Victor Bonilla moves for summary judgment (Doc. 257) as to all three statements and files the following exhibits in support: excerpts of Mark Harmon deposition (Doc. 256-1); excerpts of Albert Vita's deposition (Docs. 256-2, 272-1); transcription of Mark Harmon recording (Doc. 256-3); transcription of second Mark Harmon recording (Doc. 256-4); transcription of Albert Vita recording (Doc. 256-5), exhibit 2 to Albert Vita deposition (Doc. 256-6); exhibit 7 to Albert Vita deposition (Doc. 256-7), and copy of email chain between Defendant and anonymous TTI employee referred to as TTI Man (Doc. 256-8).

Plaintiff TTI moves for summary judgment (Doc. 257) as to the first statement. In support, Plaintiff files excerpts of the deposition of Kelly Bradley (Docs. 259-2, 270-

2), excerpts of the deposition of David Stearns (Doc. 259-3), March 2024 Home Depot Supplier Buying Agreement (Doc. 259-4), and a January 2022 Home Depot Supplier Buying Agreement (Doc. 270-3). The following is a summary of the depositions and recordings filed with the Court.

**A. Mark Hartman**

Defendant filed the excerpt of the Mark Hartman deposition (Doc. 256-1). Hartman started his career in advertising in Atlanta, and in 1997 he went to work as media manager with Home Depot, specifically as it relates to their hardware department, which is how he became familiar with TTI. In June 2004 Hartman transitioned from working for Home Depot to working for TTI as director of marketing specific to the Rigid brand. His career grew quickly with TTI, and he was promoted to vice president of Ryobi brand, and after that was made vice president of Milwaukee, Rigid and Ryobi brands. In the Fall of 2007, Hartman was promoted to senior vice president of Rigid and Ryobi and held that position until 2019.

Defendant also filed transcripts of his interviews with Mark Hartman (Docs. 256-3, 256-4). In the first July 3, 2024, interview transcript (Doc. 256-3), Hartman described DTFO as being similar to overstock.com, used to clear out returned, excess or obsolete product. Hartman stated that new products do not start there, but instead it was for clearance, excess, or obsolete product. He states that it would be a "major problem with Home Depot" if something that was brand new was in the DTFO stores.

In the second July 3, 2024 transcript (Doc. 256-4), Hartman agrees that TTI can sell new product from DTFO but only once Home Depot is done selling it. According

to Hartman, DTFO has kind of fallen under the radar because it's very small. He also states it is beneficial to Home Depot because Home Depot does not have to buy slow-moving inventory that they ultimately have to sell at a lower margin. He described it as an exit strategy or "garage sale" for outdated and low-velocity, excess inventory.

When asked about DTFO's blemished products, Hartman explained it as a "way to get rid of stuff that may be newish." Doc. 256-4 at 7. He described it as a "wink-wink" thing in which product that is not moving as quickly as hoped would be sold through DTFO by "scratch[ing] the box and just say it's [ ] factory blemished" even though its new. *Id.* Although TTI would not tell Home Depot it was labeling product that was excess as scratch and dent or factory blemished, he said Home Depot would not care because it was regarding "loser" items that were not selling in their stores. *Id.* at 8-9. Hartman states that TTI would never do anything to rock the boat with Home Depot and the relationship is a coveted priority for TTI. *Id.* at 9.

Hartman states that if Home Depot walked into a DTFO store and saw that it was selling current product that is being featured at Home Depot, then Home Depot would have a problem with that. *Id.* at 10.

According to Hartman, DTFO is using the "blemish" term as a nicer way to say a product is excess or obsolete. *Id.* at 15. Hartman agrees it is a "game" TTI is playing to get rid of excess inventory so they don't have to pay to warehouse it. *Id.* Looking at DTFO's website, Hartman observes that they are selling brand-new stuff as blemished, likely because TTI is over-inventoried on the product. *Id.* When Hartman saw a new item on the DTFO website that also currently sells at Home Depot, he stated that was

not the practice in the past and opined that Home Depot would be frustrated by that. *Id.* at 18. If DTFO is selling the same product as Home Depot but at a cheaper price that would be "newsworthy for the Depot leaders." *Id.* at 19-20.

**B. Albert Vita**

Defendant filed an excerpt of Albert Vita's deposition (Doc. 256-2). Vita was deposed in June 2024. Vita's career before Home Depot was largely in management consulting, particularly in the retail sector. Vita joined Home Depot in 2013 as a senior director interconnected retail for in-store environment. His position morphed into a director position of visual merchandising, still within the in-store environment team. He worked for Home Depot until February 2021.

In a July 3, 2024, interview of Vita (Doc. 256-5), Vita states that DTFO stores carry older, end-of-life products and refurbished products, which Home Depot carries neither. *Id.* at 5. But he also explained that end-of-life does not necessarily mean 5 to 10 years; it could mean one year if a newer version of the product comes out. He states that TTI has been open with Home Depot about DTFO stores and what they were trying to solve with their end-of-life products. *Id.* at 6-7. According to Vita, it is not a contention point for Home Depot. *Id.* at 7. He speaks highly of TTI's professionalism and its relationship with Home Depot and believes TTI would not do anything to rock that relationship. *Id.* at 7.

Defendant attached a copy of a communication between Defendant and Vita (Doc. 256-6), in which Vita states that product labeled as factory blemished in a DTFO store does not appear blemished. Some of the products were discontinued items and

the newer version of the product can be found at Home Depot. At least two DTFO identified products were still active items at Home Depot. Doc. 256-6 at 6, 7.

Defendant filed another excerpt of the Vita deposition transcript (Doc. 272-1) in which Vita acknowledges he likely was the referenced former Home Depot executive whose interview is quoted on page 20 of the Second Report. He agrees that he made the statements referenced or, at least, the statements are consistent with his understanding and recollection of the conversation.[5]

**C. TTI Man**

Defendant attaches as an exhibit (Doc. 256-8) an email chain between himself and an individual identified as "TTI Man" that was purportedly a former TTI employee who sent Defendant information about TTI and DTFO. According to Defendant, the information from TTI Man is what sparked Defendant to conduct research into the issue. Doc. 256-7 at 4.

**D. Kelly Bradley**

Plaintiff files excerpts of the deposition (Doc. 259-2) of Kelly Bradley, a Home Depot employee who leads the team responsible for purchasing product for Home Depot from TTI and other suppliers. Bradley described TTI as one of the most strategic partners for Home Depot and a best-in-class supplier. TTI consistently brings new and improved product to Home Depot to bring to market. Bradly described the relationship

[5] It is apparent, however, that the statements made by Vita were not verbatim as there were ellipses in the quotations as well as bracketed information that was added by Defendant. Doc. 272-1 at 105, 108.

between Home Depot and TTI as strong and transparent; they problem solve together. She testified that Home Depot relies on its suppliers to provide quality product. She discussed the supplier's warranty (from the Supplier Buying Agreement) which guarantees the merchandise is new, merchantable, and free from any defects. If a product does not meet Home Depot standard as determined by the supplier, Home Depot does not track what the supplier does with the product.

After the Second Report came out, she did go on the DTFO website to see if TTI was selling product at DTFO stores that was not being made available to Bradley for Home Depot, but she did not see anything like that. To Bradley's knowledge, Home Depot did not take any adverse action against TTI following publication of the Second Report. If there had been fraud, she would have expected some action to have been taken. Bradley testified that TTI remains a strong, highly valued vendor for Home Depot.

**E. David Stearns**

Plaintiff filed excerpts of the deposition (Doc. 259-3) of TTI employee David Stearns. Stearns explained that TTI sells excess, obsolete, reconditioned, and slightly damaged products at DTFO stores. TTI's internal definition of factory blemished goods means anything that is excess, obsolete or slightly damaged. According to Stearns, Home Depot does not use the term "factory blemished." Stearns testified that it is loss mitigation and good for the environment to re-sell the obsolete or excess product rather than throw them in a landfill. TTI and Home Depot spoke after the Second Report was published, and TTI assured Home Depot that the inventory sold

(one to two billion dollars per year) from the report was not DTFO inventory. Stearns testified that TTI loses money through DTFO.

**F. Home Depot Supplier Buying Agreements ("SBA")**[6]

Plaintiff filed SBAs between Home Depot and TTI. Docs 259-4, 270-3. Under paragraph 5 of the general terms and conditions, the Supplier (TTI) represents and warrants that "all Merchandise will be of good quality, material and workmanship, new, merchantable, fit for its intended purpose and free from any and all defects."

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show

[6] Defendant previously objected to Plaintiff's use of the SBAs on the basis that they were not produced by Plaintiff in discovery. Doc. 274. The Court overruled Defendant's objection because Defendant received a copy of the SBA through a third-party subpoena to Home Depot and has been in possession of the document for over two years. Doc. 281 at 5, 7. On October 29, 2026, Defendant filed a motion for sanctions under Rule 37 and to exclude the SBAs from Plaintiff's exhibit list. Doc. 283. As an alternative to exclusion of the evidence, Defendant requests the opportunity to conduct targeted supplemental discovery.

the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir.

1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## III. DISCUSSION

Before the Court are cross motions for summary judgment related to the following three allegedly defamatory statements from Defendant's Second Report. The Court will address each in turn.

### 1. "What if TTI's insane profit margins aren't due simply to accounting games, but also to outright contractual and product diversion fraud against its biggest, and rather powerful, customer?"

Both parties move for summary judgment in their favor as to this first statement. As discussed below, Defendant's motion will be granted and Plaintiff's motion will be denied as to this rhetorical question.

In his motion, Defendant's argument is two-fold. First, he argues that he is entitled to summary judgment because the statement, which begins with "what if", is a nonactionable question that prompted further inquiry and was not a statement of fact. Doc. 255 at 4. Plaintiff responds that a question may be actionable where common minds would construe it as an accusation and that accusation can be proven true or false. Doc. 260 at 4. Second, Defendant argues the question is protected opinion and rhetorical hyperbole. Plaintiff responds that the statement, when read in context, is not an isolated question.

An element of Florida defamation law is a false statement of fact. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). The statement at issue here is a rhetorical question which, in this context, does not form the basis of a defamation claim under Florida law. Defendant's use of colorful, exaggerated language—"biggest, and rather powerful customer"—further adds to the hyperbolic nature of the comment.[7] *See Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006) ("It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole."). Because the Court finds that Defendant's statement is a rhetorical question and is not a statement of actionable fact, he is entitled to summary judgment as to this statement.

For its motion, Plaintiff argues the statement is actionable and that the Court's prior rulings establish the statement's falsity. Doc. 257 at 10–11. As stated above, the Court finds that the question is not actionable. Accordingly, Plaintiff's motion will be denied.

**2. "Interviews with former Home Depot & TTI executives confirm it: TTI has successfully deceived Home Depot."**

Defendant moves for summary judgment as to this statement arguing that the reader was provided with the facts Defendant relied upon—interviews of former executives—and the conclusion he reached based upon those interviews. Doc. 255 at

[7] Additionally, this Court previously ruled that Defendant's reference to "accounting games" was nonactionable, colorful rhetoric. *See* Doc. 179 at 18.

7. Defendant argues that just because someone may disagree with his conclusion regarding these facts does not prove defamation. He submits that whether or not the interviews persuasively confirm Defendant's opinion is a matter that the disclosed facts doctrine leaves to a reader. Defendant also argues that the Home Depot agreement does not even use the term "factory blemished" (and instead only permits the sale of "reconditioned, obsolete, or excess inventory") which he claims further negates any defamation claim. Defendant relies on his sources' statements that Plaintiff had no right to sell blemished goods. Notwithstanding Plaintiff's explanation of what "factory blemished" refers to, Defendant argues that a competing interpretation does not make Defendant's statements false. He argues he is entitled to summary judgment because disagreement with the disclosed interpretation does not create an actionable false statement.

Plaintiff responds that Defendant's statement is not a matter of "opinion," but instead is stated as concrete fact. Doc. 260. Plaintiff further argues that Defendant's use of the word "confirm" implies the allegation of undisclosed defamatory facts. Mixed expressions of opinion occur "when an opinion or comment [is based] upon facts regarding the plaintiff or his conduct that have not been stated in the publication or [are] assumed to exist by the parties to the communication." *Turner*, 879 F.3d at 1262. On the other hand, a "pure opinion" is "a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Deeb v. Saati*, 778 F. App'x 683, 687 (11th Cir. 2019) (quoting *Turner*, 879 F.3d at 1262). Even if it is phrased as an opinion,

however, a statement may be actionable if it can reasonably be interpreted as stating or implying actual facts about the plaintiff. *Deeb*, 779 F. App'x at 687 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990)). And "a speaker cannot invoke a 'pure opinion' defense if the facts underlying the opinion are false or inaccurately presented." *Lipsig v. Ramlawi*, 760 So. 2d 170, 184 (Fla. 3d DCA 2000).

Here, Plaintiff contends that the underlying facts are inaccurately presented because Defendant cherry-picked excerpts from the interviews which manipulated and misrepresented the sources' statements. Doc. 260 at 7. In support, Plaintiff cites to the transcripts of Albert Vita and Mark Hartman which Plaintiff argues confirm the opposite of Defendant's representations. By way of example, Plaintiff points to Hartman's statement that Plaintiff "would never do anything . . . to rock the boat" with Home Depot. Doc. 256-4 at 9, 10. Plaintiff also cites to Hartman's deposition transcript in which he explains he "was trying to convey that [he] did not think there was deliberate fraud" (Doc. 110-36 at 3). In reply (Doc. 271), Defendant argues his characterizations are accurate and the fact that Hartman and Vita later criticized Defendant in depositions is irrelevant. Defendant further argues that Florida caselaw does not require that he present a balanced view of the facts. Doc. 271 at 5.

"An important factor in the process of analyzing a comment is determining whether the speaker accurately presented the underlying facts of the situation before making the allegedly defamatory remarks." *Zambrano v. Devanesan*, 484 So. 2d 603, 606 (Fla. 4th DCA 1986). As evidenced by the parties' filings, whether the facts were

inaccurately presented are in dispute.[8] Accordingly, Defendant's motion for partial summary judgment as to this second statement is due to be denied.

**3. "Multiple former TTI employees indicate that TTI has used the 'Factory Blemished' nomenclature specifically to deceive Home Depot."**

Defendant moves for summary judgment in his favor as to this statement, arguing that the statement is literally true and that, in context, is a protected opinion. Given his choice of the word "indicate," Defendant submits that the report accurately repeats what the sources told him. Defendant again contends that his conclusion, which a reader can independently evaluate, is based on the statements from his interviews.

Plaintiff responds in opposition (Doc. 260), again arguing that Defendant's characterizations of the Hartman and Vita testimony are false and misrepresent what these witnesses stated. Additionally, Plaintiff contends the word "deceive" was not used by the witnesses in their interviews. Because genuine issues of material fact exist as to the accuracy of the statements, Plaintiff urges this Court to deny Defendant's motion as to this statement.

"If the publication can bear only one meaning, the question of defamation is for the judge." *McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986). But where statements are "reasonably susceptible" of a defamatory meaning, it is for the trier of fact to determine whether the communication was understood in the

---

[8] The Court notes that the interview transcripts filed by Defendants have gaps in the transcription and numerous lines marked as "undiscernible" by the transcriber.

defamatory sense. *See Doe v. Finkelman*, 429 So. 3d 456, 471 (Fla. 4th DCA 2025), reh'g denied (Feb. 9, 2026), *review denied sub nom. Caviar LA LLC v. Doe*, No. SC2026-0387, 2026 WL 2805527 (Fla. Sept. 17, 2026) (citation omitted).

As the Court found above regarding the second statement, the Court finds that genuine issues of fact exist as to the accuracy of the third statement. Accordingly, Defendant's motion is due to be denied on this statement as well. It is hereby

**ORDERED:**

1. Defendant's Supplemental Motion for Partial Summary Judgment (Doc. 255) is **granted**, in part, as to the first statement discussed in the Order. In all other respects, the motion is **denied**.

2. Plaintiff's Motion for Partial Summary Judgment (Doc. 257) is **denied**.

**DONE AND ORDERED** in Tampa, Florida on November 9, 2026.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any